IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOANNE COUVRETTE and
WISNOVSKY LAND, LLC,

               Plaintiffs,

    v.

MARK WISNOVSKY,
MICHAEL WISNOVSKY, and
VALLEY VIEW WINERY, INC.,

               Defendants.

Case No. 1:21-cv-00157-CL

**OPINION AND ORDER**

---

**CLARKE**, Magistrate Judge.

This case arises from the parties' dispute involving alleged elder abuse and unconscionable contracting. This case was filed in this Court on January 29, 2021 (#1). Full consent to magistrate jurisdiction was entered on March 1, 2022 (#38). The case comes before the Court on Plaintiffs' Motion to Substitute a Party (#118) and Motion to Dismiss (#120). Oral argument was heard on November 7, 2024. For the reasons below, Plaintiffs' Motion to Substitute (#118) is GRANTED, and the Motion to Dismiss (#120) is DENIED.

## BACKGROUND

Plaintiff Joanne Couvrette filed this case as trustee of the Ann M. Wisnovsky Trust and on behalf of her mother, Ann M. Wisnovsky ("Ann"). Complt. at ¶ 1. At the time of filing, Ann was an 88-year old woman suffering from dementia. *Id.* Defendants Mark and Michael

Wisnovsky are Ann's sons. *Id.* at ¶ 2. At the heart of Plaintiffs' complaint is the allegation that

Defendants took advantage of Ann's vulnerability by duping her into unconscionable leases and

contracts. *Id.*

On March 16, 2023, Ann passed away in San Diego, California. Couvrette Decl. at ¶ 2.

On March 31, 2023, the parties filed a Joint Status Report notifying the Court that

"Ann...passed away." JSR (#89) p. 1.

On May 9, 2023, the San Diego County Superior Court, Probate Division appointed

Michelle Sullivan as Special Administrator for Ann's Estate. Plf. Mtn. Sub. (#118) p. 2.

While this case has been pending, several other related actions have been brought by the

parties in courts both in Oregon and California. Plf. Mtn. Diss. (#120) p. 3. Notably, Defendants

filed an action in Jackson County State Court seeking to have Joanne Couvrette removed as

Trustee. *Id.* Plaintiffs removed the State Court action to this Court. *Wisnovsky v. Couvrette*,

No. 1:23-CV-00414-CL, Notice of Removal. (ECF #1).This Court, however, remanded the action

back to state court finding that it involved administration of a decedent's estate, and thus the

probate exception applied. *Wisnovsky v. Couvrette*, Op. & Ord. (ECF #31).

Defendants have filed multiple Amended Answers in this case. Relevant to the motions

discussed herein is Defendants' Fourth Amended Answer and Counterclaims (#114) filed on

February 27, 2024.

## DISCUSSION

Plaintiffs move to substitute the Special Administrator of Ann's Estate, Michelle Sullivan,

for Trustee Joanne Couvrette in this matter. Additionally, Plaintiffs move to dismiss Defendants'

Proposed Fourth Amended Answer and Counterclaims. Defendants oppose both motions on

numerous grounds. For the reasons below, Plaintiffs' Motion to Substitute is GRANTED, and

Plaintiffs' Motion to Dismiss is DENIED.

**I.    Plaintiffs' Motion to Substitute a Party is granted.**

"All causes of action or suit, by one person against another, survive to the personal

representative of the former and against the personal representative of the latter." ORS

§ 115.305. If a claim is not extinguished upon the death of a party, the Court is permitted to

substitute a deceased party with its successor as follows:

> A motion for substitution may be made by any party or by the decedent's
> successor or representative. If the motion is not made within 90 days after service
> of a statement noting the death, the action by or against the decedent must be
> dismissed.

Fed. R. Civ. P. 25(a)(1). Given these rules, Plaintiffs move to substitute the Special Administrator

of Ann's Estate, Michelle Sullivan, for Trustee Joanne Couvrette in this matter.

**A.    Plaintiffs' violation of Local Rule 7-1 is not dispositive.**

The Local Rules of the U.S. District Court for the District of Oregon require a moving

party to confer with all opposing parties before filing most motions. *See* LR 7-1 (the "Conferral

Rule"). The Conferral Rule states in pertinent part:

> Except for motions for temporary restraining orders, the first paragraph of every
> motion must certify that:
> (A) In compliance with this Rule, the parties made a good faith effort through
>      personal or telephone conferences to resolve the dispute and have been
>      unable to do so; or
> (B) The opposing party willfully refused to confer; or
> (C) The moving party or opposing party is a prisoner not represented by
>      counsel.

