**Brooks M. Foster, OSB No. 042873**
Email: bfoster@northwestlaw.com
**Bradley T. Crittenden, OSB No. 173274**
Email: bcrittenden@chenowethlaw.com
Chenoweth Law Group, P.C.
510 SW Fifth Avenue, Fifth Floor
Portland, OR 97204
Telephone: 503-221-7958
Facsimile: 503-221-2182

**James R. Dole, OSB No. 892272**
Email: jdole@wlrlaw.com
Watkinson Laird Rubenstein, P.C.
1246 NE 7th Street, Suite B
Grants Pass, OR 97526
PO Box 10567
Eugene, OR 97440
Telephone: 541-484-2277
Facsimile: 541-484-2282

Of Attorneys for Defendants Mark A. Wisnovsky,
Michael J. Wisnovsky, and Valley View Winery, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Medford Division

| | |
|---|---|
| JOANNE COUVRETTE, as trustee of the Ann M. Wisnovsky Trust; and WISNOVSKY LAND, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MARK A. WISNOVSKY, an individual; MICHAEL J. WISNOVSKY, an individual; PATRICK HUYCKE, an individual; VALLEY VIEW WINERY, INC., an Oregon corporation; JARVIS, DREYER, GLATTE & LARSEN, LLP, an Oregon partnership, fka Huycke O'Connor Jarvis, LLP,<br><br>Defendants. | Case No. 1:21-CV-00157-CL<br><br>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Page 1 -  WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

**TABLE OF CONTENTS**

MOTION .............................................................................................................8

MEMORANDUM IN SUPPORT OF MOTION....................................................8

I.    INTRODUCTION .....................................................................................9

II.   FACTS .....................................................................................................9

    A.    The Wisnovsky Family and Valley View Winery............................9

    B.    Ann's Trust ....................................................................................10

    C.    The Agreement to Make Payments................................................11

    D.    The First Trust Amendment..........................................................12

    E.    The Winery Lease and Vineyard Lease .........................................12

    F.    Couvrette's Objections to the Leases ............................................13

    G.    The First Lease Addenda ...............................................................14

    H.    The February 2017 Documents......................................................14

    I.    The Amended Agreement to Make Payments ................................15

    J.    The Second Vineyard Addendum..................................................15

    K.    The Redemption Agreement ..........................................................16

    L.    The Second Trust Amendment ......................................................17

    M.    The Wisnovsky Defendants' Reliance ..........................................17

    N.    The Third Trust Amendment .........................................................18

    O.    Couvrette's Takeover of the Trust.................................................19

    P.    The Fifth Trust Amendment ..........................................................20

    Q.    Ann's Confusion............................................................................20

    R.    Couvrette's Revocation of the Redemption Agreement.................20

    S.    Couvrette's Sequestration of Ann in California.............................21

    T.    The Sixth Trust Amendment .........................................................21

    U.    Ann's Diagnoses of Dementia ......................................................21

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

V.    The Claims Against the Wisnovsky Defendants ...........................................22

W.    The Counterclaim for Breach of Inheritance Contract ................................24

X.    The Trust's Withholding of Wisnovsky Land, LLC .....................................25

Y.    Plaintiff's Dismissal of Huycke and Jarvis .....................................................25

III.    SUMMARY JUDGMENT STANDARD .................................................................25

IV.    LEGAL ARGUMENT .........................................................................................26

A.    The Claim That the Leases Constitute Elder Abuse Must Be
Dismissed on Any of Several Grounds ...........................................................26

    1.    *The Leases Do Not Constitute a Taking or Appropriation of Money or Property* .....................................................................................26

    2.    *Ann Ratified and Affirmed the Leases*.....................................30

    3.    *The Elder Abuse Claim Was Waived* .....................................34

    4.    *Sullivan Is Estopped from Asserting Elder Abuse* .............................37

    5.    *There Is No Admissible Evidence of Diminished Property Value* .......39

B.    The Claim for Declaratory Judgment to Invalidate the Leases Must Be
Dismissed on Any of Several Grounds ...........................................................40

    1.    *Ann Ratified and Affirmed the Leases, the Declaratory Judgment Claim Was Waived, and Plaintiffs Are Estopped from Making It* .......40

    2.    *The Claim for Declaratory Judgment Based on Undue Influence Is Barred by the Applicable Statute of Limitations* .................................41

C.    The Claim That the Gifts of Stock Constituted Elder Abuse Must Be
Dismissed Because Ann Ratified and Affirmed the Gifts of Stock, the Claim
Was Waived, and Sullivan Is Estopped from Making It ................................43

D.    There Is No Genuine Issue of Material Fact That the Wisnovsky Defendants
Are Entitled to Specific Performance of the Inheritance Contract .................45

    1.    *General Contract Law* .........................................................45

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

2.  *The Law of Inheritance Contracts* ........................................................46

3.  *Specific Performance* ...........................................................................47

4.  *The February 2017 Documents Evidence the Irrevocable Inheritance Contract for Mark and Mike to Inherit Wisnovsky Land* ....................48

5.  *The Trust Is in Breach of the Inheritance Contract* ............................49

6.  *The Wisnovsky Defendants Are Entitled to Specific Performance Ordering the Trust to Transfer Ownership of Wisnovsky Land to Them* ..................................................................................................50

E.  The Inheritance Contract Provides Additional Grounds for Dismissal of Plaintiffs' Claim for Declaratory Judgment That the Leases Are Invalid and Sullivan's Claim That the Leases Constitute Elder Abuse ...............................51

F.  The Wisnovsky Defendants Are Entitled to Partial Summary Judgment Dismissing the Unjust Enrichment Claim .........................................................51

1.  *The Subject of the Unjust Enrichment Claim Is Already Addressed in the Second Vineyard Addendum and Amended Agreement to Make Payments* ...............................................................................................52

2.  *Alternatively, Plaintiffs Have no Right to Any of the Sub-Lease Benefits Obtained Pursuant to the Sub-Lease with Third Generation Farms* ......................................................................................................53

G.  The Wisnovsky Defendants Are Entitled to an Award of Reasonable Attorney Fees Related to Dismissal of Sullivan's Claim for Elder Abuse and Plaintiffs' Claim for Declaratory Judgment ....................................................................55

H.  The Wisnovsky Defendants Are Entitled to Reasonable Attorney Fees for Prevailing on Their Claim for Breach of Inheritance Contract Against Plaintiffs, Including Couvrette Personally ........................................................56

V.  CONCLUSION.................................................................................................57

**CHENOWETH LAW GROUP, PC**
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

## TABLE OF AUTHORITIES

### CASES

*Alvarez v. Coleman*, 642 So. 2d 361 (Miss. 1994) ........................................................46, 47

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................25, 26

*Appleton v. Bohart*, No. 2:17–CV–0327–TOR, 2018 WL
      1546423 (E.D. Wash. Mar. 29, 2018) ...................................................................41

*BenefitElect, Inc. v. Strategic Benefit Sols. Corp.*, 614 F. Supp. 3d 838 (D. Or. 2022) ....46, 48

*Bernard v. S.B., Inc.*, 270 Or. App. 710 (2015) ..................................................................30, 31

*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) .......................................26

*Cook v. Desler*, 52 Or. App. 5 (1981) .....................................................................................50

*Cunningham v. State Farm Fire & Cas. Co.*, 647 F. Supp. 3d 985 (D. Or. 2022) .................25

*Day v. Advanced M & D Sales, Inc.*, 336 Or. 511 (2004) ........................................................37

*Deitz v. Stephenson*, 51 Or. 596 (1908) ..................................................................................48

*Doyle v. City of Medford*, 271 Or. App. 458 (2015) ................................................................42

*Florey v. Meeker*, 194 Or. 257 (1952) ....................................................................................46

*Fulwiler v. Beddoe*, 212 Or. App. 615 (2007) ........................................................................50

*Gaswint v. Case,* 265 Or. 248 (1973) ................................................................................46, 48

*Goldingay v. Progressive Casualty Insurance Company*, 306 F. Supp. 3d
      1259 (D. Or. 2018) ............................................................................................29

*Grimstad v. Knudsen*, 283 Or. App. 28 (2010) ..................................................................54, 55

*Hays v. Hug*, 243 Or. 175 (1966) ............................................................................................48

*Heise v. Pilot Rock Lumber Co.*, 222 Or. 78 (1960) ................................................................41

*Hudson v. Peavey Oil Co.*, 279 Or. 3 (1977) ..........................................................................39

*Kashmir Corp. v. Patterson*, 43 Or. App. 45 (1979) ...............................................................52

*Kazlauskas v. Emmert*, 248 Or. App. 555 (2012) ...................................................................47

*Kozyra v. Jackman*, 60 Mich. App. 7 (1975) ..........................................................................47

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

*Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115 (2017)........................................52

*Marshall v. Wilson*, 175 Or. 506 (1944) ................................................................37

*Moradi v. ReconTrust Company, NA*, Case No. 3:19-cv-01590-JR, 2020 WL
    4187771 (D. Or. June 30, 2020) ...................................................42

*Murphy v. Allstate Ins. Co.*, 251 Or. App. 316 (2012)........................................41, 42

*Newell v. Weston*, 150 Or. App. 562 (1997) .....................................................39, 40

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) ........................26

*O'Donnell v. Vial Fotheringham LLP*, No. 3:19-CV-00579-SB, 2020 WL
    6365521 (D. Or. Sept. 15, 2020)..............................................................59

*Porras v. Bass*, 63 Or. App. 832 (1983) .............................................................31, 36

*Powell v. Goff*, 126 Or. App. 194 (1994)...........................................................34, 35, 36

*Puri v. Khalsa*, 788 Fed. Appx. 563 (9th Cir. 2019)...............................................42

*Riverside Homes, Inc. v. Murray*, 230 Or. App. 292 (2009) .....................................47

*R. J. Taggart, Inc. v. Douglas County*, 31 Or. App. 1137 (1977)...................................45, 48

*Robertson v. Jones*, 280 Or. 507 (1977) .............................................................47

*The Hoag Living Trust dated Feb. 4, 2013 v. Hoag*, 292 Or. App. 34 (2018) .................51, 52

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011)...........................................25

*T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) .............25

*Savary v. Towle*, Case No. 1:18–cv–01305–DAD–EPG (PC), 2020 WL
    1984173 (E.D. Cal. Apr. 27, 2020)............................................................26

*U.S. Fidelity & Guaranty Co. v. Ulbricht*, Case No. C20 0369JLR, 2022 WL
    110457 (W.D. Wash. Jan. 12, 2022) ........................................................26

*Wilcox v. Stiles*, 127 Or. App. 671 (1994) .............................................................48

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .................39, 40

Page 6 -   WISNOVSKY DEFENDANTS' MOTION
           FOR PARTIAL SUMMARY JUDGMENT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

**STATUTES**

Or. Rev. Stat. § 42.300 ........................................................................................... 44

Or. Rev. Stat. § 124.100 ..................................................................................... *passim*

Or. Rev. Stat. § 124.110 ..................................................................................... *passim*

Or. Rev. Stat. § 124.130 ........................................................................................... 44

Or. Rev. Stat. § 130.845 ........................................................................................... 56


**FEDERAL RULES**

Fed. R. Civ. P. 26 .................................................................................................... 39

Fed. R. Civ. P. 54 ........................................................................................... 8, 56, 57

Fed. R. Civ. P. 56 ............................................................................................... 8, 25

Fed. R. Evid. 702 .................................................................................................... 39

Fed. R. Evid. 703 .................................................................................................... 39

Fed. R. Evid. 705 .................................................................................................... 39


**TREATISES**

1 Corbin on Contracts 407 (1963) .......................................................................... 46

*Restatement (Second) of Contracts* (1981) ........................................................... 30

*Restatement (Third) of Restitution and Unjust Enrichment* (2010) ....................... 52

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

**MOTION**

Pursuant to Fed. R. Civ. P. 56, Mark Wisnovsky, Michael "Mike" Wisnovsky, and Valley View Winery, Inc. ("Valley View") (collectively, "Wisnovsky Defendants") hereby move for partial summary judgment granting the following relief:

1. Dismissal with prejudice of the first claim for relief ("Elder Abuse – ORS 124.100 and ORS 124.110") alleged by Michelle Sullivan as Special Administrator to the Estate of Ann Wisnovsky ("Sullivan");

2. Dismissal with prejudice of the second claim for relief ("Declaratory Relief – Invalidity of Leases Procured by Undue Influence") ("declaratory judgment") alleged by Joanne Couvrette, Trustee of the Ann M. Wisnovsky Trust ("Couvrette") and Wisnovsky Land, LLC ("Wisnovsky Land") (together, "Plaintiffs");

3. Judgment against Plaintiffs and in favor of the Wisnovsky Defendants on their eighth counterclaim ("Breach of Contract") ordering, enjoining, and requiring Plaintiffs and any successor Trustees to perform the inheritance contract and transfer ownership of Wisnovsky Land and its Valley View Property to Mark and Mike;

4. Dismissal with prejudice of the third claim for relief ("Unjust Enrichment") alleged by Plaintiffs;

5. An award of reasonable attorney fees to the Wisnovsky Defendants related to dismissal of Plaintiffs' declaratory judgment claim, in an amount to be determined pursuant to Fed. R. Civ. P. 54; and

6. An award of reasonable attorney fees to the Wisnovsky Defendants related to prevailing on their eighth counterclaim for breach of inheritance contract, in an amount to be determined pursuant to Fed. R. Civ. P. 54.

