**Brooks M. Foster, OSB No. 042873**
Email: bfoster@northwestlaw.com
**Bradley T. Crittenden, OSB No. 173274**
Email: bcrittenden@chenowethlaw.com
Chenoweth Law Group, P.C.
510 SW Fifth Avenue, Fifth Floor
Portland, OR 97204
Telephone: 503-221-7958
Facsimile: 503-221-2182

**James R. Dole, OSB No. 892272**
Email: jdole@wlrlaw.com
Watkinson Laird Rubenstein, P.C.
1246 NE 7th Street, Suite B
Grants Pass, OR 97526
PO Box 10567
Eugene, OR 97440
Telephone: 541-484-2277
Facsimile: 541-484-2282

Of Attorneys for Defendants Mark A. Wisnovsky,
Michael J. Wisnovsky, and Valley View Winery, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Medford Division

| | |
|---|---|
| JOANNE COUVRETTE, as trustee of the Ann M. Wisnovsky Trust; and WISNOVSKY LAND, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MARK A. WISNOVSKY, an individual; MICHAEL J. WISNOVSKY, an individual; PATRICK HUYCKE, an individual; VALLEY VIEW WINERY, INC., an Oregon corporation; JARVIS, DREYER, GLATTE & LARSEN, LLP, an Oregon partnership, fka Huycke O'Connor Jarvis, LLP,<br><br>Defendants. | Case No. 1:21-CV-00157-CL<br><br>**DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)** |

Page 1 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

I, Mark Wisnovsky, declare as follows:

1.      I am over the age of 18 and competent to testify as follows.  I make this declaration based on my personal knowledge and in support of the motions for partial summary judgment filed by the Wisnovsky Defendants, who are Michael J. ("Mike") Wisnovsky, Valley View Winery, Inc., and me.

### A.      Family Overview and Winery Ownership

2.      Plaintiff and counterclaim-defendant Joanne Couvrette ("Couvrette"), Mike and me, and Robert Wisnovsky ("Robert") are the adult children of Frank Wisnovsky ("Frank") and Ann Wisnovsky ("Ann").

3.      In 1971 Ann and Frank purchased agricultural land in Jackson County and founded the Valley View Winery.  Ann and Frank developed the vineyard and winery together until Frank died in an accident in 1980.  After Frank's death, Ann continued operating the vineyard and winery business.

4.      Couvrette moved away from Oregon in 1982 and has lived in Southern California ever since.

5.      Mike and I have worked continuously full-time for Valley View since at least 1991 and 1986, respectively.  In 1988, Ann registered Valley View Winery, Inc. ("Valley View") with the Oregon Secretary of State, thereby incorporating the vineyard and winery business. Valley View has operated through that business entity ever since.

6.      In 1989 Ann promoted me to the position of President of Valley View, and in 1991 Ann made Mike the Vice President of Valley View.  Ann served as Chairman of the Board, Treasurer, and Secretary until January 1, 2016.

Page 2 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

7.    In 2006 Ann gave Mike and me about 46% of the stock of Valley View and retained the remainder, about 54%, for herself.

## B.    The Trust

8.    On August 2, 2012, Ann created the *Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Trust" or "Trust Agreement"), a true copy of which is attached as Exhibit 512.  The Trust initially appointed Ann and Couvrette as co-trustees but required Couvrette to exercise her trustee powers "only in accordance with the written direction of [Ann]," as stated on page 20 of Exhibit 512.  The Trust also initially provided for distributions of minority interests in Valley View stock to Couvrette and Robert after Ann's death, and it provided for Mike, me, Couvrette, and Robert to each receive 25% of the residue of the Trust, as stated on page 5 of Exhibit 512.  Oregon attorney Patrick Huycke ("Huycke") drafted the Trust and represented and advised Ann regarding her estate planning from 1999 until May 22, 2019.

