

# ADDENDUM TO AND ASSIGNMENT BY LANDLORD
## WINERY LEASE

**Effective Date:** _____, 2016

| | | |
|---|---|---|
| **Between:** | THE ANN M. WISNOVSKY TRUST, UTD AUGUST 2, 2012 1352 Applegate Road Jacksonville, OR 97530 | ("Landlord") |
| **And:** | WISNOVSKY LAND, LLC, an Oregon limited liability company 1352 Applegate Road Jacksonville, OR 97530 | ("Assignee") |
| **And:** | VALLEY VIEW WINERY, INC., an Oregon corporation 1000 Upper Applegate Road Jacksonville, OR 97530 | ("Tenant") |

**Recitals:**

A.    Landlord and Tenant are parties to a lease dated effective March 24, 2016 ("Lease").

B.    Landlord has conveyed the real property that is subject to the Lease to Assignee, and Landlord desires to assign its interest in the Lease to Assignee.

C.    Landlord and Tenant desire to modify the real property description set forth in Exhibit A to the Lease.

**Agreements:**

1.    Landlord assigns all of its interest as Landlord under the Lease to Assignee. Assignee accepts such assignment and agrees to pay and perform all of the Landlord's obligations under the Lease. Landlord is released and discharged from all liabilities and obligations under the Lease.

///

///

///

1 - ADDENDUM TO AND ASSIGNMENT BY LANDLORD; WINERY LEASE

2.    Tenant and Assignee agree that **Exhibit A**, attached hereto, is substituted and replaces Exhibit A, which is attached to the Lease.

IN WITNESS, the parties have executed this agreement to be effective on the date set forth above.

Landlord:                              Tenant:

THE ANN M. WISNOVSKY TRUST,            VALLEY VIEW WINERY, INC.
UTD AUGUST 2, 2012

By: _____         By: _____
    Ann M. Wisnovsky, Trustee             Mark A. Wisnovsky, President

                                       By: _____
                                           Michael J. Wisnovsky,
                                           Vice President/Secretary

Assignee:

WISNOVSKY LAND, LLC

By: THE ANN M. WISNOVSKY, TRUST,
    UTD AUGUST 2, 2012

By: _____
    Ann M. Wisnovsky, Trustee

2 - ADDENDUM TO AND ASSIGNMENT BY LANDLORD; WINERY LEASE

## EXHIBIT "A"

Real property in the County of Jackson, State of Oregon, described as follows:

TRACT A:

COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 89° 44' 41" WEST 1112.65 FEET TO A 1.5 INCH INSIDE DIAMETER IRON PIPE (RECORD 2 INCH PIPE), FROM WHICH THE CENTER OF A 48 INCH DIAMETER OAK TREE BEARS NORTH 47° EAST 21.4 FEET (RECORD 20.0 FEET), SAID PIPE MARKING THE SOUTHWEST CORNER OF SAID PARCEL DESCRIBED IN DOCUMENT NO. 78-08539; THENCE CONTINUING ALONG THE WESTERLY, NORTHERLY, AND EASTERLY BOUNDARY OF SAID DESCRIBED PARCEL THE FOLLOWING; NORTH 6° WEST 1574.0 FEET, MORE OR LESS, TO THE NORTH LINE OF LOT 4 OF SAID SECTION 33; THENCE EAST 1336 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF LOT 4 OF SECTION 34, SAID TOWNSHIP AND RANGE; THENCE NORTH 608 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF LOT 3 OF SAID SECTION 34; THENCE EAST 736.8 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE, ALONG SAID RIGHT OF WAY BOUNDARY, SOUTH 7° 13' 10" WEST 1837.72 FEET TO A POINT OF CURVE; THENCE ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 3° 38' 17" WEST 242.34 FEET) A DISTANCE OF 242.50 FEET TO THE POINT OF BEGINNING.

NOTE: This Legal Description was created prior to January 01, 2008.

# WINERY LEASE

**Effective Date:** *March 24,* 2016

**Between:**    THE ANN M. WISNOVSKY TRUST,       ("Landlord")
UTD AUGUST 2, 2012
1352 Applegate Road
Jacksonville, OR 97530

**And:**    VALLEY VIEW WINERY, INC., an       ("Tenant")
Oregon corporation
1000 Upper Applegate Road
Jacksonville, OR 97530

Landlord leases to Tenant and Tenant leases from Landlord the following described property (the "Premises") on the terms and conditions stated below:

> THE EVENT SITE, WINERY BUILDINGS AND WAREHOUSE, THE LAND UNDER AND IMMEDIATELY SURROUNDING SUCH BUILDINGS AND THE TASTING ROOM AND THE WINERY PARKING LOT. THE PREMISES ARE LOCATED ON A PORTION OF THE REAL PROPERTY DESCRIBED IN **EXHIBIT A**. THE PREMISES ARE DEPICTED ON THE MAP ATTACHED AS **EXHIBIT B**.

