**Brooks M. Foster, OSB No. 042873**
Email: bfoster@chenowethlaw.com
**Bradley T. Crittenden, OSB No. 173274**
Email: bcrittenden@chenowethlaw.com
Chenoweth Law Group, P.C.
510 SW Fifth Avenue, Fifth Floor
Portland, OR 97204
Telephone: 503-221-7958
Facsimile: 503-221-2182

**James R. Dole, OSB No. 892272**
Email: jdole@wlrlaw.com
Watkinson Laird Rubenstein, P.C.
1246 NE 7th Street, Suite B
Grants Pass, OR 97526
PO Box 10567
Eugene, OR 97440
Telephone: 541-484-2277
Facsimile: 541-484-2282

Of Attorneys for Defendants Mark A. Wisnovsky,
Michael J. Wisnovsky, and Valley View Winery, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Medford Division

| | |
|---|---|
| JOANNE COUVRETTE, as trustee of the Ann M. Wisnovsky Trust; and WISNOVSKY LAND, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MARK A. WISNOVSKY, an individual; MICHAEL J. WISNOVSKY, an individual; PATRICK HUYCKE, an individual; VALLEY VIEW WINERY, INC., an Oregon corporation; JARVIS, DREYER, GLATTE & LARSEN, LLP, an Oregon partnership, fka Huycke O'Connor Jarvis, LLP,<br><br>Defendants. | Case No. 1:21-CV-00157-CL<br><br>**WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................2

II.   RESPONSE TO ALLEGED FACTS ........................................................................3

III.  LEGAL STANDARD ...........................................................................................3

IV.   PROCEDURAL AND EVIDENTIARY ISSUES .........................................................4

    A.   The Court Should Deny Plaintiffs' Motions Because They Flouted the Court's December 2024 Order and the Local Rules ................................................4

    B.   The Court Should Exclude Plaintiffs' Inadmissible Evidence ................................6

        1.   *Plaintiffs' Exhibits 1-8, 10-13, 19, 21, 27, 30, and 31 Are Not Authenticated* ........................................................6

        2.   *Plaintiffs' Exhibit 9 and 29 Are Inadmissible Hearsay* ...............................8

        3.   *Plaintiffs' Exhibit 15, 16, and 17 Are Inadmissible Rule 408 Settlement Communications* ........................................................9

    C.   The Court Should Exclude Plaintiffs' Hearsay Expert Appraisal Report (Exhibit 9) Because Plaintiffs Did Not Produce It by the Expert Disclosure Deadline or Before the Close of Expert Discovery ...................................................10

    D.   The Court Should Exclude Plaintiffs' Multi-Page Exhibit 7, 10, 11, 13, 15-17, 20, 22-29, and 31 Because Their Motion Does Not Cite Specific Parts of Those Exhibits as Required by the Applicable Procedural Rules ...................................14

V.    ARGUMENTS REGARDING PLAINTIFFS' CLAIMS ................................................15

    A.   Plaintiffs' Motion for Summary Judgment on Sullivan's Claim for Elder Financial Abuse Must Be Denied for the Reasons Set Forth in the Wisnovsky Defendants' Motion or Because Triable Fact Issues Preclude Summary Judgment ..................15

1. *The Leases, Agreement to Make Payments, and Redemption Agreement Do Not Constitute Elder Abuse Because They Did Not Take Property from Ann* ...................................................................................................16

2. *The Leases, Agreement to Make Payments, and Redemption Agreement Do Not Constitute Elder Abuse Because They Were Conscionable* ..........18

3. *The Sub-Lease to Third Generation Farms Did Not Constitute Elder Abuse* ..............................................................................................23

4. *Like the Leases, the Agreement to Make Payments Does Not Constitute Elder Financial Abuse as a Matter of Law and Undisputed Fact Because Ann Ratified It, Waived the Claim and Sullivan Is Stopped from Asserting It* ......................................................................................................23

5. *Sullivan Cannot Obtain Summary Judgment on Her Elder Financial Abuse Claim Because Plaintiffs Have No Admissible Evidence of Diminished Property Value* ...........................................................................24

6. *The Specific Performance of the Inheritance Contract Requires Dismissal of Sullivan's Elder Financial Abuse Claim* ..............................................25

7. *Plaintiffs' Motion Regarding Elder Financial Abuse Must Be Denied* ......26

B. For Many of the Same Reasons, Plaintiffs' Motion for Summary Judgment on Wisnovsky Land's Claim for Declaratory Judgment Invalidating the Leases as Unconscionable Must Also Be Denied ...............................................................26

VI. COUNTERCLAIMS RELATED TO THE INHERITANCE CONTRACT .....................28

A. The Court Should Deny Plaintiffs' Motion for Summary Judgment Dismissing the Wisnovsky Defendants' Counterclaim for Breach of Inheritance Contract ...........28

B.      The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaim for Declaratory Judgment Regarding Incapacity Because Triable Fact Issues Preclude Summary Judgment ...................................31

C.      The Wisnovsky Defendants' Counterclaim for Undue Influence Raises Genuine Issues of Material Fact ...................................................................................35

D.      Plaintiffs' Motion Fails to Show They Are Entitled to Dismissal of the Wisnovsky Defendants' Counterclaim Against Couvrette for Tortious Interference with Inheritance as a Matter of Law and Undisputed Fact ............................................41

    1.  *Couvrette Is Intentionally Interfering with Mark and Mike's Inheritance by Withholding Ownership Wisnovsky Land and the Valley View Property*..42

    2.  *There Are Genuine Issues of Material Fact as to Whether Couvrette Acted with an Improper Motive or Purpose*...........................................................43

    3.  *Couvrette's Interference Has Been Harming the Wisnovsky Defendants*..46

VII.    COUNTERCLAIMS RELATED TO THE LEASE ...........................................................47

A.      The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaim for Breach of the Leases Because Triable Fact Issues Preclude Summary Judgment ...............................................................................47

B.      The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaim for Tortious Interference with Economic Relations Because Triable Fact Issues Preclude Summary Judgment ...................................54

    1.  *There Are Genuine Issues of Material Fact as to Whether Plaintiffs Intentionally Interfered with Valley View's Economic Relations with Third Generation Farms*........................................................................................55

2.  *There Are Genuine Issues of Material Fact as to Whether Plaintiffs Acted by Improper Means* ...................................................................57

3.  *There Are Genuine Issues of Material Fact as to Whether Valley View Suffered Damages Because of Plaintiffs' Tortious Interference* ................60

4.  *Couvrette May Be Held Personally Liable for Valley View's Counterclaim for Tortious Interference with Economic Relations* ..................................61

    i.  *Couvrette is Not Shielded From Personal Liability by Her Membership in Wisnovsky Land* ...................................................................61

    ii. *Couvrette Can be Held Personally Liable For Her Actions as Trustee of Ann's* ........................................................................................63

C.  The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaims for Breach of Contract (Overpayment of Rent) and Money Had and Received Because Triable Fact Issues Preclude Summary Judgment ........................................................................................................64

    1.  *The Statute of Frauds Does Not Bar Enforcement of the 2017 Payment Agreement* .............................................................................65

    2.  *The Best Evidence Rule Does Not Bar Enforcement of the 2017 Consent Agreement* .............................................................................67

    3.  *Mark Properly Authenticated the 2017 Consent Agreement* .....................69

    4.  *Plaintiffs' "Public Policy" Argument Is Speculative and Without Merit* ...70

    5.  *The Wisnovsky Defendants' Hypothetical Liability for Contractual Damages Does Not Foreclose Plaintiffs' Liability for the Wisnovsky Defendants' Counterclaims* ........................................................................70

6.   *Plaintiffs Do Not Allege Any Facts or Claims Seeking to Avoid the 2017 Consent Agreement* ...................................................................71

7.   *The Parol Evidence Rule Does Not Bar Enforcement of the 2017 Consent Agreement* .......................................................................71

D.   The Court Should Deny Plaintiffs' Motion Against the Wisnovsky Defendants' Counterclaims for Declaratory Relief Regarding Lease Rights Because Triable Fact Issues Preclude Summary Judgment..............................................73

E.   The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaims for Declaratory Relief Regarding Notices of Default and Termination Because Triable Fact Issues Preclude Summary Judgment .......77

VIII.  RESPONSE TO MOTION TO DISMISS ..............................................................80

A.   Plaintiffs' Motion to Dismiss Allegedly Moot and Precluded Claims Should Be Denied ........................................................................................80

CONCLUSION.............................................................................................................88

# TABLE OF AUTHORITIES

## CASES

*Abercrombie v. Hayden Corp.*, 320 Or. 279, 286 (1994) .......................................................72

*Adams v. Transamerica Ins. Group*, 45 Or. App. 769 (1980) .................................................26

*Adelsperger v. Elkside Dev. LLC*, 371 Or. 61 (2023) .............................................................62

*Allen v. Hall*, 328 Or. 276 (1999) ...........................................................................42, 44, 46

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013).......................................................................80

*Appelgate v. Dowell*, 15 Or. 513 (1887) .................................................................................83

*Aylett v. Universal Frozen Foods Co.*, 124 Or. App. 146 (1993)................................... Passim

*Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543 (2014).........................................................18, 19, 20

*Barthelemy v. Air Lines Pilots Assn.*, 897 F.2d 999 (9th Cir. 1990).......................................69

*Best v. US Nat'l Bank of Oregon*, 303 Or. 557 (1987) ........................................................48, 53

*Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179 (9th Cir. 1988).............................6, 7, 8

*Bevans v. Dejoy*, No. 2:23-CV-09380-JLS-JC,

    2024 WL 3468936 (C.D. Cal. May 30, 2024) ................................................................4

*Breslau v. Campbell*, 717 F. Supp. 3d 995 (D. Or. 2024)  ................................................20, 21

*Burgdorf v. Weston*, 259 Or. App. 755 (2013)..........................................................................66

*Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920 (9th Cir. 1987)...........................................6

*Center v. Taxation and Revenue Dept. of State of N.M.*, 779 P.2d 982 (N.M. App. 1989).....36

*Church v. Woods*, 190 Or. App. 112 (2003) ......................................................................16, 44

*Cristobal v. Siegel*, 26 F.3d 1488 (9th Cir. 1994).....................................................................6

*Gentry v. Briggs*, 32 Or. App. 45 (1978) .................................................................................32

*Gittelsohn v. City of Cannon Beach*, 44 Or. App. 247 (1980).................................................87

*Goldingay v. Progressive Cas. Ins. Co.*, 306 F. Supp. 3d 1259 (D. Or. 2018) .......................16

*Greer v. Electronic Arts, Inc.*, No. C 10-3601 RS, 2012 WL 12919525

(N.D. Cal. Feb. 1, 2012)................................................................................68

*Grimstad v. Knudsen*, 283 Or. App. 28 (2016)........................................................45

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989) ...........6

*Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684 (9th Cir. 1976) ........................................6

*Harris v. Jourdan*, 218 Or. App. 470, *rev. den.*, 344 Or. 558 (2008)....................................37

*Hector v. Bank of New York Mellon,* 473 Md. App. 535, 251 A.3d 1102 (2020). .................*64*

*Huey v. UPS, Inc.*, 165 F.3d 1084 (7th Cir. 1999).....................................................15

*Knutsen v. Krippendorf*, 124 Or. App. 299 (1993), *rev. den.*, 318 Or. 381 (1994) .................64

*Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. Appx. 705 (9th Cir. 2010)  .....................................12

*Long v. Lowe's Companies, Inc.*, No. 6:16-cv-00932-AA, 2017,

2017 WL 1217155 (D. Or. Mar. 29, 2017)...............................................................4, 55

*Maney v. Oregon*, 729 F. Supp. 3d 1087 (D. Or. 2024) ......................................................3, 55

*Mansur Properties LLC v. First American Title Ins. Co.*, 635 F. Supp. 3d 1116

(W.D. Wash. 2022) ........................................................................................11, 12, 13

*McGanty v. Staudenraus*, 321 Or. 532 (1995) ........................................................................36

*McPhail v. Milwaukie Lumber Co.*, 165 Or. App. 596 (2000)  ...............................................76

*Mitchell v. Pacific First Bank*, 130 Or. App. 65 (1994) ..............................................74, 75, 76

*Moro v. State*, 357 Or. 167 (2015) .............................................................................74, 75, 76

*Moyer v. Columbia State Bank*, 316 Or. App. 393 (2021)........................................................76

*North Clackamas School Dist. v. White* ("*White*"), 305 Or. 48 (1988) ..................................86

*NV Transport, Inc. v. V&Y Horizon, Inc.*, 302 Or. App. 707 (2020).......................................46

*O'Donnell v. Vial Fotheringham LLP,* No. 3:19-cv-00579-SB,

2020 WL 6365521 (D. Or. Sept. 15, 2020). ...............................................................*63*

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002)....................................6, 7, 15, 68

Page viii -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

*Pioneer Tr. Co. v. Currin*, 210 Or. 343 (1957)........................................................................32

*Ram Technical Services, Inc. v. Koresko*, 215 Or. App. 449 (2008) .......................................86

*Raybould v. Rushmore Loan Mgmt. Servs., LLC*, No. 6:19–cv–01364–AA,

    2020 WL 2576181 (D. Or. May 21, 2020) ......................................................................85

*Reed v. Hollister*, 95 Or. 656 (1920).......................................................................................84

*Reser's Fine Foods, Inc. v. Bob Evans Farms, Inc.*, No. 3:13–cv–00098 AA,

    2016 WL 3769361 (D. Or. July 13, 2006)......................................................................63

*Ride PDX, LLC v. Tee & B, LLC*, 322 Or. App. 165 (2022) ...........................................Passim

*Shannon v. Shannon*, 193 Or. 575 (1952) ................................................................................84

*Sheets v. Knight* , 308 Or. 220 (1989).......................................................................................*36*

*Spencer v. Hamit*, 24 Or. App. 897 (1976) ...............................................................................32

*State ex rel. English ex rel. Sellers v. Multnomah County*, 348 Or. 417 (2010)......................85

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)........................................81

*Straube v. Larson*, 287 Or. 357 (1979) ....................................................................................55

*Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985).....................................................................81

*Turner v. Hallberg*, No. 04–276–KI, 2005 WL 2104999 (D. Or. Aug. 30, 2005). .................62

*United States v. Childs*, 5 F.3d 1328 (9th Cir. 1993)................................................................68

*United States v. Iribe*, 564 F.3d 1155 (9th Cir. 2009) ..............................................................69

*Uribe v. Olson*, 42 Or. App. 647 (1979) .............................................................................31, 32

*US Nat'l Bank of Oregon v. Boge*, 311 Or. 550 (1991).............................................................53

*Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553 (2007) ........................18, 19, 54

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .......................11

*Zamani v. Carnes*, 491 F.2d 990 (9th Cir. 2007)..................................................................3, 55

STATUTES

Or. Rev. Stat. § 24.105.................................................................................................84

Or. Rev. Stat. § 24.115.................................................................................................84

Or. Rev. Stat. § 40.505.................................................................................................69

Or. Rev. Stat. § 40.550.................................................................................................67

Or. Rev. Stat. § 41.580.............................................................................................65, 66

Or. Rev. Stat. § 41.740.................................................................................................72

Or. Rev. Stat. § 42.220.................................................................................................72

Or. Rev. Stat. § 43.130.........................................................................................82, 83, 85

Or. Rev. Stat. § 43.180.............................................................................................83, 84

Or. Rev. Stat. § 63.165.............................................................................................61, 62

Or. Rev. Stat. § 90.100.................................................................................................22

Or. Rev. Stat. § 90.105.................................................................................................22

Or. Rev. Stat. § 90.245.................................................................................................22

Or. Rev. Stat. § 124.110...........................................................................................15, 16

Or. Rev. Stat. § 130.845...........................................................................................63, 64

## FEDERAL RULES

Fed. R. Civ. P. 26 ....................................................................................................... 11

Fed. R. Civ. P. 56 ..................................................................................................... 7, 14

Fed. R. Evid. 101 ......................................................................................................... 66

Fed. R. Evid. 408 ...........................................................................................................9

Fed. R. Evid. 702 ......................................................................................................... 11

Fed. R. Evid. 801 ...........................................................................................................8

Fed. R. Evid. 802 ...........................................................................................................8

Fed. R. Evid. 901 ......................................................................................................... 69

Fed. R. Evid. 1001 ....................................................................................................... 67

Fed. R. Evid. 1002 ....................................................................................................... 67

Fed. R. Evid. 1003 ....................................................................................................... 67

Fed. R. Evid. 1008 ....................................................................................................... 68

Defendants Mark Wisnovsky ("Mark"), Michael Wisnovsky ("Mike") and Valley View Winery, Inc. ("Valley View") (collectively, "Wisnovsky Defendants") submit this response in opposition to *Plaintffs' Motion for Summary Judgment on Plaintiffs' Claims; Motion for Summary Judgment to Dismiss Counterclaims; and Motion to Dismiss Moot and Precluded Claims* filed on February 3, 2025 (ECF 142) by Plaintiffs Joanne Couvrette ("Couvrette"), Wisnovsky Land, LLC ("Wisnovsky Land"), and Michelle Sullivan as Special Administrator to the Estate of Ann Wisnovsky ("Sullivan") (collectively, "Plaintiffs").

This response is supported by the portions of the court record cited below and the *Declaration of Mark Wisnovsky (April 4, 2025)* ("Wisnovsky Decl.") with exhibits, *Declaration of Jonathan P. Edwards (April 4, 2025)* ("Edwards Decl."), and the *Declaration of Brooks M. Foster (April 4, 2025)* with selected excerpts and exhibits from the deposition of Couvrette ("Couvrette Dep.") and deposition of Gary Turner ("Turner Dep."), filed herewith.

For the reasons set forth below, Plaintiffs' motions should be denied.

## I.    INTRODUCTION

Plaintiffs' motion for summary judgment seeks summary judgment granting Sullivan's claim for elder financial abuse and Plaintiff's claim for declaratory judgment that the Leases are void as unconscionable and dismissing every one of the Wisnovsky Defendants' ten counterclaims.  Plaintiff also includes a separate motion to dismiss several of the Wisnovsky Defendants' counterclaims on the grounds that they are moot or precluded by *res judicata*.  On procedural, evidentiary, legal, and factual grounds, Plaintiffs' motions fall far short of their ambitious task and must be denied.

This case is about correcting the wrongs perpetrated by Couvrette as part of her scheme to unlawfully take over her mother's carefully fashioned estate plan and Trust, physically destroy

her mother's legacy by forcing Valley View off its historical winery and vineyard property, destroy her brothers Mark and Mike financially, and disrespect their mother's estate plan by alleging meritless claims of elder abuse and unconscionability, all contrary to a body of evidence that shows Mark and Mike conformed to their mother's wishes, cooperated with their mother and her long-time estate planning attorney, and devoted their adult lives to the company she herself had made her life's work. Ann passed away in 2023, dispelling any notion that Couvrette is litigating this case out of concern for Ann's well-being.

The evidence and legal authorities presented below and incorporated herein from the Wisnovsky Defendants motion for partial summary judgment (ECF 143), show that Plaintiffs motion for summary judgment and motion to dismiss must be denied. Plaintiffs are entitled to no relief as a matter of law or undisputed fact.

## II.    RESPONSE TO ALLEGED FACTS

The Wisnovsky Defendants incorporate herein the facts presented in support of their motion for partial summary judgment (ECF 143 at 9:18–25:9). They also present additional facts in opposition to Plaintiffs' motions throughout the arguments below.

## III.    LEGAL STANDARD

The Wisnovsky Defendants incorporate herein the legal standard section of their Motion for Partial Summary Judgment. ECF 143 at 25:10–26:12.

In addition, it should be emphasized a party responding to a motion for summary judgment has a burden to present argument and produce evidence responsive only to the issues raised in the movant's motion. *See Zamani v. Carnes*, 491 F.2d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief [in support of a motion for summary judgment]."); *Maney v. Oregon*, 729 F. Supp. 3d 1087, 1119 (D. Or. 2024)

Page 2 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
        SUMMARY JUDGMENT AND MOTION TO DISMISS

(holding court "cannot" consider factual issues raised for first time in reply brief supporting motion for summary judgment); *Long v. Lowe's Companies, Inc.*, No. 6:16-cv-00932-AA, 2017 WL 1217155, *8 (D. Or. Mar. 29, 2017) (holding defendant "waived" argument presented for first time in reply brief on parties' cross-motions for summary judgment).