LR 7-1. Moreover, "[t]he Court *may* deny any motion that fails to meet this certification

requirement." *Id.* (emphasis added).

Here, Plaintiffs' Motion includes no LR 7-1 certification. The only attempt at conferral reported by Plaintiffs was a singular voicemail left for defense counsel, Mr. Dole, in which Plaintiffs' attorney simply asked for a call back. Brigandi Decl. at ¶ 1. The call was never returned; however, Plaintiffs' counsel made no further attempts to confer.

Plaintiffs failed to comply with the Conferral Rule. A single vague voicemail is insufficient to qualify as a good faith effort to confer. Moreover, Plaintiffs' contention that any attempt to confer would have been futile is immaterial. The likelihood of success of the conferral in reaching agreement is irrelevant to the requirement to comply with the rule.

Despite Plaintiffs' violation of LR 7-1, the Court declines to deny Plaintiffs' motion on this basis. Plaintiffs should be cautious not to read this as an endorsement of their actions. Noncompliance with Local Rules is not something this Court takes lightly, and further noncompliance may result in denial or dismissal of this case. The Court recognizes that Plaintiffs' lead attorney is admitted to practice in this jurisdiction *pro hac vice* and encourages local counsel to help ensure compliance with Local Rules.

**B.    It is unclear whether the 90-day clock has run out in this case.**

The parties disagree on whether the window of time during which a Motion for Substitution of a Party may be filed on behalf of a decedent has closed. The Ninth Circuit has established a two-prong test to assess whether the 90-day clock has been triggered. "First, a party must formally suggest the death of the party upon the record." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). "Second, the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *Id.* Because the parties do not dispute whether service was proper, the Court will limit its focus to the first prong of this test.

The caselaw defining what qualifies as a "suggestion of death upon the record" is murky. Plaintiffs cite to one case which states both that "a party must formally suggest the death of the party upon the record," and "[r]ule 25(a)(1) does not require that such statements include magic words or come in specific forms." *Coleman v. Sys. Dialing LLC*, 2015 WL 9275684, at *2-3 (S.D.N.Y. Dec. 18, 2015). What is left is an ambiguous definition of a suggestion of death, which need not come in a specific form, yet must be formal enough. While *Coleman* is not controlling in this Court, it illustrates a perspective shared by the Ninth Circuit. *See Barlow*, 39 F.3d at 233 (holding a formal suggestion of death is necessary but providing no elaboration on what qualifies as formal).

Here, Defendants argue that the Joint Status Report (#89) filed on March 31, 2023, contained a qualifying statement noting Ann's death. While the report did include a line stating "[o]n March 16, 2023, Ann . . . passed away," Plaintiffs argue that a statement of death within a status report is too informal to meet the notice requirements of Rule 25. If Defendants are correct, the 90-day window has long since closed; however, if Plaintiffs are correct, the 90-day window may never have opened.

Given the conflicting caselaw and uncertainty of what qualifies as a "suggestion of death upon the record," the Court declines to rule on this issue. Regardless of whether the 90-day window has closed or never opened, the Court finds Plaintiffs' Motion to Substitute may be granted based on excusable neglect.

### C.    Plaintiffs' delay in filing a Motion to Substitute a Party qualifies as excusable neglect.

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To assess whether a party's neglect is

excusable, the Court must balance four factors: (1) the danger of prejudice to the opposing party,

(2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the

delay, and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick*

*Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Excusable neglect is an equitable concept that is

"remedial in nature and . . . must be liberally applied." *Ahanchian v. Xenon Pictures, Inc.*, 624

F.3d 1253, 1262 (9th Circ. 2010) (quoting *TCI Group Life Ins. v. Knoebber*, 224 F.3d 691, 696

(9th Circ. 2001).

The Court finds the excusable neglect standard is satisfied. First, granting Plaintiffs'

Motion to Substitute does not prejudice Defendants. The parties admit in their briefs that

granting the substitution would not alter the substance of the claims at hand. If anything, the

Defendants may have argued that the alleged passing of the 90-day deadline to substitute would

require the related claims to be dismissed entirely, but Defendants present no such argument, nor

have they submitted any motions to dismiss on this basis. Thus, it appears that allowing the

substitution would not materially alter the case, therefore causing no prejudice to Defendants.