Page 8 -  WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Pursuant to LR 7-1(a), prior to filing this motion the Wisnovsky Defendants' counsel conferred via telephone with one of the attorneys representing Plaintiffs and Sullivan, and attempted in good faith to resolve their dispute as it pertains to this motion. The parties were unable to reach a resolution.

This motion is supported by the pleadings and record on file with the Court, the memorandum below, the *Declaration of Mark Wisnovsky (Jan. 31, 2025)* ("Wisnovsky Decl") with exhibits referenced therein; the *Declaration of Brooks M. Foster (Jan. 31, 2025)* with selected excerpts and Exhibits from the deposition of Joanne Couvrette ("Couvrette Dep."); and the *Declaration of Mike Wisnovsky (Jan. 31, 2025)* ("Mike Decl.").

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

This case is about enforcing the Wisnovsky Defendants' rights and holding Plaintiffs accountable for violating those rights. This motion for partial summary judgment is about applying the law to material facts about which there is no genuine dispute so as to dismiss three claims against the Wisnovsky Defendants, grant one of their counterclaims, and thereby resolving some of the most important issues at the heart of this dispute.

### II.    FACTS

**A.    The Wisnovsky Family and Valley View Winery**

Couvrette, Defendants Mark and Mike Wisnovsky, and Robert Wisnovsky are the adult children of Frank Wisnovsky ("Frank") and Ann Wisnovsky ("Ann"). Wisnovsky Decl. ¶ 2.

In 1971 Ann and Frank purchased agricultural land in Jackson County and founded the Valley View Winery. Wisnovsky Decl. ¶ 3. Ann and Frank developed the vineyard and winery together until Frank died in an accident in 1980. *Id.* After Frank's death, Ann continued operating the vineyard and winery business. *Id.*

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Couvrette moved away from Oregon in 1982 and has lived in Southern California ever since. Wisnovsky Decl. ¶ 4; Couvrette Dep. at 16:18–20, 23:9–12.

Mark and Mike have worked continuously full-time for Valley View since at least 1986 and 1991, respectively. Wisnovsky Decl. ¶ 5. In 1988, Ann registered Valley View Winery, Inc. ("Valley View") with the Oregon Secretary of State, thereby incorporating the vineyard and winery business. *Id.* Valley View has operated through that business entity ever since. *Id.*

In 1989 Ann promoted Mark to the position of President of Valley View, and in 1991 Ann made Mike the Vice President of Valley View. Wisnovsky Decl. ¶ 6. Ann served as Chairman of the Board, Treasurer, and Secretary until January 1, 2016. *Id.*

In 2006 Ann gave Mark and Mike about 46% of the stock of Valley View and retained the remainder, about 54%, for herself. Wisnovsky Decl. ¶ 9.

**B.     Ann's Trust**

On August 2, 2012, Ann created the *Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Trust" or "Trust Agreement"). Wisnovsky Decl. ¶ 8, Ex. 512. The Trust initially appointed Ann and Couvrette as co-trustees but required Couvrette to exercise her trustee powers "only in accordance with the written direction of [Ann]." Ex. 512 at 20. The Trust also initially provided for Couvrette and Robert to inherit minority interests in Valley View stock after Ann's death, and it provided for Mark, Mike, Couvrette, and Robert to each inherit 25% of the residue of the Trust. *Id.* at 5. Oregon attorney Patrick Huycke ("Huycke") drafted the Trust and represented and advised Ann regarding her estate planning from 1999 until May 22, 2019. Wisnovsky Decl. ¶ 8.

The Trust assets currently include:

(a)     100% of the membership interest in Wisnovsky Land, LLC, which owns the real property commonly known as 1000 and 1140 Upper Applegate Road, Jacksonville, Oregon, consisting of approximately 77 acres of land improved

Page 10 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

with winery and vineyard buildings, agricultural fields, and grape vines where Valley View operates its vineyard and winery (the "Valley View Property"), as described in Exhibit 1247 (warranty deed);

(b)    the right, as sole owner of Wisnovsky Land, to receive rent collected by Wisnovsky Land from Valley View pursuant to a *Winery Lease* and *Vineyard Lease* (the "Leases") as described in Exhibits 530 and 531 and later amendments;

(c)    a bank account at US Bank;

(d)    100% of the membership interest in Upper Applegate, LLC ("Upper Applegate"), which owns:

    (i)    the real property commonly known as 1352 Upper Applegate Road, Jacksonville, Oregon, which is a residence of about 2,800 square feet on approximately 2.3 acres ("Ann's home"), as described in Exhibit 1231; and

    (i)    the real property in Jackson County, Oregon known as parcels 38-2W-11BD-1600 and -1700 ("Griffin Creek Parcels"); and

(e)    household goods, books, apparel, tools, art objects, jewelry, personal effects, and other like contents of Ann's home, as stated in Ex. 1246.

Couvrette Dep. at 395:13–23; Wisnovsky Decl. ¶ 9, Exs. 1247, 530–31, 1231, 1246.

**C.    The Agreement to Make Payments**

Effective January 1, 2016, Ann gifted to Mark and Mike the rest of her stock in Valley View, making them each 50% owners of Valley View. Wisnovsky Decl. ¶ 10, Ex. 1221. As a condition of these gifts, Ann required Mark and Mike to enter into an *Agreement to Make Payments* that Huycke drafted. Wisnovsky Decl. ¶ 11, Ex. 528 at 1. The Agreement to Make Payments required Mark and Mike to make certain payments to the Trust if they sold Valley View stock or assets for more than $750,000 within five years of Ann's gifts of

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

stock. *Id.* This was a manifestation of Ann's desire for Mark and Mike to continue their lifelong commitment to Valley View, which was the company she founded with her deceased husband and her legacy.

**D.     The First Trust Amendment**

On March 14, 2016, Huycke helped Ann execute the *First Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("First Trust Amendment"). Wisnovsky Decl. ¶ 12, Ex. 529. It provided that upon Ann's death Couvrette, Robert, Mark, and Mike would each receive an equal 25% interest in Wisnovsky Land. *Id.*

**E.     The Winery Lease and Vineyard Lease**

Effective March 24, 2016, the Trust and Valley View entered into a *Winery Lease* and a *Vineyard Lease* whereby the landlord Trust leased the Valley View Property to Valley View. Wisnovsky Decl. ¶ 13, Exs. 530, 531.

Under the Winery Lease, Valley View agreed to pay the Trust a monthly base rent of $1,000 to lease the portion of the Valley View Property with the tasting room, winery buildings, warehouse, and parking lot. Wisnovsky Decl. ¶ 14, Ex. 530 at 1–2.

Under the Vineyard Lease, Valley View agreed to lease certain areas of land and to pay the Trust a monthly base rent of "$12.50 per acre of land that is being used for the production of agricultural crops." Wisnovsky Decl. ¶ 15, Ex. 531 at 1–2 (capitalization omitted).

Both Leases are triple-net leases that require Valley View to pay property taxes, insurance premiums, repairs, maintenance costs, and utility costs for the Valley View Property. Ex. 530 at 2–6; Ex. 531 at 2–6.

Both Leases contain rent escalation agreements and renewal options for "8 successive terms of 10 years, each" with the rent continuing to escalate as in the original term. Wisnovsky Decl. ¶ 17, Ex. 530 at 1–2; Ex. 531 at 1–2. Eighty years was far longer than Ann

**CHENOWETH LAW GROUP, PC**
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

could have expected Mark or Mike to live, showing she intended Valley View to outlast them.

The Leases contain attorney fee provisions drafted by Huycke. Wisnovsky Decl. ¶ 18, Ex. 530 at 12 § 17; Ex. 531 at 11 § 16.2.

**F.    Couvrette's Objections to the Leases**

On April 13, 2016, Mike emailed unsigned copies of the Leases to Couvrette, who then responded the same day as follows:

> "Here is my problem. This lease seems to make the land un-saleable. There is no clause that terminates the lease on the land upon sale. So that is a huge problem for me. The land value would be capped at a 10 cap rate. . . . because who would buy it subject to the lease?"

Couvrette Dep. 125:3–24, Ex. 543.

On August 30, 2016, Couvrette sent emails to Huycke, Mark, and Mike expressing her self-interest and disagreement with the Leases and Ann's estate planning decisions. Wisnovsky Decl. ¶ 19, Ex. 549. Couvrette principally complained about the "artificially low lease rate" she felt the Trust agreed to accept from Valley View under the Leases, which she thought was unfair to her interest as a Trust beneficiary. *Id.*

Couvrette and Ann were still co-trustees of the Trust that owned the Valley View Property at that time. Wisnovsky Decl. ¶ 20. There is no evidence Ann ever authorized Couvrette in writing (as required by the Trust) to take any action to address any of Couvrette's objections to the Leases. *Id.* Couvrette testified Ann was "competent to analyze" the Leases and "to state her general desires for how she wanted her estate to be dealt with." Couvrette Dep. at 144:10–19.

/ / /

/ / /

/ / /

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

**G.    The First Lease Addenda**

Effective November 2, 2016, Ann deeded the Valley View Property from the Trust to Wisnovsky Land.  Wisnovsky Decl. ¶ 21, Ex. 1245.[1]  Also effective on November 2, 2016, the Trust, Wisnovsky Land, and Valley View entered into the *Addendum to and Assignment by Landlord [–] Vineyard Lease* and the *Addendum to and Assignment by Landlord [–] Winery Lease* that assigned the Trust's interests in the Leases to Wisnovsky Land.  Wisnovsky Decl. ¶ 22, Exs. 1222, 1223.

**H.    The February 2017 Documents**

On January 11, 2017, Huycke sent Ann a letter regarding potential changes to her estate plan.  Wisnovsky Decl. ¶ 23, Ex. 1224.  That letter is referenced in a one-page agreement Ann signed on February 20, 2017, which Mark faxed to Huycke that day.  Wisnovsky Decl. ¶ 24, Ex. 1019.  The agreement contains four items, all related to Ann's estate plan or the Leases, including agreements regarding increased rent, amendment of the Agreement to Make Payments, and an agreement that "At the time of her death, Wisnovsky Lands LLC will be distributed equally to Mark and Michael."  *Id.*

On February 22, 2017, Huycke wrote a letter to Ann, Mark, and Mike, informing them that Ann had asked him to prepare documents to "amend the Vineyard Lease" and "make arrangements for [Couvrette] and Robert to be paid $200,000 pursuant to a promissory note upon Ann's death," which would be given to them "in lieu of them receiving any interest in Wisnovsky Land upon Ann's death."  Wisnovsky Decl. ¶ 25, Ex. 1021.  "For this purpose," Huycke wrote, "I prepared a redemption agreement and an amendment to Ann's trust."  *Id.*  The letter stated Huycke was "transmitting copies of the documents [he] prepared" and would "meet with Ann tomorrow."  *Id.*

On February 23, 2017, Huycke met with Ann and then with Ann, Mark, and Mike at Huycke's office, where Mark, Mike, and Ann signed the *First Amendment to and*

---

[1] The warranty deed attached as Exhibit 1245 was later corrected and re-recorded on January 20, 2017.  Wisnovsky Decl. ¶ 21, Ex. 1247.

Page 14 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

*Restatement of Agreement to Make Payments* ("Amended Agreement to Make Payments") and *Second Addendum to Vineyard Lease* ("Second Vineyard Addendum") and Ann signed the *Redemption Agreement* and *Second Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Second Trust Amendment"). Wisnovsky Decl. ¶ 26, Exs. 552–54, 1019, 1225 (collectively, the "February 2017 documents"). Before those documents were signed, Huycke emailed them to the Wisnovsky Defendants so they knew their contents. Wisnovsky Decl. ¶ 26, Ex. 1021 (email listing attachments).

**I.      The Amended Agreement to Make Payments**

The Amended Agreement to Make Payments is a contract between the Trust and the Wisnovsky Defendants that extends the duration of the prior Agreement to Make Payments from five years to ten and is enforceable by Couvrette and Robert as express third-party beneficiaries. Wisnovsky Decl. ¶ 27, Ex. 553.

The Amended Agreement to Make Payments recites that Ann previously gifted the Trust's shares of Valley View to Mark and Mike. Wisnovsky Decl. ¶ 28, Ex. 553 at 1 (Recital B). It then states:

> "Ann M. Wisnovsky has determined to *amend the Wisnovsky Trust* and Valley View and Wisnovsky Land, LLC, which is controlled by Ann M. Wisnovsky, have agreed to *amend a Vineyard Lease* that exists between them. <u>Ann M. Wisnovsky's agreement to make such changes is conditioned upon the execution of this Agreement</u>."

*Id.* (Recital C) (emphases added).