9.    The Trust assets currently include:

(a)    100% of the membership interest in Wisnovsky Land, LLC, which owns the real property commonly known as 1000 and 1140 Upper Applegate Road, Jacksonville, Oregon, consisting of approximately 77 acres of land improved with winery and vineyard buildings, agricultural fields, and grape vines where Valley View operates its vineyard and winery (the "Valley View Property"), as described in the warranty deed attached as Exhibit 1247;

(b)    the right, as sole owner of Wisnovsky Land, to receive rent collected by Wisnovsky Land from Valley View pursuant to the *Winery Lease* attached as Exhibit 530 and the *Vineyard Lease* attached as Exhibit 531 (the "Leases"), both later amended;

Page 3 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

(c)    a bank account at US Bank;

(d)    100% of the membership interest in Upper Applegate, LLC ("Upper Applegate"), which owns:

    (i)    the real property commonly known as 1352 Upper Applegate Road, Jacksonville, Oregon, which is a residence of about 2,800 square feet on approximately 2.3 acres ("Ann's home"), as described in the *Bargain & Sale Deed* attached as Exhibit 1231; and

    (ii)   two parcels of real property in Jackson County, Oregon known as parcels 38-2W-11BD-1600 and -1700 ("Griffin Creek Parcels"); and

(e)    household goods, books, apparel, tools, art objects, jewelry, personal effects, and other like contents of Ann's home, as stated in the *Bill of Sale* attached as Exhibit 1246.

## C.    The Agreement to Make Payments

10.    Effective January 1, 2016, Ann gifted to Mike and me the rest of her stock in Valley View, making us each 50% owners of Valley View.  This is shown in the January 1, 2016 meeting minutes attached as Exhibit 1221, where we documented our intent for that to be the effective date of the transfer of Ann's remaining stock.

11.    As a condition of those gifts of stock, Ann required Mike and me to enter into an *Agreement to Make Payments* that Huycke drafted, a true copy of which is attached as Exhibit 528.  The Agreement to Make Payments required Mike and me to make certain payments to the Trust if we sold Valley View stock or assets for more than $750,000 within five years of Ann's gifts of stock.  This was a manifestation of Ann's desire for Mike and me to continue our lifelong

/ / /

Page 4 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

commitment to Valley View, which was the company Ann founded with her deceased husband and her legacy.

### D.    The First Trust Amendment

12.    On March 14, 2016, Huycke helped Ann execute the *First Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("First Trust Amendment") attached as Exhibit 529.  It provided that upon Ann's death Couvrette, Robert, Mike, and I would each receive an equal 25% interest in Wisnovsky Land.

### E.    The Leases

13.    Effective March 24, 2016, the Trust and Valley View entered into the Winery Lease and Vineyard Lease whereby the landlord Trust leased the Valley View Property to Valley View as shown in Exhibits 530 and 531.

14.    Under the Winery Lease, Valley View agreed to pay the Trust a monthly base rent of $1,000 to lease the portion of the Valley View Property with the tasting room, winery buildings, warehouse, and parking lot, as stated on pages 1 to 2 of Exhibit 530.

15.    Under the Vineyard Lease, Valley View agreed to lease areas of land "presently planted as a vineyard and lying fallow, but excluding the single family residence presently owned by the [Trust], and the two parcels that have been or may be created under Oregon Measure 37 (ORS 197.352" and to pay the Trust a monthly base rent of "$12.50 per acre of land that is being used for the production of agricultural crops" (capitalization omitted).  This is stated on pages 1 to 2 of Exhibit 531.

16.    Both Leases are triple-net leases that require Valley View to pay property taxes, insurance premiums, repairs, maintenance costs, and utility costs for the Valley View Property, as stated on pages 2 through 6 of Exhibits 530 and 531.

Page 5 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

17.     Both leases contain rent escalation agreements and renewal options for "8 successive terms of 10 years, each" with the rent continuing to escalate as in the original term, as stated on pages 1 and 2 of Exhibits 530 and 531.  Eighty years was far longer than Ann could have expected Mike or me to live, showing she intended Valley View to outlast us.