The Tenant shall have the right of ingress and egress over and across the real property described in Exhibit A as reasonably necessary to access the Premises.

This lease supersedes all prior leases and tenancies for the Premises, which are of no further force or effect.

**Section 1.**    **Occupancy and Commencement Date**

**1.1**    **Original Term.** The term of this lease shall commence on the date hereof and shall continue for 10 years, unless sooner terminated as hereinafter provided.

**1.2**    **Possession.** Tenant's right to possession and obligations under the lease shall commence on the commencement date described in paragraph 1.1 above.

**1.3**    **Renewal Option.** If the lease is not in default at the time each option is exercised or at the time the renewal term is to commence, Tenant shall have the option to renew this lease for 8 successive terms of 10 years, each, as follows:

(1)    Each of the renewal terms shall commence on the day following expiration of the preceding term.

1 – WINERY LEASE

(2)     The option will be automatically exercised unless written notice to Landlord is given for review not less than 180 days prior to the last day of the expiring term. The giving of such notice, not to renew, shall be sufficient to make the lease termination binding for the renewal term without further act of the parties.

(3)     The terms and conditions of the lease for each renewal term shall be identical with the original term except for rent. Rent for a renewal term shall be continued from the original term with escalation calculated in the same manner as during the original term.

## Section 2.     Rent

**2.1     Base Rent.** Subject to escalation as provided in Secton 3, during the original term, Tenant shall pay to Landlord as base rent the sum of $1,000.00 per month. Rent shall be payable on the first day of each month in advance at such place as may be designated by Landlord. If rent paid after the first day of the month, a five percent (5%) late fee will be due as additional rent.

**2.2     Additional Rent.** All taxes, insurance costs, utility charges that Tenant is required to pay by this lease, and any other sum that Tenant is required to pay to Landlord or third parties shall be additional rent.

## Section 3.     Escalation

Effective on the first day of the 61st month of the initial term of this lease and on the first day of each 61st month thereafter, monthly base rent shall be increased by an amount equal to ten percent (10%) of the monthly base rent paid during the preceding 60 month period.

## Section 4.     Use of the Premises

**4.1     Permitted Use.** The Premises shall be used for the production, storage and sale of wine, as an event center and for related uses. No other uses shall be made of the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

**4.2     Restrictions on Use.** In connection with the use of the Premises, Tenant shall:

(1)     Conform to all applicable laws and regulations of any public authority affecting the Premises and the use, and correct at Tenant's own expense any failure of compliance created through Tenant's fault or by reason of Tenant's use, but Tenant shall not be required to make any structural changes to effect such compliance unless such changes are required because of tenant's specific use.

(2)     Lessee will not allow any activity that would make it impossible to insure the Premises against casualty, would increase the insurance rate, or would prevent Landlord from taking advantage of any ruling of the Oregon Insurance Rating Bureau, or

2 – WINERY LEASE

its successor. It is Tenant's responsibility to pay the additional cost of the insurance as provided in Section 7.

(3)    Refrain from any use that would be reasonably offensive to other tenants or owners or users of neighboring premises or that would tend to create a nuisance or damage the reputation of the Premises.

(4)    Refrain from loading the electrical system or floors beyond the point considered safe by a competent engineer or architect selected by Landlord.

(5)    Shall not make any marks on or attaching any sign, insignia, antenna, aerial, or other device to the exterior or interior walls, windows, or roof of the Premises without the written consent of Landlord.

(6)    Tenant shall not cause or permit any Hazardous Substance to be spilled, leaked, disposed of, or otherwise released on or under the Premises. Tenant may use or otherwise handle on the Premises only those Hazardous Substances typically used or sold in the prudent and safe operation of the business specified in Section 4.1. Tenant may store such Hazardous Substances on the Premises only in quantities necessary to satisfy Tenant's reasonably anticipated needs. Tenant shall comply with all Environmental Laws and exercise the highest degree of care in the use, handling, and storage of Hazardous Substances and shall take all practicable measures to minimize the quantity and toxicity of Hazardous Substances used, handled, or stored on the Premises. Upon the expiration or termination of this Lease, Tenant shall remove all Hazardous Substances from the Premises. The term Environmental Law shall mean any federal, state, or local statute, regulation, ordinance or any judicial or other governmental order pertaining to the protection of health, safety or the environment. The term Hazardous Substance shall mean any hazardous, toxic, infectious or radioactive substance, waste, and material as defined or listed by any Environmental Law and shall include, without limitation, petroleum oil and its fractions.

## Section 5.    Repairs and Maintenance

**5.1    Landlord's Obligations.** The Landlord shall have no responsibility or obligations for repairs and maintenance. The Tenant is responsible for all repairs and maintenance.

**5.2    Tenant's Obligations.** Tenant shall perform all maintenance and repairs to the Premises, including without limitation the following:

(1)    Repairs and maintenance of the roof and gutters, exterior walls (including painting), bearing walls, structural members, floor slabs, and foundation.