## IV.    PROCEDURAL AND EVIDENTIARY ISSUES

**A.    The Court Should Deny Plaintiffs' Motions Because They Flouted the Court's December 2024 Order and the Local Rules.**

Plaintiffs' motions violate several of the Court's local rules and should be denied on those grounds. In a December 16, 2024 order, the Court admonished Plaintiffs for violating LR 7-1's requirement to certify in their *Motion to Dismiss Proposed Fourth Amended Answer and Counterclaims* that they conferred with the Wisnovsky Defendants' counsel prior to filing that motion. ECF 137 at 4. The Court did not deny the motion on those grounds but warned Plaintiffs: "Noncompliance with Local Rules is not something this Court takes lightly, and <u>further noncompliance may result in denial or dismissal of this case</u>." *Id.* (underline added).

The Court's warning is consistent with remedies other district courts award when litigants ignore local rules, as Plaintiffs have in this case. *See, e.g.*, *Bevans v. Dejoy*, No. 2:23-CV-09380-JLS-JC, 2024 WL 3468936, *2 (C.D. Cal. May 30, 2024) (dismissing the plaintiff's case because, among other reasons, his opposing brief failed to comply with local rules requiring double-spaced text after court had already admonished plaintiff for violating local rules). In light of Plaintiffs' local rule violations described below, the Plaintiffs' claims and defenses should be dismissed (as the Court warned it might do) or, as a much less severe sanction, their motions denied.

/ / /

Page 3 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

LR 10-1(e)(2) provides that "[e]xhibits or attachments to pleadings and other documents must be clearly numbered . . . to enable the Court and counsel to find particular pages quickly and easily." Plaintiffs' 31 exhibits are not clearly numbered because they are either preceded or followed by an apparent cover page stating an exhibit number ostensibly applicable to the exhibit, yet many of those exhibits contain exhibit numbers directly contradicted by the exhibit numbers stated on the cover page. *See, e.g.*, ECF 142-1 at 1, 2, 19, 20, 37, 38, 41, 42, 59, 63, 67, 68, 91, 92, 97, 106–11, 190, 191. Plaintiffs also failed to number the pages of each exhibit to allow the Court and the Wisnovsky Defendants' counsel to find particular pages quickly and easily. Plaintiffs' exhibits plainly violate LR 10-1(e)(2).

LR 10-3(a) requires declarations to "be filed as separate documents with their own captions and footers." Plaintiffs attached two declarations as Exhibits 10 and 27 to their motion. ECF 142-1 87–90, 181–83. Those declarations appear at pages 87 and 181 of the 238 pages of exhibits attached to Plaintiffs' motion. Plaintiffs did not file their declarations as separate documents and therefore violated LR 10-3(a).

Plaintiffs' motion violates LR 7-2(b) because it exceeds the word- and page-count limitations of 11,000 words and 35 pages, respectively, without prior Court approval. LR 7-2(b) states, "[w]ithout prior Court approval, memoranda . . . may not exceed 11,000 words, or in the alternative, 35 pages." Plaintiffs' motion states it "complies with the applicable word-count limitation" because it "comprises fewer than 11,000 words and/or 35 pages, exclusive of exempted sections." ECF 142 at 4. Not including exempted sections, Plaintiffs' motion contains 11,010 words and a total of 37 pages, thus violating LR-7-2(b). Edwards Decl. ¶ 3.

Plaintiffs' motion violates LR 56-1 because it presents numerous factual assertions without citation to the page, and line as appropriate, to the particular parts of materials in the record. This violation will be discussed in greater detail below.

If these were the first local rule violations by Plaintiffs, it might seem excessive to remedy them by dismissing Plaintiffs' case or denying Plaintiffs' motions. But Plaintiffs committed the foregoing violations *after* having already violated local rules and received the Court's stern warning. For that warning and the local rules to have meaning, there must be a remedy for their violation. Plaintiffs' case should be dismissed or their motions denied.

**B.    The Court Should Exclude Plaintiffs' Inadmissible Evidence.**

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Plaintiffs' motion relies on inadmissible evidence that is not authenticated, is hearsay, and/or is a settlement communication. That evidence should be excluded.

*1.   Plaintiffs' Exhibits 1–8, 10–13, 19, 21, 27, 30, and 31 Are Not Authenticated.*

Plaintiffs present no testimony authenticating their exhibits 1–8, 10–13, 19, 21, 27, 30, and 31, rendering them inadmissible. The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (citing *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989); *Beyene*, 854 F.2d at 1182; *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976)).

To properly authenticate evidence, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is," such as by testimony of a witness with personal knowledge of the proffered evidence. Fed. R. Evid. 901(a), (b)(1). "[D]ocuments authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Orr*, 285 F.3d at 773.

In *Beyene*, the Ninth Circuit reversed the district court's grant of the defendant's motion for summary judgment because, among other reasons, the defendant failed to authenticate the exhibits it presented in support of its motion. *Beyene*, 854 F.2d at 1181–83. The exhibits included an unsworn, uncertified, written statement of an attorney and copies of internal memoranda "addressed to third parties by other third parties." *Id.* at 1182–83. The defendant presented the exhibits through a declaration of one of its attorneys testifying they were true and correct copies of the documents. *Id.* This testimony was insufficient to authenticate the documents because it included no testimony that the declarant had "personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery." *Id.* The evidence was inadmissible and could not be considered in deciding the defendant's motion for summary judgment. *Id.*

Compared to the defendant in *Beyene*, Plaintiffs did even less to authenticate their exhibits 1–8, 10–13, 19, 21, 27, 30, and 31 because Plaintiffs present no declaration testimony of Couvrette or anyone else attempting to authenticate them. These exhibits are therefore inadmissible in support of Plaintiffs' motion. If Plaintiffs present new evidence in their reply in an attempt to belatedly authenticate the foregoing exhibits, such evidence should be rejected because the Wisnovsky Defendants will have been deprived of a fair opportunity to respond to it.

Page 6 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

It was Plaintiffs' burden to authenticate all of the exhibits presented in support of their motion. Their unauthenticated exhibits must be excluded.

### 2. *Plaintiffs' Exhibits 9 and 29 Are Inadmissible Hearsay.*

Plaintiffs' exhibits 9 and 29 must also be excluded as inadmissible hearsay. Hearsay is not admissible in federal court unless a federal statute, the federal rules of evidence, or a rule from the Supreme Court say otherwise. Fed. R. Evid. 802. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

In *Beyene*, the Ninth Circuit held the defendant's unauthenticated evidence described above was also inadmissible hearsay because it consisted of out-of-court statements from third parties that were offered for the truth of the matters asserted. *Beyene*, 854 F.2d at 1183. Like the inadmissible hearsay in *Beyene*, Plaintiffs' exhibits 9 and 29 are inadmissible hearsay that must be excluded.

Exhibit 9 is a document titled "A Real Estate Appraisal Report" that allegedly estimates the different values of the Valley View property in fee simple and with a leasehold interest as of November 4, 2020, as well as the monthly rent the landlord should have expected to receive from the Leases. ECF 142 at 9; ECF 142-1 at 69–84. Plaintiffs presented exhibit 9 through a declaration of Couvrette as evidence of their alleged damages, *viz.*, that the Valley View property had a November 4, 2020 fee simple value of $4,480,000 and a November 4, 2020 leasehold value of $0. ECF 142 at 9, 10, 13. The statements in the report, however, are by its authors London R. Fergus and Katherine Powell Banz, and Plaintiffs filed no sworn declaration of those witnesses. The appraisal report is inadmissible hearsay because it consists of unsworn, out-of-

court statements of third-parties offered for the truth of the matters asserted in it. Exhibit 9 must be excluded.

Plaintiffs similarly present exhibit 29 for the truth of matters allegedly asserted in it by Dr. Alan Binette. ECF 142 at 26; ECF 142-1 at 189. Exhibit 29 purports to describe Ann's mental capacity on June 24, 2019, and contains an off-hand remark about Mark. ECF 142-1 at 189. Plaintiffs present no declaration of Dr. Binette nor any other testimony that might render the document admissible. Exhibit 29 is inadmissible hearsay.

### 3. Plaintiffs' Exhibits 15, 16, and 17 Are Inadmissible Rule 408 Settlement Communications.

Plaintiffs' exhibits 15, 16, and 17 are settlement communications Plaintiffs are attempting to use to disprove the validity or amount of disputed claims. They are therefore inadmissible under Rule 408 of the Federal Rules of Evidence. Rule 408 provides in relevant part:

> "Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> "(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> "(2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority."

Fed. R. Evid. 408(a).

Plaintiffs use exhibits 15, 16, and 17 to argue against the validity of the Wisnovsky Defendants' second counterclaim for breach of the Leases and third counterclaim for tortious interference with economic relations. ECF 142 at 14–17. According to Plaintiffs, these exhibits

demonstrate that Plaintiffs negotiated with the Wisnovsky Defendants in good faith and offered terms under which they would be allowed to erect the pre-fabricated warehouse storage building at issue ("Pre-Fab Building").  ECF 142 at 14–17.  Those exhibits show the Wisnovsky Defendants' then-attorney, Dominic Campanella, was negotiating with Couvrette's then-attorney, Richard Thierolf, to attempt to compromise the Wisnovsky Defendants' claims for damages for preventing them from erecting the Pre-Fab Building, as alleged in their second and third counterclaims.  ECF 142-1 at 116–23.  They were settlement communications.

The attorney emails in exhibits 15, 16, and 17 plainly discussed the potential for compromise to avoid litigation and constitute evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise" disputed claims and/or "a statement made during compromise negotiations about" disputed claims within the meaning of Rule 408.  Plaintiffs cite that evidence in an attempt to disprove the validity of the Wisnovsky Defendants' disputed counterclaims.  Exhibits 15, 16, and 17 are inadmissible settlement communications.

**C.    The Court Should Exclude Plaintiffs' Hearsay Expert Appraisal Report (Exhibit 9) Because Plaintiffs Did Not Produce It by the Expert Disclosure Deadline or Before the Close of Expert Discovery.**

The Court should also exclude Plaintiffs' hearsay expert appraisal report (exhibit 9) because it purports to present expert opinions that Plaintiffs failed to disclose pursuant to Rule 26(a), and the deadline to do so expired long ago.  The Wisnovsky Defendants already raised this point in their motion for partial summary judgment to show Plaintiffs have no admissible evidence that the Leases diminished the Property's value.  The Wisnovsky Defendants

incorporate those points herein.[1]   In addition, the persuasive case of *Mansur Properties LLC v. First American Title Ins. Co.* ("*Mansur*"), 635 F. Supp. 3d 1116 (W.D. Wash. 2022), adds further support for excluding Plaintiffs' appraisal report from evidence.

In *Mansur*, the Western District of Washington excluded the plaintiff's appraisal report because the plaintiff did not timely disclose the opinion in discovery and granted summary judgment against the plaintiff's claims for damages because the plaintiff failed to raise a triable fact issue as to its damages.  635 F. Supp. 3d at 1132–35.  The plaintiff alleged the defendant's negligence in issuing a title insurance policy caused the plaintiff to suffer property damages in the form of diminished value.  *Id.* at 1124–25.  The plaintiff allowed the expert disclosure deadline to pass without disclosing an expert's opinion regarding the value of its property and later attempted to file an appraisal report with its summary judgment response.  *Id.* at 1132–33.

---

[1]  As discussed in the Wisnovsky Defendants motion for partial summary judgment:

> "On March 4, 2024, the Court entered an order establishing the parties' stipulated expert disclosure deadline of August 5, 2024, and also establishing November 4, 2024 as the close of expert discovery.  ECF 115, 116.  Thus, by August 5, 2024, Plaintiffs were required to disclose to the Wisnovsky Defendants "the identity of any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702[.]"  Fed. R. Civ. P. 26(a)(2)(A).  Rule 702 authorizes a qualified expert to "testify in the form of an opinion or otherwise" if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue" and several other criteria are satisfied.  Fed. R. Evid. 702.  It is appropriate to exclude expert opinion not disclosed as required by Rule 26(a).  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.* ("*Yeti*"), 259 F.3d 1101, 1106–07 (9th Cir. 2001) (affirming district court's decision to exclude expert opinion testimony not produced as required by Rule 26(a))."

ECF 143 at 39:18–40:2.

Page 10 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

The defendant asked the court to strike the proffered report because it was not timely disclosed in discovery. *Id.* at 1132. The trial court agreed and struck the report. *Id.* at 1135.

*Mansur* analyzed the following four factors in determining that the plaintiff's failure to timely produce its appraisal report by the expert disclosure deadline was not justified and was harmful to the defendant:

> "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."

*Mansur*, 635 F. Supp. 3d at 1133 (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. Appx. 705, 713 (9th Cir. 2010)). The court held all four factors supported exclusion of the appraisal report and granted the defendant's motion for summary judgment.

Regarding the first factor, the defendant in *Mansur* was prejudiced because the plaintiff failed to produce the report prior to the expert disclosure deadline and prior to the close of discovery. *Id.* at 1133–34. Regarding the second factor, it was "unreasonable to expect" the defendant to tolerate the plaintiff's untimely disclosure "by seeking to reopen discovery after it had already filed a dispositive motion," and even if the court had granted such relief, "the ability to depose witnesses after the close of discovery does not negate the harm of missing the Court's disclosure deadlines." *Id.* at 1134. Regarding the third factor, allowing the late disclosure would disrupt the trial date because the defendant "would have to be afforded an opportunity to conduct additional discovery and file another dispositive motion[,]" which would delay trial. *Id.* at 1134. Regarding the fourth factor, *Mansur* held the plaintiff's failure to disclose the appraisal report by the discovery deadlines was willful because "[v]aluation has been central to this case since its

Page 11 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
            SUMMARY JUDGMENT AND MOTION TO DISMISS

inception" and the plaintiff offered "no explanation for its untimely disclosure" and "never moved to extend the disclosure deadline." *Id.* at 1134–35.

This case is very similar to *Mansur*. Plaintiffs failed to produce their hearsay appraisal report in an expert disclosure pursuant to Rule 26(a). The deadline to do so was August 5, 2024; and Plaintiffs also failed to produce the report in fact discovery, which closed on June 3, 2024. ECF 115, 116; Edwards Decl. ¶ 4. As such, Plaintiffs violated their duty to disclose that they intended to use the alleged appraisers' opinions and report as evidence in support of their case. Having received no expert disclosure from Plaintiffs, the Wisnovsky Defendants did not depose the report's authors or disclose any rebuttal expert opinions. Plaintiffs' lack of disclosure was prejudicial.

It would be unreasonable to expect the Wisnovsky Defendants to reopen discovery, make rebuttal expert disclosures, and depose Plaintiffs' supposed experts at this late stage of the case (pending since 2021) in which the parties are deep into summary judgment proceedings. That would not negate the harm and prejudice to Defendants from Plaintiffs' nondisclosure but would amplify it. It would also cause inestimable delays in resolving the parties' dispositive motions, preparing the case for trial, and concluding trial proceedings.

Plaintiffs have made valuation of the Valley View Property a central issue in this case since its inception on January 2021 (ECF 1 ¶¶ 32–39, 50, 54, 58) but Plaintiffs have offered no explanation or excuse for their untimely disclosure and never moved to extend the expert disclosure deadline to which they stipulated. Plaintiffs' non-disclosure was willful and prejudicial. Their hearsay expert appraisal report must be excluded.

**D.**     **The Court Should Exclude Plaintiffs' Multi-Page Exhibits 7, 10, 11, 13, 15–17, 20, 22–29, and 31 Because Their Motion Does Not Cite Specific Parts of Those Exhibits as Required by the Applicable Procedural Rules.**

In addition to the grounds for exclusion above, the Court should exclude Plaintiffs' exhibits 7, 10, 11, 13, 15–17, 20, 22–29, and 31 because their motion fails to cite portions of those multi-page exhibits as required by the Federal Rules of Civil Procedure and the District of Oregon Local Rules.

Rule 56(c) requires summary judgment motions "asserting that a fact cannot be or is genuinely disputed" to "support the assertion by:"

> "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (include those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c).  The Court's local rules also state that a "party's factual positions must be supported by citations, by page and line as appropriate, to the particular parts of materials in the record."  LR 56-1.

In *Orr*, the Ninth Circuit held that "when a party relies on deposition testimony in a summary judgment motion without citing page and line numbers, the trial court may in its discretion exclude the evidence."  285 F.3d at 774–75.  "The same holds true for references to an affidavit without citing to paragraph numbers."  *Id.* at 775 n. 14.  The plaintiff's failure "to cite the page and line numbers when referring" to one of its deposition exhibits was a "defect" sufficient to "warrant[] exclusion of the evidence" because courts "need not paw over the files

without assistance from the parties." *Id.* at 776 (quoting *Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999)).  "The efficient management of judicial business mandates that parties submit evidence responsibly." *Id.* at 775.

Like the plaintiff in *Orr*, Plaintiffs' motion irresponsibly violates the rules requiring citations to particular parts, pages, and line numbers of exhibits and declarations, thus forcing the Court and the Wisnovsky Defendants to search through the record and speculate about the evidence Plaintiffs are relying on to support their assertions and arguments.  ECF 142 at 7–37. Throughout the motion, Plaintiffs assert allegedly "undisputed" facts but, with relatively few exceptions, Plaintiffs either fail to cite any part of the record or simply cite an exhibit number to support their assertions without citing any particular part of the exhibit.

The exhibits for which Plaintiffs cite no particular part are exhibits 7, 10, 11, 13, 15–17, 20, 22–29, and 31.  Edwards Decl. ¶ 5.  They should be excluded like the exhibits in *Orr* whose exclusion the Ninth Circuit affirmed.

The sections above show that every single one of Plaintiffs' 31 exhibits presented in support of their motions should be excluded from evidence, many on multiple grounds.  With no admissible evidence to support them, Plaintiffs's motions must  be denied.

## V.  ARGUMENTS REGARDING PLAINTIFFS' CLAIMS

**A.    Plaintiffs' Motion for Summary Judgment on Sullivan's Claim for Elder Financial Abuse Must Be Denied for the Reasons Set Forth in the Wisnovsky Defendants' Motion or Because Triable Fact Issues Preclude Summary Judgment.**

Plaintiffs concede that Sullivan's elder financial abuse claim is based solely on ORS 124.110(1)(a), which provides that a claim for elder financial abuse may arise:

> "(a) When a person *wrongfully takes or appropriates money or property of a vulnerable person*, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person."

ORS 124.110(1)(a) (italics added). Plaintiffs' motion argues Mark and Mike committed elder financial abuse as a matter of law and undisputed fact because they "used unconscionable lease terms and contractual arrangements, including the Leases, Agreement to Make Payments, and the Redemption Agreement," to allegedly "deprive Ann of substantial financial assets without adequate compensation." ECF 142 at 10. The Court should reject this part of Plaintiffs' motion for the reasons set forth below.

### 1. The Leases, Agreement to Make Payments, and Redemption Agreement Do Not Constitute Elder Abuse Because They Did Not Take Property from Ann.

The Wisnovsky Defendants' motion for partial summary judgment showed the Leases did not constitute elder financial abuse because they did not constitute a "taking or appropriation of money or property" from Ann within the meaning of ORS 124.110(1)(a). ECF 143 at 26:22–30:2. The Wisnovsky Defendants incorporate those points and authorities into this response by this reference. As written there:

> "Valley View—not Mark or Mike—entered into the Leases with Ann in March 2016. Exs. 530 at 1, 14; Ex. 531 at 1, 13. Valley View already possessed the leased property, where it had been operating since its incorporation in 1988. *Id.*; Wisnovsky Decl. ¶¶ 3, 5, 6, 8, 9. The Leases did not transfer any of Ann's property into the keeping of Mark, Mike, or Valley View. They simply authorized Valley View to continue occupying the property it had always occupied. This falls far short of the 'complete acquisition' required by *Goldingay*, and it is unlike the transfers of property ownership in *Church* to a person who had no prior interest in that property."