Second, while the length of delay in filing the motion is sizable, it is not dispositive. As

Defendants point out, Plaintiffs have waited over a year since Ann's death to file the Motion to

Substitute. In similar cases, other courts in this circuit have held that such delay is not inherently

incompatible with excusable neglect. *See e.g.*, *Johnson v. Bay Area Rapid Transit District*, 2014

WL 1395749 (N.D. Cal. Apr. 10, 2014) (finding excusable neglect where there was a nearly two-

year gap between filing a suggestion of death and moving to substitute). Because the delay does

not prejudice the Defendants, the Court finds it does not outweigh the other factors in favor of

granting excusable neglect here.

Third, it appears the reason for delay is solely due to Plaintiffs' negligence. The Ninth

Circuit has cautioned that there should "be no rigid legal rule against late filings attributable to

any particular type of negligence." *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Circ. 2004).

Instead, the *Pioneer* factors should be weighed at the discretion of the district court. *Id.* Here,

Defendants do not suggest Plaintiffs' late filing is based on any ulterior motives, nor does

anything in the record lead the Court to believe so. Concluding that Plaintiffs' late filing is based

solely on negligence, the Court sees no reason to allow this delay to tip the scales against the

claim of excusable neglect.

Finally, the Court finds that Plaintiffs have filed this motion in good faith. Plaintiffs'

filings indicate a genuine belief that the 90-day clock to file a Motion to Substitute had not yet

started ticking, let alone run out. Plaintiffs delay in filing the motion appears based on negligence

rather than any sort of tactical scheme.

Taken together, the *Pioneer* factors weigh in favor of finding excusable neglect here.

Regardless of the procedural accuracy, it is the preference of this Court to rule on the merits of

the case. Thus, Plaintiffs Motion to Substitute is granted based on excusable neglect.

### D.    It is immaterial whether the proposed substitution would effectively amend the Complaint.

Because the Court has decided this motion based on excusable neglect, it need not reach

the question of whether substitution of a party would qualify as amending the Complaint.

## II.    Plaintiffs' Motion to Dismiss is denied.

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of*

*America*, 511 U.S. 375, 377 (1994). For a federal court to have subject matter jurisdiction over a

case, the case must either arise from a federal question or involve a dispute between citizens of

different states with an amount in controversy exceeding $75,000. 28 U.S.C. §§ 1331,

1332. Even if a case seemingly falls within the bounds of federal jurisdiction, exceptions may

apply. Here, Defendants' counterclaims are rightfully within this Court's jurisdiction based on

diversity, and the probate exception does not apply. Plaintiff's motion to dismiss is denied.

### A.   The probate exception to diversity jurisdiction does not apply to the first, seventh, eighth, and ninth counterclaims because they do not ask the Court to administer the trust.

"The probate exception is a jurisdictional limitation on federal courts that 'reserves to

state probate courts the probate or annulment of a will and the administration of a decedent's

estate; it also precludes federal courts from endeavoring to dispose of property that is in the

custody of a state probate court.'" *Hollander v. Irrevocable Tr. Established by James Brown in*

*Aug. 1, 2000*, 2011 WL 2604821, at *2 (C.D. Cal. June 30, 2011) (quoting *Marshall v. Marshall*,

547 U.S. 293, 311–12 (2006). It applies to both diversity and federal question subject matter

jurisdiction. *See In re Marshall*, 392 F.3d 1118, 1132 (9th Cir. 2004), *rev'd on other grounds*,

*Marshall*, 547 U.S. at 314–15. "But it does not bar federal courts from adjudicating matters

outside those confines and otherwise within federal jurisdiction." *Marshall*, 547 U.S. at 312. The

probate exception is limited to circumstances where "a federal court is endeavoring to (1)

probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over

property that is in the custody of the probate court." *Goncalves By & Through Goncalves v. Rady*

*Children's Hosp. San Diego*, 865 F.3d 1237, 1252 (9th Cir. 2017) (quoting *Three Keys Ltd. v. SR*

*Util. Holding Co*, 540 F.3d 220, 227 (3d Cir. 2008).

The first, seventh, eighth, and ninth counterclaims are not trust administration claims.