**J.      The Second Vineyard Addendum**

Wisnovsky Land and Valley View entered into the Second Vineyard Addendum effective February 23, 2017. Wisnovsky Decl. ¶ 31, Ex. 554. Ann signed the Second Vineyard Addendum as Trustee on behalf of the Trust, which owned Wisnovsky Land. *Id.* at 3. Mark and Mike signed for Valley View. *Id.*

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

The Second Vineyard Addendum increased the rent paid by Valley View for ongoing cultivation of agricultural crops to $200 per acre and authorized use of additional areas of the property for hemp production at a rate of $83.33 per acre per month (about $1,000 per year) plus the lesser of an additional $1,000 per acre per year or 5% of the gross sale proceeds from the sale of hemp. *Id.* And it authorized Valley View to sub-lease part of the property to an entity wholly owned by Mark and Mike. *Id.* at 2. These lease amendments substantially increased the rental income Wisnovsky Land stood to receive under the Vineyard Lease. Wisnovsky Decl. ¶ 32.

In reliance on the Second Vineyard Addendum, Mark and Mike formed Third Generation Farms, LLC ("Third Generation Farms") and began cultivating hemp on the Valley View Property in 2017. Wisnovsky Decl. ¶ 33.

**K.    The Redemption Agreement**

The Redemption Agreement is a contract between the Trust and Wisnovsky Land that Ann signed on behalf of both parties. Wisnovsky Decl. ¶ 34, Ex. 1225 at 3. It refers to the Trust as the "Member" and Wisnovsky Land as the "Company." *Id.*

The Redemption Agreement states that when Ann dies, Wisnovsky Land will purchase from the Trust one-half of the Trust's ownership interest in Wisnovsky Land. Wisnovsky Decl. ¶ 35, Ex. 1225. The specified purchase price will be from $200,000 to $280,000 and will depend on the number of legal parcels owned by Wisnovsky Land when Ann dies. *Id.* The purchase price will be paid by Wisnovsky Land executing and delivering a promissory note payable to the Trust, which will be secured by a trust deed on the Valley View Property. *Id.*

The Redemption Agreement and Second Trust Amendment, discussed below, expressed Ann's intent for Couvrette and Robert to inherit from the Trust the payments to be made by Wisnovsky Land pursuant to the note and trust deed attached to the Redemption

Page 16 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Agreement, as opposed to having them inherit the membership interests in Wisnovsky Land they would have received under Ann's First Trust Amendment.  Wisnovsky Decl. ¶ 36.

**L.      The Second Trust Amendment**

As stated in the Amended Agreement to Make Payments, entering into that agreement was an express "condition" of Ann's "agreement" to amend her Trust via the Second Trust Amendment.

The Second Trust Amendment created a new Section 3.3B of Ann's Trust that directed the Trustee to "consummate the transaction described in the Redemption Agreement," thereby creating a "binding commitment for the redemption of one-half of the trust's membership interest in Wisnovsky Land."  *Id.* ¶ 37, Ex. 552 at 1.

The Second Trust Amendment provided that "The trust's remaining membership interest in Wisnovsky Land shall be divided" and "distributed" 50% to Mark and 50% to Mike. Ex. 552 at 1.  It provided that Couvrette and Robert would each receive an "undivided one-half interest" in the promissory note and trust deed required by the Redemption Agreement, under which Wisnovsky Land would owe $200,000, $240,000, or $280,000, "depending on the number of legal parcels in the real property owned by Wisnovsky Land on the date of closing of the redemption."  *Id.*

The Second Trust Amendment manifested Ann's intent and agreement for Mark and Mike to inherit full ownership of Wisnovsky Land and its Valley View Property.  Whereas Couvrette and Robert each previously stood to receive 25% of Wisnovsky Land, they would instead receive cash compensation of between $200,000 and $280,000.  *Id.* at 1–2.

**M.      The Wisnovsky Defendants' Reliance**

As described above, the Amended Agreement to Make Payments recites that Ann's "agreement to make such changes," i.e., "to amend the Wisnovsky Trust" and "Vineyard Lease," was "conditioned upon the execution of this [Amended Agreement to Make Payments]."   Mark and Mike relied on this Recital and the terms of the Second Trust

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Amendment when they, Valley View, and Ann entered into the Amended Agreement to Make Payments. Wisnovsky Decl. ¶ 40.

The Wisnovsky Defendants also relied on the February 2017 documents and the Leases when they set up hemp production at the Valley View Property later in 2017. Wisnovsky Decl. ¶ 42, Ex. 1227. Ann knew about that and expressed her approval to Mark on several occasions. *Id.* Valley View paid additional rent to Wisnovsky Land under the Second Vineyard Addendum as a result of the hemp cultivation by Third Generation Farms. *Id.*

In April 2017, Ann signed two other documents upon which the Wisnovsky Defendants relied. Wisnovsky Decl. ¶ 43. The first documented Ann's consent for the Wisnovsky Defendants to pay Ann's personal expenses in lieu of Valley View's monthly lease payments under the Winery Lease, Vineyard Lease, or any hemp field sublease. *Id.*, Ex. 1024. The second was an *Agreement for Changes to Buildings* that consented to improvements to buildings at the Valley View Property. Wisnovsky Decl. ¶ 43, Ex. 1226. The Wisnovsky Defendants relied on these "2017 consent documents" by continuing to perform the Leases and pay Ann's personal expenses as rent and by improving the barn and warehouse for hemp production. Wisnovsky Decl. ¶ 43.

**N.    The Third Trust Amendment**

On July 28, 2017, Ann signed the *Third Amendment to Inter Vivos Revocable Trust [– ] The Ann M. Wisnovsky Trust* ("Third Trust Amendment"), which states it superseded the First and Second Trust Amendments, rendering them null. Wisnovsky Decl. ¶ 44, Ex. 556. The Third Trust Amendment removed Couvrette from her position as co-trustee, leaving Ann as sole Trustee of her Trust. *Id.*

The Third Trust Amendment included the same text of section 3.3B that was introduced in the Second Trust Amendment, which provided for Mark and Mike to receive full ownership of Wisnovsky Land upon Ann's death and for Couvrette and Robert to receive

Page 18 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

a promissory note and trust deed for up to $280,000. Ex. 556. Ann executed the Third Trust Amendment without informing Mark and Mike about it, and they did not learn of it until November 2020. Wisnovsky Decl. ¶ 45.

**O.      Couvrette's Takeover of the Trust**

In 2018 Ann's mental capacity began to decline. Wisnovsky Decl. ¶ 46. She began to lose her short-term memory and had difficulty remembering the details of her estate plan. *Id.* By May 2019, Ann no longer understood her estate plan. Couvrette Dep. at 185:3–6.

Between February and May 31, 2019, Couvrette arranged for Ann to visit her in San Diego, California. Wisnovsky Decl. ¶ 47. On May 22, 2019, while Ann was visiting Couvrette in San Diego, Ann signed a letter to Huycke terminating his representation. *Id.*, Ex. 1228.

On May 31, 2019, the day Ann flew back to her home in Oregon, Couvrette caused Ann to sign the *Fourth Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Fourth Trust Amendment"). Wisnovsky Decl. ¶ 48, Ex. 560; Couvrette Dep. at 195:14–18, 197:7–198:2.

Interrogatory responses from Couvrette certify that "Ann Wisnovsky *dictated* the terms to be included in the Fourth Amendment to the Trust to [Couvrette], who typed and prepared the document at Ann's direction on or around May 30, 2019." Wisnovsky Decl. ¶ 49, Ex. 1248 at 15 (italics added). Couvrette later contradicted that by testifying Ann "requested that [Couvrette] take [Ann's] wishes and turn them into a document so that they could be part of her estate plan." Couvrette Dep. at 202:9–13.

The Fourth Trust Amendment purported to nullify the First, Second, and Third Trust Amendments, restore Couvrette as co-trustee, and provide for all Trust assets (other than personal property) to be distributed entirely to Couvrette and Robert, without any distribution to Mark or Mike. Wisnovsky Decl. ¶ 50, Ex. 560. Couvrette kept secret and did not disclose the Fourth Trust Amendment to Mark and Mike until November 2020. Wisnovsky Decl. ¶

Page 19 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

50.  Mark and Mike dispute the validity and effectiveness of the Fourth Trust Amendment. *Id.*; ECF 114 at 8–12, 23, 31, 34 (counterclaims).

**P.    The Fifth Trust Amendment**

On June 8, 2019, less than two weeks after Ann signed the Fourth Trust Amendment, she signed the *Fifth Amendment to the Ann M. Wisnovsky Trust* ("Fifth Trust Amendment"), drafted by Oregon attorney Gary Turner.  Wisnovsky Decl. ¶ 53, Ex. 564.  The Fifth Trust Amendment purported to limit Ann's freedom by prohibiting her from binding the Trust without Couvrette's signature as co-trustee.  *Id*.  Couvrette kept secret and did not disclose the Fifth Trust Amendment to Mark and Mike until November of 2020.  Wisnovsky Decl. ¶ 53.  Mark and Mike dispute the validity and enforceability of the Fifth Trust Amendment. *Id.*; ECF 114 at 8–12, 23, 31, 34.

**Q.    Ann's Confusion**

On June 18, 2019, Mark visited Ann at Ann's home.  Wisnovsky Decl. ¶ 51.  During the visit, Ann asked Mark to call Huycke.  *Id.*  Ann told Mark that Couvrette had taken her to meet with a new attorney.  *Id.*  Ann did not know the name of her new attorney and could not recall any details of the meeting with that attorney.  *Id.*

On June 20, 2019, Mark received two voicemails from Ann. Wisnovsky Decl. ¶ 52, Ex. 1155.  In the first voicemail, Ann stated she was "not going to any attorney that [Couvrette] called."  Ex. 1155.  Ann said, "Please come back . . . I am going to tell her to cancel everything. . . .  I did not call for anything to happen."  *Id.*  Later that day, Mark received the second voicemail from Ann, in which she stated, "I have a call to [Couvrette] telling her to stop.  I am not changing anything . . . .  I don't know what I am going to do in the future but I don't want to change anything." *Id.*

**R.    Couvrette's Revocation of the Redemption Agreement**

On July 2, 2019, Ann and Couvrette signed a *Revocation and Termination of Redemption Agreement* prepared by Turner that purported to revoke the Redemption

**CHENOWETH LAW GROUP, PC**
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Agreement.  Wisnovsky Decl. ¶ 54, Ex. 577.  Couvrette kept this a secret from Mark and Mike, who did not learn about it until November 2020.  Wisnovsky Decl. ¶ 54.

**S.      Couvrette's Sequestration of Ann in California**

On July 4, 2019, Couvrette flew Ann from her home of nearly fifty years in Oregon to San Diego, California and took away Ann's cellular phone so Mark and Mike could not call her.  Wisnovsky Decl. ¶ 55.  The only way Ann could communicate with Mark and Mike when Couvrette was not present was through Couvrette's Alexa unit or a housekeeper's cellular phone, and when Ann did she repeatedly expressed her desire to return home to Oregon.  *Id*.

**T.      The Sixth Trust Amendment**

On November 13, 2019, Couvrette and Ann, while in San Diego, signed the *Sixth Amendment to the Ann M. Wisnovsky Trust* ("Sixth Trust Amendment"), prepared by Turner, that purported to prohibit Ann from amending or revoking any aspect of her Trust without Couvrette's acceptance and signature.  Wisnovsky Decl. ¶ 56, Ex. 622.  This effectively completed Couvrette's takeover of Ann's estate plan.  *Id.*  Couvrette kept this a secret from Mark and Mike, who did not learn about it until November 2020.  Wisnovsky Decl. ¶ 56.

**U.      Ann's Diagnoses of Dementia**

On July 8, 2020, Couvrette obtained a medical diagnosis that Ann suffered from dementia, but shortly thereafter that diagnosis was revised to be "mild cognitive impairment" such that Ann "could go into assisted living" without requiring "memory care."  Couvrette Dep. at 372:11–373:24, Ex. 650.

On August 21, 2020, Couvrette obtained a medical diagnosis that Ann had dementia and "no longer [had] the capacity to make independent legal, medical, and financial decisions."  Couvrette Dep. at 375:7–20, Ex. 655.

Couvrette testified that, prior to Ann's August 2020 dementia diagnosis, Ann's "short-term memory was fairly consistent" and she was "in fine mental health, [and] her

Page 21 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

memory was fine." Couvrette Dep. at 263:4–14, 374:9–14. Couvrette said she was aware of only a few episodes between 2019 and 2020 in which Ann exhibited signs of mental decline, such as by yelling at people and not being "herself." Couvrette Dep. at 373:25–375:4. Couvrette asserted those episodes were the result of bladder infections. *Id.* at 374:19–375:4.

**V.     The Claims Against the Wisnovsky Defendants**

On January 29, 2021, Couvrette filed her complaint in this lawsuit. She pleaded a claim for elder abuse against Mark and Mike that alleging over $12,000,000 in damages plus attorney fees. She pleaded additional claims for "unconscionable contract" and unjust enrichment against the Wisnovsky Defendants seeking to rescind the Leases and recover $4.2 million in damages. And she alleged claims for breach of fiduciary duty and professional negligence against Huycke and Huycke's law firm seeking $4.2 million in damages. ECF 1 ¶¶ 46–67.