18.     The Leases contain attorney fee provisions drafted by Huycke, stating, "If suit or action is institute[d] in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover in addition to costs such sum as the court may adjudge reasonable as attorney fees at trial, on petition for review, and on appeal."  This is stated on page 12, section 17 of Exhibit 530 and page 11, section 16.2 of Exhibit 531.

### F.    Couvrette's Objections to the Leases

19.     On August 30, 2016, Couvrette sent emails to Huycke, Mike, and me expressing her self-interest and disagreement with the terms of the Leases and Ann's estate planning decisions.  These emails are shown in the attached Exhibit 549.  As shown on page 2 of Exhibit 549, Couvrette's primary complaint was about the "artificially low lease rate" she felt the Trust had agreed to accept from Valley View under the Leases, which she thought was unfair to her interest as a Trust beneficiary.

20.     Couvrette and Ann were still co-trustees of the Trust that owned the Valley View Property on August 30, 2016, at the time of the Exhibit 549 emails.  There is no evidence Ann ever authorized Couvrette in writing (as required by the Trust) to take any action to address Couvrette's objections the Leases.

### G.    The Trust's Conveyance of the Valley View Property and Assignment of the Leases

21.     Effective November 2, 2016, Ann deeded the Valley View Property from the Trust to Wisnovsky Land as shown in the deed attached as Exhibit 1245.  This warranty deed

Page 6 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

was later corrected and re-recorded on January 20, 2017, as shown in the attached Exhibit 1247.

22.    Also effective on November 2, 2016, the Trust, Wisnovsky Land, and Valley View entered into the *Addendum to and Assignment by Landlord [–] Vineyard Lease* and the *Addendum to and Assignment by Landlord [–] Winery Lease* that assigned the Trust's interests in the Leases to Wisnovsky Land.  True copies of these Lease addenda are attached as Exhibits 1222 and 1223.

### H.    The February 2017 Documents

23.    On January 11, 2017, Huycke sent Ann the letter attached as Exhibit 1224 regarding potential changes to her estate plan.  In the letter, Huycke wrote,

> "We discussed a possible change of trustee.  Right now, you and [Couvrette] are co-trustees.  Because of the difficulties that arise between your children, I think a change in the successor and co-trustee is a good idea."

Huycke further wrote,

> "You stated your desire that you did not want Robert or [Couvrette] to be able to hurt the winery/vineyard in any way. . . . In order to protect the winery and vineyard land, you might consider an estate plan that provides for the distribution to Mark and Mike of the vineyard land and a distribution to Robert and [Couvrette] of your other land and other assets."

24.    On February 20, 2017, Ann signed a one-page agreement, which I faxed to Huycke that day.  A true copy of this agreement that contains hand-written notes added after I sent the fax is attached as Exhibit 1019.  It states the following:

(1) "Wisnovsky Lands LLC will increase the rent to $200/acre per year to start in March, 2017";

(2) "At the time of her death, Wisnovsky Lands LLC will be distributed equally to Mark and Michael.  Mark and Michael will pay Robert and Joanne

Page 7 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

$100,000 each at the federally required minimum interest rate, due within ten years of her death.  In addition Mark and Michael will pay $40,000 each to Robert and Joanne for the existing lot and any lot that is created by the measure 49 claim that is not sold at the time of her death at the same federally required minimum interest rate, due within ten years of her death."

(3) "We will also like to amend the lease to allow Mark and Michael to lease the remaining farm land not currently used for vineyrds [sic] for $1,000/acre per year.  In addition Mark and Michael will pay Wisnovsky Lands LLC 5% on the net proceeds of any agricultural activity on those lands and up to an additional $1000/acre per year."

(4) "Extend the period of the Agreements to Make Payments from 5 years to 10 years.   From year 5 to year 10 25% of all proceeds over $1.5 million would go to the trust."