(2)    Repair and maintenance of exterior water, sewage, gas, and electrical services up to the point of entry to the leased Premises.

3 – WINERY LEASE

(3)    Repair of interior walls, ceilings, doors, windows, and related hardware, light fixtures, switches, and wiring and plumbing from the point of entry to the Premises.

(4)    Any repairs necessitated by the negligence of Tenant, its agents, employees, and invitees, except as provided in Section 7.2 dealing with waiver of subrogation.

(5)    Ordinary maintenance of the heating and air conditioning system and any repairs necessary because of improper maintenance.

(6)    Ordinary maintenance of exterior grounds including landscaping, parking lot maintenance, and striping.

(7)    Any repairs or alterations required under Tenant's obligation to comply with laws and regulations as set forth in Section 4.2 (1).

(8)    All other repairs necessary to maintain the Premises in good condition and repair.

**5.3**    **Reimbursement for Repairs Assumed.**  If Tenant fails or refuses to make repairs that are required by this Section 5, Landlord may make the repairs and charge the actual costs of repairs to Tenant plus 10%, such expenditures by Landlord shall be reimbursed by Tenant on demand together with interest at the rate of 12% per annum from the date of expenditure by Landlord.  Except in an emergency creating an immediate risk of personal injury or property damage, Landlord may not perform repairs which are the obligation of Tenant and charge Tenant for the resulting expense unless at least ten days before work is commenced, and Tenant is given notice in writing outlining with reasonable particularity the repairs required, and Tenant fails within that time to initiate such repairs in good faith.

**5.4**    **Inspection of Premises.**  Landlord shall have the right to inspect the Premises at any reasonable time or times to determine the necessity of repair.

**Section 6.**    **Alterations**

**6.1**    **Alterations Prohibited.**  Tenant shall make no improvements or alterations on the Premises of any kind without first obtaining Landlord's written consent, which shall not be unreasonably withheld.  All alterations shall be made in a good and workmanlike manner, and in compliance with applicable laws and building codes.  As used herein, "alterations" includes the installation of computer and telecommunications wiring, cables, and conduit.

**6.2**    **Ownership and Removal of Alterations.**  All improvements and alterations performed on the Premises by either Landlord or Tenant shall be the property of Landlord when installed unless the applicable Landlord's consent or work sheet specifically provides otherwise.  Improvements and alterations installed by tenant shall,

4 – WINERY LEASE

at Landlord's option, be removed by Tenant and the Premises restored unless the applicable Landlord's consent or work sheet specifically provides otherwise.

**Section 7.    Insurance**

**7.1    Insurance Required.**  Tenant shall keep Premises insured at Tenant's expense against fire and other risks covered by a standard fire insurance policy with an endorsement for extended coverage, for full replacement value, with the Landlord named as the loss payee thereon.  Tenant shall bear the expense of any insurance insuring the property of Tenant on the Premises against such risks but shall not be required to insure.

**7.2    Waiver of Subrogation.**  Neither party shall be liable to the other (or to the other's successors or assigns) for any loss or damage caused by fire or any of the risks enumerated in a standard fire insurance policy with an extended coverage endorsement, and in the event of insured loss, neither party's insurance company shall have a subrogated claim against the other.  This waiver shall be valid only if the insurance policy in question expressly permits waiver of subrogation or if the insurance company agrees in writing that such a waiver will not affect coverage under the policies.  Each party agrees to use best efforts to obtain such an agreement from its insurer if the policy does not expressly permit a waiver of subrogation.

**7.3    Liability Insurance.**  Tenant shall obtain and keep continuously in force during the term of this lease a comprehensive liability insurance policy naming Landlord as an additional named insured to protect against loss by reason of injury to persons or damage to property of third persons with personal injury limits of not less than $2,000,000.00 for each person, $2,000,000.00 for each occurrence, and $2,000,000.00 for property damage, and provide to Landlord certificates of such coverage.  Such insurance shall cover losses and claims due to operations that include the sale or serving of alcoholic beverages.

**Section 8.    Taxes; Utilities**

**8.1    Property Taxes.**  Tenant shall pay as due all taxes on its personal property located on the Premises.  Tenant shall pay as due all real property taxes and special assessments levied against the Premises.  As used herein, real property taxes include any fee or charge relating to the ownership, use, or rental of the Premises, other than taxes on the net income of Landlord or Tenant.

**8.2    Special Assessments.**  If an assessment for a public improvement is made against the Premises, Landlord may elect to cause such assessment to be paid in installments, in which case all of the installments payable with respect to the lease term shall be treated the same as general real property taxes for purposes of Section 8.1.

**8.3    Contest of Taxes.**  Tenant shall be permitted to contest the amount of any tax or assessment as long as such contest is conducted in a manner that does not cause any risk that Landlord's interest in the Premises will be foreclosed for nonpayment.  Landlord shall cooperate in any reasonable manner with such contest by Tenant.