ECF 143 at 29:13–20.  The Leases were not a taking, nor were the Agreement to Make Payments or Redemption Agreement.

The Agreement to Make Payments required Mark and Mike to make certain payments to the Trust if they sold Valley View stock or assets for more than $750,000 within five years of Ann's gifts of stock.  ECF 146 ¶ 11, Ex. 528 at 1.  This was a manifestation of Ann's desire for Mark and Mike to continue their lifelong commitment to Valley View, which was the company she founded with her deceased husband, her own life's work, and her legacy.  The Agreement to Make Payments took nothing from Ann.  It transferred nothing away from her and did not require her to do anything.  It did not constitute a taking or appropriation of Ann's money or property.

The Redemption Agreement is a contract between the Trust and Wisnovsky Land that Ann signed on behalf of both parties.  ECF 146 ¶ 34, Ex. 1225 at 3.  It refers to the Trust as the "Member" and Wisnovsky Land as the "Company."  *Id.*  It states that when Ann dies, Wisnovsky Land will purchase from the Trust one-half of the Trust's ownership interest in Wisnovsky Land.  *Id.* ¶ 35, Ex. 1225.  The specified purchase price will be from $200,000 to $280,000 and will depend on the number of legal parcels owned by Wisnovsky Land when Ann dies.  *Id.*  The purchase price will be paid by Wisnovsky Land executing and delivering a promissory note payable to the Trust, which will be secured by a trust deed on the Valley View Property.  *Id.*  The Redemption Agreement was intended to result in payments to the Trust after Ann died that the Trust could then distribute to Couvrette and Robert.  The Redemption Agreement took no money or property from Ann.

Because the Leases, Agreement to Make Payments, and Redemption Agreement did not take money or property from Ann, they did not constitute elder financial abuse.  Plaintiffs'

motion for summary judgment on Sullivan's elder abuse claim must be denied.  The claim should be dismissed as a matter of law and undisputed fact.

### 2. The Leases, Agreement to Make Payments, and Redemption Agreement Do Not Constitute Elder Abuse Because They Were Conscionable.

Plaintiffs attempt to satisfy the "wrongfulness" element of Sullivan's elder abuse claim by arguing the Leases, Agreement to Make Payments, and Redemption Agreement were unconscionable.  According to Plaintiffs, a

> "lease may be deemed unconscionable if it meets the following criteria:
> 1. There is a significant imbalance in the rights and obligations of the parties.
> 2. The lease terms are oppressive or unfairly one-sided.
> 3. The weaker party was unable to negotiate fair terms."

ECF 142 at 11.  Plaintiffs further argue that unconscionability arises "when there is both procedural and substantive unfairness."  *Id.* (citing *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553 (2007)).  "Procedural unconscionability focuses on the circumstances of contract formation, such as unequal bargaining power or lack of meaningful choice, while substantive unconscionability examines whether the terms are overly harsh or one-sided."  *Id.* "Similarly," Plaintiffs write, "contract terms violating public policy or enabling exploitation are unenforceable."  *Id.* (citing *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543 (2014)).

*Vasquez-Lopez* affirmed a trial court's decision to deny a motion to compel arbitration on the grounds that an arbitration rider to a consumer lending agreement was unenforceable because it was procedurally and substantively unconscionable.  *Vasquez*, 210 Or. App. at 567–77.  The court held the arbitration rider was procedurally unconscionable because the defendant lender offered the rider to the plaintiff borrowers on a take-it-or-leave-it basis, the plaintiffs could not

Page 17 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

understand the terms of the rider because they did not read or speak English, and the defendant "affirmatively concealed the arbitration rider's terms," such as the term that arbitration would be binding. *Id.* at 567–69. The court held the arbitration rider was substantively unconscionable because its "class-action ban" and "cost-splitting provision" unfairly benefitted the defendant by giving the defendant "a virtual license to commit, with impunity, millions of dollars' worth of small-scale fraud" and requiring the low-income plaintiffs to pay practically all of the arbitrator's fees if they initiate arbitration. *Id.* at 570–77.

This case is not at all like *Vasquez-Lopez*. The Leases in this case involved the matriarch co-founder of a winery-and-vineyard company who wanted to ensure that two of her sons—who had been operating the company for her since the late 1980s—would continue to operate the company well after she passed away. This was not a consumer lending transaction between non-English speaking, low-income individuals and a commercial lending company. Ann was literate in English and understood the terms of the Leases. ECF 145-1 at 12:10–19. The Leases were drafted by Ann's own attorney, not offered to her on a take-it-or-leave-it basis. ECF 145-1 at 12:6–23; ECF 146 ¶ 18. There are no allegations or evidence that Ann and her sophisticated attorney were misled in their preparation of the Leases by any misrepresentation of the Wisnovsky Defendants. The Leases contain no provision giving the Wisnovsky Defendants license to commit fraud or any other unlawful act against the Trust or requiring Ann to pay practically all of an arbitrator's fee to initiate arbitration. This case is miles from *Vasquez-Lopez*.

*Bagley* is also distinguishable. It held a commercial ski-area operator's liability-release agreement was unconscionable for public policy reasons. There was a substantial disparity between the commercial ski-area operator and members of the public; the liability-release was offered on a take-it-or-leave-it basis; and a harsh and inequitable result would occur if the

operator were immunized from negligence liability because the operator had a superior ability to guard against the risk of harm to its patrons and to absorb and spread the costs of insuring against those risks. *Bagley*, 356 Or. at 570–71. Public policy militated against enforcement of the release because members of the public were invited to ski at the operator's premises, and without negligence liability the operator would not have been adequately incentivized to avoid creating unreasonable risks of harm to its invitees. *Id.* at 571–73.

The ski area liability releases in *Bagley* are totally unlike the winery vineyard Leases. The commercial ski area operator and members of the public who were party to the liability releases in *Bagley* are totally unlike the mother and sons in this case who signed the winery and vineyard Leases.

This case is more like *Breslau v. Campbell*, 717 F. Supp. 3d 995, 999 (D. Or. 2024). There the District of Oregon denied a motion for summary judgment that an allegedly one-sided contract was unconscionable. *Breslau* reasoned that even an "overly one-sided contract term" should not be invalidated as unconscionable "when the circumstances of its formation evinced equality of bargaining power without any surprises." *Id.* at 1006. That "would go against the bedrock principle of contract law that parties should be held to 'the consequences of their bargain.'" *Id.* Because the contract at issue "was negotiated with the aid of a mediator, and each party sought the legal advice of their own attorney before signing it," there was no procedural unconscionability and the agreement was not unconscionable as a matter of law and undisputed fact. *Id.* at 1007. The interest at stake was a "*private interest*—the term is asserted as harsh" so public policy did not require the agreement to be deemed unconscionable. *Id.* (italics in original).

Here, Plaintiffs contend the Leases were procedurally unconscionable as a matter of law because Ann "was negotiating against Mark and Mike Wisnovsky, who had significant control over the property and its operations." ECF 142 at 11–12. In reality, when Ann signed the Leases she was represented by an attorney, owned and controlled the property as Trustee of her own Trust, and had all of the bargaining power in the world. Wisnovsky Decl. ¶ 2. Mark and Mike, on the other hand, were Ann's sons, had no attorney, and had recently received majority ownership of the company Ann had just given them, at which she had employed them for years, and which had no lease for the property where it operated. *Id.* Ann could have dictated whatever lease terms she wanted from Valley View, especially if she had signed the lease by herself before giving Mark and Mike her majority interest in the company. *Id.* Even after she gifted them her shares, she could have sold the Property without a lease in place or she could have offered it for lease to others and did not have to offer Valley View a lease. *Id.* Mark and Mike were in an inferior, not superior bargaining position. *Id.* The Leases were procedurally conscionable and therefore, according to *Breslau*, cannot be invalided as unconscionable.

Plaintiffs contend the Leases were unreasonably one-sided and violated public policy as a matter of law because they included allegedly unfavorable terms. ECF 142 at 12. Plaintiffs complain about the length of the lease, which included options to extend it for as long as 90 years. *Id.* That perfectly manifested Ann's goal, however, of having her sons Mark and Mike continue the historical winery and vineyard that were her life's work and legacy. Plaintiffs also allege "below-market rent," but they have no admissible evidence to support that expert opinion, and Ann's familiarity with Valley View's books and finances meant she knew what it could and could not afford. Wisnovsky Decl. ¶ 3. Plaintiffs allege the Leases included "[r]estrictive clauses that limit the Trust's ability to sell or market the property without Defendants' consent"

(*id.*), but the Leases contain no such language.  *See generally*, ECF 146-4, 146-5 (Leases).  Ann remained the property owner and could have sold the property after entering into the Leases, but there is no evidence she ever listed it.  Wisnovsky Decl. ¶ 3.  Plaintiffs' allegation that the Leases "stripped" Ann of "valuable assets" (ECF 142 at 7) is pure fiction.

Even though Ann's own attorney prepared the Leases for her, Plaintiffs attempt to show the Leases violated public policy, invoking "principles of fairness and equity, as outlined in ORS 90.245," that allegedly "apply to commercial leases, particularly when one party is in a significantly weaker bargaining position."  ECF 142 at 11.  Ann, however, was in the stronger bargaining position; ORS 90.245 applies only to residential rental agreements, not commercial winery and vineyard leases;[2] and Plaintiffs do not allege the Leases violate any of the specific prohibitions of ORS 90.245.  The Leases are procedurally and substantively conscionable, do not violate public policy, and do not constitute financial elder abuse.

As noted above, Plaintiffs' motion asserts the "Agreement to Make Payments, and the Redemption Agreement" were "unconscionable . . . contractual arrangements" that "Defendants used."  ECF 142 at 14.  But Plaintiffs short presentation of "evidence supporting unconscionability" does not mention those agreements.  *Id.* at 12–13.  An earlier section appears to refer to the Redemption Agreement as an "Undervalued Sale Proposal" but fails to clarify the meaning of that heading or otherwise prove anything unconscionable about the Redemption Agreement, which Ann signed for her own Trust and real estate holding company, Wisnovsky Land, LLC.  Another section asserts "Ann had no opportunity to negotiate or seek alternative

---

[2]  ORS Chapter 90 is known as the "Residential Landlord and Tenant Act" and applies only to residential lease agreements.  *See, e.g.*, ORS 90.100(39) (defining "rental agreement" to apply to agreements concerning the use and occupancy of dwelling units and premises); ORS 90.105 (stating short title of "Residential Landlord and Tenant Act").

Page 21 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

arrangements" to those agreements (*id.* at 12), but Plaintiffs cite no evidence to support that allegation about documents Ann's own attorney drafted for her (ECF 146 ¶¶ 8, 11, 25, 36 (testifying Ann's attorney drafted the documents)).

Plaintiffs' motion fails to prove as a matter of law and undisputed fact that the Agreement to Make Payments or Redemption Agreement were unconscionable.

### 3. The Sub-Lease to Third Generation Farms Did Not Constitute Elder Abuse

Plaintiffs' motion vaguely suggests Valley View's sub-lease to Third Generation Farms constituted elder financial abuse because that sub-tenant "was not a party to the Agreement to Make Payments." ECF 142 at 13. The sub-lease, however, was expressly authorized by the Second Vineyard Addendum, however, and resulted in substantial additional rent payments to Ann. ECF 146 ¶¶ 32, 43; ECF 146-8 at 2 § 3 (Second Vineyard Addendum). The Wisnovsky Defendants had no obligation to cultivate hemp on the leased land and assumed the financial risk of doing so only after obtaining the Second Vineyard Addendum. Wisnovsky Decl. ¶ 4. The sub-lease between Valley View and Third Generation Farms took nothing from Ann, who was not even a party to it. The sub-lease to Third Generation Farms did not constitute elder financial abuse.

### 4. Like the Leases, the Agreement to Make Payments Does Not Constitute Elder Financial Abuse as a Matter of Law and Undisputed Fact Because Ann Ratified It, Waived the Claim, and Sullivan Is Estopped from Asserting It.

Based on the legal authorities and many of the same facts presented in the Wisnovsky Defendants' motion for partial summary judgment—which the Wisnovsky Defendants incorporate herein by reference—the 2016 Agreement to Make Payments did not constitute elder

financial abuse as a matter of law and undisputed fact because Ann ratified that agreement, waived the claim, and Sullivan is estopped from asserting it.

Plaintiffs' motion does not contend the 2017 Amended Agreement to Make Payments constituted elder abuse or is otherwise unlawful or voidable. The Amended Agreement to Make Payments is lawful, enforceable, and in effect.

When Ann entered into the February 2017 Amended Agreement to Make Payments, she restated and amended the 2016 Agreement to Make Payments. *Compare* ECF 146-7 *with* 146-2. She thereby approved and ratified the Agreement to Make Payments as the antecedent agreement she was restating and amending. When she did that, she also waived any claim that the original Agreement to Make Payments constituted elder abuse because she replaced the original agreement with the amended version. Sullivan is estopped from claiming the Agreement to Make Payments constituted elder abuse because Ann induced Mark and Mike to rely on her approval and ratification of its terms and appearance of waiver by entering into the Amended Agreement to Make Payments, which restated and expanded the terms of the original Agreement to Make Payments. As a matter of law and undisputed fact, the Agreement to Make Payments did not constitute elder abuse.

5. ***Sullivan Cannot Obtain Summary Judgment on Her Elder Financial Abuse Claim Because Plaintiffs Have No Admissible Evidence of Diminished Property Value.***

The Wisnovsky Defendants' motion for partial summary judgment showed there was no elder financial abuse as a matter of law and undisputed fact because Plaintiffs have no admissible evidence of diminished property value. ECF 143 at 39. They have reinforced that point with

additional arguments above showing Plaintiffs' expert appraisal report is inadmissible and must be excluded on multiple grounds.  *See, supra*, §§ IV.B.2, IV.C.

Sullivan's elder financial abuse claim alleges the Leases caused Ann to lose the entire $4.2 million value of the Valley View Property and seeks treble damages of up to $12.6 million to remedy that allegedly wrongful taking.  ECF 45 ¶ 39; *id.* at 12.  Plaintiffs' motion confirms this alleged diminution in the value of the leased property was the only "financial harm" allegedly "caused by the Defendants' action."  ECF 142 at 13.  As evidence of such harm, Plaintiffs' motion cites only the inadmissible hearsay expert appraisal report, exhibit 9.  *Id.* (citing "Powell Banz appraisal").  Plaintiffs have no admissible evidence of diminished property value, let alone the undisputed evidence they would need to foreclose all genuine issues of material fact.

### 6.    *Specific Performance of the Inheritance Contract Requires Dismissal of Sullivan's Elder Financial Abuse Claim.*

The Wisnovsky Defendants' motion for partial summary judgment showed there can be no elder abuse claim by Sullivan if the Court orders specific performance of the inheritance contract, as requested in their motion.  ECF 143 at 51:16–22.  In that event there will be no basis for Sullivan to contend Ann was hurt financially by the Leases because Ann and the Trust will have received the consideration they bargained for in exchange for their February 2017 promise for Mark and Mike to inherit Wisnovsky Land and the Valley View Property.  That consideration was the Amended Agreement to Make Payments, to which Mark and Mike remain bound.

For the reasons set forth in the Wisnovsky Defendants' motion for partial summary judgment and as further discussed below, they are entitled to specific performance of the inheritance contract.  Sullivan's elder financial abuse claim must be dismissed.

      *7.      Plaintiffs' Motion Regarding Elder Financial Abuse Must Be Denied.*

To summarize, Plaintiffs' motion fails to prove as a matter of law and undisputed fact that the Leases, Agreement to Make Payments, or Redemption Agreement were unconscionable. They were either conscionable as a matter of law and undisputed fact or the allegation of unconscionability raise genuine issues of material fact. Either way, the motion fails to prove as a matter of law and undisputed fact that any of the agreements at issue constituted elder financial abuse. Plaintiffs' motion for summary judgment on Sullivan's claim for elder abuse must be denied.

**B.      For Many of the Same Reasons, Plaintiffs' Motion for Summary Judgment on Wisnovsky Land's Claim for Declaratory Judgment Invalidating the Leases as Unconscionable Must Also Be Denied.**

Plaintiffs' motion lumps their claim for declaratory judgment together with Sullivan's claim for elder financial abuse. ECF 142 at 7 (referring to "claims of financial elder abuse and unconscionable agreements"). This confirms unconscionability is the *only* grounds for elder financial abuse alleged in Plaintiffs' motions. Yet the two claims are different, Plaintiffs pleaded them separately, and different parties have standing to assert them so they are best analyzed separately.

The elder financial abuse claim is alleged only by Sullivan. ECF 137 at 11 (substituting Sullivan as plaintiff for limited purpose of litigating elder financial abuse claim). The only Plaintiff that is party to the Leases is Wisnovsky Land, so it is the only Plaintiff with standing to assert the declaratory judgment claim to invalidate them. *See, e.g.*, *Adams v. Transamerica Ins. Group*, 45 Or. App. 769, 775 (1980) (holding attorney had no interest in settlement agreement

independent of his client and therefore had no standing to maintain an action in his own name to enforce settlement agreement).

Wisnovsky Land's declaratory judgment claim seeks to invalidate the Leases on the grounds that they were procured by undue influence and in violation of the elder financial abuse statute.  ECF 45 ¶ 56.  Plaintiffs' motion abandons the allegation of undue influence and attempts to prove wrongfulness only on the grounds of unconscionability.  ECF 142 at 7–14 (making no mention of "undue influence").  The Leases, however, were not unconscionable for the reasons discussed above and in the Wisnovsky Defendants' motion.  *See supra*, § V.A.2; ECF 143 at 40.

The Wisnovsky Defendants' motion for partial summary judgment showed Wisnovsky Land's claim for declaratory judgment to invalidate the Leases must be dismissed for any of the following independently sufficient reasons:

> (1) Ann ratified and affirmed the Leases;
>
> (2) Ann waived the claim;
>
> (3) Plaintiffs are estopped from asserting the claim; or
>
> (4) the claim is barred by the statute of limitations.  ECF 143 at 40:13–43:9.

The motion further reasoned that if Mark and Mike receive partial summary judgment on their claim for specific performance of the inheritance contract, they will own the LLC asserting the claim and will have the right to dismiss it.  ECF 143 at 51:6–22.  Nothing in Plaintiffs' motion disproves any of these points, which the Wisnovsky Defendants incorporate herein by this reference.

Page 26 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

Plaintiffs' motion for summary judgment on Wisnovsky Land's declaratory judgment claim fails to show the Leases are unconscionable as a matter of law and undisputed fact.  The motion must be denied.

## VI.  COUNTERCLAIMS RELATED TO THE INHERITANCE CONTRACT

**A.     The Court Should Deny Plaintiffs' Motion for Summary Judgment Dismissing the Wisnovsky Defendants' Counterclaim for Breach of Inheritance Contract.**

Plaintiffs expend less than one page arguing for summary judgment against the Wisnovsky Defendants eighth counterclaim, which seeks specific performance of their 2017 inheritance contract with their mother.  ECF 142 at 29.  Plaintiffs' argument regarding this counterclaim cites no legal authority and no evidence, amounting to a series of unsupported assertions that could not possibly satisfy the movant's burden at summary judgment.  The Court should deny Plaintiffs' motion for summary judgment against the eighth counterclaim.

The Wisnovsky Defendants' motion showed the Trust is in breach of the inheritance contract and Mark and Mike are entitled to specific performance of the inheritance contract.  ECF 143 at 45:10–51:5.  Nothing in Plaintiffs' motion changes that analysis or conclusion.