The first and ninth counterclaims are tort claims for undue influence and tortious interference

with prospective inheritance. The seventh and eighth counterclaims are based on contract law

and seek to enforce an inheritance contract and invalidate certain documents on the grounds of incapacity.

The first and ninth counterclaims are like the claims in *Curtis v. Brunsting*, where tort claims for compensatory and punitive damages for "breach of fiduciary duty, extrinsic fraud, constructive fraud, and intentional infliction of emotional distress" were not subject to the probate exception because they did not involve administration of an estate. 704 F.3d 406 (5th Cir. 2013).

The second and eighth counterclaims are like the "contract interpretation question" in *Lee Graham Shopping Center, LLC v. Estate of Kirsch* ("*Lee Graham*"), 777 F.3d 678, 681 (4th Cir. 2015), that was not subject to the probate exception. *Lee Graham* was about whether a limited partnership agreement prevented a trust that owned 21% of the partnership from transferring that interest to another trust. *Id.* at 679. Although it was a contract case, the court held it was "[l]ike the tortious interference claim in *Marshall*" because both were outside the probate exception. *Id.* at 681 n. 4.

Because the counterclaims do not ask the Court to administer the trust, the probate exception does not apply, and the claims are properly within the jurisdiction of this Court.

**B.    The Court has diversity jurisdiction over the second, third, fourth, fifth, sixth, and tenth counterclaims.**

Federal courts' diversity jurisdiction extends to "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between [c]itizens of different states." 28 U.S.C. § 1332(a)(1). When the litigant is a business entity rather than an individual, the citizenship of that party depends on the form of the entity. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). The Supreme Court has firmly established that corporations should be treated as "citizens" of the State in which they were created. *Carden v. Arkoma*

*Assocs.*, 494 U.S. 185, 188-89 (1990). However, the Supreme Court has "just as firmly resisted extending that treatment to other entities" such as an LLC. *See id.* at 189. In the Ninth Circuit, LLCs are treated as citizens of every state in which their members are citizens. *Johnson*, 437 F.3d at 899. Moreover, "[u]nlike a corporation, an LLC is not a citizen of the state in which it was organized unless one of its members is a citizen of that state." *Krohn v. Equity Title, LLC*, 2015 WL 4622687, at *4 (D. Nev. Aug 3, 2015) (*citing Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1085 (9th Cir. 2014) (describing complaint that erroneously alleged LLC's state of organization as basis for jurisdiction instead of each member's state of residency)).

The parties to the second, third, fourth, fifth, sixth, and tenth counterclaims are the Wisnovsky Defendants, Joanne Couvrette, and Wisnovsky Land. The Wisnovsky Defendants are citizens of Oregon. Wisnovsky Land is organized in Oregon, but its only member is Ms. Couvrette, who is a citizen of California. Thus, under the caselaw cited above, Wisnovsky Land is not a citizen of Oregon and is instead a citizen only of California. Accordingly, Plaintiffs and Wisnovsky Defendants are citizens of different states.

There is no dispute between the parties as to the amount in controversy requirement of the federal rules, or that the amount in controversy in the present case exceeds $75,000. Because the Wisnovsky Defendants are citizens of Oregon and Plaintiffs Couvrette and Wisnovsky Land are citizens of California, this case involves complete diversity of citizenship pursuant to 28 U.S.C. § 1132. Therefore, this Court has diversity jurisdiction over the second, third, fourth, fifth, sixth, and tenth counterclaims.

### C.    It is immaterial whether the counterclaims are permissive or compulsory.

Because the Court has decided this motion based on diversity between the parties, it need not reach the question of whether the counterclaims are permissive or compulsory.

## CONCLUSION

The Court is satisfied that Plaintiffs' Motion to Substitute, even if untimely, may still be permitted on the grounds of excusable neglect. Plaintiffs' Motion to Substitute the Special Administrator of Ann's Estate, Michelle Sullivan, for Trustee Joanne Couvrette in this matter is therefore GRANTED. The parties should also note, as agreed to in their briefs, the substitution of Ms. Sullivan for Ms. Couvrette in this matter does not relieve Ms. Couvrette of any of the counterclaims alleged against her.

Additionally, the Court has jurisdiction over all of the above-mentioned counterclaims, and the probate exception does not apply. Plaintiffs' Motion to Dismiss Defendants' counterclaims is DENIED.

IT IS SO ORDERED and DATED this _16_ day of December, 2024.

MARK D. CLARKE
United States Magistrate Judge