On March 16, 2022, Couvrette amended her complaint by adding Wisnovsky Land as a plaintiff. ECF 45. She re-alleged her claims for elder abuse against Mark and Mike and unjust enrichment against the Wisnovsky Defendants. ECF 45 at 8–10. She replaced her claim for "unconscionable contract" with a claim for declaratory judgment against the Wisnovsky Defendants to invalidate and avoid the Leases because they allegedly "were the result of undue influence and procured in violation [of] ORS 124.005 *et. Seq.* [*sic*]." ECF 45 ¶¶ 49–60.

Ann died on March 16, 2023. ECF 137 at 2. On December 16, 2024, the Court issued an *Opinion and Order* substituting Michelle Sullivan into this case as a plaintiff in her capacity as special administrator of the estate of Ann Wisnovsky for the limited purpose of litigating the estate's elder abuse claim against the Wisnovsky Defendants. *Id.* at 11.

The elder abuse claim alleges Ann was at all material times a vulnerable person and that the Wisnovsky Defendants

> "had greater power over Ann and knew with Ann's age and
> Ann's greater reliance on others that there was a substantial

Page 22 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

disparity in bargaining power, so much so that they denied Ann a meaningful choice when they entered into the one-sided Leases. Mark, Michael, and Valley View entered into those Leases with Ann and the Trust, the terms of which bore no reasonable relationship to the business risk involved, were so one sided as to be oppressive, were unreasonably favorable to Mark, Michael and Valley View, had no commercial need, placed restrictions making it difficult for Ann and the Trust to sell property, gave Mark, Michael and Valley View a windfall, and/or were substantively unfair to Ann and the Trust. The Leases were and are unconscionable. Defendants Mark and Michael Wisnovsky knowingly acted under circumstances in which a person should have known of their financial abuse, and wrongfully took or appropriated money, stock and/or property from Ann."

ECF 45 ¶ 51.

The elder abuse claim also incorporates a number of allegations about the conduct of Huycke, Mark, and Mike related to the drafting and execution of the Leases, as well as the following allegation of harm:

"40. Ann went from owning a property appraised at $4.2 million that could have been her nest egg and helped provide her with funds for her care during her elderly years, to owning a property encumbered by a lease that made Ann's property worth nothing."

*Id.* ¶¶ 32–40.

Sullivan alleges Ann suffered $4.2 million in damages and seeks to treble those damages pursuant to ORS 124.100(2)(a) and (b). *Id.* ¶ 53. Sullivan also "seeks a declaration that the Leases and agreements that adversely harmed Ann's property are invalid and void and seeks the return of the controlling share of Valley View stock" pursuant to ORS 124.135. *Id.* ¶ 54.

The claim for declaratory judgment by Couvrette and Wisnovsky Land alleges "the Leases are invalid and unenforceable as they were the result of undue influence and procured

Page 23 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

in violation of ORS 124.500 *et. Seq* [*sic*]." *Id.* ¶¶ 56–58. The claim seeks "a judgment declaring that the Leases are invalid and void." *Id.*

The claim for unjust enrichment by Couvrette and Wisnovsky Land alleges the Wisnovsky Defendants "knowingly received benefits, including sublease payments for leased lands; and under the circumstances as described above, it would be unjust to allow retention of the benefits by defendants." *Id.* ¶ 59. The claim seeks a money award of "not less than $4.2 million." *Id.* ¶ 60.

**W.    The Counterclaim for Breach of Inheritance Contract**

The Wisnovsky Defendants filed an answer and affirmative defenses denying the claims against them, which is currently on its fourth amendment. ECF 114. They also allege counterclaims germane to this motion, which are a counterclaim for the Trust to specifically perform the inheritance contract they entered into with Ann and counterclaims for attorney fees pursuant to the Redemption Agreement and Leases. ECF 114 ¶¶ 92–97; *id.* at 31–36.

The counterclaim for specific performance of the inheritance contract alleges the Wisnovsky Defendants

> "entered into an inheritance contract with Ann Wisnovsky, as Trustee of the Trust, in February 2017, whereby they assumed certain contractual obligations in exchange for Ann Wisnovsky's promise that MARK and MICHAEL will inherit ownership of WISNOVSKY LAND and its Valley View Property upon Ann Wisnovsky's death."

*Id.* ¶ 93. The Wisnovsky Defendants allege later actions by Ann and Couvrette purported to deprive Mark and Mike of the inheritance they contracted to receive. *Id.* ¶ 94. They seek an order of specific performance "ordering, enjoining, and requiring PLAINTIFFS and any successor Trustees to transfer ownership of WISNOVSKY LAND and its Valley View Property to MARK and MICHAEL." *Id.* ¶ 95.

/ / /

/ / /

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

**X.    The Trust's Withholding of Wisnovsky Land, LLC**

Ann died on March 16, 2023.  Wisnovsky Decl. ¶ 57; ECF 137 at 2.  The Trust has not transferred ownership of Wisnovsky Land to Mark and Mike Wisnovsky.  Wisnovsky Decl. ¶ 57.  The registered manager of Wisnovsky Land is "Joanne Couvrette, as Trustee of the Ann M Wisnovsky Trust u/t/a/d August 2, 2012 as amended."  *Id.*, Ex. 1253.

**Y.    Plaintiffs' Dismissal of Huycke and Jarvis**

On October 11, the Court granted a stipulated motion filed by Defendants Huycke and Jarvis, Dreyer, Glatte & Larsen, LLP ("Huycke Defendants") to dismiss them from the case on the grounds that they had reached a settlement with Couvrette.  ECF 131–32.

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to "move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

"A material fact is one that may affect the outcome of the case under the applicable law."  *Cunningham v. State Farm Fire & Cas. Co.*, 647 F. Supp. 3d 985, 989 (D. Or. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment.").  "Substantive law on an issue determines the materiality of a fact."  *Id.* at 988.

The movant has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  If the movant carries its burden, the burden shifts to the non-movant who "must

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

designate specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) (internal quotations omitted).

The movant may "show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense." *U.S. Fidelity & Guaranty Co. v. Ulbricht*, Case No. C20 0369JLR, 2022 WL 110457, at *6 (W.D. Wash. Jan. 12, 2022) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).

"If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party." *Savary v. Towle*, Case No. 1:18–cv–01305–DAD–EPG (PC), 2020 WL 1984173, at *1 (E.D. Cal. Apr. 27, 2020) (citing *Anderson*, 477 U.S. at 252).

## IV.    LEGAL ARGUMENT

**A.    The Claim That the Leases Constitute Elder Abuse Must Be Dismissed on Any of Several Grounds.**

Sullivan's claim that the Leases constitute elder financial abuse under ORS 124.110(1)(a) must be dismissed for the following reasons, any of which standing alone is sufficient to require dismissal: (1) the Leases do not constitute a "taking or appropriation" of Ann's money or property by Mark or Mike; (2) Ann ratified and affirmed the Leases; (3) Ann waived the claim; (4) Sullivan is estopped from asserting the claim; or (5) there is no admissible evidence that Ann suffered diminished property value as a result of the Leases.

*1.    The Leases Do Not Constitute a Taking or Appropriation of Money or Property.*

In the first claim for relief, Sullivan alleges Mark and Mike (but not Valley View) are liable for elder financial abuse pursuant to ORS 124.110 and 124.100 because they "knowingly acted under circumstances in which a person should have known of their financial abuse, and wrongfully took or appropriated money, stock and/or property from

Page 26 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Ann." ECF 45 ¶ 51. Because the Leases do not constitute a taking of money or property, the claim must be dismissed.

There are no allegations of elder abuse under ORS 124.110(1)(b) or (1)(c). ORS 124.110(1)(b) applies where a defendant holds money or property of an elderly person in trust and then withholds it and refuses to return it when the elder person asks for it back. ORS 124.110(1)(c) applies where a defendant violates a restraining order. The complaint does not allege facts within ORS 124.110(1)(b) or (1)(c).

ORS 124.110(1)(a) is the "wrongful taking" prong of ORS 124.110(1). This subsection provides that a claim for elder financial abuse may arise:

> "(a) When a person *wrongfully takes or appropriates money or property of a vulnerable person*, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person."

ORS 124.110(1)(a) (italics added).

ORS 124.100(3)(d) allows "[a] personal representative for the estate of a decedent who was a vulnerable person at the time the cause of action arose" to bring an elder financial abuse claim. A vulnerable person is defined to include any person over 65 years old. ORS 124.100(1)(a), (e). Ann turned 65 in 1998 and died in March 2023, and Sullivan is a special administrator alleging elder abuse on behalf of Ann's estate. ECF 137 at 2–3, 5; ECF 45 ¶ 1.

ORS 124.100(5) allows an elder financial abuse claim to be brought "against a person for permitting another person to engage in physical or financial abuse if the person knowingly acts or fails to act under the circumstances in which a reasonable person should have known of the physical or financial abuse." ORS 124.100(5). The complaint cites ORS 124.100 and appears to allude to section 124.100(5), but alleges Mark and Mike "knowingly acted under circumstances in which a person should have known of their financial abuse." ECF 45 ¶ 51 (underline added). Thus, the complaint alleges elder financial abuse only by Mark and Mike.

Page 27 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

The allegation that Mark and Mike committed elder abuse under ORS 124.100(5) in addition to ORS 124.110(1)(a) is therefore of little consequence. Under either provision, Sullivan alleges and must prove that Mark and Mike committed elder abuse by wrongfully taking or appropriating their mother's money or property after she turned 65. Sullivan alleges Mark and Mike did this when they "entered into the one-sided Leases." ECF 45 ¶ 51. It is therefore Sullivan's burden to prove the Leases constitute wrongful takings or appropriations by Mark and Mike of Ann's money or property.

In *Church v. Woods*, the Oregon Court of Appeals defined "takes" for purposes of ORS 124.110(1)(a) to mean "to transfer into one's own keeping or to enter into or arrange for possession, ownership, or use of." 190 Or. App. 112, 117 (2003) (citing *Webster's Third New Int'l Dictionary* 2330 (unabridged ed. 1993)) (internal brackets omitted). There, the grand-niece of an elder diagnosed with Alzheimer's disease and "moderate to severe mental impairment" caused him to make her the co-owner of his real property, vehicles, and checking account, in which she had no prior interest. *Id.* at 114–15. The defendant conceded she had taken the elder's property within the meaning of ORS 124.110(1)(a), and the court of appeals agreed. *Id.* at 116–18. Because there was a taking, the court did not consider whether there was an "appropriation" of property. *Id.* at 118 n. 8.

In *Schmidt v. Noonkester*, the plaintiffs sued an elder defendant for breach of contract, declaratory relief, and fraud when the elder refused to perform an alleged settlement agreement requiring her to release an easement over the plaintiffs' property. 287 Or. App. 48, 50–51 (2017). The defendant alleged a counterclaim for elder financial abuse based on allegations that the plaintiffs' lawsuit was unfounded. *Id.* The jury agreed, but the Court of Appeals reversed because the alleged "time, effort, stress, and expense incurred in defending against plaintiffs' fraud claim—do not involve a transfer of defendant's money or property into plaintiffs' 'own keeping.'" *Id.* Unless an elder transfers property into the defendant's keeping, there is no taking or appropriation of property and no elder financial abuse claim.

Page 28 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR 97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

*Goldingay v. Progressive Casualty Insurance Company*, 306 F. Supp. 3d 1259, 1269 (D. Or. 2018), expresses the District of Oregon's understanding of *Church* and *Schmidt*. In *Goldingay*, the elder plaintiffs alleged elder financial abuse based on allegations that the defendants had caused or allowed a plume of groundwater contamination to migrate onto the plaintiffs' commercial property, constituting a trespass and nuisance. *Id.* at 1264–66. The plaintiffs argued this constituted a taking or appropriation because it substantially interfered with the use and enjoyment of their property. *Id.* at 1264, 1269. Judge Simon disagreed and held, for purposes of ORS 124.110(1)(a), that a "taking" or "appropriation" "involves the complete acquisition of, and not mere interference with or improper use of, a vulnerable person's money or property." *Id.* at 1269. Because the defendants had not completely acquired the plaintiffs' property, the court dismissed the elder financial abuse claim. *Id.* at 1270.

Valley View—not Mark or Mike—entered into the Leases with Ann in March 2016. Exs. 530 at 1, 14; Ex. 531 at 1, 13. Valley View already possessed the leased property, where it had been operating since its incorporation in 1988. *Id.*; Wisnovsky Decl. ¶¶ 3, 5, 6, 8, 9. The Leases did not transfer any of Ann's property into the keeping of Mark, Mike, or Valley View. They simply authorized Valley View to continue occupying the property it had always occupied. This falls far short of the "complete acquisition" required by *Goldingay*, and it is unlike the transfers of property ownership in *Church* to a person who had no prior interest in that property.

The allegation that the Leases harmed Ann financially by reducing her property's value is like the claim in *Schmidt* for the financial harm of defending an unfounded lawsuit, which did not constitute a taking or appropriation of money or property. Under Sullivan's theory, any lease with an elder would constitute financial abuse because every lease encumbers a property and lease terms could always be better. The Leases do not constitute a

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

taking or appropriation within the meaning of ORS 124.110(1)(a), so the elder abuse claim must be dismissed.