25.     On February 22, 2017, Huycke wrote a letter to Ann, Mike, and me informing us that Ann had asked him to prepare documents to "amend the Vineyard Lease" and "make arrangements for [Couvrette] and Robert to be paid $200,000 pursuant to a promissory note upon Ann's death," which would be given to them "in lieu of them receiving any interest in Wisnovsky Land upon Ann's death."  A true copy of this letter is attached as Exhibit 1021.  "For this purpose," Huycke wrote, "I prepared a redemption agreement and an amendment to Ann's trust."  The letter stated Huycke was "transmitting copies of the documents [he] prepared" and would "meet with Ann tomorrow."

26.     On February 23, 2017, Huycke met with Ann and then with Ann, me, and Mike at Huycke's office, where I, Mike, and Ann signed the *First Amendment to and Restatement of*

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

*Agreement to Make Payments* ("Amended Agreement to Make Payments") and *Second Addendum to Vineyard Lease* ("Second Vineyard Addendum") and Ann signed the *Redemption Agreement* and *Second Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Second Trust Amendment").   True copies of these "February 2017 documents" are attached as Exhibits 552, 553, 554, 1019, and 1225.  In the email attached as Exhibit 1250 Huycke delivered unsigned copies of the February 2017 documents to Mike and Me on February 23, 2017, before they were signed, along with a copy of the letter attached as Exhibit 1021.

### I.        The Amended Agreement to Make Payments

27.    The Amended Agreement to Make Payments attached as Exhibit 553 is a contract between the Trust and the Wisnovsky Defendants that extends the duration of the prior Agreement to Make Payments from five years to ten and is enforceable by Couvrette and Robert as express third-party beneficiaries.

28.    The Amended Agreement to Make Payments recites that Ann previously gifted the Trust's shares of Valley View to Mike and me, as shown in Recital B on page 1 of Exhibit 553.  Recital C then states:

> "Ann M. Wisnovsky has determined to amend the Wisnovsky Trust and Valley View and Wisnovsky Land, LLC, which is controlled by Ann M. Wisnovsky, have agreed to amend a Vineyard Lease that exists between them.  <u>Ann M. Wisnovsky's agreement to make such changes is conditioned upon the execution of this Agreement</u>."

(Underline added).  This states that entering into the Amended Agreement to Make Payments was a condition of Ann's "agreement to make such changes" to the Trust and Vineyard Lease.  "Such changes" referred to Ann's Second Trust Amendment and the Second Vineyard Addendum, detailed below.  Ann signed those documents in performance of her agreement with

/ / /

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

Mike, Valley View, and me and in exchange for us entering into the Amended Agreement to Make Payments with Ann's Trust.

29.     The original Agreement to Make Payments required the Wisnovsky Defendants to make certain payments if certain circumstances occurred within the next *five* years, as stated in Exhibit 521.  If, for example, Mike and I were to sell shares of Valley View within five years for more than $750,000, then the excess had to be paid to the Trust or, if Ann was deceased, to "the residuary beneficiaries of the Wisnovsky Trust in the manner provided in such trust."  The Amended Agreement to Make Payments kept those five-year obligations and added additional obligations to make payments for up to ten years from its effective date, as shown on page 2 section 2 of Exhibit 553.  This served Ann's interest of having Mike and me extend our commitment to her Valley View legacy by limiting our incentive to sell; and if we entered into a lucrative sale of the business anyway, it provided for Couvrette and Robert to share in the proceeds.

30.     Mike and I have no intention of ever selling Valley View.

### J.     The Second Vineyard Addendum

31.     Wisnovsky Land and Valley View entered into the Second Vineyard Addendum effective February 23, 2017, as shown in Exhibit 554.  Ann signed the Second Vineyard Addendum as Trustee on behalf of the Trust, which owned Wisnovsky Land, as shown on page 3 of Exhibit 554.  Mike and I signed for Valley View.