5 – WINERY LEASE

**8.4    Proration of Taxes.** Tenant's shall pay the taxes and assessments for the February and May installments of the current tax year that this lease is in effect.

**8.5    New Charges or fees.** If a new charge or fee relating to the ownership or use of the Premises or the receipt of rental there from or in lieu of property taxes is assessed or imposed, then, to the extent permitted by law, Tenant shall pay such charge or fee. Tenant, however, shall have no obligation to pay any income, profits, or franchise tax levied on the net income derived by Landlord from this lease.

**8.6    Payment of Utilities Charges.** Tenant shall pay when due all charges for services and utilities incurred in connection with the use, occupancy, operation, and maintenance of the Premises, including (but not limited to) charges for fuel, water, gas, electricity, sewage disposal, power, refrigeration, air conditioning, telephone, refuse removal and janitorial services. If any utility services are provided by or through Landlord, charges to Tenant shall be comparable with prevailing rates for comparable services. If the charges are not separately metered or stated, Landlord shall apportion the charges on an equitable basis, and Tenant shall pay its apportioned share on demand.

**Section 9.    Damage and Destruction**

**9.1    Partial Damage.** If the Premises are partly damaged, and Section 9.2 does not apply, the Premises shall be repaired by Landlord at Landlord's expense. Repairs shall be accomplished with all reasonable dispatch subject to interruptions and delays from labor disputes and matters beyond the control of Landlord.

**9.2    Destruction.** If any structure on the Premises is destroyed or damaged such that the cost of repair exceeds one-third of the value of structure before the damage, either party may elect to terminate the lease as of the date of the damage or destruction by notice given to the other in writing not more than 45 days following the date of damage. In such event all rights and obligations of the parties shall cease as of the date of termination, and Tenant shall be entitled to the reimbursement of any prepaid amounts paid by Tenant and attributable to the anticipated term. If neither party elects to terminate, Landlord shall proceed to restore the Premises to substantially the same form as prior to the damage or destruction. Work shall be commenced as soon as reasonably possible and thereafter shall proceed without interruption except for work stoppages on account of labor disputes and matters beyond Landlord's reasonable control.

**9.3    Rent Abatement.** Rent shall be abated during the repair of any damage to the extent the Premises are untenantable, except that there shall be no rent abatement where the damage occurred as the result of the fault of Tenant.

**9.4    Damage Late in Term.** If damage or destruction to which Section 9.2 would apply occurs within one year before the end of the then-current lease term, Tenant may elect to terminate the lease by written notice to Landlord given within 30 days after the date of the damage. Such termination shall have the same effect as termination by Landlord under Section 10.1 (1).

6 – WINERY LEASE

**Section 10.    Eminent Domain**

    **10.1    Partial Taking.** If a portion of the Premises is condemned and Section 10.2 does not apply, the lease shall continue on the following terms:

    (1)    Landlord shall be entitled to all of the proceeds of condemnation, and Tenant shall have no claim against Landlord as a result of the condemnation.

    (2)    Landlord shall proceed as soon as reasonably possible to make such repairs and alterations to the Premises as are necessary to restore the remaining Premises to a condition as comparable as reasonably practicable to that existing at the time of the condemnation.

    (3)    After the date on which title vests in the condemning authority or an earlier date on which alterations or repairs are commenced by Landlord to restore the balance of the Premises in anticipation of taking, the rent shall be reduced in proportion to the reduction in value of the Premises as an economic unit on account of the partial taking. If the parties are unable to agree on the amount of the reduction of rent, the amount shall be determined by arbitration in the manner provided in Section 18.

    (4)    If a portion of Landlord's property not included in the Premises is taken, and severance damages are awarded on account of the Premises, or an award is made for detriment to the Premises as a result of activity by a public body not involving a physical taking of any portion of the Premises, this shall be regarded as a partial condemnation to which Sections 10.1 (1) and 10.1 (3) apply, and the rent shall be reduced to the extent of reduction in rental value of the Premises as though a portion had been physically taken.

    **10.2    Total Taking.** If a condemning authority takes all of the Premises or a portion sufficient to render the remaining Premises reasonable unsuitable for the use that Tenant was then making of the Premises, the lease shall terminate as of the date the title vests in the condemning authorities. Such termination shall have the same effect as a termination under Section 10.1 (1). Landlord shall be entitled to all of the proceeds of condemnation, and Tenant shall have no claim against Landlord as a result of the condemnation.

    **10.3    Sale in Lieu of Condemnation.** Sale of all or part of the Premises to a purchaser with the power of eminent domain in the face of a threat of probability of the exercise of the power shall be treated for the purposes of this Section 10 as a taking by condemnation.