The Wisnovsky Defendants' motion showed they entered into an inheritance contract with Ann in February 2017 in which she agreed to amend her estate plan so that when she died they would inherit ownership of Wisnovsky Land and its Valley View Property, and in exchange they would amend the 2016 Agreement to Make Payments.  ECF 143 at 45:10–51:5.  That contract is objectively manifested in a recital to the 2017 Amended Agreement to Make Payments, which declares:

> "Ann M. Wisnovsky has determined to *amend the Wisnovsky Trust* and Valley View and Wisnovsky Land, LLC, which is controlled by Ann M. Wisnovsky, have agreed to amend a Vineyard Lease

that exists between them.  <u>Ann M. Wisnovsky's agreement to make such changes is conditioned upon the execution of this Agreement</u>."

*Id.* (Recital C) (emphases added).  This plainly affirmed that Ann had agreed to make the changes to her estate plan expressed in the Second Trust Amendment, which she signed that same day, in exchange for Mark and Mike signing the Amended Agreement to Make Payments.

The Second Trust Amendment provided that upon Ann's death "The trust's remaining membership interest in Wisnovsky Land shall be divided" and "distributed" 50% to Mark and 50% to Mike.  Ex. 552 at 1.  At that time Wisnovsky Land owned the Valley View Property, which it still owns today.  Wisnovsky Decl. ¶ 5.  The inheritance contract was intended to give Mark and Mike full ownership of Wisnovsky Land and the Valley View Property.  That was Ann's estate plan and the inheritance she promised Mark and Mike in exchange for them signing the Amended Agreement to Make Payments.

Plaintiffs argue the claim for breach of inheritance contract "appears baseless" because "[t]he agreement was revocable, and Ann lawfully exercised her right to revoke it."  ECF 142 at 29.  This argument is contrary to the undisputed facts and law.  As shown in the Wisnovsky Defendants' motion, the Wisnovsky Defendants gave the Trust valuable consideration for the inheritance contract by entering into the Amended Agreement to Make Payments; and that consideration made Ann's agreement for Mark and Mike to inherit Wisnovsky Land, as set forth in the Second Trust Amendment, irrevocable.  ECF 143 46:9–9 (presenting case law regarding the irrevocability of an inheritance contract); *id.* at 49:10–15 (applying law to facts).  The inheritance contract was irrevocable.

Plaintiffs emphasize that Ann signed a revocation of the Redemption Agreement in 2019 (ECF 142 at 26–27), but the Redemption Agreement was not essential to the inheritance contract

Page 28 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

so its revocation did not revoke the inheritance contract.  The Redemption Agreement was akin to a stock buy-back agreement in which a company agrees to give an owner a note in exchange for part of the owner's interest in the company.  *See generally* ECF 146-22 (Redemption Agreement).  Because the note was to be payable to the Trust, it was intended to put cash into the Trust that could be distributed to Couvrette and Robert.  Without the Redemption Agreement, the buy-back will not occur, but that is not necessary for the Trust to perform the inheritance contract by transferring Wisnovsky Land to Mark and Mike.  The revocation of the Redemption Agreement did not revoke the inheritance contract, which is irrevocable.

Plaintiffs' last two contentions against the counterclaim for specific performance of the inheritance contract are that the Wisnovsky Defendants "were not parties to the agreement" and "[n]o breach of a binding obligation has been demonstrated."  ECF 142 at 30.  Those contentions are incorrect because, whereas the Wisnovsky Defendants were not parties to the Redemption Agreement, Mark and Mike were parties to the inheritance contract.  The inheritance contract created a binding, irrevocable obligation for the Trust to transfer Wisnovsky Land and its Valley View Property to Mark and Mike.  Couvrette is causing the Trust to be in breach of that contract by withholding ownership of Wisnovsky Land and failing to transfer it to Mark and Mike.  This is all laid out in detail in the Wisnovsky Defendants' motion for partial summary judgment. ECF 143 at 45:10–51:5.

Plaintiffs fail to refute this analysis in their motion for summary judgment against the eighth counterclaim.  The motion must be denied as a matter of law and undisputed fact or, alternatively, because it raises genuine issues of material fact about whether the Wisnovsky Defendants are entitled to specific performance of the inheritance contract.

**B.**    **The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaim for Declaratory Judgment Regarding Incapacity Because Triable Fact Issues Preclude Summary Judgment.**

The Wisnovsky Defendants' seventh counterclaim alleges the Fourth Trust Amendment (dated May 31, 2019) and later estate planning documents signed by Ann thereafter (including the Fifth Trust Amendment dated June 8, 2019, and the Sixth Trust Amendment dated November 13, 2019, must be declared legally ineffective because Ann suffered from diminished capacity when she signed them. ECF 114 ¶¶ 88–91. Plaintiffs move for summary judgment against this counterclaim on the grounds that "Dr. Binette's Mini-Mental Status Examination on June 24, 2019," allegedly "confirmed Ann's competence." ECF 142 at 28. The Court should reject this argument because the document on which it relies is inadmissible hearsay and not cited in accordance with the procedural rules. *See* ECF 142 at 26 (citing Plaintiffs' Ex. 29); *see supra* §§ IV.B.2, IV.D. Thus, Plaintiffs have no admissible evidence on the issue of Ann's incapacity.

The Court can also safely reject this argument because there is ample evidence from which a reasonable factfinder could find Ann lacked the mental capacity to understand and give legal effect to the Fourth Trust Amendment and other estate planning documents at issue because she was losing her memory and no longer understood the complex estate plan she had fashioned over several years with her personal attorney or the consequences of the documents at issue, including their effects on her estate plan and her sons Mark and Mike.

A person has legal capacity if they are able to understand the nature of their action and apprehend its consequences. *Uribe v. Olson*, 42 Or. App. 647, 651 (1979). Capacity includes the ability to reason and exercise judgment and to bargain with the other party. *Id.* Whether a person has the capacity to carry out a specific act with legal consequences is examined as of the

time of the act. *Spencer v. Hamit*, 24 Or. App. 897, 905 (1976) (determining testamentary capacity at the time the will was executed). Evidence of incapacitation *prior or subsequent* to the time of the act "is relevant." *Id.*

Even if several signs point to mental incapacity, it is still possible for a person to have "lucid intervals" during which he or she has requisite capacity to enter into a contract or make a testamentary disposition of property. *Uribe*, 42 Or. App. at 651. A "[l]ucid interval" is "a restoration of the faculties of the mind sufficiently to enable the person soundly to judge of the act" thereby "enabling him to understand and transact his affairs as usual." *Pioneer Tr. Co. v. Currin*, 210 Or. 343, 348 (1957). Clear and convincing proof is required, however, to show a legal act was performed during a lucid interval. *Gentry v. Briggs*, 32 Or. App. 45, 50 (1978).

There is ample evidence from which a reasonable factfinder could decide Ann was acting with diminished capacity when she executed the Fourth Trust Amendment on May 31, 2019, and other estate planning documents thereafter. Mark first observed signs that Ann's mental capacity was declining as early as 2018, when it appeared she was starting "to lose her short-term memory and had difficulty remembering the details of her estate plan." ECF 146 ¶ 46. By May 2019, Ann no longer understood her estate plan. ECF 145-1 at 15:3–6. On the day Ann signed the Fourth Trust Amendment, she did not "recall whether she retained any stock in Valley View Winery, Inc." and had no "specific memory [of] . . . the transfer of her shares of the stock of the corporation" to Mark and Mike. *Id.* at 199:25–200:8. When Couvrette was asked whether she noticed as of May 17, 2019 that Ann "was having diminished memory[,]" she acknowledged, "[s]ometimes [Ann] would repeat herself." *Id.* at 191:19–24.

Page 31 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

While visiting Couvrette in San Diego, Ann signed a letter to Huycke terminating his representation. ECF 146-25. On June 8, 2019, Ann signed the Fifth Trust Amendment drafted by Oregon attorney Gary Turner. ECF 146 ¶ 53, 146-11 (Fifth Trust Amendment).

On June 5, 2019, Couvrette took Ann to meet Turner for the first time. Turner Dep. at 30:13–17. On June 18, 2019, however, Ann told Mark she did not know the name of her new attorney and did not recall any details of her meeting with that attorney. ECF 146 ¶ 51. On June 20, 2019, Mark received two voicemails from Ann. In the first voicemail, Ann stated she was "not going to any attorney that [Couvrette] called[,] and asked Mark to "Please come back . . . I am going to tell [Couvrette] to cancel everything . . . I did not call for anything to happen." ECF 146 ¶ 52; ECF 146-17. In the second voicemail, Ann told Mark, "I have a call to [Couvrette] telling her to stop. I am not changing anything . . . I don't know what I am going to do in the future but I don't want to change anything." *Id.*

A factfinder hearing this evidence would reasonably conclude Ann was losing her memory, confused, had forgotten that she had signed the Fourth and Fifth Trust Amendments, and believed she still had the same estate plan she had prepared over several years with Huycke, which was going to leave Wisnovsky Land and the Valley View Property to Mark and Mike. The same inference can be drawn from the photo Plaintiffs present as Exhibit 31, in which Ann holds a note that said, "My estate is done." ECF 142 at 26 (citing "Exhibit 31: Photograph of Ann Wisnovsky and note").

During Turner's deposition, he was asked whether Ann ever exhibited any signs of forgetfulness when communicating with him as her attorney. Turner said "[t]o some extent, yes." Turner Dep. at 185:17–19. When meeting with Ann during the month after she executed

Page 32 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

the Fourth Trust Amendment, Turner noticed that Ann "repeated certain statements to [him] more than once[.]" *Id.* at 185:11–19.

Turner also testified regarding an email Couvrette sent to Senior Medical Associates on November 18, 2019, the same day that Ann executed the Sixth Trust Amendment and her resignation as trustee. Couvrette's email stated, "I need something to give to my mother's attorney stating she has mental capacity to sign documents related to her estate. He is requesting it because *she repeats herself quite often* and he wants to make sure she is okay to sign the documents that she has asked him to prepare." Turner Dep. at 169:18–170:8, Ex. 625 (italics added).

On July 8, 2020, Couvrette obtained a medical diagnosis that Ann suffered from dementia, but shortly thereafter that diagnosis was revised to be "mild cognitive impairment" such that Ann "could go into assisted living" without requiring "memory care." ECF 145-1 at 372:11–373:24, Ex. 650. On August 21, 2020, Couvrette obtained a medical diagnosis that Ann had dementia and "no longer [had] the capacity to make independent legal, medical, and financial decisions." *Id.* at 375:7–20, Ex. 655.

Plaintiffs present a declaration of Anna Maria Couvrette containing her subjective observations of Ann's mental capacity and numerous out of court statements allegedly made by Ann, which are inadmissible hearsay. ECF 142-1 at 181–83. To the extent it is admissible, the declaration admits Couvrette is Anna Maria's mother, and it conflicts with the evidence discussed above. *Id.* at 183. A reasonable factfinder could disbelieve Anna Maria's testimony or give it little weight. The declaration does not foreclose all genuine issues of material fact about incapacity, nor about the counterclaim for undue influence discussed in the next section.

/ / /

Page 33 -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
        SUMMARY JUDGMENT AND MOTION TO DISMISS

A reasonable factfinder considering all of the evidence in the record would find that when Ann signed the Fourth Trust Amendment and later estate planning documents she was, in fact, losing her short term memory, could not remember the details of her existing estate plan, and lacked the capacity to comprehend the consequences the documents would have for that estate plan, her sons Mark and Mike, and the business that was her legacy. The seventh counterclaim raises genuine issues of material fact about whether the Fourth Trust Amendment and later estate planning documents were legally ineffective due to incapacity, precluding summary judgment.

## C.    The Wisnovsky Defendants' Counterclaim for Undue Influence Raises Genuine Issues of Material Fact.

The Wisnovsky Defendants' first counterclaim alleges the Fourth Trust Amendment and later estate planning documents are ineffective because they resulted from Couvrette's undue influence over Ann. ECF 114 ¶¶ 29–45. Plaintiffs move to dismiss this counterclaim on the grounds that "there is no evidence that Joanne Couvrette exerted undue influence over Ann Wisnovsky." ECF 142 at 25. Plaintiffs further argue their evidence shows "Ann retained independent legal counsel, executed her estate planning voluntarily, and had her competence affirmed by her personal physician"—and also, "Anna Maria Couvrette's declaration further confirms that Ann acted independently and deliberately." ECF 142 at 28. The Court should reject Plaintiffs' arguments because the first counterclaim raises genuine issues of material fact about whether Couvrette used undue influence to procure Ann's signature on the Fourth Trust Amendment and later estate planning documents.

Plaintiffs describe *In re Reddaway's Estate* ("*Reddaway*"), 214 Or. 410 (1958), as a case in which "[t]he court found undue influence where the influencer had a long-standing relationship with the decedent and actively controlled their financial and personal decisions."

ECF 142 at 28. *Reddaway* is analyzed in greater detail below and does not support dismissal of the Wisnovsky Defendants' undue influence claim.

Plaintiffs cite "*In re Estate of McCarty*, 308 Or. 220, 779 P.2d 984 (1989)" for the proposition, "The court emphasized the importance of a long-term confidential relationship in establishing undue influence." ECF 142 at 28. The Wisnovsky Defendants' counsel was unable to locate this case based on the citation provided by Plaintiffs. Westlaw yields no Oregon cases when searching for "In re Estate of McCarty" or "Estate of McCarty." "308 Or. 220" yields the 1989 case of *Sheets v. Knight*, which was a case about breach of employment contract and wrongful discharge and was later abrogated by *McGanty v. Staudenraus*, 321 Or. 532 (1995). "779 P.2d 984" yields the 1989 New Mexico Court of Appeals case, *El Centro Villa Nursing Center v. Taxation and Revenue Dept. of State of N.M.*, 779 P.2d 982 (N.M. App. 1989), which was a case about a taxpayer's failure to pay a gross receipts tax. *In re McCarty* appears to be a fictitious case that does not exist and was perhaps hallucinated by artificial intelligence.

*Reddaway* is the seminal case in Oregon setting forth the factors that Oregon courts consider in determining whether a testamentary instrument was the product of undue influence. Under *Reddaway*, a confidential relationship between a tortfeasor and the testator coupled with suspicious circumstances creates a presumption of undue influence, which the tortfeasor must then overcome by presenting evidence sufficient to negate that presumption. *Reddaway*, 214 Or. at 420.

A confidential relationship is one in which the tortfeasor has a position of dominance over the settlor. *Id.* at 420–21. It is "a fiduciary relationship, either legal or technical, wherein there is a confidence reposed on one side with a resulting superiority and influence on the other[,]" and "It may be a moral, social, domestic or merely a personal relationship." *In re*

*Pletz's Estate*, 22 Or. App. 248, 252–53 (1975) (quoting *In re Comegys' Estate*, 204 Or. 512, 522 (1955)).  The requisite dominance or superiority does not require bullying or subjugation; it can be in the form of suggestion, persuasion, or fostering a sense of dependence.  *Knutsen v. Krippendorf*, 124 Or. App. 299, 309 (1993), *rev. den.*, 318 Or. 381 (1994).

The following factors determine whether suspicious circumstances exist in a case about undue influence over a trust: (1) the participation of a beneficiary in preparing or destroying the trust; (2) the lack of independent and disinterested advice regarding the trust; (3) secrecy and haste in making the trust; (4) an unexplained change in the donor's attitude toward those for whom he or she had previously expressed affection; (5) a change in the testamentary plan that ignores the natural objects of the testator's bounty or disregards the continuity of purpose running through former testamentary dispositions; (6) an unnatural or unjust gift; and (7) the donor's susceptibility to influence."  *Reddaway*, 214 Or. at 421–25; *Harris v. Jourdan*, 218 Or. App. 470, *rev. den.*, 344 Or. 558 (2008).  These factors weigh heavily in favor of a finding of undue influence.

Ann's Third Trust Amendment of July 28, 2017, removed Couvrette from her position as co-trustee but kept her, one of Ann's four children, as a beneficiary.  Wisnovsky Decl. ¶ 6, Ex. 556 at 5 (Third Trust Amendment).  Couvrette drafted the Fourth Trust Amendment.  ECF 145-1 at 17:7–19.  It purported to destroy Ann's existing Trust by superseding the first, second and third amendments, saying they "shall be of no further force or effect."  ECF 146-10 at 1.  It purported to replace the existing Trust with a new Trust whose "rest, residue and remainder . . . shall be divided into two (2) equal shares" and distributed entirely to Couvrette and Robert.  *Id.*  Couvrette was a beneficiary who in May 2019 participated in the purported destruction of Ann's existing Trust and preparation of a new Trust.

Page 36 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

When Ann signed the Fourth Trust Amendment on May 31, 2019, she did so without independent and disinterested advice regarding her Trust. She had already written to Huycke on May 22, 2019, terminating him from Couvrette's home in San Diego, and she had not yet met with Turner in Oregon. ECF 146-25. Ann did not have an attorney when she signed the Fourth Trust Amendment.

Couvrette acted with secrecy and haste in obtaining Ann's signature on the Fourth Trust Amendment. Couvrette kept the Fourth Trust Amendment secret from Mark and Mike and did not share it with them until November 2020. ECF 146 ¶ 50. She acted with haste by getting Ann to sign the amendment on the same day she and Ann flew to Oregon and without waiting for Ann to obtain a new attorney. *Id.* ¶¶ 48–49.

The Fourth Trust Amendment purported to effectuate an unexplained change in Ann's attitude towards Mark and Mike, for whom she had long expressed affection. Wisnovsky Decl. ¶ 7. Not only had Mark and Mike spent their entire childhoods with Ann, but they began working for her full time in 1986 and 1991, respectively, had worked closely with her at the winery since then, and during that entire time she lived next door to the Valley View Property. ECF 146 ¶ 5. Mark and Mike enjoyed a close relationship with their mother until Couvrette sequestered her in San Diego and refused to allow her to return to Oregon after July 2019. Wisnovsky Decl. ¶ 7. The Fourth Trust Amendment purported to effectuate an abrupt, unexplained change in Ann's attitude towards Mark and Mike.

The Fourth Trust Amendment also purported to effect a change in Ann's testamentary plan so that it would ignored Mark and Mike, who are natural objects of her bounty, and to disregard the continuity of purpose running through her former estate planning documents, which made preservation of the winery and vineyard a priority. Wisnovsky Decl. ¶ 7. The Third

Trust Amendment and prior estate plans provided for meaningful distributions to each of Ann's children. *Id.* ¶ 8. The Fourth Trust Amendment provided only for Couvrette and Robert. *Id.* Considering Mark and Mike's devotion to Ann's life's work and legacy that was the Valley View winery and vineyard, the Fourth Trust Amendment that purported to leave Ann's estate entirely to Couvrette and Robert was an unnatural or unjust gift. *Id.*

Ann was highly susceptible to influence when she signed the Fourth Trust Amendment. Wisnovsky Decl. ¶ 9. She was living with Couvrette and therefore dependent on her, and she was also depending on Couvrette to help her return to Oregon that same day. *Id.* She was already losing her memory and suffering from confusion and incapacity, as shown above. *See supra* § VI.B.

Plaintiffs imply the many indicia of undue influence surrounding the pivotal Fourth Trust Amendment are somehow nullified by the allegation that "Ann retained Gary Turner to review and finalize her estate planning, including the Fourth and Fifth Trust Amendments" and the allegation that the Fifth Trust Amendment "reaffirmed the Fourth Amendment of the Trust." ECF 142 at 25. Plaintiffs present no testimony of Turner or anyone else, however, to substantiate this assertion. The Fifth Trust Amendment purports to affirm the Fourth Trust Amendment (*see* ECF 146-11 at 2 (Fifth Trust Amendment)), but Plaintiffs present no evidence that Turner ever reviewed the Fourth Trust Amendment with Ann, understood her previous estate plan, advised her on the differences, or helped her decide whether to keep or reverse the unnatural changes in her estate plan that the Fourth Trust Amendment drafted by Couvrette purported to effectuate. Turner himself admitted he never saw Ann read the Third Trust Amendment or Amended Agreement to Make Payments. Turner Dep. at 160:19–161:7, 161:19–162:9. Couvrette took advantage of Ann, and Turner was Couvrette's unwitting pawn.