### 2. *Ann Ratified and Affirmed the Leases.*

After Ann signed the Leases, she signed and induced Valley View to sign and rely on legally binding lease addenda that ratified and affirmed the Leases in November 2016 and February 2017. Exs. 554, 1222, 1223. Ann also signed the consent documents in March 2017, further confirming her ratification and affirmance of the Leases. Exs. 1024, 1226. Because Ann ratified and affirmed the Leases, the claim that the Leases constitute elder abuse must be dismissed.

Ratification of an otherwise voidable contract prevents the ratifying party from attempting to argue later that the contract is unenforceable. *Bernard v. S.B., Inc.*, 270 Or. App. 710, 719 (2015). In *Bernard*, the plaintiff signed a non-competition agreement with the defendant, worked for the defendant for three years, then went to another company, all without taking any action to void the agreement. *Id.* at 712–13. The defendant informed the new company of the agreement. *Id.* at 713. The plaintiff sued for intentional interference with economic relations. *Id.* The trial court dismissed the claim at summary judgment. *Id.* The court of appeals affirmed because the plaintiff had taken no steps to void the agreement. *Id.* at 719–20.

*Bernard* quoted and relied on the *Restatement (Second) of Contracts* for the rule that "[a] voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, <u>or by ratification of the contract to extinguish the power of avoidance</u>." *Id.* at 718 (quoting *Restatement (Second) of Contracts* § 7 (1981) ("Restatement of Contracts") (underline added)).

The Restatement of Contracts provides for a power of avoidance to be extinguished by ratification or affirmance of the contract in a variety of ways, explaining:

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

(1) "[A] promise to perform all or part of an antecedent contract of the promisor, previously voidable by him, but not avoided prior to the making of the promise, is binding[;]"

(2) "A power of avoidance may also be lost . . . by delay in giving notice, by failure to restore performance received, by exercise of dominion over things received, or by change of circumstances[;]"

(3) "A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract.  Such action is known as 'affirmance' and has the effect of ratifying the contract[;]" and

(4) "A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract."

Restatement of Contracts § 85 cmt. b, § 380 cmts. a, b.

Consistent with the Restatement of Contracts and *Bernard*, *Porras v. Bass* held that a contracting party ratifies an otherwise voidable contract when they fail to "*promptly disaffirm* the transaction upon discovery of the facts giving right to cancel."  63 Or. App. 832, 836 (1983) (italics in original).  In *Porras*, the defendant entered into a contract to purchase the plaintiff's property, moved in, but failed to make a payment.  *Id.* at 834.  About four months later the defendant was trying to sell the property when he learned it received water from a river, not a well.  *Id.*  About two months later, the defendant was still occupying and trying to sell the property when the plaintiff filed suit to foreclose.  *Id.*  The defendant eventually counterclaimed for rescission on the grounds that the plaintiff had misrepresented the water source.  *Id.* at 834–35.  The trial court granted rescission.  *Id.* at 835.  The court of appeals reversed.  *Id.* at 836.

The defendant in *Porras* "played too much of a waiting game."  *Id.* at 835.  The "vital inquiry" was "whether, once he became aware of the facts, defendant, by his words or

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

conduct, disaffirmed the contract in such a manner as to justify a decree of rescission." *Id.* at 835–36. His "continuing possession and efforts to sell the property after he discovered that there was no well and before attempting to rescind constitute conduct inconsistent with an intent to disaffirm the contract." *Id.* at 836. "A party cannot retain the fruits of the contract while awaiting future developments to determine whether it will be more profitable to affirm or disaffirm." *Id.*

Ann and Valley View signed the Leases in March 2016. Ex. 530, 531. Over seven months later, on November 2, 2016, Ann and Valley View entered into the first addenda to the Leases. Exs. 1222, 1223. These first addenda recited that Ann's Trust ("Landlord") and Valley View ("Tenant") were "parties to a lease dated March 24, 2016," that Ann's Trust had conveyed the leased property to Wisnovsky Land ("Assignee"), and that the Trust and Valley View "desire[d] to modify the real property description set forth in" the Leases. Ex. 1222 at 1; Ex. 1223 at 1. The addenda then expressed the parties' agreement that the Trust was assigning all of its interest in the Lease to Wisnovsky Land, that Wisnovsky Land would "pay and perform all of the Landlord's obligations under the Lease," and that the Trust would be "released and discharged from all liabilities and obligations under the Lease." *Id.* Ann signed the addenda on behalf of the Trust and Wisnovsky Land. Ex. 1222 at 2; Ex. 1223 at 2.

About three months later, or eleven months after the Trust entered into the Leases, Ann and Valley View signed the Second Vineyard Addendum. Ex. 554. This addendum recited that Ann's Trust and Valley View were parties to the Vineyard Lease, that Ann's Trust had assigned her interest to Wisnovsky Land, and that "Landlord and Tenant desire to modify some of the terms and conditions of the Lease." *Id.* at 1. The addendum then documented the parties' agreements, including for Valley View to pay more rent to Wisnovsky Land. *Id.* at 1–2. Ann signed the addendum on behalf of the Trust. *Id.* at 2.

Page 32 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

In April 2017, Ann signed the 2017 consent documents that consented to Wisnovsky Defendants paying the rent by paying her personal expenses and consented to them making improvements to the barn, winery building, or warehouse.  Exs. 1024, 1226.

Sullivan's elder abuse claim now "seeks a declaration that the Leases and agreements that adversely harmed Ann's property are invalid and void" because "of what amounts to a 90-year lease far below fair market rent."   ECF 45 ¶ 54.   But Ann signed the Leases, addenda, and 2017 consent documents herself when she was indisputably competent to understand them.

Between April 1, 2016, and February 23, 2017, Valley View paid rent due under the Leases by paying $20,745.10 of Ann's personal expenses.  Wisnovsky Decl. ¶ 58.  This was about $5,000 more than the amount due under the Leases during that time period.  *Id.*  Ann retained all of those lease benefits, bargained for more, and assigned the Leases to her Trust's LLC.  Exs. 1222, 1223.  Ann was "competent to analyze" the Leases and "to state her general desires for how she wanted her estate to be dealt with."  Couvrette Dep. at 144:10–19.  Ann was not diagnosed with mental impairment until July 2020.  Couvrette Dep. at 372:11–373:24, Ex. 650.

The lease addenda expressed Ann's promise and intent to perform the Leases while she was retaining the Lease benefits.  She never offered to return any of the money Valley View had paid for her personal expenses as rent.  Wisnovsky Decl. ¶ 59.  Her sons, Mark and Mike, worked at the property she called home, which she had lovingly developed with her late husband as the Valley View Winery.  *Id.* ¶¶ 3, 5, 6, 8, 9.  Ann was competent, knew what was happening, and manifested a willingness to go on with the Leases.  She manifested her intentions by words and conduct, including by exercising dominion over what she had received in a manner inconsistent with avoidance of the Leases.

Ann repeatedly ratified and affirmed the Leases and expressed no intent to disaffirm them.  No action was taken to disaffirm the Leases until after Ann was deemed incompetent

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

in August 2020 and Couvrette had full control over Ann's Trust and Wisnovsky Land. A party like Ann's Trust or Wisnovsky Land cannot retain the fruits of a contract while awaiting future developments to determine whether it will be more profitable to affirm or disaffirm. They played too much of a waiting game. The elder abuse claim must be dismissed.

### 3. The Elder Abuse Claim Was Waived.

The claim that the Leases constituted elder abuse must also be dismissed on the grounds that Ann waived the claim. Sullivan's elder financial abuse claim seeks a principal award of $4.2 million in damages, which is allegedly the diminished value of the Property caused by the Leases, and also "seeks a declaration that the Leases and agreements that adversely harmed Ann's property are invalid and void." ECF 45 ¶¶ 53–54. This is a claim for rescission of the Leases and an award of restitution damages. Ann waived that claim by her conduct after entering into the Leases.

Waiver is a defense if the plaintiff evidenced an "intentional relinquishment" of the right asserted, which "may be implied from the conduct of a party." *Powell v. Goff*, 126 Or. App. 194, 198 (1994). Waiver arises from "failure to take prompt action to rescind after a party has knowledge of the facts creating a right to rescind a contract," especially if the party "continued to accept the benefits that he obtained" from the other party for a significant amount of time prior to bringing the claim. *Id*. at 198–99.

In *Powell*, the Oregon Court of Appeals reversed the trial court's judgment rescinding a contingent fee agreement and awarding restitution to the plaintiff on the grounds that the plaintiff waived those claims by waiting eight years to avoid the agreement. *Id.* at 199–200. The plaintiff was aware at the time he signed the agreement that the defendant lawyers would receive one-third of any settlement amount despite settling the claim without filing a claim on his behalf. *Id.* at 196. The defendants settled the claim favorably for plaintiff so that he would receive a lump sum and annuities. *Id.* at 196–97. About a year later, the plaintiff and

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

defendants entered into an addendum to the contingent fee agreement that modified the payment terms to the defendants. *Id.* at 197. About eight years later the plaintiff consulted an attorney who advised him to seek rescission of the contingent fee agreement and addenda because they awarded the defendants an unconscionably high legal fee. *Id.*

The trial court rescinded the agreement and addenda and awarded restitution to the plaintiff. *Id.* The court of appeals reversed and held the plaintiff waived his rescission and restitution claims because he "had knowledge of all the relevant facts" when he signed the agreement and, despite that knowledge, "continued to accept the benefits that he obtained from the work defendants had performed under the contingent fee agreement." *Id.* at 199. The plaintiff waived his claims by failing to take actions consistent with an intent to rescind and by accepting the benefits of the contracts for years between signing them and attempting to rescind. *Id.* at 199–200.

Like the plaintiff in *Powell*, Ann entered into a contract (the Leases), affirmed the contract through addenda (in 2016 and 2017), and knowingly accepted the benefits of that contract for years. The terms of the March 2016 Leases, November 2016 addenda, February 2017 addendum, and 2017 consent documents appear in those documents themselves. Exs. 530, 531, 552–54, 1222, 1223, 1225. Ann signed each of them. The complaint does not allege that any of the addenda or consent documents constituted elder abuse, and Ann never took legal action to disaffirm them.

The Trust was the landlord and Couvrette Ann's co-trustee in April and August 2016 when Couvrette communicated the same objections to the lease terms that now form the basis for Sullivan's elder abuse claim. Couvrette Dep. at 125:5–129:17, Ex. 543; Couvrette Dep. at 169:1–170:16, Ex. 549. Couvrette objected in April 2016 that the Leases are "long [in] duration," make "the land unsaleable," contain "no clause that terminates the lease on the land upon sale[,]" cause the "land value" to "be capped at a 10 cap rate," and are "unconscionably bad." Couvrette Dep. at 125:25–129:7, Ex. 543. Couvrette reiterated her

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

objections in August 2016 that the Leases had "an artificially low lease rate." Ex. 549 at 2. Couvrette then waited until January 2021 to bring suit on behalf of the Trust to disaffirm the Leases.

Couvrette testified she first learned of her reasons to avoid the Leases "in the summer of 2019" and "in the beginning of 2020" when she obtained a copy of Huycke's file regarding his work for Ann. Couvrette Dep. at 130:12–131:17. Couvrette did not file this lawsuit until January 29, 2021, after Ann, the Trust, and Wisnovsky Land had reaped the benefits of the Leases for almost five years, and the complaint sought to avoid the Leases for the same reasons Couvrette stated in 2016. Between April 2016 and January 2023, Valley View paid over $209,695.69 in rent pursuant to the Leases, none of which has been returned. Wisnovsky Decl. ¶ 58. Based on these and other facts discussed above, the elder abuse claim was waived.

Whether Couvrette's delay in taking action to disaffirm the Leases is measured from 2016, from the summer of 2019, or from the beginning of 2020, it was too long under Oregon law. All the while the Trust and Wisnovsky Land were accepting the benefits of the Leases. The plaintiff in *Powell* who waited eight years waived his claims to disaffirm the contract, but so did the defendant in *Porras* who waited only three months. Sullivan's claim for elder abuse was waived.

Couvrette may argue she did not know the Leases had been signed when she voiced her objections in 2016, but Ann knew she had signed them and knew their terms. Couvrette admitted Ann was "competent to analyze" the Leases and "to state her general desires for how she wanted her estate to be dealt with." Couvrette Dep. at 144:10–19. The Trust and Wisnovsky Land had ample knowledge and notice of the Leases, ratified and affirmed them, accepted and retained the benefits they were providing, failed to take prompt action to disaffirm them, and thereby waived the elder abuse claim now alleged by Sullivan. The claim must be dismissed.

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

### *4. Sullivan Is Estopped from Asserting Elder Abuse.*

The closely related doctrine of equitable estoppel prevents Sullivan from continuing with the claim that the Leases constituted elder abuse because Ann induced Valley View to act in reliance on her words and actions approving of the Leases.

Equitable estoppel precludes a party from asserting a right because of that party's "act or conduct, or silence when" they had a "duty to speak[.]" *Marshall v. Wilson*, 175 Or. 506, 518 (1944). A party asserting the defense must prove five elements: (1) a false representation; (2) made with knowledge of the facts; (3) the other party was ignorant of the truth; (4) an intention that the other party act upon the false representation; and (5) the other party was induced to act upon it. *Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 519 (2004).