32.     The Second Vineyard Addendum increased the rent paid by Valley View for ongoing cultivation of agricultural crops to approximately $200 per acre per year, as stated on pages 1 and 2 of Exhibit 554.  It also authorized use of additional areas of the property for hemp production at a rate of $83.33 per acre per month (about $1,000 per year) plus the lesser of an

Page 10 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

additional $1,000 per acre per year or 5% of the gross sale proceeds from the sale of hemp; and it authorized Valley View to sub-lease part of the property to an entity wholly owned by Valley View, as stated on page 2. These lease amendments substantially increased the rental income Wisnovsky Land stood to receive under the Vineyard Lease.

33.    In reliance on the Second Vineyard Addendum, Mike and I formed Third Generation Farms, LLC ("Third Generation Farms") and began cultivating hemp on the Valley View Property later in 2017.

### K.    The Redemption Agreement

34.    The Redemption Agreement is a contract between the Trust and Wisnovsky Land that Ann signed on behalf of both parties, as shown on page 3 of Exhibit 1225. It refers to the Trust as the "Member" and Wisnovsky Land as the "Company."

35.    The Redemption Agreement states on page 1 of Exhibit 1225 that when Ann dies, Wisnovsky Land will purchase from the Trust one-half of the Trust's ownership interest in Wisnovsky Land. It says the specific purchase price will be from $200,000 to $280,000 and will depend on the number of legal parcels owned by Wisnovsky Land when Ann dies. The purchase price will be paid by Wisnovsky Land executing and delivering a promissory note payable to the Trust, which will be secured by a trust deed recorded against the Valley View Property. The note and trust deed forms attached to the Redemption Agreement and included in Exhibit 1225 have signature blocks for them to be signed by the Trustee of Ann's Trust.

36.    Huycke prepared the Redemption Agreement along with the other February 2017 documents and emailed them all to Mike and me before anyone signed them, as shown in Exhibit 1250. Thus, when Mike, Valley View, and I entered into the Amended Agreement to Make Payments in exchange for the changes to Ann's estate plan set forth in the Second Trust

Page 11 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

Amendment, we had read the Redemption Agreement and understood it was part of the estate plan. The Redemption Agreement and Second Trust Amendment, discussed below, expressed Ann's intent for Couvrette and Robert to inherit from the Trust the payments to be made by Wisnovsky Land pursuant to the note and trust deed attached to the Redemption Agreement, as opposed to having them inherit the membership interests in Wisnovsky Land they would have received under Ann's First Trust Amendment.

## L.    The Second Trust Amendment

37.    The Second Trust Amendment created a new Section 3.3B of Ann's Trust that directed the Trustee to "consummate the transaction described in the Redemption Agreement," thereby creating a "binding commitment for the redemption of one-half of the trust's membership interest in Wisnovsky Land," as shown on page 1 of Exhibit 552.

38.    As further shown in Exhibit 552, the Second Trust Amendment provided that "The trust's remaining membership interest in Wisnovsky Land shall be divided" and "distributed" 50% to Mike and 50% to me. It provided that Couvrette and Robert would each receive an "undivided one-half interest" in the promissory note and trust deed required by the Redemption Agreement, under which Wisnovsky Land would owe $200,000, $240,000, or $280,000, "depending on the number of legal parcels in the real property owned by Wisnovsky Land on the date of closing of the redemption."

39.    Page 2 of Exhibit 552, the Second Trust Amendment, reiterates Section 3.C of the First Trust Amendment, which provided for the residue and remainder of the Trust to be distributed 35% to Couvrette, 35% to Robert, 15% to Mike, and 15% to me. Ann retained that allocation of the valuable Trust residue, which included Ann's home, her monetary assets, and the Griffin Creek Parcels.

Page 12 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

### M.    The Wisnovsky Defendants' Reliance

40.    As described above, the Amended Agreement to Make Payments attached as Exhibit 553 recites that Ann's "agreement to make such changes," i.e., "to amend the Wisnovsky Trust" and "Vineyard Lease," was "conditioned upon the execution of this [Amended Agreement to Make Payments]." Mike and I were presented with this recital and relied on it when we, Valley View, and Ann entered into the Amended Agreement to Make Payments.