**Section 11.    Liability and Indemnity**

    **11.1    Liens**

    (1)    Except with respect to activities for which Landlord is responsible, Tenant shall pay as due all claims for work done on and for services rendered or material furnished to the Premises, and shall keep the Premises free from any liens. If Tenant fails

7 – WINERY LEASE

to pay any such claims or discharge any lien, Landlord may do so and collect the cost as additional rent.  Any amount so added shall bear interest at the rate of 12% per annum from the date expended by Landlord and shall be payable on demand.  Such action by Landlord shall not constitute a waiver of any right or remedy, which Landlord may have on account of Tenant's default.

(2)    Tenant may withhold payment of any claim in connection with a good-faith dispute over the obligation to pay, as long as Landlord's property interests are not jeopardized.  If a lien is filed as a result of nonpayment, Tenant shall, within ten days after knowledge of the filing, secure the discharge of the lien or deposit with Landlord cash or sufficient corporate surety bond or other surety satisfactory to Landlord in an amount sufficient to discharge the lien plus any costs, attorney fees, and other charges that could accrue as a result of a foreclosure or sale under the lien.

**11.2    Indemnification.**  Tenant shall indemnify and defend Landlord from any claim, loss, or liability arising out of or related to any activity of Tenant on the Premises or any condition of the Premises in the possession or under the control of Tenant including any such claim, loss, or liability that may be caused or contributed to in whole or in part by Landlord's own negligence.  Landlord shall have no liability to Tenant for any injury, loss, or damage caused by third parties, or by any condition of the Premises except to the extent caused by Landlord's gross negligence or willful breach of duty under this lease.

**Section 12.    Quiet Enjoyment; Mortgage Priority**

**12.1    Landlord's Warranty.**  Landlord warrants that it is the owner of the Premises and has the right to lease them.  Landlord will defend Tenant's right to quiet enjoyment of the Premises from the lawful claims of all persons during the lease term.

**12.2    Mortgage Priority.**  Any deed of trust, mortgage or other lien ("Mortgage") granted by Landlord which affects the Premises shall be and remain, as it may be modified or extended, at all times, a lien or charge on the Premises prior and superior to the lien or charge of this lease.

**12.3    Attornment.**  In the event the holder of any Mortgage forecloses its lien, exercises any power of sale, or exercises any other remedy under any loan documents encumbering the Premises, or in the event of conveyance of title to the Premises by deed in lieu of foreclosure, Tenant agrees to accept and attorn to the purchaser of the Premises, and its successors and assigns as the new Landlord of the Premises, and, until terminated pursuant to its provisions, this lease shall continue in full force and effect as a direct lease between such purchaser and its successors and assigns and Tenant, with privity of contract and with the same force and effect as if this lease had initially been entered into between them.

**12.4    Estoppel Certificate.**  Either party will, within twenty days after notice from the other, execute and deliver to the other party a certificate stating whether or not this lease has been modified and is in full force and effect and specifying any modifications or alleged breaches by the other party.  The certificate shall  also state the

8 – WINERY LEASE

amount of monthly base rent, the dates to which rent has been paid in advance, and the amount of any security deposit or prepaid rent. Failure to deliver the certificate within the specified time shall be conclusive upon the party from whom the certificated was requested that the lease is in full force and effect and has not been modified except as represented in the notice requesting the certificate.

## Section 13.    Assignment and Subletting

No part of the Premises may be assigned, mortgaged, or subleased, nor may a right of use of any portion of the property be conferred on any third person by any other means, without the prior written consent of Landlord. This provision shall apply to all transfers by operation of law. If Tenant is a corporation or partnership, this provision shall apply to any transfer of a majority voting interest in stock or partnership interest of Tenant. No consent in one instance shall prevent the provision from applying to a subsequent instance. Landlord may withhold or condition such consent in its sole and arbitrary discretion. In determining whether to consent to assignment Landlord may consider the following factors: financial ability of assignee; business experience of assignee; and any other factor deemed relevant and reasonable by Landlord.

## Section 14.    Default

The following shall be events of default:

**14.1    Default in Rent.** Failure of Tenant to pay any rent or other charge within ten days after notice to Tenant that it is due.

**14.2    Default in Other Covenants.** Failure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges) within twenty days after written notice by Landlord specifying the nature of the default with reasonable particularity. If the default is of such a nature that it cannot be completely remedied within the twenty-day period, this provision shall be complied with if Tenant begins correction of the default within the twenty-day period and thereafter proceeds with reasonable diligence and in good faith to effect the remedy as soon as practicable.

**14.3    Insolvency.** Insolvency of Tenant; and assignment by Tenant for the benefit of creditors; the filing by Tenant of a voluntary petition in bankruptcy; and adjudication that Tenant is bankrupt or the appointment of a receiver of the properties of Tenant; the filing of any involuntary petition of bankruptcy and failure of Tenant to secure a dismissal of the petition within thirty days after filing; attachment of or the levying of execution on the leasehold interest and failure of Tenant to secure discharge of the attachment or release of the levy of execution within ten days shall constitute a default. If the lease has been assigned, the events of default so specified shall apply only with respect to the one then exercising the rights of Tenant under the lease.