On July 4, 2019, Couvrette flew Ann to live with her in California, taking her away from her Oregon home of nearly 50 years (to which she would never return), and taking away her cell phone. ECF 146 ¶ 55. From that point forward, the only way Ann could communicate with Mark and Mike outside of Couvrette's presence was through Couvrette's Amazon Alexa device or with the housekeeper's cell phone. ECF 146 ¶ 55. When Mark and Mike were able to communicate with Ann, she repeatedly expressed her desire to return home to Oregon. *Id.*

Turner testified that by July 2019, "The most effective way to reach [Ann] was to let [Couvrette] know when I was going to call so that '[Ann] could make sure to have her phone available and functioning[.]'" Turner Dep. at 124:9–13. Turner tried to reach Ann on August 30, 2019, but was not able to reach her because Couvrette was recovering from surgery. *Id.* at 139:17–25. Turner was not surprised that he could not reach Ann that day, as his ability to speak with Ann "depended on Ms. Couvrette's availability and participation." *Id.* at 140:1–7. When asked if he "always tried to coordinate [his] calls with Ann through Ms. Couvrette[,]" Turner stated "[t]hat was the most efficient way to proceed." *Id.* at 140:20–21.

As mentioned above, Couvrette emailed Senior Medical Associates on November 13, 2019, the same day that Ann executed the sixth trust amendment and her resignation as trustee of her own trust. The email shows that Couvrette knew Ann was experiencing diminished capacity by repeating herself and that Couvrette was trying to influence the opinion of Ann's attorney regarding Ann's capacity to sign legally binding documents. The evidence that Couvrette was unduly influencing Ann continued long after Ann signed the Fourth and Fifth Trust Amendments.

The first counterclaim raises genuine issues of material fact and cannot be dismissed as a matter of law and undisputed fact at summary judgment.

Page 39 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

**D.**    **Plaintiffs' Motion Fails to Show They Are Entitled to Dismissal of the Wisnovsky Defendants' Counterclaim Against Couvrette for Tortious Interference with Inheritance as a Matter of Law and Undisputed Fact.**

The Wisnovsky Defendants' ninth counterclaim is for tortious interference with Mark and Mike's inheritance, to which they are entitled pursuant to the inheritance contract. ECF 114 ¶¶ 98–102.[3] This claim asserts Couvrette is interfering with their inheritance by causing the Trust to withhold and not transfer to them its ownership of Wisnovsky Land and the Valley View Property. It further asserts Couvrette is taking steps to sell or distribute Wisnovsky Land or the Valley View Property to Couvrette and Robert. *Id.* ¶ 100. To the extent the other counterclaims do not adequately remedy Couvrette's tortious interference with Mark and Mike's inheritance, this claim is intended to hold Couvrette liable for damages, including damages for delaying the transfer of Wisnovsky Land to them. *Id.* ¶ 101.

Plaintiffs argue the Wisnovsky Defendants' ninth counterclaim should be dismissed because there is supposedly no evidence that Couvrette "interfered with Defendants' prospective inheritance," "acted with improper means or for an improper purpose," or caused any interference or damages. ECF 142 at 30–31. These arguments fail to show Plaintiffs are entitled to dismissal of the ninth counterclaim as a matter of law and undisputed fact.

---

[3]    The Wisnovsky Defendants' pleading describes the counterclaim as one for "Tortious Interference with *Prospective* Inheritance." ECF 114 at 25 (italics added). The claim anticipated that when Ann died Couvrette would cause the Trust to breach the inheritance contract. That expectation was proven true. Ann passed away on March 16, 2023; the inheritance came due; Couvrette caused the Trust to breach the contract by withholding Wisnovsky Land from Mark and Mike. The word "prospective" no longer belongs in this counterclaim so the Wisnovsky Defendants will therefore refer to it simply as a claim for "Tortious Interference with Inheritance."

The elements of a claim for tortious interference with prospective inheritance differ from the elements for tortious interference with economic relations only by classifying the "prospect of an inheritance" as a protected economic relationship. *Allen v. Hall*, 328 Or. 276, 285 (1999). Plaintiffs' motion puts at issue only the elements of intentional interference, improper means or improper purpose, and causation, each addressed below.

### 1. Couvrette Is Intentionally Interfering with Mark and Mike's Inheritance by Withholding Ownership Wisnovsky Land and the Valley View Property.

Plaintiffs argue "The key element of 'intentional interference' is not supported by the facts provided." ECF 142 at 30. This element is satisfied by evidence the tortfeasor "knows that interference is substantially certain to occur from its action." *Aylett v. Universal Frozen Foods Co.*, 124 Or. App. 146, 152 (1993). This element raised triable fact issues in *Aylett* because there was evidence the defendant knew its actions would harm the plaintiff's business relationship with a third party. *Id.* at 152–53.

Here, there is no doubt Couvrette intended her actions to deprive Mark and Mike of their inheritance of Wisnovsky Land and the Valley View Property when Couvrette unduly influenced Ann, who suffered from diminished capacity, to sign the Fourth Trust Amendment and when Couvrette used her power as acting Trustee to withhold ownership of those assets from Mark and Mike. The Fourth Trust Amendment expressly revoked Ann's existing estate plan and provided for all of the Trust assets (other than personal property) to be distributed to Couvrette and Robert, with nothing for Mark or Mike. ECF 146-10 (Fourth Trust Amendment). Couvrette acted with the specific intent of depriving Mark and Mike of their inheritance, and she has so far succeeded.

Page 41 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

Mark and Mike first alleged this counterclaim in their second amended answer and counterclaims on November 23, 2022. ECF 73 ¶¶ 96–99. They included it in their third amended answer and counterclaims as well as their fourth, which is the operative pleading. ECF 90 ¶¶ 98–102; ECF 114 ¶¶ 98–102. Couvrette has been party to this case since its inception. She knows Mark and Mike are claiming a right to inherit Wisnovsky Land and its Valley View Property, and she knows they allege she is interfering with that right. She has known all this and has deliberately withheld ownership of Wisnovsky Land and the Valley View Property from them.

Ann died over two years ago on March 16, 2023. ECF 137 at 2; ECF 146 ¶ 57. The Trust has not transferred ownership of Wisnovsky Land to Mark and Mike Wisnovsky. *Id.* The registered manager of Wisnovsky Land is "Joanne Couvrette, as Trustee of the Ann M Wisnovsky Trust u/t/a/d August 2, 2012 as amended." ECF 146-34. Plaintiffs assert Couvrette obtained a California Superior Court order on June 6, 2024, "affirming Joanne Couvrette as Trustee[.]" ECF 142 at 33. Couvrette is controlling the Trust as its acting Trustee and is deliberately withholding ownership of Wisnovsky Land from Mark and Mike.

Couvrette has been intentionally interfering with Mark and Mike's inheritance. Plaintiffs have not disproven this element as a matter of law and undisputed fact.

> ### 2. *There Are Genuine Issues of Material Fact as to Whether Couvrette Acted with an Improper Motive or Purpose.*

Oregon courts construe the "improper means or for an improper purpose" element as follows:

> "If a defendant's alleged liability is based on [improper motives],
> 'then the purpose must be to inflict injury on the plaintiff as such.'
> If liability is based on the use of improper means, 'then the means

must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession.' Improper means can include 'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'"

*Ride PDX, LLC v. Tee & B, LLC*, 322 Or. App. 165, 168 (2022) (internal citations omitted; italics omitted).

Plaintiffs cite *Allen* for the black-letter rule that a claim for tortious interference with prospective inheritance requires evidence the tortfeasor acted through improper means or for an improper purpose. ECF 142 at 31. In *Allen*, the plaintiffs adequately alleged the defendant acted with "improper means" by making false representations to the decedent's lawyer that the decedent "was not lucid enough to execute a will," which allegedly caused the decedent not to execute a will prepared by the lawyer before the decedent passed away, thereby injuring the plaintiffs. 328 Or. at 286.

*Allen* supports denial of Plaintiffs' motion because a reasonable juror could infer Couvrette acted with improper means in attempting to deprive Mark and Mike of their rightful inheritance by: (1) causing Ann to revoke the Second Trust Amendment and appoint Couvrette as successor Trustee by unduly influencing Ann and taking advantage of her diminished capacity; and (2) using her power as acting Trustee to withhold ownership of Wisnovsky Land and the Valley View property. Undue influence constitutes "improper means" under Oregon law. *Church*, 190 Or. App. at 118. The Wisnovsky Defendants showed above that their claim of undue influence raises genuine issues of material fact. Those questions preclude summary judgment against the Wisnovsky Defendants' ninth counterclaim.

Page 43 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

Plaintiffs also cite *Grimstad v. Knudsen*, 283 Or. App. 28 (2016), for the proposition "that improper conduct, such as self-dealing or violating fiduciary duties, is required to satisfy the 'improper means' element of the tort." ECF 142 at 31. That is not what *Grimstad* holds, and it is contradicted by the case law quoted above that holds "improper means" refers to conduct that "violate[s] some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Ride PDX, LLC*, 322 Or. App. at 168. Couvrette acted with an improper means when she unduly influenced Ann and took advantage of her diminished capacity.

*Grimstad* is distinguishable from this case and has no bearing on its outcome. *Grimstad* affirmed the trial court's dismissal of the plaintiff stepchildren's claim for intentional interference with prospective economic advantage because their evidence did not create a triable fact issue as to the propriety of the defendant biological children's purpose or means in selling their mother's real property (which the plaintiffs argued they were entitled to inherit when their mother passed away) in order to fund her Alzheimer's care. 283 Or. App. at 54–58. The defendants were the attorneys-in-fact for their mother. Their decision to sell one of their mother's properties to fund her expensive Alzheimer's care was consistent with their rights and duties as their mother's attorneys-in-fact. *Id.* at 57–58. That decision was not prohibited by the mother's estate plan. *Id.* There was no evidence creating a triable fact issue as to whether the defendants acted with an improper motive or purpose in selling the property that the plaintiffs stood to inherit upon the mother's passing. *Id.*

In *Grimstad*, the plaintiffs did not allege and presented no evidence that the defendants obtained their power of attorney with improper means or purpose or that they caused their mother to amend her estate plan through undue influence or by taking advantage of her

Page 44 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

diminished capacity. There is ample evidence of that here. Couvrette acted with improper means and for an improper purpose and has not disproven that element as a matter of law and undisputed fact.

### 3. Couvrette's Interference Has Been Harming the Wisnovsky Defendants.

Plaintiffs argue "causation is lacking" because "Ann's revocation of the Redemption Agreement and changes to her Trust were her own decisions, made with legal and medical guidance." ECF 142 at 30. The Court should reject that argument because it is not supported by any admissible evidence.

Oregon law requires "a causal effect between the interference and the harm to the relationship or prospective advantage." *Allen*, 328 Or. at 281. In *Allen*, the plaintiff adequately pleaded causation by alleging the defendants prevented the testator from amending his will by placing him into hospice and instructing the testator's attorney that the testator lacked capacity to amend the will just prior to his death. *Id.*

In *NV Transport, Inc. v. V&Y Horizon, Inc.*, 302 Or. App. 707, 713 (2020), summary judgment against the plaintiff's tortious interference claim was precluded because there were triable fact issues about whether the defendants' actions contributed to or caused the plaintiff's inability to enjoy an expected economic benefit after the defendants diverted jobs to their business and blocked the plaintiff's access to its business email account. The court held the "coincidence" of the defendants' conduct and the plaintiff's harm "allows a reasonable inference" that the defendants caused the plaintiff's harm. *Id.*

Here, a reasonable juror could find Couvrette interfered with Mark and Mike's inheritance of Wisnovsky Land and the Valley View Property by: (1) causing Ann to revoke the Second Trust Amendment and appoint Couvrette as successor Trustee by unduly influencing

Page 45 -   WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
   SUMMARY JUDGMENT AND MOTION TO DISMISS

Ann and taking advantage of her diminished capacity; and (2) using Couvrette's power as acting Trustee to withhold ownership of Wisnovsky Land and the Valley View property. By withholding ownership of these assets, Couvrette is preventing Mark and Mike from benefiting from them.

Ownership of Wisnovsky Land will allow Mark and Mike to voluntarily dismiss all claims by Wisnovsky Land against them and dismiss or settle all of the Wisnovsky Defendants' claims against Wisnovsky Land. It will allow Mark and Mike to amend Valley View's lease to better serve Valley View's interests. It will allow them to retain all rent payments made by Valley View to Wisnovsky Land. It will allow them to sleep at night knowing Ann's legacy— the historical Valley View winery and vineyard—is safe from their siblings' efforts to terminate the Leases and evict Valley View from the land. These are material benefits. By wrongfully withholding Wisnovsky Land and the Valley View Property from Mark and Mike, it is self-evident that she is causing them substantial harm.

Like the other elements discussed above, Plaintiffs' motion fails to prove as a matter of law and undisputed fact that Couvrette's tortious interference with Mark and Mike's inheritance contract is causing them no harm. Plaintiffs' motion for summary judgment against the ninth counterclaim must be dismissed.

## VII.  COUNTERCLAIMS RELATED TO THE LEASES

**A.**  **The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaim for Breach of the Leases Because Triable Fact Issues Preclude Summary Judgment.**

Plaintiffs argue Valley View's second counterclaim, for breaching the Vineyard Lease by preventing erection of the "PreFab Building" and later all hemp cultivation at the Valley View

Property, should be dismissed because "The undisputed facts demonstrate that Plaintiffs did not breach the Vineyard Lease[.]" ECF 142 at 17. Plaintiffs argue only that there is no evidence of the alleged breach and raise no issue in this section of their motion regarding the enforceability of the Vineyard Lease, Valley View's performance or discharge of its lease obligations, or Valley View's damages resulting from Plaintiffs' breach. The Court should deny Plaintiffs' motion because the element of breach raises triable issues of fact, precluding summary judgment.

Plaintiffs' motion asserts three areas under which evidence allegedly shows Wisnovsky Land did not breach the Vineyard Lease: "no obligation to consent"; "good faith negotiations"; and "no evidence of bad faith." ECF 142 at 17 (bold and capitalization omitted). Each of these subjects relates to whether Wisnovsky Land breached its contractual duty of good faith and fair dealing by engaging in acts that impeded and injured Valley View's right to receive benefits under the Vineyard Lease, as alleged in the Wisnovsky Defendants' pleadings. ECF 114 ¶¶ 46–64. As shown below, there are genuine issues of material fact regarding that issue, thus precluding summary judgment.

Plaintiffs cite *Best v. US Nat'l Bank of Oregon*, 303 Or. 557 (1987), for the proposition that "parties to a contract must act in good faith and deal fairly[,] . . . includ[ing] engaging in honest and reasonable negotiations." ECF 142 at 17. Plaintiffs argue they acted "in good faith by proposing reasonable terms for rent, insurance, and indemnification to allow construction of the building." *Id.* That argument is not supported by *Best* or the evidence here.

*Best* held a triable fact issue existed as to whether the defendant bank breached its duty of good faith and fair dealing in setting unreasonably high NSF fees that were inconsistent with the parties' reasonable expectations. *Best*, 303 Or. at 565. The court held the common law duty of good faith applies to "the performance and enforcement of every contract," and its purpose "is to

prohibit improper behavior in the performance and enforcement of contracts." *Id.* at 561–62. Under the facts of *Best*, that duty limited the defendant's "apparently unlimited authority to set NSF fees" such that the fees had to be consistent with the parties' reasonable expectations that were established upon entering into the contract. *Id.* at 561. The court held there were genuine issues of material fact as to whether the defendant breached its duty of good faith and fair dealing in setting those NSF fees.

*Best* says nothing about "engaging in honest and reasonable negotiations" and contradicts Plaintiffs' motion because *Best* shows that summary judgment should be denied where a reasonable juror could conclude that a contracting party's conduct was inconsistent with the parties' reasonable expectations established upon entering into the contract.

Valley View, the Trust, and Wisnovsky Land had the reasonable expectation of allowing Valley View to sublet part of the property to an LLC owned by Mark and Mike for the purpose of cultivating and harvesting hemp. The following evidence manifested that intent:

(1) The Second Addendum to the Vineyard Lease modifies the Vineyard Lease in several material ways, including setting higher lease rates for hemp cultivation, setting "Annual Base Rent" contingent of future hemp production, and allowing Valley View to "sublet all or any part of the Future Production Land" to Mark, Mike, and/or an LLC owned by them. ECF 146-8 at 1–2.

(2) On May 4, 2017, Mark delivered a letter to Ann informing her that Valley View "is subletting ten (10) acres of land owned by Wisnovsky Lands, LLC to Third Generation Farms, LLC which is wholly owned by Mark & Michael Wisnovsky," resulting in additional rent of $1,000 per month and enclosing $1,000 for the first month's rent. ECF 146 ¶ 42; ECF 146-24 at 1.

(3) Ann knew about the sub-lease and hemp cultivation and expressed her approval to Mark on several occasions.  ECF 146 ¶ 42.  Valley View paid tens of thousands of dollars of additional rent to Wisnovsky Land pursuant to the Second Vineyard Addendum as a result of the hemp cultivation by Third Generation Farms.  *Id.*

(4) Ann signed the 2017 *Agreement for Changes to Buildings* that consented to "improvements and alterations [deemed] necessary [for the] business operations of either company as required by the winery and vineyard leases."  ECF 146-23 (underline added).

Based on the foregoing evidence, a reasonable factfinder would conclude Ann and the Wisnovsky Defendants shared the reasonable expectation that Valley View would be allowed to sub-lease portions of the Valley View Property to a company wholly owned by Mark and Mike—like Third Generation Farms—for hemp cultivation.

Ann gave the Wisnovsky Defendants similar expectations regarding her permission to construct the PreFab Building, as shown by the following evidence:

(a) Ann signed the 2017 *Agreement for Changes to Buildings* that generally consented to Valley View or Third Generation Farms making improvements and alterations to buildings at the Valley View Property.  ECF 146 ¶ 43; ECF 146-23 (Ex. 1226).

(b) Ann signed, in the presence of witness Bruce Gieg, the June 20, 2019 *Notice of Improvement to Winery and Vineyard Lease* between Valley View and Wisnovsky Land that documented Ann's consent for Valley View to install a 4,800 square-foot building for farm and winery uses, i.e., the PreFab Building.  Wisnosvky Decl. ¶ 10, Ex. 567.

/ / /

Page 49 -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
              SUMMARY JUDGMENT AND MOTION TO DISMISS

Valley View relied on those expectations by negotiating with JB Steel in June 2019 to construct the PreFab Building for approximately $170,000. Wisnovsky Decl. ¶ 11. Structural Solutions, Inc. submitted a Structural Calculation Package to JB Steel in preparation for installing the PreFab Building on July 19, 2019. *Id.* A building permit application was submitted to the county in June 2019 and work was slated to begin on August 3, 2019. *Id.* The hemp harvest was scheduled for the first week of September 2019, which meant the PreFab Building needed to be completed by July 31, 2019. *Id.* In mid-July 2019, Third Generation Farms and Valley View were on schedule to use the PreFab Building to dry and process hemp in 2019 and subsequent harvests. *Id.*

The above lists of evidence show the reasonable expectations of the parties to the Vineyard Lease, establishing their benefits as contractual rights and prohibiting Wisnovsky Land from blocking the hemp cultivation or PreFab Building. They also support the reasonable findings that Ann ratified and approved of the sub-lease and plan for the PreFab Building, waived any objection to it, and estopped Plaintiffs from denying Valley View those contractual benefits, pursuant to the legal authorities set forth in the Wisnovsky Defendants' motion for partial summary judgment. *See* ECF 143 at 30:10–38:24 (presenting authorities).