In *Marshall*, the Oregon Supreme Court affirmed the trial court's judgment ordering specific performance of an oral real estate contract and estopping the defendants from avoiding the contract. 175 Or. at 520–23. The plaintiffs in *Marshall* orally agreed to buy the defendants' property through installment payments. *Id.* at 508–09. The defendants argued the contract was not enforceable because, among other reasons, the defendant husband told the plaintiffs he and his wife would sell the property only if his wife approved the contract or signed the deed, and she had not done so. *Id.* at 509. The defendants then made a down payment, began making monthly payments, and began residing at and improving the property. *Id.* at 521. The defendant wife accepted some of the payments and never objected to them or to the plaintiffs residing at and improving the property. *Id.* The wife later refused to sign the deed because she "always disapproved of the said verbal contract." *Id.*

The trial court ordered specific performance of the sale contract, and the Oregon Supreme Court affirmed on the grounds that the defendants were equitably estopped from avoiding the contract. *Id.* at 520–23. The evidence satisfied the five estoppel elements because the defendant husband represented to the plaintiffs that they could purchase the

Page 37 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

defendants' property in installments, the defendant wife accepted the plaintiffs' payments and thereby represented to the plaintiffs that she acquiesced in the property sale, the plaintiffs were ignorant of the defendant wife's refusal to sell the property to them when they entered into the contract, and the plaintiffs detrimentally relied on, and were induced by, the defendants' false representations by paying the defendants and residing at and improving the property. *Id.*

The November 2016 addenda to the Leases documented Ann's agreement that her Trust and Valley View were parties to the Leases, that they wanted to modify the description of the leased premises in the Leases, that the Trust was assigning its interest in the Leases to Wisnovsky Land, that Wisnovsky Land would perform all of the landlord's obligations under the Leases, and that the Trust would be released and discharged from all liabilities and obligations under the Leases. Exs. 1222 at 1, 1223 at 1. The Second Vineyard Addendum recited that the landlord and tenant had agreed to modify some of the terms and conditions of the Vineyard Lease. Ex. 554 at 1. Ann signed all of the addenda. Exs. 554 at 3, 1222 at 2, 1223 at 2. Based on these and other facts discussed above, Ann estopped Sullivan from proceeding with the elder abuse claim.

If, as Sullivan now contends, the Leases were unlawful and constituted elder abuse, then Ann falsely represented otherwise to Mark and Mike, she did so knowing all of the allegedly harmful terms of the Leases, Mark and Mike were ignorant of the claim because Ann was not asserting it, Ann intended Mark and Mike to act on the appearance she created that she approved of the Leases, and she did in fact induce them to act on that reliance such as by signing the three addenda, paying rent, and working at the Valley View Property. All of the elements of estoppel are satisfied here. Sullivan is estopped from claiming the Leases constitute elder abuse.

/ / /

/ / /

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

### *5. There Is No Admissible Evidence of Diminished Property Value.*

ORS 124.100(2) requires an elder financial abuse claimant to prove the vulnerable person suffered "injury, damage or death by reason of . . . financial abuse." Sullivan alleges Ann "suffered financially by reason of" entering into the Leases because, by entering into the Leases, "Ann went from owning a property appraised at $4.2 million . . . to owning a property encumbered by a lease that made Ann's property worth nothing." ECF 45 ¶¶ 40, 51–52. There is no admissible evidence, however, that the Leases diminished the Property's value. Without such evidence, Sullivan cannot prove the financial harm she alleges and the claim must be dismissed.

Diminution in value is "the difference between the value of the property immediately before the injury and its value immediately afterward" or, for a continuing injury, "the difference at the time of trial between the value of the land without the injury and the value of the land as damaged." *Hudson v. Peavey Oil Co.*, 279 Or. 3, 11 (1977). A party must prove diminution in value with "reasonable certainty" and cannot rely on "speculation, conjecture or surmise." *Newell v. Weston*, 150 Or. App. 562, 582 (1997). Couvrette admits she has no training or education regarding property valuation or lease valuation. Couvrette Dep. at 34:3–8.

On March 4, 2024, the Court entered an order establishing the parties' stipulated expert disclosure deadline of August 5, 2024. ECF 115, 116. By the expert disclosure deadline, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). These rules authorize a qualified expert to "testify in the form of an opinion or otherwise" if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue" and several other criteria are satisfied. It is appropriate to exclude expert opinion not disclosed as required by Rule 26(a). *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th

Page 39 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

Cir. 2001) (affirming district court's decision to exclude expert opinion testimony not produced as required by Rule 26(a)).

Whether the Leases caused any specific amount of diminished value to Wisnovsky Land's commercial winery and vineyard property is a matter of opinion involving scientific, technical, or other specialized knowledge; and it must be proven with "reasonable certainty" and not with "speculation, conjecture or surmise." *Newell*, 150 Or. App. at 582. Plaintiffs and Sullivan made no Rule 26(a) disclosure of expert opinions or witnesses. It is now too late for them to attempt to present testimony opining that the Leases diminished the value of the Valley View Property by $4.2 million or any other amount. With no admissible evidence of the Leases causing any specific diminution in value, Sullivan cannot prove the essential element of injury or damage by reason of elder financial abuse. The claim must be dismissed.

**B.      The Claim for Declaratory Judgment to Invalidate the Leases Must Be Dismissed on Any of Several Grounds.**

Couvrette and Wisnovsky Land's claim for declaratory judgment "that the Leases are invalid and void" on the grounds that "they were the result of undue influence and procured in violation" of the elder financial abuse statute must be dismissed because: (1) Ann ratified and affirmed of the Leases; (2) Ann waived the claim; (3) Plaintiffs are estopped from asserting the claim. Any of those grounds is sufficient to dismiss the declaratory judgment claim as a matter of law. In addition, to the extent the claim arises from undue influence, it is barred by the applicable statute of limitations.

*1.      Ann Ratified and Affirmed the Leases, the Declaratory Judgment Claim Was Waived, and Plaintiffs Are Estopped from Making It.*

The sections above show Sullivan's claim to disaffirm the Leases for elder abuse must be dismissed because Ann ratified and affirmed the Leases, the claim was waived, and Sullivan is estopped from making it. Plaintiffs' declaratory judgment claim must be

Page 40 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

dismissed on the same grounds. It seeks declaratory judgment that the Leases are invalid and void on the grounds that they were the result of undue influence or elder abuse. ECF 45 ¶¶ 55–57. The facts and authorities above that require dismissal of the elder abuse claim on grounds of ratification, waiver, and estoppel apply equally to the declaratory judgment claim. Ann ratified and affirmed the Leases, the claim was waived, and Plaintiffs are estopped from making it.

### 2. The Claim for Declaratory Judgment Based on Undue Influence Is Barred by the Applicable Statute of Limitations.

The declaratory judgment claim alleges the Leases are void and invalid because of undue influence or elder abuse. ECF 45 ¶¶ 56. The claim for declaratory judgment based on undue influence is barred by the applicable statute of limitations.

Undue influence is a species of fraud. *See In Reddaway's Estate*, 124 Or. 410, 420 (1958); *In re Rosenberg's Estate*, 196 Or. 219, 231 (1952); *In re Newman's Will*, 187 Or. 641, 656 (1950); *In re Allen's Estate*, 116 Or. 467, 474 (1925). An action to avoid a contract for fraud "must be commenced within two years of the date on which the cause of action accrues." *Murphy v. Allstate Ins. Co.*, 251 Or. App. 316, 317, 321 (2012); *see also* ORS 12.110(1). An action for fraud is not an action "upon a contract" to which the six-year limitation in ORS 12.080 applies. *Heise v. Pilot Rock Lumber Co.*, 222 Or. 78, 85 (1960). The two-year statute applies to Plaintiffs' claim for declaratory judgment based on undue influence.

The Eastern District of Washington applied this logic to dismiss a claim for undue influence in *Appleton v. Bohart*, No. 2:17–CV–0327–TOR, 2018 WL 1546423, at *4–5 (E.D. Wash. Mar. 29, 2018). The court held undue influence is a species of fraud and therefore subject to Washington's three-year statute of limitations for fraud claims. *Id.* The Ninth Circuit affirmed in an unpublished opinion. *Appleton v. Bohart*, 754 Fed. Appx. 621, 621 (9th Cir. 2019) (unpublished opinion).

Page 41 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR 97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

"[A] claim accrues when all of the facts exist that the plaintiff must prove in order to recover on the claim." *Murphy*, 251 Or. App. at 321. "[A] fraud claim accrues when the plaintiff has discovered facts *or*, in the exercise of reasonable diligence, should have discovered facts that would alert a reasonable person to the existence of the three elements of an actionable injury, which are (1) harm, (2) causation, and (3) tortious conduct." *Id.* (italics in original). Under Oregon law, a business entity is deemed to gain knowledge of facts when any of its officers, directors, employees, or agents gain knowledge of those facts. *FDIC v. Smith*, 328 Or. 420, 429 (1999).

Claims for declaratory judgment "are typically contingent upon the violation of some underlying right afforded by statute or at common law" and are therefore "'subject to the statute of limitations that applies to the underlying claim.'" *Moradi v. ReconTrust Company, NA*, Case No. 3:19-cv-01590-JR, 2020 WL 4187771, at \*4 n.2 (D. Or. June 30, 2020) (applying Oregon law) (quoting *Puri v. Khalsa*, 788 Fed. Appx. 563, 564 (9th Cir. 2019) (citing *Doyle v. City of Medford*, 271 Or. App. 458, 464–65 (2015)); *see also Brooks v. Dierker*, 275 Or. 619, 623 (1976) (construing declaratory judgment claims to be subject to the statute of limitations applicable to the underlying claim).

Under the foregoing authorities, Plaintiffs' declaratory judgment claim to avoid the Leases for undue influence is subject to the two-year statute of limitations. If the undue influence claim accrued by January 2019, the claim was already time barred when Plaintiffs filed this lawsuit in January 2021.

Ann signed the Leases on behalf of her Trust on March 24, 2016. Ex. 530 at 1, 14; Ex. 531 at 1, 13. On March 30, 2016, Wisnovsky Land was formed and registered as a member-managed LLC with "Ann M Wisnovsky, Trustee" as its registered member. Wisnovsky Decl. ¶ 57, Ex. 1251. Couvrette was Ann's co-trustee in April and August 2016 when Couvrette communicated her objections to the lease terms. Couvrette Dep. at 125:5– 129:17, Ex. 543; Couvrette Dep. at 169:1–170:16, Ex. 549. In November 2016 Ann signed

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

the first lease addenda affirming the Leases and assigned the Trust's interest in them to Wisnovsky Land. Exs. 1222, 1223. Ann affirmed the Leases again by signing the second vineyard lease addendum on behalf of Wisnovsky Land in February 2017. Ex. 554. Throughout that period Ann benefitted from Valley View's performance of the Leases and was "competent to analyze" the Leases and "to state her general desires for how she wanted her estate to be dealt with." Couvrette Dep. at 144:10–19.

The Trust and Wisnovsky Land had sufficient knowledge or notice of the Leases long before January 2019. Plaintiffs failed to bring the claim within the applicable two-year statute of limitations so the claim is time-barred.

C.    **The Claim That the Gifts of Stock Constituted Elder Abuse Must Be Dismissed Because Ann Ratified and Affirmed the Gifts of Stock, the Claim Was Waived, and Sullivan Is Estopped from Making It.**

Nearly all of the allegations in the elder financial abuse claim concern the Leases. ECF 45 ¶¶ 49–53. Almost as an afterthought, and without specific facts to support it, the claim includes an allegation that Ann's gifts of stock to Mark and Mike also constitute elder abuse and must be invalidated and revoked. *Id.* ¶ 54. Like the claims to disaffirm the Leases, the claim that the gifts of stock constitute elder abuse must be dismissed because Ann ratified and affirmed the gifts of stock, the claim was waived, and Sullivan is estopped from making it.

In 2006 Ann gave Mark and Mike about 46% of the stock of Valley View. Wisnovsky Decl. ¶ 9. Ann retained the remaining stock of Valley View, about 54%, for herself. *Id.* Effective January 1, 2016, Ann gifted the remainder of her stock to Mark and Mike. *Id.* ¶ 10.

The elder abuse claim does not appear to be targeting the 2006 stock gifts, but any claim that those gifts constituted elder abuse is time-barred because Couvrette did not commence this lawsuit until January 2021, over 14 years later. An action for elder abuse

Page 43 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

under ORS 124.100 to 124.140 "must be commenced within seven years after discovery of the conduct . . . that gives rise to [the] cause of action[.]" ORS 124.130.

There is also no claim for elder abuse arising from Ann's January 1, 2016 stock gifts. As a condition of that transfer, Ann required Mark and Mike to enter into the Agreement to Make Payments that Huycke drafted. Ex. 528. That agreement recites:

> "B. The Wisnovsky Trust, Mark and Mike are shareholders of Valley View. Contemporaneously with the execution of this Agreement, Ann M. Wisnovsky, through the Wisnovsky Trust has gifted the trust's shares of common stock Valley View to Mark and Mike, in equal shares.

> "C. As a condition to their receipt of the gifts, Valley View and Mark and Mike have agreed to make payments to Joanne and Robert upon the happening of the events specified herein."

Ex. 528 at 1 (underline added). The "specified" events included Mark and Mike's sale of Valley View stock or assets for more than $750,000 within five years of receiving Ann's stock. *Id.* at 1–2.