41.    Huycke had already given Mike and me a draft of the Second Trust Amendment so there was no question about the nature of the Trust amendments Ann was agreeing to make in exchange for our execution of the Amended Agreement to Make Payments. Our agreement with Ann, as stated in Recital C to the Amended Agreement to Make Payments, was that we would enter into the Amended Agreement to Make Payments in exchange for her signing the Second Trust Amendment and entering into the Second Addendum to Vineyard Lease. The Second Trust Amendment ensured Mike and I would inherit ownership of Wisnovsky Land and its Valley View Property promptly upon Ann's death so we could "protect the winery and vineyard land" and continue her legacy without "Robert or [Couvrette being] able to hurt the winery/vineyard in any way," which is how Huycke described Ann's intent in Exhibit 1224. When Mike, Valley View, and I signed the Amended Agreement to Make Payments, we relied on the terms of the Second Trust Agreement and Ann's agreement that she would sign it in exchange for us signing the Amended Agreement to Make Payments.

42.    Mike, Valley View, and I also relied on the February 2017 documents and the Leases when we set up hemp operations at the Valley View Property. On May 4, 2017, I notified Ann that Valley View was exercising its right to sublease pursuant to the Second Vineyard Addendum and would be subleasing ten acres of land to Third Generation Farms, as

Page 13 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

shown in the notice attached as Exhibit 1227. I enclosed with the notice a copy of Third Generation Farms' Oregon Department of Agriculture (ODA) license. Soon thereafter Third Generation Farms began cultivating hemp at the Valley View Property pursuant to the Second Vineyard Addendum. Ann knew about that and expressed her approval to me on several occasions. Valley View paid tens of thousands of dollars of additional rent to Wisnovsky Land under the Second Vineyard Addendum as a result of the hemp cultivation by Third Generation Farms.

43.     In April 2017, Ann signed two other documents upon which Mike, Valley View, and I relied. The first, attached as Exhibit 1024, documented Ann's consent for us to pay Ann's personal expenses in lieu of Valley View's monthly lease payments under the Winery Lease, Vineyard Lease, or any hemp field sublease. The second, attached as Exhibit 1226, was an *Agreement for Changes to Buildings*. The Agreement for Changes to Buildings consented to Valley View and Third Generation Farms, LLC improving the barn, winery building, or warehouse. Mike, Valley View, and I relied on these "2017 consent documents" by continuing to perform the Leases and pay Ann's personal expenses as rent and by improving the barn and warehouse for hemp production.

### N.     The Third Trust Amendment

44.     On July 28, 2017, Ann signed the *Third Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Third Trust Amendment"), which states it superseded the First and Second Trust Amendments, rendering them null. The Third Trust Amendment is attached as Exhibit 556. The Third Trust Amendment removed Couvrette from her position as co-trustee, leaving Ann as sole Trustee of her Trust. It revoked Section 9.1 of the Trust, which

/ / /

Page 14 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

had previously allowed Couvrette to appoint a successor trustee, and named George Wisnovsky and Stephen Wisnovsky as Ann's successor trustees.

45.     Of critical importance, the Third Trust Amendment attached as Exhibit 556 included the same text of section 3.3B that was introduced in the Second Trust Amendment, which provided for Mike and me to receive full ownership of Wisnovsky Land upon Ann's death and for Couvrette and Robert to receive a promissory note and trust deed for up to $280,000. The Third Trust Amendment reiterated and did not contradict that aspect of the Second Trust Amendment.  Ann executed the Third Trust Amendment without informing Mike and me about it, and we did not learn of it until November 2020.

### O.     Couvrette's Reversal and Takeover of Ann's Estate Plan

46.     In 2018, I began to observe signs that Ann's mental capacity had begun to decline.  It appeared she was beginning to lose her short-term memory and had difficulty remembering the details of her estate plan.

47.     Between February and May 31, 2019, Couvrette arranged for Ann to visit her in San Diego, California.  On May 22, 2019, while Ann was visiting Couvrette in San Diego, Ann signed the letter to Huycke attached as Exhibit 1228, terminating his representation.