**14.4    Abandonment.** Failure of Tenant for seven days or more to occupy the Premises for one or more of the purposes permitted under this lease, unless such failure is excused under other provisions of this lease.

9 – WINERY LEASE

## Section 15.    Remedies on Default

**15.1    Termination.** In the event of a default the lease may be terminated at the option of Landlord by written notice to Tenant. Whether or not the lease is terminated by the election of Landlord or otherwise, Landlord shall be entitled to recover damages from Tenant for the default, and Landlord may reenter, take possession of the Premises, and remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.

**15.2    Reletting.** Following reentry or abandonment, Landlord may relet the Premises and in that connection may make any suitable alterations or refurbish the Premises, or both, or change the character or use of the Premises, but Landlord shall not be required to relet for any use or purpose other than that specified in the lease or which Landlord may reasonably consider injurious to the Premises, or to any Tenant that Landlord may reasonably consider objectionable. Landlord may relet all or part of the Premises, alone or in conjunction with other properties, for a term longer or shorter than the term of this lease, upon any reasonable terms and conditions, including the granting of some rent-free occupancy or other rent concession.

**15.3    Damages.** In the event of the termination or retaking of possession following default, Landlord shall be entitled to recover immediately, without waiting until the due date of any future rent or until the date fixed for expiration of the lease term, the following amounts as damages:

(1)    The loss of rental from the date of default until a new Tenant is, or with the exercise of reasonable efforts could have been, secured and paying out.

(2)    The reasonable costs of reentry and reletting including without limitation the cost of and cleanup, refurbishing, removal of Tenant's property and fixtures, costs incurred under Section 15.5, or any other expense occasioned by Tenant's default including but not limited to, any remodeling or repair costs, attorney fees, court costs, broker commissions, and advertising costs.

(3)    Any excess of the value of the rent and all of Tenant's other obligations under this lease over the reasonable expected return from the Premises for the period commencing on the earlier continuing through the end of the term. The present value of future amounts will be computed using a discount rate equal to the prime loan rate of major Oregon banks in effect on the date of the written declaration of default by Landlord.

**15.4    Right to Sue More Than Once.** Landlord may sue periodically to recover damages during the period corresponding to the remainder of the lease term, and no action for damages shall bar a later action for damages subsequently accruing.

**15.5    Landlord's Right to Cure Defaults.** If Tenant fails to perform any obligation under this lease, Landlord shall have the option to do so after thirty days written notice to Tenant. All of Landlord's expenditures to correct the default shall be reimbursed by Tenant on demand with interest at the rate of 12% annum from the date of

10 – WINERY LEASE

expenditure by Landlord. Such action by landlord shall not waive any other remedies available to Landlord because of the default.

**15.6    Remedies Cumulative.** The foregoing remedies shall be in addition to and shall not exclude any other remedy available to Landlord under applicable law.

## Section 16.    Surrender on Expiration

**16.1    Condition of Premises.** Upon expiration of the lease term or earlier termination on account of default, Tenant shall deliver all keys to landlord and surrender the Premises in good condition and repair, reasonable wear and tear excepted. Alterations constructed by Tenant with permission from Landlord shall not be removed or restored to the original condition unless the terms of permission for the alteration so require. Depreciation and wear from ordinary use for the purpose for which Tenant is responsible shall be completed to the latest practical date prior to such surrender. Tenant's obligations under this section shall be subordinate to the provisions of Section 9 relating to destruction.

**16.1    Fixtures**

(1)    All fixtures placed upon the Premises, prior to and during the term, shall, at Landlord's option, become the property of Landlord. If Landlord so elects, Tenant shall remove any or all fixtures that would otherwise remain the property of Landlord, and shall repair any physical damage resulting from the removal. If Tenant fails to remove such fixtures, Landlord may do so and charge the cost to Tenant with interest at the legal rate from the date of expenditure.

(2)    Prior to expiration or other termination of the lease term Tenant shall remove all furnishings and furniture that remain its property. If Tenant fails to do so, this shall be an abandonment of the property, and Landlord may retain the property and all rights of Tenant with respect to it shall cease or, by notice in writing given to Tenant within twenty days after removal was required, Landlord may elect to hold Tenant to its obligation of removal. If Landlord elects to require Tenant to remove, Landlord may effect a removal and place the property in public storage for Tenant's account. Tenant shall be liable to Landlord for the cost of removal, transportation to storage, and storage, with interest at the legal rate on all such expenses from the date of expenditure by Landlord.