There is also ample evidence from which a reasonable factfinder would find a breach of the foregoing contractual obligations. On July 26, 2019, Mark went to pick up the finalized building permit at the county office, but when he arrived he saw Couvrette's personal attorney (Dick Thierolf) speaking with a county planner. Wisnovsky Decl. ¶ 12. Soon thereafter, Mark was informed that the permit could not be granted because Wisnovsky Land did not consent to it. *Id.* By early August 2019, the equipment to install the PreFab Building had been removed from the property because Plaintiffs had prevented the building permit from being issued. *Id.*

Page 50 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
        SUMMARY JUDGMENT AND MOTION TO DISMISS

Because the Wisnovsky Defendants were unable to obtain the permits, Third Generation Farms was forced to dry its hemp off-site and incurred substantial losses as a result. *Id.*

Third Generation Farms cultivated and harvested hemp at the Valley View Property in 2017, 2018, 2019, and 2020, and wanted to do so again in 2021. Wisnovsky Decl. ¶ 14. This required renewal of its Oregon Department of Agriculture ("ODA") hemp license. *Id.* Third Generation Farms applied for the license in March 2021, but ODA did not grant it. *Id.*

Mark later learned that Couvrette had applied to ODA in January 2021 for it to grant Wisnovsky Land a hemp license for the Valley View Property. Wisnovky Decl. ¶ 15, Ex. 665. ODA granted Wisnovsky Land's application for a 2021 hemp license for the Valley View Property. *Id.*, Ex. 988.

Emails between Couvrette and ODA on January 28, 2021, show that Couvrette wrote: "I represent the owner, Wisnovsky Land LLC. We will not permit any other permits on our property this year." Wisnovsky Decl. ¶ 16, Ex. 668. Because Third Generation Farms could not obtain a 2021 ODA hemp license it was unable to grow hemp in 2021 and the Trust lost approximately $30,000 in rental income in 2021 that it would have received if Third Generation Farms had been able to obtain a hemp license. Wisnovsky Decl. ¶ 17.

Couvrette renewed Wisnovsky Land's hemp license in 2022, again preventing Third Generation Farms from obtaining a license to grow hemp at the Valley View Property. Wisnovsky Decl. ¶ 18, Ex. 988. This resulted in the Trust losing about $30,000 in rental income in 2022 that it would have received if Third Generation Farms had been able to obtain a hemp license. *Id.* Despite obtaining ODA hemp licenses in 2021 and 2022, Wisnovsky Land has never grown hemp at the Valley View Property; nor have Joanne, Robert, the Trust, or any of their business entities. *Id.* ¶ 20.

Page 51 -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

A reasonable juror could find that Plaintiffs' conduct is wholly inconsistent with Valley View's reasonable expectations of being able to sublet portions of the leased property to Third Generation Farms to cultivate and harvest hemp, as well as its reasonable expectation of being able to construct the PreFab Building.  Thus, there is ample evidence of both the alleged contractual duties and their breach by Wisnovsky Land.

Plaintiffs argue Wisnovsky Land did not breach the Vineyard Lease because "Section 6.1 of the Vineyard Lease requires landlord consent for tenant improvements but does not obligate the landlord to grant such consent."  ECF 142 at 17.  Plaintiffs cite *US Nat'l Bank of Oregon v. Boge*, 311 Or. 550 (1991), to support their argument that they "acted within their contractual rights by negotiating terms for the Prefabricated Building."  *Id.*

*Boge* is inapposite because it deals only with the question of whether the Oregon legislature intended to displace the common law implied duty of good faith with the duty of good faith provided by Article 9 of the UCC (ORS chapter 79).  *Boge*, 311 Or. at 552.  The court analyzed the contextual history of the UCC and held its duty of good faith supplanted the common law duty of good faith in UCC security agreements.  *Id.* at 558–66.  The court then held the trial court erred in instructing the jury that the defendant lender's duty of good faith in performing a security agreement was defined by an objective standard of fair dealing instead of a subjective standard of honesty-in-fact.  *Id.* at 565–66.

The Vineyard Lease at issue here is not a UCC security agreement governed by a UCC "honesty-in-fact" subjective standard of good faith.  Instead, it's governed by the common law objective standard of fair dealing implied in non-UCC agreements.  *Boge* has no bearing on the outcome of this case whatsoever.

/ / /

Page 52 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

Additionally, Plaintiffs cite *Vasquez-Lopez* to support the argument, "Oregon law does not require a landlord to agree to tenant improvements unconditionally" and their "actions—negotiating reasonable terms for indemnification and rent—align with the commercial standards of fair dealing." ECF 142 at 17 (citing 210 Or. App. at 572). But *Vasquez-Lopez* is inapplicable to the facts of this case, as it does not mention the duty of good faith and fair dealing at all or otherwise concern the performance or enforcement of a contract. *See generally*, *Vasquez-Lopez*, 210 Or. App. 553 (2007).

Moreover, as shown above in section IV.B.3, the evidence on which Plaintiffs rely to prove they acted reasonably by attempting to negotiate with the Wisnovsky Defendants is inadmissible because it is evidence of settlement communications inadmissible under Rule 408.

None of Plaintiffs' legal authorities or citations to evidence show they are entitled to judgment as a matter of law and undisputed fact on the Wisnovsky Defendants' second counterclaim, for breach of the Leases related to hemp cultivation and the PreFab Building. The elements of duty and breach raise genuine issues of material fact precluding summary judgment.

**B.** **The Wisnovsky Defendants' Counterclaim for Tortious Interference with Economic Relations Raises Genuine Issues of Material Fact.**

Plaintiffs' motion argues Valley View's third counterclaim, for tortious interference with economic relations related to the PreFab Building and hemp cultivation, should be dismissed because there is no evidence that Plaintiffs intentionally interfered with Valley View's economic relations, acted with improper means, or caused Valley View any damages. ECF 142 at 18. These arguments raise genuine issues of material fact that preclude summary judgment against the third counterclaim..

Plaintiffs' argument cites no case law, likely because Oregon law does not supports Plaintiffs' argument.   Tortious interference with economic relations requires proof of four elements: "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages." *Ride PDX, LLC*, 322 Or. App. at 167.

The Wisnovsky Defendants will address only the elements of improper means, intentional interference, and damages, as those are the only elements raised by Plaintiffs, and the Wisnovsky Defendants are only required to respond to the specific elements argued in Plaintiffs' motion. *See Zamani*, 491 F.2d at 997; *Maney*, 729 F. Supp. 3d at 1119; *Long*, 2017 WL 1217155, at *8.

### 1. There Are Genuine Issues of Material Fact as to Whether Plaintiffs Intentionally Interfered with Valley View's Economic Relations with Third Generation Farms.

Plaintiffs argue Valley View cannot satisfy the "intentional interference" element because "Plaintiffs did not prevent the construction of the Prefab Building" and instead "sought to negotiate reasonable terms, as evidenced by the email correspondence." ECF 142 at 18. Plaintiffs cite no case law supporting that argument.

The intentional interference element is satisfied if there is proof that the tortfeasor "knows that interference is substantially certain to occur from its action." *Aylett v. Universal Frozen Foods Co.*, 124 Or. App. 146, 152 (1993) (citing *Straube v. Larson*, 287 Or. 357, 360 (1979)).   In *Aylett*, the Oregon Court of Appeals held there were triable fact issues as to the "intentional interference" element of the plaintiff's intentional interference with economic

relations claim because there was evidence that "could reasonably support a finding" that the defendant knew its actions would harm the plaintiff's business relationship with a third party. *Id.* at 152–53.

*Aylett* concerned two parties to a contract whereby the defendant agreed to buy a certain amount of pre-harvest potatoes from the plaintiff and had a right of first refusal to buy post-harvest potatoes from the plaintiff. *Id.* at 148–49. During a harvest season one of the defendant's competitors orally offered to buy the plaintiff's post-harvest potatoes for $90 per ton, and the plaintiff informed the defendant of that offer and asked the defendant to either purchase the potatoes at or above that offer or release its right of first refusal. *Id.*

The defendant demanded that the plaintiff obtain the competitor's offer in writing before it would release its right of first refusal, but plaintiff failed to obtain such an offer, and the defendant released its right of first refusal a few days later. *Id.* During that time the price of potatoes dropped significantly, thus causing the plaintiff to sell the potatoes for a lower price. *Id.* The plaintiff then sued the defendant for intentional interference with economic relations. The court of appeals held triable fact issues prevented summary judgment against the claim because evidence showed the "defendant had never demanded a written offer from any grower before relinquishing its right of first refusal;" the "defendant knew of the extreme volatility in the potato market [when plaintiff received its oral offer;]" and the defendant knew the offeror was buying potatoes and much higher prices. *Id.* at 152–53. A reasonable juror could construe that evidence to find the defendant intentionally interfered with the plaintiff's economic relationship with the third party offeror.

Here, as in *Aylett*, a reasonable juror could find Plaintiffs intentionally interfered with Valley View's economic relationships when, as shown above, Plaintiffs prevented Valley View

from constructing the PreFab Building and prevented Third Generation Farms from cultivating hemp, interfering with their contractor and customer relationships. *See, supra*, § VII.A.

Third Generation Farms had an economic relationship with Valley View that Plaintiffs interfered with. Third Generation Farms has never been party to this case so it assigned its claims to Valley View on April 8, 2022. Wisnovsky Decl. ¶ 19, Ex. 1301. That means Valley View's counterclaim for tortious interference includes any tortious interference Third Generation Farms would otherwise have to allege in its own name.

This evidence shows Plaintiffs either knowingly interfered with Valley View's economic relationship with Third Generation Farms or knew that interference was substantially likely to occur as a result of their actions. Either way, genuine issues of material fact require denial of Plaintiffs' motion.

## 2. There Are Genuine Issues of Material Fact as to Whether Plaintiffs Acted by Improper Means.

Plaintiffs argue Valley View cannot prove Plaintiffs acted with improper means because "Plaintiffs' actions were lawful and consistent with the Vineyard Lease" and "Negotiating terms for tenant improvement does not constitute improper means or wrongful interference." ECF 142 at 18. Oregon courts state that the "improper means" must violate an "objective, identifiable standard, such as . . . a recognized rule of common law, or . . . an established standard of a trade or profession[,]' which can include '. . . *deceit or misrepresentation*, bribery, unfounded litigation, defamation, or disparaging falsehood.'" *Ride PDX, LLC*, 322 Or. App. at 168 (internal citations omitted; italics in original).

In *Ride PDX, LLC*, the court of appeals reversed the trial court's grant of the defendant's motion for summary judgment, finding there were triable fact issues as to whether the defendant

acted with improper means in threatening to sue plaintiff's landlord if the landlord did not evict the plaintiff from the leases premises next door to the defendant's lease premises. *Id.* at 178–81.

The defendant in *Ride PDX, LLC* told the parties' joint landlord that the plaintiff's noisy business operations caused the defendant to lose revenue and that, prior to the plaintiff's business operations, the defendant never received any noise complaints from its customers or employees. *Id.* at 179–80. Based on those representations, the landlord filed an FED action to evict the plaintiff, but the plaintiff prevailed and then sued the defendant for intentional interference with economic relations.

The plaintiff alleged the defendant misrepresented facts to the landlord about the plaintiff's business operations and the harm the defendant suffered because of plaintiff's allegedly noisy business operations. *Id.* at 170. The plaintiff presented evidence that the defendant's revenue actually increased during the time the plaintiff operated its business adjacent to the defendant's business and that the defendant had previously received many noise complaints from its own customers about its own operations. *Id.* at 180–81. The court held a reasonable juror could conclude the defendant misrepresented facts to the landlord and thus acted with improper means and interfered with the plaintiff's economic relationship with the landlord. *Id.* at 181.

Here, Mark was about to pick up the permit for the PreFab Building at the county office when he saw Couvrette's personal attorney speaking with a county planner. Wisnovsky Decl. ¶ 12. Mark was then informed the permit could not be granted because Wisnovsky Land did not consent to it. *Id.* A reasonable factfinder would conclude Couvrette's personal attorney told the County Wisnovsky Land did not consent to the PreFab Building, which was false because Ann had already consented to it. *Id.*, Ex. 567. It was also false because there is no evidence Ann ever

authorized Couvrette in writing to prevent construction of the PreFab Building, and the Trust required such written authorization before Couvrette could act on behalf of the Trust. ECF 146-1 at 20 § 10.3 ("the Trustee shall exercise the powers above granted only in accordance with the written direction of the Grantor [Ann]"). Couvrette's misrepresentation to Jackson County were an improper means of interfering with Valley View's economic relationships.

Couvrette also used improper misrepresentations to prevent the cultivation of hemp at the leased property. She did that by misrepresenting to ODA in her hemp license application that Wisnovsky Land would cultivate and harvest hemp on the Valley View property. Wisnovsky Decl. ¶ 18. The hemp license application identifies the Valley View property as the "Address where hemp is being grown" and the "Hemp grow site location," and further states the "Hemp Intended use" is "Flower," "Fiber," and "Biomass." *Id.* ¶ 16, Ex. 668 at 4–5. The application states the "Hemp seed" and "Propagation" are for "self-use" and that Wisnovsky Land planned to conduct 2 harvests in 2021. *Id.* at 5. Couvrette signed the application on Wisnovsky Land's behalf and "acknowledge[d] and agree[d]" that "The information provided is true and correct." *Id.* at 6. Based on those representations, ODA granted Wisnovsky Land a hemp license and, because it allowed only one such license per property, refused to issue a hemp license to Third Generation Farms. Wisnovsky Decl. ¶¶ 14–16. Despite obtaining a hemp license in 2021 and renewing it in subsequent years, Wisnovsky Land has never cultivated or harvested any hemp at the Valley View property. *Id.* ¶ 18. Its misrepresentations to ODA were an improper means of preventing Third Generation Farms from cultivating hemp at the leased property.

As in *Ride PDX, LLC*, a reasonable juror could find misrepresentations constituted an improper means of interfering with the claimant's economic relations. The Court should deny Plaintiffs' motion.

Page 58 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

*3.    There Are Genuine Issues of Material Fact as to Whether Valley View Suffered Damages Because of Plaintiffs' Tortious Interference.*

Plaintiffs argue Valley View's tortious interference claim must be dismissed because "Defendants' alleged damages are speculative and unsupported by evidence." ECF 142 at 18. Plaintiffs cite no case law supporting that argument.

In *Aylett*, *supra*, the plaintiffs presented sufficient evidence of their damages to preclude summary judgment on their tortious interference claim because they there was "evidence of the quality of the potatoes that plaintiffs had for sale, the baseline price of potatoes, the market conditions at the time and the price range within which [the defendant's competitor] had agreed to negotiate." 124 Or. App. at 154. The court held, "A jury reasonably could calculate plaintiffs' damages based on that evidence." *Id.*

When Plaintiffs prevented construction of the PreFab Building, Valley View reasonably mitigated its losses by selling the building to a third party at a loss of $16,000 and spending about $78,000 to lease other spaces to store wine. Wisnovsky Decl. ¶ 13. Interference with the PreFab Building forced Third Generation Farms to dry and process some of its 2019 hemp harvest at third-party and temporary on-site facilities, at a cost of about $310,000. *Id.* Without the PreFab Building, Third Generation Farms lacked adequate drying space and was required to purchase hemp flower from third parties to fulfill existing contracts, at a cost of about $110,000. *Id.*

The losses were even greater when Plaintiffs prevented Third Generation Farms from cultivating hemp in 2021 and 2022. Wisnovsky Decl. ¶ 19. That caused Third Generation Farms to be unable to earn any profits, whereas it had been extremely profitable in prior years.

Page 59 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
        SUMMARY JUDGMENT AND MOTION TO DISMISS

*Id.*    Mark estimates Third Generation Farms lost about $1,000,000 in profits because of Couvrette's interference that prevented it from cultivating hemp.    *Id.*

Like the plaintiff in *Aylett*, a jury could reasonably find the Wisnovsky Defendants were damaged by the other party's tortious interference.    Plaintiffs are not entitled to summary judgment against the third counterclaim.

### 4. Couvrette May Be Held Personally Liable for Valley View's Counterclaim for Tortious Interference with Economic Relations.

Plaintiffs argue Couvrette cannot be held personally liable for Valley View's tortious interference counterclaim because Wisnovsky Land allegedly committed the actionable conduct and Wisnovsky Land's only member, Couvrette, "is shielded from personal liability for the LLC's actions." ECF 142 at 18.    Additionally, Plaintiffs argue "Couvrette cannot be held personally liable for actions taken in her capacity as trustee unless there is evidence of personal wrongdoing, which is absent here." *Id.*    Both of those arguments are wrong.

#### i. Couvrette is not shielded from personal liability by her membership in Wisnovsky Land.

Plaintiffs cite ORS 63.165 to support their argument that Couvrette is shielded from liability for Wisnovsky Land's actions.    ECF 142 at 18.    ORS 63.165 states in relevant part:

> "The debts, obligations and liabilities of a limited liability company…are solely [those] of the limited liability company.    A member or manager is not personally liable…solely by reason of being or acting as a member or manager."

ORS 63.165(1).

The Oregon Supreme Court has consistently held that ORS 63.165 shields LLC members <u>only from vicarious liability</u> for the LLC's obligations, not from direct liability for the members'

own tortious acts and omissions.  *See, e.g.*, *Adelsperger v. Elkside Dev. LLC*, 371 Or. 61, 70–71, 74–75 (2023) (holding ORS 63.165 did not shield LLC members from liability for intentional interference with economic relations and elder financial abuse where both LLC and its members were alleged to have acted tortiously).

*Adelsberger* held the trial court erred in granting the defendants' summary judgment motion against the plaintiffs' claim for tortious interference with economic relations on the grounds that the claim was barred by ORS 63.165.  371 Or. at 74–75.  The defendants could have been personally liable if they "interfered in furtherance of personal motives," and the trial court was wrong not to consider evidence of whether the defendants were acting in furtherance of those motives.  *Id.*

In *Turner v. Hallberg*, the District of Oregon found triable fact issues about whether the defendant acted with an improper motive in interfering with the plaintiff's contractual relationship with her lender.  No. 04–276–KI, 2005 WL 2104999, at * 9–10 (D. Or. Aug. 30, 2005).  The defendant was a city building official who aggressively cited the low-income plaintiff many times for violating the city housing code, resulting in fines that attached as liens to the plaintiff's property.  The plaintiff was financially unable to cure the violations, which resulted in the plaintiff's lender foreclosing on the plaintiff's house.  The defendant purchased the home at the foreclosure sale.  The plaintiff then filed a lawsuit against the defendant, alleging a claim for intentional interference with economic relations.

The *Turner* court denied the defendant's motion for summary judgment against the claim, holding: "[The defendant's] purchase of [the plaintiff's] home allows the inference that he cited her property to the extent that he did to force her from the house so he could buy it.  Thus, [the plaintiff] has raised a factual issue that [the defendant] was acting with an improper purpose."

*Id.* at *10; see also, *Reser's Fine Foods, Inc. v. Bob Evans Farms, Inc.*, No. 3:13–cv–00098 AA, 2016 WL 3769361, *16 (D. Or. July 13, 2006) (finding triable fact issues about whether the plaintiff acted with an improper, retaliatory purpose in terminating a supply agreement because a reasonable juror could construe evidence that the plaintiff's imposition of sharp prices increases, cutting of supply, and commencing suit against the defendant was retaliation for the defendant's business decisions that negatively affected the plaintiff).

In this case, the jury could reasonably infer Couvrette interfered with the PreFab Building and hemp cultivation for improper, personal reasons, such as animosity towards her brothers, a desire to retaliate against them, or her desire to increase the value of her beneficial interest in the Trust. Whether Couvrette is personally liable raises genuine issues of material fact.

### ii. Couvrette can be held personally liable for her actions as Trustee of Ann's Trust.

Plaintiffs also argue Couvrette cannot be held personally liable for tortious interference because that counterclaim arises from her "actions taken in her capacity as trustee[.]" ECF 142 at 18. Plaintiffs cite no legal authority to support that argument. Couvrette may indeed be held personally liable under Oregon law for tortious interference, regardless of whether she was acting in her capacity as trustee of the Trust.

ORS 130.845(2) provides, "A trustee is personally liable for torts committed in the course of administering a trust or for obligations arising from ownership or control of trust property . . . only if the trustee is personally at fault." In *O'Donnell v. Vial Fotheringham LLP*, the District of Oregon held, pursuant to ORS 130.845(2), the sole trustee of a trust was personally obligated to pay a debt he incurred with respect to a condominium owned and controlled by the trust. No. 3:19-cv-00579-SB, 2020 WL 6365521, at *2 (D. Or. Sept. 15, 2020).