On February 23, 2017, Ann, Valley View, Mark, and Mike entered into the Amended Agreement to Make Payments, which recites:

> "Contemporaneously with the execution of the Agreement to Make Payments, Ann M. Wisnovsky, through the Wisnovsky Trust gifted the trust's Shares of common stock of Valley View to Mark and Mike in equal shares."

Ex. 553 at 1.

ORS 42.300 ("Parties to written instrument not to deny facts recited therein") mandates that "the truth of the facts recited from the recital in a written instrument shall not be denied by the parties thereto, their representatives or successors in interest by a subsequent title." Sullivan is Ann's representative or successor-in-interest with respect to the gifts of stock, Agreement to Make Payments, Amended Agreement to Make Payments, and elder abuse claim. Sullivan cannot deny the facts stated in the recitals quoted above.

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Ann entered into agreements that ratified and affirmed the gifts of stock, and Ann never took action to reverse them. She approved of the gifts of stock, never took action to disaffirm them, intended to induce and did induce Mark and Mike to rely on the gifts of stock such as by signing various contracts on behalf of themselves and Valley View, and retained the benefits of those contracts.

Based on these points and the legal authorities and arguments presented above that require dismissal of the claims to disaffirm the Leases, the claim to disaffirm the gifts of stock for elder abuse must also be dismissed. Ann ratified and affirmed the gifts, the claim was waived, and Sullivan is estopped from asserting it.

**D.    There Is No Genuine Issue of Material Fact That the Wisnovsky Defendants Are Entitled to Specific Performance of the Inheritance Contract.**

The Wisnovsky Defendants' eighth counterclaim seeks specific performance of the inheritance contract they entered into with Ann in February 2017. It alleges Ann agreed to amend her estate plan so that when she died they would inherit ownership of Wisnovsky Land and its Valley View Property in exchange for their agreement to amend the 2016 Agreement to Make Payments. ECF 114 ¶¶ 92–97. Ann, Mark, and Mike exchanged consideration for the inheritance contract, making it irrevocable. Ann later signed documents purporting to amend her estate plan to leave Wisnovsky Land entirely to Couvrette and Robert Wisnovsky, and Couvrette as acting Trustee has been withholding ownership of Wisnovsky Land and failing to transfer it to Mark and Mike. *Id.* ¶¶ 94, 100. The Trust is in breach of the irrevocable inheritance contract and Mark and Mike are entitled to specific performance ordering Plaintiffs and any successor Trustees to transfer Wisnovsky Land and its Valley View property to them.

### 1. *General Contract Law*

"In order for a contract to exist, the parties thereto must manifest a mutual intent to be bound." *R. J. Taggart, Inc. v. Douglas County*, 31 Or. App. 1137, 1140 (1977). Oregon

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR 97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

courts determine the existence of a contract by examining "the parties' objective manifestations of intent, as evidenced by their communications and acts, rather than their subjective intent." *BenefitElect, Inc. v. Strategic Benefit Sols. Corp.*, 614 F. Supp. 3d 838, 842 (D. Or. 2022) (citing *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 578 (2005). One party's performance of the contract terms "with the knowledge and approval of the other . . . is nearly always evidence that" the parties intend to be bound by the contract. *Gaswint v. Case*, 265 Or. 248, 254 (1973) (citing 1 Corbin on Contracts 407, § 95 (1963)).

### 2.  *The Law of Inheritance Contracts*

The law generally allows a person to amend their estate plan, but that right can be lost if the person receives consideration in exchange for a certain estate plan. The result is an estate plan that is irrevocable as to the parties that gave the consideration. In *Florey v. Meeker*, the Oregon Supreme Court held:

> "An essential characteristic of every will, whether a joint or individual will, is that it remains ambulatory during the testator's lifetime. In the *Van Vlack* case, we said, 'a contract to make a will, when based upon sufficient consideration, is irrevocable, although the will which was executed pursuant to it remains revocable.' It, therefore, follows that if the revocation or modification on the part of one testator is of a character that works a breach of the terms of the original contract, any party in interest who suffers thereby has a remedy in a suit on the breached contract."

194 Or. 257, 277 (1952) (internal citations omitted).

Thus, a will created in exchange for consideration is irrevocable as to the party that gave the consideration. Courts apply the same rule to a testamentary trust. *Alvarez v. Coleman*, 642 So. 2d 361 (Miss. 1994) (finding that the attempt to revoke a trust made pursuant to an agreement was a breach of the agreement).

Contracts regarding testamentary dispositions are enforceable when the parties intended to bind themselves irrevocably in a contract and the contract is supported by

Page 46 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

consideration. The remedy for a breach of such a contract is often an order for specific performance. In *Kozyra v. Jackman*, the defendant sought specific performance of a prior will he alleged was irrevocable. 60 Mich. App. 7, 9–10 (1975). The trial court dismissed the counterclaim because it concluded the will was not contractually irrevocable as a matter of law. *Id.* at 10. The court of appeals reversed and held the defendant would be entitled to specific performance of the will by showing that the decedent and his wife "entered into a contract manifested by their joint and mutual will which provided for an irrevocable trust . . . [and that] when [the decedent] executed another will which provided for a disposition inconsistent with that agreement, he breached that contract." *Id.* at 11.

### 3. *Specific Performance*

"An order of specific performance is intended to produce as nearly as is practicable the same effect that the performance due under a contract would have produced[,]" usually by ordering "a party to render the performance that he promised." Restatement of Contracts § 357 cmt. a.

To be entitled to an order of specific performance, a claimant must plead and prove that he "has a valid, legally enforceable contract," he has no adequate remedy at law, and he "is ready, willing, and able to perform [his] obligations under the contract." *Kazlauskas v. Emmert*, 248 Or. App. 555, 569 (2012); *Riverside Homes, Inc. v. Murray*, 230 Or. App. 292, 301 (2009).

Specific performance is commonly an appropriate remedy in actions for breach of contracts to convey real property because land is unique and monetary damages are generally inadequate to compensate for the loss of real property. *Robertson v. Jones*, 280 Or. 507, 511 (1977) (reversing trial court's denial of specific performance to non-breaching purchaser of land and remanding for entry of order granting specific performance).

Specific performance is also an appropriate remedy for ownership shares of a business, as "the value of the stock is not easily ascertainable, or the stock is not to be

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

obtained readily elsewhere." *Deitz v. Stephenson*, 51 Or. 596, 605 (1908); *Wilcox v. Stiles*, 127 Or. App. 671, 674 (1994) (affirming judgment ordering specific performance of defendant's obligation to tender shares to corporation).

### 4. The February 2017 Documents Evidence the Irrevocable Inheritance Contract for Mark and Mike to Inherit Wisnovsky Land.

As stated above, an enforceable contract forms when parties "manifest a mutual intent to be bound[,]" which is "evidenced by their communications and acts," including a party's performance of the contract "with the knowledge and approval of the other" party. *R. J. Taggart, Inc.*, 31 Or. App. at 1140; *BenefitElect, Inc.*, 614 F. Supp. 3d at 842; *Gaswint*, 265 Or. at 254. Multiple documents executed at about the same time, between the same parties as part of the same transaction, "must be construed together as one contract." *Hays v. Hug*, 243 Or. 175, 177 (1966) (construing contract and separate escrow document together as one contract because they "made by the same parties, at about the same time, as a part of the same transaction").

The February 2017 documents manifest the inheritance contract between the Wisnovsky Defendants and Ann as Trustee. Those documents include the Amended Agreement to Make Payments, Second Vineyard Addendum, Redemption Agreement, and Second Trust Agreement. Those documents were executed at about the same time between the same parties as part of the same transaction and must be construed together.

The Amended Agreement to Make Payments is a contract between the Trust and the Wisnovsky Defendants that extends the duration of the prior Agreement to Make Payments from five years to ten and is enforceable by Couvrette and Robert as express third-party beneficiaries. Ex. 553. The Amended Agreement to Make Payments states:

> "Ann M. Wisnovsky has determined to amend the Wisnovsky Trust and Valley View and Wisnovsky Land, LLC, which is controlled by Ann M. Wisnovsky, have agreed to amend a Vineyard Lease that exists between them. Ann M.

Page 48 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

<u>Wisnovsky's agreement to make such changes is conditioned upon the execution of this Agreement.</u>"

*Id.* (underline added). Thus, the Amended Agreement to Make Payments was a condition of Ann's "agreement" to amend the Trust and Vineyard Lease. This shows Ann's execution of the Second Trust Amendment was her performance of an agreement she had reached on behalf of her Trust with the Wisnovsky Defendants. The agreement was to modify her estate plan to leave Wisnovsky Land to Mark and Mike, as set forth in the Second Trust Amendment, in exchange for the Wisnovsky Defendants entering into the Amended Agreement to Make Payments.

The Wisnovsky Defendants gave the Trust valuable consideration when they entered into the Amended Agreement to Make Payments because it increased the period of their payment obligations for certain transactions completed within the next ten years, as opposed to the next five years. *Compare* Ex. 521 *with* Ex. 553. That consideration made Ann's agreement for Mark and Mike to inherit Wisnovsky Land, as set forth in the Second Trust Amendment, irrevocable.

The Second Trust Amendment created a new Section 3.3B of the Trust that provided that upon Ann's death "The trust's remaining membership interest in Wisnovsky Land shall be divided" and "distributed" 50% to Mark and 50% to Mike. Ex. 552 at 1. The Wisnovsky Defendants were aware of that provision when they entered into the Amended Agreement to Make Payments. That was the amendment to Ann's Trust for which they bargained and gave consideration. The Trust had an irrevocable contractual obligation to distribute Wisvnosky Land to Mark and Mike upon Ann's death.

### 5. *The Trust Is in Breach of the Inheritance Contract.*

The Trust is in breach of the inheritance contract because Ann passed away in March 2023 and the Trust still retains ownership of Wisnovsky Land and its Valley View Property. The acting Trustee denies the inheritance contract and will need to be ordered to transfer Wisnovsky Land to Mark and Mike.

Page 49 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

**6.  The Wisnovsky Defendants Are Entitled to Specific Performance Ordering the Trust to Transfer Ownership of Wisnovsky Land to Them.**

Mark and Mike are entitled to specific performance of the inheritance contract and an order for the Trust (and all of its current and future trustees) to transfer Wisnovsky Land to them.  The inheritance contract is for inheritance of an LLC and its real property.  The Trust is in breach of that contract.  Mark and Mike are ready, willing, and able to perform any obligations they might incur under the Amended Agreement to Make Payments or any other aspect of the inheritance contract.  Wisnovsky Decl. ¶ 60; Mike Decl. ¶ 3.  They are entitled to an order for specific performance.

In *Cook v. Desler*, the Oregon Court of Appeals reversed the trial court's denial of a specific performance remedy and held the plaintiff proved he was ready, willing, and able to perform an earnest money agreement for the sale of stock of a closely held corporation by testifying "that he was ready, willing and able to pay the [requisite] insurance premiums when they fall due" in the future.  52 Or. App. 5, 7, 13 (1981).  Based on that testimony the "plaintiff was entitled to a decree of specific performance" requiring the stock to be sold to the plaintiff.  *Id.*

In *Fulwiler v. Beddoe*, the Oregon Court of Appeals held the plaintiffs demonstrated they were ready, willing, and able to perform a contract to purchase the defendant's property by testifying they had equity available in their own property that they had previously put up for sale but later took off the market when the defendant repudiated the purchase agreement.  212 Or. App. 615, 624 (2007).  The plaintiffs were therefore entitled to an order of specific performance.  *Id.*

The inheritance contract required Mark and Mike to enter into the Amended Agreement to Make Payments, and they did that.  That agreement requires Mark and Mike to make certain payments to Couvrette and Robert under certain circumstances.  There is no claim in this lawsuit that Mark or Mike are in breach of the Amended Agreement to Make

Page 50 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

Payments. If Mark or Mike ever incur any payment obligations pursuant to that agreement or any other aspect of the inheritance contract, they stand ready, willing, and able to perform them. Wisnovsky Decl. ¶ 60; Mike Decl. ¶ 3. Mark and Mike are entitled to an order for Plaintiffs and any successor Trustees to specifically perform the inheritance contract by transferring ownership of Wisnovsky Land to Mark and Mike.

**E.    The Inheritance Contract Provides Additional Grounds for Dismissal of Plaintiffs' Claim for Declaratory Judgment That the Leases Are Invalid and Sullivan's Claim That the Leases Constitute Elder Abuse.**

The inheritance contract provides additional grounds to dismiss Plaintiffs' claim for declaratory judgment that the Leases are invalid, as the transfer of ownership of Wisnovsky Land to Mark and Mike will allow them to dismiss all claims asserted by Wisnovsky Land in this lawsuit and will leave Couvrette with no basis to continue asserting the claim. After the transfer of Wisnovsky Land, Couvrette will be a former owner of the LLC, and as such she will have no standing to continue asserting the claim that the Leases between Wisnovsky Land and Valley View are invalid.