48.     On May 31, 2019, the day Ann flew back to her home in Oregon, Couvrette caused Ann to sign the *Fourth Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Fourth Trust Amendment") attached as Exhibit 560.

49.     Interrogatory responses from Couvrette attached as Exhibit 1248 certify on page 15 that "Ann Wisnovsky *dictated* the terms to be included in the Fourth Amendment to the Trust to [Couvrette], who typed and prepared the document at Ann's direction on or around May 30, 2019."  (Italics added).

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

50.    The Fourth Trust Amendment, attached as Exhibit 560, purported to nullify the First, Second, and Third Trust Amendments, restore Couvrette as co-trustee, and provide for all Trust assets (other than personal property) to be distributed entirely to Couvrette and Robert, without any distribution to Mike or me.  Couvrette kept secret and did not disclose the Fourth Trust Amendment to Mike and me until November 2020.  Mike and I dispute the validity and effectiveness of the Fourth Trust Amendment, as stated on pages 8 through 12, 23, 31, and 34 of our counterclaims filed in this lawsuit as ECF 115.

51.    On June 18, 2019, I visited Ann at her home.  During the visit, Ann asked me to call Huycke.  Ann told me that Couvrette had taken her to meet with a new attorney.  Ann did not know the name of her new attorney and could not recall any details of the meeting with that attorney.

52.    On June 20, 2019, I received two voicemails from Ann, which are transcribed in the attached Exhibit 1155.  In the first voicemail, Ann stated she was "not going to any attorney that [Couvrette] called."  Ann said, "Please come back . . . I am going to tell her to cancel everything. . . .  I did not call for anything to happen."  Later that day, I received the second voicemail from Ann transcribed in Exhibit 1155, in which she stated, "I have a call to [Couvrette] telling her to stop.  I am not changing anything . . . .  I don't know what I am going to do in the future but I don't want to change anything."

## P.    The Fifth Trust Amendment

53.    On June 8, 2019, less than two weeks after Ann signed the Fourth Trust Amendment, she signed the *Fifth Amendment to the Ann M. Wisnovsky Trust* ("Fifth Trust Amendment"), drafted by Oregon attorney Gary Turner and attached as Exhibit 564.  The Fifth Trust Amendment purported to limit Ann's freedom by prohibiting her from binding the Trust

Page 16 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

without Couvrette's signature as co-trustee. Couvrette kept secret and did not disclose the Fifth Trust Amendment to Mike or me until November of 2020. We dispute the validity and enforceability of the Fifth Trust Amendment, as stated on pages 8 to 12, 23, 31, and 34 of our counterclaims on file with the Court as ECF 114.

### Q.    Couvrette's Revocation of the Redemption Agreement

54.    On July 2, 2019, Ann and Couvrette signed the *Revocation and Termination of Redemption Agreement* prepared by Turner and attached as Exhibit 577, which purported to revoke the Redemption Agreement. Couvrette kept this a secret from Mike and me, and we did not learn about it until November 2020.

### R.    Couvrette's Sequestration of Ann in California

55.    On July 4, 2019, Couvrette flew Ann from her home of nearly fifty years in Oregon to San Diego, California and took away Ann's cellular phone so Mike and I could not call her. The only way Ann could communicate with Mike and me when Couvrette was not present was through Couvrette's Alexa unit or a housekeeper's cellular phone, and when Ann did she repeatedly expressed her desire to return home to Oregon.

### S.    The Sixth Trust Amendment

56.    On November 13, 2019, Couvrette and Ann, while in San Diego, signed the *Sixth Amendment to the Ann M. Wisnovsky Trust* ("Sixth Trust Amendment"), attached as Exhibit 622 and prepared by Turner, that purported to prohibit Ann from amending or revoking any aspect of her Trust without Couvrette's acceptance and signature. This effectively completed Couvrette's takeover of Ann's estate plan. Couvrette kept this a secret from Mike and me, and we did not learn about it until November 2020.