**16.2    Holdover**

(1)    If Tenant does not vacate the Premises at the time required, Landlord shall have the option to treat Tenant as a Tenant from month to month, subject to all provisions of this lease except the provisions for term and renewal and at a rental rate equal the rent last paid by Tenant during the original term, or to eject Tenant from the Premises and recover damages caused by wrongful holdover. Failure of Tenant to remove fixtures, furniture, furnishings, or trade fixtures that Tenant is required to remove under this lease shall constitute a failure to vacate to which this section shall apply if the property not removed will substantially interfere with occupancy of the Premises by

11 – WINERY LEASE

another tenant or with occupancy by Landlord for any purpose including preparation for a new tenant.

(2)     If a month-to-month tenancy results from a holdover by Tenant under this Section 16.2, the tenancy shall be terminable at the end of any monthly rental period on written notice from Landlord given not less than ten days prior to the termination date which shall be in the notice.  Tenant waives any notice that would otherwise be provided by law with respect to a month-to-month tenancy.

**Section 17.     Miscellaneous**

**17.1     Non-waiver.**  Waiver by either party of strict performance of any provision of this lease shall not be a waiver of or prejudice the party's right to require strict performance of the same provision in the future or of any other provision.

**17.2     Attorney Fees.**  If suit or action is institute in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover in addition to costs such sum as the court may adjudge reasonable as attorney fees at trial, on petition for review, and on appeal.

**17.3     Notices.**  Any notice required or permitted under this lease shall be given when actually delivered or 48 hours after deposited in United States mail as certified mail addressed to the address first given in this lease or to such other address as may be specified from time to time by either of the parties in writing.

**17.4     Succession.**  Subject to the above stated limitations on transfer of Tenant's interest, this lease shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.

**17.5     Recordation.**  This lease shall not be recorded without the written consent of Landlord.

**17.6     Entry for Inspection.**  Landlord shall have the right to enter upon the Premises at any time to determine Tenant's compliance with this lease, to make necessary repairs to the building or to the Premises, or to show the Premises to any prospective tenant or purchaser, and in addition shall have the right, an any time during the last two months of the term of this lease, to place and maintain upon the Premises notices for leasing or selling of the Premises.

**17.7     Interest on Rent and Other Charges.**  Any rent or other payment required of Tenant by this lease shall, if not paid within ten days after it is due, bear interest at the rate of 12% per annum (but not in any event at a rate greater than the maximum rate of interest permitted by law) from the due date until paid.  In addition, if Tenant fails to make any rent or other payment required by this lease to be paid to Landlord within five days after it is due, Landlord may elect to impose a late charge of five cents per dollar of the overdue payment or reimburse Landlord for the costs of collecting the overdue payment.  Tenant shall pay the late charge upon demand by Landlord.  Landlord may levy and collect a late charge in addition to all other remedies

12 – WINERY LEASE

available for Tenant's default, and collection of a late charge shall not waive the breach caused by the late payment.

**17.8    Proration of Rent.**  In the event of commencement or termination of this lease at a time other than the beginning or end of one of the specified rental periods, then the rent shall be prorated as of the date of commencement or termination and in the event of termination for reasons other than default, all prepaid rent shall be refunded to Tenant or paid on its account.

**17.9    Time of Essence.**  Time is of the essence of the performance of each of Tenant's obligations under this lease.

**Section 18.    Arbitration**

**18.1    Disputes to be Arbitrated.**  If any dispute arises between the parties as to a matter, which this lease says should be arbitrated, or as to any other question involving apportionment or valuation, either party may request arbitration and appoint as an arbitrator an independent real estate appraiser having knowledge of valuation of rental properties comparable to the Premises.  The other party shall also choose an arbitrator with such qualifications, and the two arbitrators shall choose a third.  If the choice of the second or third arbitrator is not made within ten days of the choosing of the prior arbitrator, then either party may apply to the presiding judge of the judicial district where the Premises are located to appoint the required arbitrator.

**18.2    Procedure for Arbitration.**  The arbitrator shall proceed according to the Oregon statutes governing arbitration, and the award of the arbitrators shall have the effect therein provided.  The arbitration shall take place in the county where the leased premises are located.  Costs of the arbitration shall be shared equally by the parties, but each party shall pay its own attorney fees incurred in connection with the arbitration.

Landlord:                                                  Tenant:

THE ANN M. WISNOVSKY TRUST,          VALLEY VIEW WINERY, INC.
UTD AUGUST 2, 2012

                                                           By:_____
By:_____              Mark A. Wisnovsky, President
     Ann M. Wisnovsky, Trustee
                                                           By:_____
                                                                Michael J. Wisnovsky,
                                                                Vice President/Secretary

13 – WINERY LEASE

available for Tenant's default, and collection of a late charge shall not waive the breach caused by the late payment.

**17.8    Proration of Rent.** In the event of commencement or termination of this lease at a time other than the beginning or end of one of the specified rental periods, then the rent shall be prorated as of the date of commencement or termination and in the event of termination for reasons other than default, all prepaid rent shall be refunded to Tenant or paid on its account.