In *Hector v. Bank of New York Mellon*, the Maryland Court of Appeals held the phrase "personally at fault" in Maryland's statutory equivalent to ORS 130.845 applies to facts where the trustee "personally committed, inspired, or participated" in tortious conduct.  473 Md. App. 535, 561–68, 251 A.3d 1102 (2020).

A reasonable juror could infer from the evidence described above that trustee Couvrette personally committed, inspired, or participated in tortious interference related to the PreFab Building and hemp cultivation at the leased property, for which she can be held personally liable. Plaintiffs' motion should be denied.

**C.      The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaims for Breach of Contract (Overpayment of Rent) and Money Had and Received Because Triable Fact Issues Preclude Summary Judgment.**

Plaintiffs argue Valley View's fourth and fifth counterclaims (breach of contract/ overpayment of rent and for money had and received) should be dismissed for several reasons. This argument relies primarily on the allegation that Valley View breached the Leases by failing to pay rent and because Ann's 2017 consent to accept payments for personal expenses in lieu of rent payments ("2017 Payment Agreement") is allegedly unenforceable and also inadmissible evidence.  ECF 142 at 19.

Valley View's counterclaims for breach of contract (overpayment of rent) and money had and received are premised on the same set of facts, *viz.*, Valley View overpaid rent under the Leases in the amount of $71,589.88.  ECF 114 ¶¶ 71–83.  Plaintiffs' motion does not dispute that Valley View made the alleged overpayment of rent.  Valley View seeks to recover that money either from Wisnovsky Land under a theory of breach of contract or from both Plaintiffs under a

theory of money had and received.  *Id.*  Plaintiffs' motion argues Plaintiffs are not liable under either of those theories of recovery for a variety of reasons, all of which are wrong and fail to foreclose the existence of triable fact issues that preclude summary judgment.

### 1.  *The Statute of Frauds Does Not Bar Enforcement of the 2017 Payment Agreement.*

Plaintiffs argue the Second Vineyard Addendum sets the lease rate and that Ann's 2017 Payment Agreement is void under the statute of frauds (ORS 41.580), thus rendering Valley View's "claims of altered rent obligations invalid."  ECF 142 at 22.  Plaintiffs further argue, "The purported deductions-from-rent document is not original, lacks notarization or witnesses, and has no supporting evidence of payments made on Ann's behalf[,]" which Plaintiffs characterize as violations of ORS 41.580 that "preclude the document's enforceability."  *Id.*

ORS 41.580(1) provides,

> "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law: . . . (e) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

ORS 41.580(1).

As an initial matter, Ann's 2017 Payment Agreement is not an agreement "for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."  The 2017 Payment Agreement manifests Ann's express "consent for Mark and/or Michael Wisnovsky to pay [her] personal bills and deduct the amounts from the monthly lease payments from either the Winery lease, the Vineyard lease or the Hemp Field lease" and "for them to make payments directly to US Bank on [her] home mortgage and deduct the amounts from the monthly

Page 64 -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
                    SUMMARY JUDGMENT AND MOTION TO DISMISS

lease payments from" any of those three leases.  ECF 146-16.  That is neither an agreement for the leasing of property or any interest therein for more than a year, nor a sale of property or any interest therein.  ORS 41.580 does not apply to the 2017 Payment Agreement.

Even if Ann's agreement were subject to ORS 41.580, that statute simply requires an agreement—"or some note or memorandum thereof"—to express the consideration, to be in writing, and to be signed by the party to be charged.  The statute does not require the agreement or note or memorandum thereof to be original, notarized, signed before witnesses, or accompanied by evidence of payments to the party to be charged, as Plaintiffs argue.

Moreover, the agreement complies with ORS 41.580 because it is in fact signed by Ann and states the consideration, namely, that she agreed to accept Mike and Mark's payment of her personal expenses to satisfy Valley View's lease payment obligations under the Leases.

Even if the agreement did not comply with ORS 41.580, Valley View acted in reliance on the agreement and performed it by paying Ann's personal expenses (and Ann accepted those payments), thus creating a triable fact issue as to whether Plaintiffs are estopped from asserting a statute of frauds defense.  *See Burgdorf v. Weston*, 259 Or. App. 755, 760–67 (2013) (reversing trial court's grant of summary judgment that alleged real estate contract was void under statute of frauds because there were triable fact issues as to whether defendant was estopped from asserting that defense due to plaintiff's partial performance of alleged contract).

Thus, ORS 41.580 does not bar enforcement of the 2017 Payment Agreement because that statute does not apply to the agreement at all, the agreement complies with the statute, and Valley View relied on and performed the agreement, thus estopping Plaintiffs from disavowing it.  For any of those reasons, Plaintiffs' motion should be denied.

Page 65 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
             SUMMARY JUDGMENT AND MOTION TO DISMISS

## 2. *The Best Evidence Rule Does Not Bar Enforcement of the 2017 Payment Agreement.*

Plaintiffs invoke the "best evidence rule" to argue the 2017 Payment Agreement is inadmissible under Federal Rule of Evidence 1002 and ORS 40.550 because it is "not the original document" the rule supposedly requires.  ECF 142 at 23.  The Court should reject that argument because the 2017 Payment Agreement complies with the best evidence rule.

ORS 40.550 does not apply to this case because it is an Oregon rule of evidence applicable to Oregon state courts, and only the Federal Rules of Evidence "apply to proceedings in United States courts."  Fed. R. Evid. 101(a).

Rule 1002 states, "An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.  Rule 1001 defines the following terms applicable to Rule 1002:

> "(a) A 'writing' consists of letters, words, numbers, or their equivalent set down in any form. . . .
>
> "(d) An 'original' of a writing or recording means the writing or recording itself or any counterpart intended to have the same effect by the person who executed or issued it.  For electronically stored information, 'original' means any printout — or other output readable by sight — if it accurately reflects the information.  An 'original' of a photograph includes the negative or a print from it."

Fed. R. Evid. 1001.  Rule 1003 states, "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003.

Plaintiffs argue there are "questions about the [2017 Payment Agreement's] authenticity and execution" because the agreement "is dated March 25, 2017, but Ann Wisnovsky in [*sic*] California and Utah, continuously, from February 24 to April 8, 2017 as documented by"

Page 66 -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
              SUMMARY JUDGMENT AND MOTION TO DISMISS

Plaintiffs' exhibits 10 and 26. ECF 142 at 23 (citing 142-1 at 86, 174). As shown above, Plaintiffs' evidence is inadmissible because it is not authenticated and/or not cited in accordance with Rule 56(c) and Ninth Circuit case law such as *Orr*. Thus, Plaintiffs failed to raise a genuine question about the 2017 Payment Agreement's authenticity, and their objection to the admissibility of the 2017 Payment Agreement should be denied. *See United States v. Childs*, 5 F.3d 1328, 1335 (9th Cir. 1993) (affirming district court's admittance of duplicates under Rule 1003 because there was no admissible evidence that the documents were altered).

Even if the Court considered Plaintiffs' proffered evidence, that would only create triable fact issues for the jury about whether, pursuant to Rule 1008, the original 2017 Payment Agreement "ever existed," whether the 2017 Payment Agreement attached to Mark's declaration "is the original," or whether "other evidence of content accurately reflects the content" of the 2017 Payment Agreement. Fed. R. Evid. 1008; *See Greer v. Electronic Arts, Inc.*, No. C 10-3601 RS, 2012 WL 12919525, at *3 (N.D. Cal. Feb. 1, 2012) (holding factual questions to be decided by jury under Rule 1008 are subject to same legal standard and must be construed as any other fact issue presented in summary judgment proceedings).

The purported date discrepancy is explained by Mark's testimony that Ann actually signed the Payment Agreement in April 2017 after she returned to Oregon. ECF 146 ¶ 43. A reasonable juror could infer Ann back-dated the 2017 Payment Agreement to March 25, 2017, because that is the date printed on the *Agreement for Changes to Buildings*, which Mark saw her sign in April 2017 at the same time as the 2017 Payment Agreement. ECF 146-23; Wisnovsky Decl. ¶ 2. Mark's testimony is consistent with Couvrette's testimony because a reasonable factfinder can infer from his testimony that Ann signed the agreement sometime between April 8 and April 30, 2017.

At most, the evidence concerning the 2017 Payment Agreement creates a triable fact issue regarding that agreement, requiring Plaintiffs' motion to be denied.

### 3. Mark Properly Authenticated the 2017 Payment Agreement.

Plaintiffs argue the 2017 Payment Agreement is not admissible under Rule 901 and ORS 40.505 because it is not authenticated. ECF 142 at 23. Again, only the Federal Rules of Evidence are applicable here. Rule 901 provides in relevant part:

> "(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. (b) Examples. The following are examples only — not a complete list — of evidence that satisfies the requirement: (1) *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be. . . . (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."

Fed. R. Evid. 901.

Rule 56(e)'s requirements of personal knowledge and competence to testify "may be inferred from the affidavits themselves[,]" and a proponent of evidence "need make only a prima facie showing of authenticity." *United States v. Iribe*, 564 F.3d 1155, 1159 (9th Cir. 2009) (internal quotations omitted); *Barthelemy v. Air Lines Pilots Assn.*, 897 F.2d 999, 1018 (9th Cir. 1990).

Mark authenticated the 2017 Payment Agreement and satisfied Rule 56(e) and Rule 901 when he testified based on his personal knowledge that in 2017 Ann signed the document attached as Exhibit 1024 granting her consent for Valley View to pay her personal expenses in lieu of its monthly lease payments under "the Winery Lease, Vineyard Lease, or any hemp field sublease." ECF 146 ¶ 43. Mark's testimony is more than adequate to make a prima facie

showing of authenticity.  His personal knowledge is easily inferred from his declaration itself, and his declaration filed herewith confirms he saw Ann sign the 2017 Payment Agreement, proving it authentic.  Wisnovsky Decl. ¶ 22.

### 4.   Plaintiffs' "Public Policy" Argument Is Speculative and Without Merit.

Plaintiffs argue the personal expenses agreement is "void and unenforceable under Oregon law" because its "apparent intent to offset personal expenses against rent without legal basis or tax reporting compliance renders it unenforceable as a matter of public policy."  ECF 142 at 23.

Plaintiffs cite no supporting case law and present no evidence regarding Ann's or Valley View's reporting of income or expenses to any governmental agency.  The personal expenses agreement says nothing about whether or how Ann should or must report income received from Valley View.  Plaintiffs wrongly speculate about Ann's intent in entering into the 2017 Payment Agreement.  The Court should reject Plaintiffs' argument.

### 5.   The Wisnovsky Defendants' Hypothetical Liability for Contract Damages Does Not Foreclose Plaintiffs' Liability for the Wisnovsky Defendants' Counterclaims.

Plaintiffs argue, "Defendants failure to pay property taxes and comply with lease obligations justifies termination" of the Leases.  ECF 142 at 23.  Plaintiffs further argue they are entitled to recover damages, "including unpaid rent and costs associated with finding a new tenant[,]" as a result of "Defendants' continued occupancy without paying rent."  *Id.* at 24.  Plaintiffs, however, do not allege any claims for breach of contract and, and their efforts to terminate the Leases raise genuine issues of material fact, as shown below.

Even if Plaintiffs were in fact alleging such claims and seeking such relief in this case, which they are not doing, that would not require dismissal of Valley View's counterclaims for

Page 69 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
                 SUMMARY JUDGMENT AND MOTION TO DISMISS

breach of contract (overpayment of rent) and money had and received because a reasonable juror could still find Plaintiffs liable for either of those counterclaims. Plaintiffs have not shown as a matter of law and undisputed fact that the Wisnovsky Defendants owe any money in contract damages, let alone more money than what Wisnovsky Land owes Valley View in damages for breach of the Leases on the counterclaims actually pleaded and briefed in this response. Plaintiffs cannot obtain summary judgment based on this argument.

**6. *Plaintiffs Do Not Allege Any Facts or Claims Seeking to Avoid the 2017 Payment Agreement.***

Plaintiffs argue, "The deduction document's questionable execution and lack of legal formalities suggest undue influence or coercion, potentially constituting financial abuse." ECF 142 at 24. Plaintiffs cite no case law or evidence supporting that argument. Plaintiffs have alleged no claim that the 2017 Payment Agreement should be voided for undue influence or coercion, nor have they alleged the agreement constitutes a taking or appropriation of Ann's property such that it gives rise to liability for elder financial abuse and an award of treble damages. The Court should reject this argument.

**7. *The Parol Evidence Rule Does Not Bar Enforcement of the 2017 Payment Agreement.***

Plaintiffs argue "the parol evidence rule precludes the introduction of extrinsic evidence to contradict or modify the terms of a clear and unambiguous written lease clause" and "The deductions document, even if authentic, cannot override the explicit rent obligations outlined in the leases." ECF 142 at 24.

/ / /

/ / /

ORS 41.740 provides,

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term "agreement" includes deeds and wills as well as contracts between parties."

ORS 41.740.

The parol evidence rule is a substantive rule that "declares that certain kinds of fact are legally ineffective in the substantive law." *Abercrombie v. Hayden Corp.*, 320 Or. 279, 286 (1994). Those "legally ineffective" facts include agreements that parties allegedly entered into <u>prior</u> to entering into a fully integrated agreement. In *Abercrombie*, the Oregon Supreme Court held:

> "The parol evidence rule, in brief, provides that a binding, completely integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement. The rule also provides that a binding, partially integrated, written agreement supersedes or discharges all agreements, written or oral, that were made before the partially integrated agreement, to the extent that the prior agreements are inconsistent with the partially integrated agreement."

*Id.* at 286–87 (internal citations omitted). "An integrated agreement is one that the parties intended to be a final expression of some or all of the terms of the agreement." *Abercrombie*, 320 Or. at 287.

Page 71 -     WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

The 2017 Payment Agreement manifests Ann's agreement to accept Valley View's payment of her personal expenses in lieu of rent payments. Ann signed that agreement in April 2017—over a year after signing the Leases, about six months after signing the first two lease addenda, and about two months after signing the Second Vineyard Addendum. The 2017 Payment Agreement itself is not an agreement the parties entered into prior to entering into a fully integrated agreement, and it is not barred by the parol evidence rule.

For the many reasons stated above, the Court should deny Plaintiffs' motion that seeks dismissal of the Wisnovsky Defendants' counterclaim for breach of contract (overpayment of rent) and money had and received.

**D.      The Court Should Deny Plaintiffs' Motion Against the Wisnovsky Defendants' Counterclaim for Declaratory Relief Regarding Lease Rights Because Triable Fact Issues Preclude Summary Judgment.**

Plaintiffs argue Valley View's sixth counterclaim, for declaratory judgment regarding lease rights, should be dismissed because "lack of consideration renders [the Second Vineyard] addendum invalid unless rent is paid." ECF 142 at 23 (capitalization omitted). For the following reasons, this argument should be rejected and the motion denied.

Valley View's sixth counterclaim seeks judgment "declaring that all acreage described in Exhibit A to the Vineyard Lease [i.e., as amended] is included in the Vineyard Lease" and further seeks "judgment declaring [Valley View's] right to use all" of that acreage, "including, but not limited to, for the construction and use of an agricultural building," such as the "PreFab Building, and for hemp operations." ECF 114 ¶ 87. This counterclaim is based in part on allegations that Wisnovsky Land wrongly told Valley View "that it did not have the right to occupy the Vineyard Lease acreage where it intended to construct the PreFab Building and

threatened to hold [Valley View] in default if it constructed the PreFab Building." *Id.* ¶ 57.  This counterclaim therefore shares triable fact issues with counterclaims 2 and 3 (for breach of contract and tortious interference with economic relations) that seek damages caused by Plaintiffs' unlawful conduct that blocked construction of the PreFab Building and hemp-growing operations at the Valley View property. *Id.* ¶¶ 58–70, 84; *see supra* §§ VII.A, B.

Plaintiffs cite *Mitchell v. Pacific First Bank*, 130 Or. App. 65 (1994), and *Moro v. State*, 357 Or. 167 (2015), to support their contentions that "Defendants' occupation of the additional acreage without payment constitutes a breach of the lease terms and their request for Declaratory Judgment to use acreage without consideration (Counterclaim #6) is unsupported by the law." ECF 142 at 23.  Those arguments suggest Valley View's claim for declaratory judgment regarding the parties' rights and obligations under the Vineyard Lease must be dismissed because Valley View breached the Second Addendum to the Vineyard Lease by failing to pay rent owed under the Second Addendum, and therefore the Second Addendum "fails for lack of consideration" and is "invalid."  Those arguments are nonsensical and not supported by any legal authority or evidence.

As an initial matter, Plaintiffs' assertion that the Wisnovsky Defendants "admit that no rent was paid for all or part of the additional acreage added under the Second Addendum" (ECF 142 at 23) is false and not supported by any evidence in the record.  The Wisnovsky Defendants *overpaid* rent by more than $70,000 from 2016 through 2019, which they are seeking to recover from Plaintiffs.  Wisnovsky Decl. ¶ 23; ECF 142-1 (Pls.' Ex. 20).  Between April 1, 2016 and January 27, 2023, the Wisnovsky Defendants paid over $209,000 in rent under the Leases.  ECF 146 ¶ 58.  Those payments included rent paid pursuant to the Second Vineyard Addendum specifically for hemp operations on additional acreage authorized by that agreement.  Wisnovsky

Decl. ¶ 23.  Those hemp-specific payments included $7,378 in 2017, $32,120 in 2018, $42,240 in 2019, and $42,240 in 2020, for a total of $123,978.  Wisnovsky Decl. ¶ 23; ECF 142-1.

Furthermore, Plaintiffs' reliance on *Mitchell* and *Moro* is misplaced and does not support their argument that Valley View's declaratory judgment claim must be dismissed.

In *Mitchell*, the court affirmed the trial court's denial of the defendant's motion for directed verdict on the plaintiffs' breach of contract claim and reversed the trial court's refusal to award attorney fees to the plaintiff on that claim.  *Mitchell*, 130 Or. App. at 67.  The plaintiffs sued the defendant for breach of contract after the defendant foreclosed a mortgage on the plaintiffs' property and sold the property at a foreclosure sale.  The plaintiffs alleged they satisfied the "performance" element of their claim by paying all amounts due under the contract, or, alternatively, performance was excused because the parties modified the agreement's terms or the defendant waived the "time is of the essence" and late fee provisions of the agreement.  *Id.* at 71.

The *Moro* defendant argued on appeal that they were entitled to a directed verdict because the plaintiffs failed to present any evidence of consideration to support their allegation that the parties modified the loan agreement.  *Id.* at 74.  The court held that argument was irrelevant because the plaintiffs presented evidence that they performed the agreement and that the defendant waived its right to strictly enforce the agreement, either ground being sufficient to prove the performance element of their breach of contract claim.  *Id.* at 74–75.

Unlike *Mitchell*, where the plaintiffs prevailed on their breach of contract claim by proving they either performed the contract or were excused from performance, Valley View's declaratory judgment counterclaim simply seeks judicial interpretation of the Second Vineyard

/ / /

Addendum. It is not a claim for breach of contract that requires allegations or proof of performance or excuse therefrom.

Moreover, the defendant's "lack of consideration" argument in *Mitchell* derives from the well-established rule that modification of an existing contract is not effective unless supported by consideration. *McPhail v. Milwaukie Lumber Co.*, 165 Or. App. 596, 600–01 (2000). In entering into the Second Vineyard Addendum, Valley View agreed to pay higher rent for its ongoing cultivation of agricultural crops and to pay additional rent for additional land on which to cultivate hemp. ECF 146 ¶ 32. The Second Vineyard Addendum is therefore supported by consideration. *Moyer*, 316 Or. App. at 405 (holding consideration is a "right, interest, profit or benefit or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other [party]").

Plaintiffs' reliance on *Moro* is even more askew than their reliance on *Moyer*. *Moro* involved a group of PERS beneficiaries who challenged the Oregon legislature's amendment of PERS-related statutes affecting PERS benefits issued to the beneficiaries. The court held the legislature could not retroactively apply statutory amendments affecting the payment of PERS benefits because the PERS beneficiaries' contract rights to those benefits had already vested. *Moro*, 357 Or. at 172–73. *Moro* has nothing to do with any facts or claims in this case and does not require or support dismissal of Valley View's declaratory judgment counterclaim. The Court should deny Plaintiffs' motion.