Likewise, there can be no elder abuse claim by Sullivan for rescission of the Leases or diminished value if the Court orders specific performance of the inheritance contract. There will be no basis for Sullivan to contend Ann was hurt financially by the Leases because Ann and the Trust will have received the consideration they bargained for in exchange for their February 2017 promise for Mark and Mike to inherit Wisnovsky Land. That consideration was the Amended Agreement to Make Payments, to which Mark and Mike remain bound.

**F.    The Wisnovsky Defendants Are Entitled to Partial Summary Judgment Dismissing the Unjust Enrichment Claim.**

Claims for unjust enrichment "pre-suppose that no enforceable contract exists." *The Hoag Living Trust dated Feb. 4, 2013 v. Hoag* ("*Hoag*"), 292 Or. App. 34, 42 (2018)

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

(internal brackets omitted). If no enforceable contract exists, the Oregon Supreme Court has instructed "Oregon courts [to] examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 133 (2017). One of the "other authorities" approved by *Larisa's Home Care* is the *Restatement (Third) of Restitution and Unjust Enrichment* (the "Restatement of Restitution"), which the court described as "contain[ing] a statement of four general principles, . . . and then 44 sections addressing the types of circumstances in which liability in restitution is recognized." *Id.* at 129.

Couvrette and Wisnovsky Land's unjust enrichment claim alleges the Wisnovsky Defendants "knowingly received benefits, including sublease payments for leased lands; and under the circumstances as described above, it would be unjust to allow retention of the benefits by defendants." ECF 45 ¶ 59. Plaintiffs seek "not less than $4.2 million" in damages on their unjust enrichment claim. *Id.* ¶ 60. The vague reference to "circumstances as described above" presumably refers to the allegations underpinning the claims for elder financial abuse and declaratory judgment. *Id.* ¶ 58.

The Wisnovsky Defendants are entitled to partial summary judgment dismissing the unjust enrichment claim for the following reasons.

### 1.  *The Subject of the Unjust Enrichment Claim Is Already Addressed in the Second Vineyard Addendum and Amended Agreement to Make Payments.*

An unjust enrichment claim "pre-suppose[s] that no enforceable contract exists" regarding the subject matter of the claim. *Hoag*, 292 Or. App. at 42; *see also Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48 (1979) ("[T]here can not be a valid legally enforceable contract and an implied contract covering the same services. The contract controls.") (internal citations omitted)). That rule requires dismissal of Plaintiffs' unjust enrichment

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

claim because its subject matter is already addressed by the Second Vineyard Addendum and Amended Agreement to Make Payments, which are valid and legally enforceable contracts.

Here, Plaintiffs allege the Wisnovsky Defendants were unjustly enriched by their receipt of "benefits, including sublease payments for leased lands[.]"  ECF 45 ¶ 59.  The Second Vineyard Addendum authorized Valley View to sub-lease portions of the leased lands to a sub-tenant wholly owned by Mark and Mike for agriculture such as hemp production.  Ex. 554 at 1–2.  It authorized that in exchange for an increase in the rent due under the Leases and payment of additional rent for non-vineyard agricultural production. *Id.*

The sub-leasing of leased lands and the payments owed to Wisnovsky Land for such activity are squarely within the subject matter of the Second Vineyard Addendum.  Any claim to recover or share in any sub-lease benefits is governed by and must be brought pursuant to that contract.  Plaintiffs allege no such claim.  Their vague claim for unjust enrichment related to sub-lease benefits is precluded by the contract and must be dismissed.

If the unjust enrichment claim and is somehow not precluded by the Second Vineyard Addendum, it is precluded by the Amended Agreement to Make Payments.  That agreement details the circumstances under which benefits received by the Wisnovsky Defendants are required to be paid or shared with Couvrette and Robert.  That is another enforceable contract that further encompasses the subject matter of the unjust enrichment claim, requiring its dismissal.

### 2. *Alternatively, Plaintiffs Have No Right to Any of the Sub-Lease Benefits Obtained Pursuant to the Sub-lease with Third Generation Farms.*

Alternatively, if the unjust enrichment claim is not precluded by the subject matter of the Second Vineyard Addendum or Amended Agreement to Make Payments, the claim must be dismissed on the grounds that Plaintiffs have no legal or equitable right to any of the sub-lease benefits generated by Third Generation Farms.  Plaintiffs' only potential source of a

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

right to any of those benefits is the Second Vineyard Addendum or Amended Agreement to Make Payments.  Plaintiffs do not allege a claim to enforce either of those contracts, which would be a claim for breach of contract, not unjust enrichment.  The unjust enrichment claim is either circumscribed by contract or lacking any legal or equitable basis.  Either way it must be dismissed.

Plaintiffs allege the Wisnovsky Defendants "received benefits, including sublease payments for leased lands"—i.e., that the Wisnovsky Defendants allegedly received benefits from third parties, not Plaintiffs.  ECF 45 ¶ 59.  To recover the value of benefits the Wisnovsky Defendants received from a third party on the grounds that they were unjustly enriched, Plaintiffs must prove with specificity that Plaintiffs "have a legal or equitable right to" those benefits.  *Grimstad v. Knudsen*, 283 Or. App. 28, 49 (2010).  Plaintiffs cannot prove that element of their unjust enrichment claim.

In *Grimstad*, a Woman gave power of attorney to her biological children and placed them in charge of her care after she was diagnosed with Alzheimer's and became incompetent *Id.* at 30.  The woman's children sold her home and used the money to care for her.  *Id.*  Her step-children sued the biological children for unjust enrichment, claiming a right to the sale proceeds on the grounds that they stood to inherit the home and the woman had other resources to pay for her care.  *Id.* at 35–36.  The court distinguished the case from one in which the unjust enrichment plaintiff conferred a benefit on the defendant.  The court compared the case to others in which an unjust enrichment claim was intended to recover a benefit the defendant had received from a third party.  *Id.* at 44.  Those "third party" unjust enrichment cases included one in which a wife was allowed to sue her son for receiving a property her husband had promised her in a prenuptial agreement.  *Id.*  *Grimstad* was different because "Nothing required [the woman], or anyone acting on her behalf, to preserve any portion of the [property sale] proceeds for plaintiffs."  *Id.* at 49.  The power of attorney

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

authorized the woman's biological children to sell the property. *Id.* The plaintiffs had no claim for unjust enrichment. *Id.* at 52.

Here, like the defendants in *Grimstad*, Plaintiffs cannot show they have a legal or equitable right to any benefits obtained as a result of Valley View's sub-lease to Third Generation Farms. Plaintiffs allege no claim or right to payment from Third Generation Farms. Any right they might have to payment from Valley View or Mark or Mike is governed by the Leases, Second Vineyard Addendum, or Amended Agreement to Make Payments, and therefore cannot be the subject of an unjust enrichment claim. There is no other source of a right that might support Plaintiffs' unjust enrichment claim. The claim must be dismissed.

**G.      The Wisnovsky Defendants Are Entitled to an Award of Reasonable Attorney Fees Related to Dismissal of Sullivan's Claim for Elder Abuse and Plaintiffs' Claim for Declaratory Judgment.**

If the Wisnovsky Defendants obtain summary judgment dismissing Sullivan's claim for elder abuse or Plaintiffs' claim for declaratory judgment related to the Leases, the Wisnovsky Defendants should receive an award of reasonable attorney for that claim.

Section 16.2 of the Vineyard Lease and Section 17.2 of the Winery Lease include identical attorney fees provisions, which state,

> "[i]f suit or action is institute[d] in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover in addition to costs such sum as the court may adjudge reasonable as attorney fees at trial, on petition for review, and on appeal."

Exs. 530 at 12, 531 at 11 (underline added). Sullivan's elder abuse claim and Plaintiffs' declaratory judgment claim were instituted in connection with a controversy arising out of the Leases. If the Leases are affirmed and the Wisnovsky Defendants prevail against either claim, they should be entitled to an award of reasonable attorney fees pursuant to the foregoing attorney fee provisions.

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, 4th Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: bfoster@chenowethlaw.com**

The specifics of such an attorney fee award are to be determined pursuant to Fed. R. Civ. P. 54.  If Plaintiffs obtain dismissal of the elder abuse or declaratory judgment claims related to the Leases, they should be allowed to seek one.

**H.    The Wisnovsky Defendants Are Entitled to Reasonable Attorney Fees for Prevailing on Their Claim for Breach of Inheritance Contract Against Plaintiffs, Including Against Couvrette Personally.**

Similarly, if the Wisnovsky Defendants obtain summary judgment on their inheritance contract claim they should also be awarded reasonable attorney fees related to that claim in an amount to be determined pursuant to Fed. R. Civ. P. 54.

Section 3.2 of the Amended Agreement to Make Payments states:

> "[i]f any suit or action is filed by any party to enforce this Agreement or otherwise with respect to the subject matter of this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees incurred in preparation or in prosecution or defense of such suit or action as fixed by the trial court, and if any appeal is taken from the decision of the trial court, reasonable attorney fees as fixed by the appellate court."

Ex. 553 at 3 (underline added).

As shown above, the inheritance contract was the agreement in which the Wisnovsky Defendants agreed to enter into the Amended Agreement to Make Payments in exchange for Ann's promise that they would inherit Wisnovsky Land and its Valley View Property when she died.  The inheritance contract is evidenced in Recital C to the Amended Agreement to Make Payments, which says entering into that agreement is a condition of Ann's agreement to amend her Trust.  Wisnovsky Decl. ¶ 28, Ex. 553 at 1.  The claim to enforce the inheritance contract is an action "with respect to the subject matter" of the Amended Agreement to Make Payments within the meaning of its section 3.2.

Any award of attorney fees related to the inheritance contract claim should be against Couvrette personally, in addition to the Trust.  Under ORS 130.845(2), a trustee "is

Page 56 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

personally liable for torts committed in the course of administering a trust <u>or for obligations arising from ownership or control of trust property</u> . . . if the trustee is personally at fault." *See O'Donnell v. Vial Fotheringham LLP*, No. 3:19-CV-00579-SB, 2020 WL 6365521, at *2 (D. Or. Sept. 15, 2020) (underline added) (holding sole trustee was personally obligated to pay debts of condominium owned and controlled by trust).

As acting Trustee of the Trust, Couvrette has been in control of Wisnovsky Land, a Trust asset. The Trust's obligation to transfer Wisnovsky Land to Mark and Mike arises from its ownership and control of that LLC. Couvrette is personally responsible and at fault for the decision to withhold the LLC from Mark and Mike after Ann died. Their attorney fee award related to the inheritance contract counterclaim should be against Couvrette, personally, in addition to the Trust.

## V.    CONCLUSION

For the foregoing reasons, the Wisnovsky Defendants respectfully ask the Court to grant their motion for partial summary judgment and enter a judgment (1) dismissing Plaintiffs' claims for elder financial abuse, declaratory judgment, and unjust enrichment with prejudice; (2) granting the Wisnovsky Defendants' eighth counterclaim for declaratory judgment; and (3) awarding the Wisnovsky Defendants their reasonable attorney fees in an amount to be determined pursuant to Fed. R. Civ. P. 54.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 57 - WISNOVSKY DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

**CHENOWETH LAW GROUP, PC**
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) and the Court's January 16, 2025 *Order Granting Motion to File Excess Pages* (ECF 141) because it contains 16,360 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED: January 31, 2025

CHENOWETH LAW GROUP, PC

 /s/ Brooks M. Foster
Brooks M. Foster, OSB No. 042873
Bradley T. Crittenden, OSB No. 173274
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Phone: (503) 221-7958
Fax:  (503) 221-2182
Email: bfoster@chenowethlaw.com
bcrittenden@chenowethlaw.com

*Attorneys for Defendant Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc.*

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: bfoster@chenowethlaw.com

## DECLARATION OF SERVICE

I hereby certify that I served the foregoing **WISNOVSKY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on the following:

| | |
|---|---|
| Stephen M. Brigandi<br>3624 Caminito Cielo Del Mar<br>San Diego, CA 92130<br>Brigandilaw@gmail.com<br><br>*Attorneys for Plaintiffs/Counter-Defendants*<br>*Joanne Couvrette and Wisnovsky Land LLC* | James Dole<br>Watkinson Laird Rubenstein PC<br>1246 NE 7th St., Ste. B<br>Grants Pass, OR 97525<br>jdole@wlrlaw.com<br><br>*Attorney for Defendant Mark Wisnovsky,*<br>*Michael Wisnovsky and Valley View Winery* |

Timothy Murphy
Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
tim@oregonlandlord.net

*Attorneys for Plaintiffs/Counter-Defendants*
*Joanne Couvrette and Wisnovsky Land LLC*

by the following method(s):

   **xx**     by **emailing** a full, true and correct copy thereof to the parties at the email addresses shown above, which are the last-known email addresses of the parties, on the date set forth below.

   **xx**     by **e-serving** a full, true and correct copy thereof to the parties through OJD eFile, on the date set forth below.

         by **mailing** a full, true and correct copy thereof in a sealed, first-class, postage pre-paid envelope, addressed to the last-known address of the parties as shown above, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

         By **hand delivering** a full, true and correct copy thereof to the parties at the last known business address of the parties above.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it may be used as evidence in court and is subject to penalty for perjury.

Dated: January 31, 2025.

CHENOWETH LAW GROUP, PC

*/s/ Jami Asay*
Jami Asay, Paralegal

DECLARATION OF SERVICE