/ / /

Page 17 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

**T.    The Trust's Breach of Inheritance Contract**

57.    Ann died on March 16, 2023.  The Trust has not transferred ownership of Wisnovsky Land to Mike and me as required by the inheritance contract.  The current registered manager of Wisnovsky Land is "Joanne Couvrette, as Trustee of the Ann M Wisnovsky Trust u/t/a/d August 2, 2012 as amended" as stated in the Amended Annual Report attached as Exhibit 1253, which I obtained from the Oregon Secretary of State's online business registration for Wisnovsky Land.  Before that, Wisnovsky Land's March 30, 2016 Articles of Organization and February 11, 2019 Amended Annual Report, attached as Exhibits 1251 and 1252, describe Wisnovsky Land as a member-managed LLC and identify Ann, in her capacity as Trustee, as its only member.

58.    Between April 1, 2016, and February 23, 2017, Valley View paid rent due under the Leases by paying $20,745.10 of Ann's personal expenses.  This was about $5,000 more than the amount due under the Leases during that time period.  And between April 2016 and January 27, 2023, Valley View paid over $209,695.69 in rent pursuant to the Leases.

59.    Ann never offered to return any of the money Valley View paid for her personal expenses as rent or as rent pursuant to the Leases.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 18 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

60.     If I ever incur any payment obligations pursuant to the Amended Agreement to Make Payments, or any other aspect of the inheritance contract, I stand ready, willing, and able to perform them.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND THAT IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

DATED: January 31, 2025

*Mark Wisnovsky*

_____

Mark Wisnovsky

Page 19 - DECLARATION OF MARK WISNOVSKY (JAN. 31, 2025)

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, I caused to be served a copy of the foregoing **DECLARATION OF MARK WISNOVSKY (JAN.31, 2025)** on the following person(s) in the manner indicated below:

Stephen M. Brigandi
3624 Caminito Cielo Del Mar
San Diego, CA 92130
Brigandilaw@gmail.com

*Attorneys for Plaintiffs/Counter-Defendants Joanne Couvrette, Wisnovsky Land LLC, and Michelle Sullivan*

James Dole
Watkinson Laird Rubenstein PC
1246 NE 7th St., Ste. B
Grants Pass, OR 97525
jdole@wlrlaw.com

*Attorney for Defendant Mark Wisnovsky, Michael Wisnovsky and Valley View Winery*

Timothy Murphy
Murphy Law Group, PC
333 NE Russell St., Ste. 200
Portland, OR 97212
tim@oregonlandlord.net

*Attorneys for Plaintiffs/Counter-Defendants Joanne Couvrette, Wisnovsky Land LLC, and Michelle Sullivan*

by the following method(s):

 xx       by **emailing** a full, true and correct copy thereof to the parties at the email addresses shown above, which are the last-known email addresses of the parties, on the date set forth below.

 xx       by **e-service via CM/ECF** on the date set forth below.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it may be used as evidence in court and is subject to penalty for perjury.

DATED: January 31, 2025

 */s/ Jami Asay*
Jami Asay, Paralegal

**Page 1 - CERTIFICATE OF SERVICE**

Document Ref: BVVIS-JY3ET-J5XBF-EWXJQ

# Signature Certificate

Reference number: BVVIS-JY3ET-J5XBF-EWXJQ

| Signer | Timestamp | Signature |
|---|---|---|
| **Mark Wisnovsky**<br>Email: markawisnovsky@gmail.com | | |

| | | |
|---|---|---|
| Sent: | 31 Jan 2025 23:17:51 UTC | |
| Viewed: | 31 Jan 2025 23:18:10 UTC | |
| Signed: | 31 Jan 2025 23:22:51 UTC | |

**Recipient Verification:**

✔ Email verified    31 Jan 2025 23:18:10 UTC

IP address: 92.21.122.203
Location: Edinburgh, United Kingdom

Document completed by all parties on:
31 Jan 2025 23:22:51 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 50,000+ companies worldwide.