**17.9    Time of Essence.** Time is of the essence of the performance of each of Tenant's obligations under this lease.

### Section 18.    Arbitration

**18.1    Disputes to be Arbitrated.** If any dispute arises between the parties as to a matter, which this lease says should be arbitrated, or as to any other question involving apportionment or valuation, either party may request arbitration and appoint as an arbitrator an independent real estate appraiser having knowledge of valuation of rental properties comparable to the Premises. The other party shall also choose an arbitrator with such qualifications, and the two arbitrators shall choose a third. If the choice of the second or third arbitrator is not made within ten days of the choosing of the prior arbitrator, then either party may apply to the presiding judge of the judicial district where the Premises are located to appoint the required arbitrator.

**18.2    Procedure for Arbitration.** The arbitrator shall proceed according to the Oregon statutes governing arbitration, and the award of the arbitrators shall have the effect therein provided. The arbitration shall take place in the county where the leased premises are located. Costs of the arbitration shall be shared equally by the parties, but each party shall pay its own attorney fees incurred in connection with the arbitration.

Landlord:                                          Tenant:

THE ANN M. WISNOVSKY TRUST,                        VALLEY VIEW WINERY, INC.
UTD AUGUST 2, 2012

By: _Ann M. Wisnovsky_                             By: _____
Ann M. Wisnovsky, Trustee                          Mark A. Wisnovsky, President

                                                   By: _____
                                                   Michael J. Wisnovsky,
_Elijah A. Rollason_                               Vice President/Secretary
03/24/16

OFFICIAL STAMP
ELIJAH A. ROLLASON
NOTARY PUBLIC - OREGON
COMMISSION NO. 935543
MY COMMISSION EXPIRES JANUARY 19, 2019

13 – WINERY LEASE

First American Title Company of Oregon

File No.: 7169-2290459
July 22, 2014

**Exhibit "A"**

Real property in the County of Jackson, State of Oregon, described as follows:

PARCEL I:
COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 89° 44' 41" WEST 1112.65 FEET TO A 1.5 INCH INSIDE DIAMETER IRON PIPE (RECORD 2 INCH PIPE), FROM WHICH THE CENTER OF A 48 INCH DIAMETER OAK TREE BEARS NORTH 47° EAST 21.4 FEET (RECORD 20.0 FEET), SAID PIPE MARKING THE SOUTHWEST CORNER OF SAID PARCEL DESCRIBED IN DOCUMENT NO. 78-08539; THENCE CONTINUING ALONG THE WESTERLY, NORTHERLY, AND EASTERLY BOUNDARY OF SAID DESCRIBED PARCEL THE FOLLOWING; NORTH 6° WEST 1574.0 FEET, MORE OR LESS, TO THE NORTH LINE OF LOT 4 OF SAID SECTION 33; THENCE EAST 1336 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF LOT 4 OF SECTION 34, SAID TOWNSHIP AND RANGE; THENCE NORTH 608 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF LOT 3 OF SAID SECTION 34; THENCE EAST 736.8 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE, ALONG SAID RIGHT OF WAY BOUNDARY, SOUTH 7° 13' 10" WEST 1837.72 FEET TO A POINT OF CURVE; THENCE ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 3° 38' 17" WEST 242.34 FEET) A DISTANCE OF 242.50 FEET TO THE POINT OF BEGINNING.

PARCEL II:

Exhibit _A_
Page _1_ of _2_

First American Title

First American Title Company of Oregon

File No.:  7169-2290459
July 22, 2014

COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 87° 33' 02" EAST 21.12 FEET TO A 5/8" IRON PIN; THENCE NORTH 88° 21' 48" EAST 109.22 FEET TO A 5/8" IRON PIN ; THENCE SOUTH 84° 56' 41" EAST 56.34 FEET TO A 5/8" IRON PIN ; THENCE ALONG THE ARC OF A 460.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS NORTH 81° 05' 40" EAST 221.96 FEET ) A DISTANCE OF 224.17 FEET TO A 5/8" IRON PIN; THENCE NORTH 67° 08' 01" EAST 137.72 FEET TO A 5/8" IRON PIN; THENCE NORTH 89° 17' 20" EAST 16.48 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH NORTH 00° 19' 38" WEST 26.00 FEET) A DISTANCE OF 26.00 FEET TO THE POINT OF BEGINNING.

NOTE: This Legal Description was created prior to January 01, 2008.

Exhibit_A_
Page_2_of_2

*First American Title*

3/24/2016

1000 Upper Applegate Rd - Google Maps



1000 Upper Applegate Rd

*WINERY LEASE* ✓



Imagery ©2016 Google, Map data ©2016 Google    50 ft



## 1000 Upper Applegate Rd
Jacksonville, OR 97530



Exhibit __B__
Page __/__ of __/__

https://www.google.com/maps/place/1000+Upper+Applegate+Rd,+Jacksonville,+OR+97530/@42.2248726,-123.0488483,211m/data=!3m1!1e3!4m2!3m1!1s0x5...    1/2