/ / /

/ / /

/ / /

/ / /

Page 75 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
          SUMMARY JUDGMENT AND MOTION TO DISMISS

**E.**     **The Court Should Deny Plaintiffs' Motion with Respect to the Wisnovsky Defendants' Counterclaim for Declaratory Relief Regarding Notices of Default and Termination Because Triable Fact Issues Preclude Summary Judgment.**

The Wisnovsky Defendants' tenth counterclaim seeks declaratory judgment that certain notices of default and termination of the Leases issued by Couvrette while purporting to act on behalf of Wisnovsky Land are legally ineffective.  ECF 115 ¶¶ 103–115.  Plaintiffs argue this counterclaim must be dismissed because the Wisnovsky Defendants "admit their property tax payments were returned by Jackson County," their failure to pay "property taxes constitutes a breach of the leases, justifying termination under Sections 14.1 and 15.1[,]" and they admit notices of default and termination "were issued" on November 29, 2023, and January 25, 2024, respectively.  ECF 142 at 21–23.  The Court should deny Plaintiffs' motion against this counterclaim because triable fact issues preclude summary judgment.

As an initial matter, it bears emphasis that although the Wisnovsky Defendants seek declaratory judgment that the notices of default and termination are ineffective, Plaintiffs have not alleged any claims to declare them effective, hold Valley View in default of the Leases, or terminate the Leases.  With no such claims, Plaintiffs cannot obtain an order or judgment from this Court terminating the Leases.  The only question is whether Plaintiffs are entitled to dismissal of the tenth counterclaim as a matter of law and undisputed fact.  They are not because the claim raises genuine issues of fact.

On November 29, 2023, Couvrette, purporting to act on behalf of Wisnovsky Land, delivered default notices for the winery and vineyard Leases to Valley View alleging non-payment of property taxes.  Wisnovsky Decl. ¶ 24.  On November 30, 2023, Mark used the Jackson County Tax Assessor's internet payment portal to make payments of $6,840.54 and

$473.62 for Valley View's alleged share of 2022–2023 property taxes as Wisnovsky Land demanded. Wisnovsky Decl. ¶ 25. On December 4, 2023, Couvrette sent an email to Valley View's legal counsel, thanking Valley View for paying the property taxes as she had demanded. *Id.* ¶ 26, Ex. 1302 at 2. The Wisnovsky Defendants understood that to mean she was satisfied with Valley View's performance and had withdraw the notices of default.

On or about December 28, 2023, however, the County mailed Couvrette a statement informing her that the County had rejected or reversed Valley View's November 30, 2023 property tax payments because the County had been allegedly unable to draw the funds from the bank account number Valley View had provided to the County. Wisnovsky Decl. ¶ 27. Couvrette did not inform Valley View of the County's notice and instead paid the County $6,863.43, which the County applied to the $6,840.54 in property taxes that were due and owing for the 2022–2023 tax year. *Id.*

Couvrette apparently did that to create grounds upon which to hold Valley View in default and terminate the Leases because, on January 25, 2024, Couvrette caused attorney Tim Murphy to deliver two lease termination notices to Valley View, dated January 23, 2024, that stated Valley View was in default for failure to pay 2022–2023 property taxes and purported to terminate the Leases. Wisnovsky Decl. ¶ 28.

On January 26, 2024, Mark mailed a check for $6,840.54 to Couvrette to cover Valley View's alleged share of the 2022–2023 property taxes for the property Valley View leases from Wisnovsky Land. Wisnovsky Decl. ¶ 29. Mark included with that payment a letter explaining that until Valley View received the lease termination notices, Valley View was unaware that the County had not accepted Valley View's property tax payments. *Id*. Couvrette did not deposit that check. *Id*.

Page 77 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

Valley View had adequate funds in its bank accounts to cover the tax payments it sent to the County. Wisnovsky Decl. ¶ 20. Valley View maintains the payments must have been rejected or reversed because of an error committed by the County or its third-party payment service provider. *Id.* ¶ 30.

It is well established in Oregon that when a creditor appears to accept a payment after giving notice of default they waive their right to declare a default without additional notice and opportunity to cure. *E.g.*, *Staats v. Praegitzer*, 67 Or. App. 543, 545 (1984). When Couvrette thanked the Wisnovsky Defendants for paying the property taxes she communicated her acceptance of that payment. That effectively waived any right she might have had to terminate the leases without another notice of default and opportunity to cure, which she never gave the Wisnovsky Defendants. It is certain they would have cured because they sent payment to Couvrette the day after receiving the notices of termination. Those notice of termination were unlawful and ineffective.

Had Couvrette not tortiously interfered with Mark and Mike's inheritance and caused Ann's Trust to breach the inheritance contract, Mark and Mike would have already been the owners of Wisnovsky Land and the Valley View Property when their property tax payment was rejected or reversed. *Id.* ¶ 31. If Mark and Mike are entitled to specific performance of the inheritance contract, they will receive ownership of Wisnovsky Land and will have the power to withdraw the notices of default and termination, mooting the issue.

Valley View intended to pay the property taxes even though its fourth and fifth counterclaims are for overpayment of rent in excess of $70,000, far exceeding the property taxes that were due. *See, supra*, § VII.C. Because Valley View overpaid so much rent, it effectively pre-paid the taxes and had no further obligation to pay them. Valley View is also owed damages

Page 78 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
            SUMMARY JUDGMENT AND MOTION TO DISMISS

on its second and third counterclaims, for breach of the lease and tortious interference, far in excess of the property taxes, which more than offset Wisnovsky Land's claim for payment of those taxes. *See, supra*, § VII.A–B. Because Valley View had overpaid and was owed significant sums pursuant to the Lease, its non-payment of the property taxes did not constitute a breach or default.

If Ann's Fourth Trust Amendment and subsequent estate planning documents are void for undue influence or incapacity, Couvrette was not the rightful Trustee of Ann's Trust and had no authority to issue the notices of default or termination.

Thus, numerous genuine issues of material fact preclude dismissal of Valley View's declaratory judgment claim regarding the notices of default and termination.

## VIII.  RESPONSE TO MOTION TO DISMISS

**A.     Plaintiffs' Motion to Dismiss Allegedly Moot and Precluded Claims Should Be Denied.**

Plaintiffs' motion also includes a "motion to dismiss moot and precluded claims" that does not cite any procedural rule providing a basis for dismissal nor specify which of the Wisnovsky Defendants' counterclaims should be dismissed. ECF 142 at 32–37. Plaintiffs vaguely ask the Court to dismiss counterclaims regarding challenges to Ann's power of attorney, advance directive, resignation as trustee, the Fourth, Fifth, and Sixth Trust Amendments, and any other documents challenging Couvrette's authority to bring this lawsuit. *Id.* at 36. Regardless of which counterclaims Plaintiffs intended to move against, the motion should be denied because Plaintiffs are not entitled to dismissal of any of the Wisnovsky Defendants' counterclaims.

Plaintiffs cite *Already, LLC v. Nike, Inc.* ("*Already*"), 568 U.S. 85 (2013), for the proposition, "No matter how vehemently the parties continue to dispute the lawfulness of the

conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." ECF 142 at 33. *Already* is a trademark infringement case in which the court held a trademark owner's covenant not to enforce a trademark against a competitor's existing products mooted the competitor's action to have the trademark declared invalid. Here, the Wisnovsky Defendants did not sign a covenant not to enforce its legal rights against Plaintiffs so *Already* is inapplicable.

Plaintiffs cite *Steel Co. v. Citizens for a Better Environment* ("*Steel*"), 523 U.S. 83 (1998), for the proposition, "Claims that are moot must be dismissed for lack of subject matter jurisdiction." ECF 142 at 33. *Steel* holds that a claimant may not bring a private right of action under the Emergency Planning and Community Right-to-Know Act (EPCRA) for purely historical violations of that statute because none of the relief sought would likely remedy the claimant's alleged injury in fact. *Steel* has nothing to do with this case because there are no claims for EPCRA violations, and the Wisnovsky Defendants seek relief that would remedy their injuries in fact.

Plaintiffs cite *Matter of Estate of Holt*, 757 F.2d 159, 161 (1986), to support the argument, "The death of Ann Wisnovsky rendered moot any challenges to the Power of Attorney and Advance Directive, as these documents ceased to have legal effect upon her death." ECF 142 at 33. The reporter citations "757 F.2d 159" and "757 F.2d 161" lead to *Taliferro v. Augle*, 757 F.2d 157, 159, 161 (7th Cir. 1985), which is a Section 1983 civil suit against two police officers who allegedly violated the plaintiff's civil rights. It has nothing to do with mooting challenges to powers of attorney and advance directives. "Matter of Estate of Holt" yields no search results in any federal court. It therefore appears to be another non-existent, fictitious case.

/ / /

Page 80 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

Plaintiffs cite ORS 43.130 to support the proposition that res judicata "bars the relitigation of claims or issues that have been finally adjudicated by a court with jurisdiction." ECF 142 at 33.  ORS 43.130 provides:

> "The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge of this state or of the United States, having jurisdiction is as follows:
>
> "(1) In case of a judgment, decree or order against a specific thing or in respect to the probate of a will or the administration of the estate of a deceased person or in respect to the personal, political, or legal condition or relation of a particular person, the judgment, decree or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person.
>
> "(2) In other cases, the judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title and in the same capacity."

ORS 43.130.  Plaintiffs rely on that statute to support their argument that "[t]he California court's orders [attached as exhibit 28 to Plaintiffs' motion] validating the Trust and its amendments are final and unappealable[,]" those "orders conclusively resolved the validity of the Fourth, Fifth, and Sixth Trust Amendments, as well as Ann's resignation as Trustee[,]" and therefore "these issues cannot be relitigated in this Court."  ECF 142 at 32–33.

The first problem with this argument is that the "California court's orders" do not state anything about the validity of any Trust amendments or Ann's resignation as trustee.  The order attached as exhibit 28 to Plaintiffs' motion provides the following order:

> "1) The Court approves the Resignation of Co-Trustee Joanne Couvrette without 30 days' notice, should it become necessary for medical reasons.

/ / /

Page 81 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

> 2) Anna Couvrette has consented to be Successor Trustee and will serve as Successor Trustee to Joanne Couvrette, should Joanne choose to resign due to medical reasons."

ECF 142-1 at 186. That order concerns Couvrette's potential resignation as co-trustee and her daughter's consent to be the successor trustee in the event Couvrette resigns as co-trustee. That order says nothing about the validity of any Trust amendment or Ann's resignation as Trustee.

The second problem with Plaintiffs' argument is that ORS 43.130 applies only to judgments, decrees, and final orders "before a court or judge <u>of this state or of the United States,</u> having jurisdiction." (Underline added). The plain terms of that statute apply to judgments, decrees, and final orders entered by courts of this state (i.e., Oregon courts) and courts of the United States (i.e., federal courts)—not California courts. *See Appelgate v. Dowell*, 15 Or. 513, 528 (1887) (holding courts of the United States having lawful jurisdiction have "superior jurisdiction" over state courts, and decrees of federal courts are immune from collateral attack unless federal court is shown to lack jurisdiction). Because the California court order is not a judgment, decree, or final order of a court of Oregon or the United States, it has no legal significance under ORS 43.130.

The statutory context surrounding ORS 43.130 further supports that plain text interpretation. For example, ORS 43.180 provides,

> "The effect of a judicial record <u>of a sister state</u>, the District of Columbia or a territory of the United States is the same in this state as in the place where it was made, except:
>
> "(1) It can be enforced in this state only by an action, suit or proceeding; and
>
> "(2) The authority of a guardian, conservator, committee, executor or administrator does not extend beyond the jurisdiction of the government under which the guardian, conservator, committee, executor or administrator is invested with authority."

Page 82 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

ORS 43.180 (underline added). That statute sets forth the rule that Oregon courts do not enforce the judgments of sister states as such, "but regard [them] as the basis for an Oregon" judgment enforceable by Oregon courts. *Shannon v. Shannon*, 193 Or. 575, 583 (1952). And "when an action is brought in this state upon the judgment of a sister state, the defendant is permitted to challenge the jurisdiction of the court, not only of the subject-matter, but over his person, and to complain that the judgment was not one authorized by the pleadings." *Reed v. Hollister*, 95 Or. 656, 666 (1920).

Moreover, ORS 24.115(3) provides that a foreign judgment[4] registered in an Oregon circuit court in accordance with ORS 24.115 "has the same effect <u>and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of the circuit court</u> in which the foreign judgment is filed[.]" (Underline added). Thus, even if Plaintiffs were to register the California court's order in an Oregon court, the Wisnovsky Defendants would be entitled to "the same procedures, defenses and proceedings for reopening, vacating or staying" the order under Oregon law.

Plaintiffs have not commenced any action, suit, or proceeding to enforce the California court's order against the Wisnovsky Defendants. That order does not provide any relief or remedy to enforce against the Wisnovsky Defendants precisely because they were not parties to Couvrette's California proceedings, which leads to the third problem with Plaintiffs' argument, *viz.*, the California order cannot preclude the Wisnovsky Defendants from litigating the claims in this lawsuit because they were not parties to Couvrette's California proceedings and those proceedings did not adjudicate any of the claims in this lawsuit.

---

[4] ORS 24.105 defines "foreign judgment" as meaning "[a]ny judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state[.]"

Page 83 -   WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
            SUMMARY JUDGMENT AND MOTION TO DISMISS

Oregon courts construe ORS 43.130 as codifying the law of res judicata or claim preclusion. *State ex rel. English ex rel. Sellers v. Multnomah County* ("*English*"), 348 Or. 417, 432 n.9 (2010); *Raybould v. Rushmore Loan Mgmt. Servs., LLC*, No. 6:19–cv–01364–AA, 2020 WL 2576181, *3 n.7 (D. Or. May 21, 2020). Under Oregon law, "claim preclusion applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Raybould*, 2020 WL 2576181 at *3; *English*, 348 Or. at 432 (requiring identity of claims, final judgment, and identity or privity between parties).

Here, Plaintiffs have not satisfied any of those elements and therefore cannot bar the Wisnovsky Defendants from litigating the validity of the Fourth, Fifth, and Sixth Trust Amendments or from litigating any other claims in this lawsuit. There is no identity of claims, no final judgment on the merits, and no identity or privity between the parties as between this lawsuit and Couvrette's California proceedings.

Plaintiffs cite *Estate of Stoddart*, 115 Cal. App. 4th 1118 (2004), to support their argument that the California court's June 6, 2024 "order" was "final and appealable" and has a "binding effect" on the Wisnovsky Defendants who were not parties to that action. ECF 142 at 35. *Stoddart* is a California Court of Appeals case concerning the appealability under California law of the trial court's orders and a party's motion for reconsideration of those orders. *Stoddart*, 115 Cal. App. 4th at 1122. *Stoddart* did not hold that a California trial court's order was binding on a non-party resident of a different state. *Stoddart* has nothing to do with this case because, as shown above, the California court's order has no legal significance in this lawsuit because it is not a final judgment, decree, or order of an Oregon court or United States court. It simply does not matter whether that order is final and appealable under California law.

/ / /

Page 84 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
    SUMMARY JUDGMENT AND MOTION TO DISMISS

Plaintiffs cite *North Clackamas School Dist. v. White* ("*White*"), 305 Or. 48 (1988), for the holding, "If a person has had full and fair opportunity to litigate a claim to final judgment, the decision on a particular issue or determinative fact is determinative in a subsequent action between the parties on the same claim." ECF 142 at 35. *White* is inapplicable because it is the seminal case in which the Oregon Supreme Court held res judicata, or claim preclusion, may be "applicable where an administrative agency is faced with a second proceeding involving the same parties and, arguably, the same claim." *White*, 305 Or. at 51–53. This case does not involve administrative proceedings, and Couvrette's evidence of California proceedings does not show the Wisnovsky Defendants were party to those proceedings or that those proceedings litigated any of the claims at issue here.

Plaintiffs cite *Ram Technical Services, Inc. v. Koresko* ("*Ram*"), 215 Or. App. 449 (2008), to support their argument that "the requirements for res judicata are satisfied here" because "(1) the parties are the same; (2) the issues arise from the same transaction or occurrence; (3) the California court orders constitute a final judgment; and (4) the claims could have been brought in the prior action." ECF 142 at 36.

The *Ram* court affirmed the trial court's dismissal of the plaintiffs' common-law fraud claim because it was barred by claim preclusion on the grounds that it arose out of the same facts litigated to a final judgment in a prior federal lawsuit between the same parties, and the claim reasonably could have been joined in the prior lawsuit pursuant to federal jurisdictional statutes and pleading rules. *Ram*, 215 Or. App. at 457, 462. Here, there is no prior federal lawsuit between the same parties involving the same facts that was reduced to judgment. *Ram* is inapplicable to this case.

/ / /

Page 85 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

Plaintiffs cite *Gittelsohn v. City of Cannon Beach*, 44 Or. App. 247 (1980), for the holding, "Res judicata applies not only to every claim included in the pleadings but also to every claim which could have been alleged under the same 'aggregate of operative facts.'" ECF 142 at 36. In *Gittelsohn*, the court of appeals affirmed the trial court's grant of summary judgment dismissing the plaintiffs' declaratory judgment action because the action was barred by claim preclusion. *Gittelsohn*, 44 Or. App. at 249. The plaintiffs sought declaratory judgment that the defendant municipality's issuance of certain building permits violated zoning ordinances. The court held the plaintiffs' action was precluded by judgment entered in a prior lawsuit between the same parties that was based on the same operative facts regarding the municipality's approval of a proposed development project. *Id.* at 251–52.

Just like the other inapplicable res judicata cases and authorities Plaintiffs cite, *Gittelsohn* is inapplicable because there was no prior lawsuit involving the same parties and claims that resulted in a final judgment on the merits. Claim preclusion does not bar any of the Wisnovsky Defendants' counterclaims. The Court should therefore deny Plaintiffs' motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 86 -    WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment and motion to dismiss should be denied.

DATED:  April 4, 2025

CHENOWETH LAW GROUP, PC

 /s/ Brooks M. Foster
Brooks M. Foster, OSB No. 042873
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Phone: (503) 221-7958
Fax:  (503) 221-2182
Email: bfoster@chenowethlaw.com

*Attorneys for Defendants Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc. Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc.*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) and the Court's April 1, 2025 *Order Granting Motion to File Excess Pages* (ECF 154) because it contains 26,039 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED:  April 4, 2025

CHENOWETH LAW GROUP, PC

 */s/ Brooks M. Foster*
Brooks M. Foster, OSB No. 042873
Bradley T. Crittenden, OSB No. 173274
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Phone: (503) 221-7958
Fax:  (503) 221-2182
Email: bfoster@chenowethlaw.com
bcrittenden@chenowethlaw.com

*Attorneys for Defendant Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 4, 2025, I caused to be served a copy of the foregoing **WISNOVSKY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,** on the following person(s) in the manner indicated below:

Stephen M. Brigandi
3624 Caminito Cielo Del Mar
San Diego, CA 92130
Brigandilaw@gmail.com

*Attorneys for Plaintiffs/Counter-Defendants Joanne Couvrette and Wisnovsky Land LLC*

James Dole
Watkinson Laird Rubenstein PC
1246 NE 7th St., Ste. B
Grants Pass, OR 97525
jdole@wlrlaw.com

*Attorney for Defendant Mark Wisnovsky, Michael Wisnovsky and Valley View Winery*

Timothy Murphy
Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
tim@oregonlandlord.net

*Attorneys for Plaintiffs/Counter-Defendants Joanne Couvrette and Wisnovsky Land LLC*

by the following method(s):

<u>xx</u>         by **e-service via CM/ECF** on the date set forth below.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it may be used as evidence in court and is subject to penalty for perjury.

DATED: April 4, 2025

/s/ *Jami Asay* _____
Jami Asay, Paralegal