Plaintiff's Exhibit 31

PDF Page 238



VALLEYVIEW_ 000539

Exhibit 32 – Page 1 of 2
PDF Page 239



VALLEYVIEW_ 000540

Exhibit 32 – Page 2 of 2

PDF Page 240

VALLEYVIEW_001196

Plaintiff's Exhibit 32

Case 1:21-cv-00157-CL    Document 169-1    Filed 05/02/25    Page 6 of 116

#8



COMMON STOCK

CERTIFICATE

№ 8

For 5,970 Shares

Issued to

Mark A. Wisnovsky

Dated 3-19-07

FROM WHOM TRANSFERRED

Ann M. Wisnovsky

Dated 3-19-07

| NO. ORIGINAL CERTIFICATE | NO. ORIGINAL SHARES | NO. OF SHARES TRANSFERRED |
|---|---|---|
| 6 | 78,110 | 5,970 |

Received CERTIFICATE NO.

For _____ Shares

this _____ day of _____

STEVENS-NESS LAW PUBLISHING CO., PORTLAND, OR

No. 8                                                         5,970 SHARES

INCORPORATED UNDER THE LAWS OF THE STATE OF

Oregon

VALLEY VIEW WINERY, INC.

This Certifies That    MARK A. WISNOVSKY    is the owner of

Five Thousand Nine Hundred Seventy (5,970)    Shares of the Common Capital Stock of

VALLEY VIEW WINERY, INC.

transferable only on the Books of the Corporation by the holder in person or by duly authorized Attorney on surrender of this Certificate properly endorsed.

COMMON

In Witness Whereof, the duly authorized officers of this Corporation have hereunto subscribed their names and caused the corporate Seal, if any, to be hereto affixed at    Medford, Oregon    this    19th    day of    March    A.D.    2007

Ann M. Wisnovsky    SECRETARY        Mark A. Wisnovsky    PRESIDENT

SHARES    5,970    EACH

HUYCKE_000968
CONFIDENTIAL

Exhibit 33 – Page 1 of 7
PDF Page 242

## DECLARATION OF GIFT

The undersigned, ANN M. WISNOVSKY, hereby declares her intent to make a gift to MICHAEL J. WISNOVSKY of 5,970 SHARES of COMMON STOCK of VALLEY VIEW WINERY, INC., an Oregon corporation.

By this declaration, the undersigned does hereby grant, transfer, assign and convey to the above named grantee all of her right, title and interest in the above described stock. There is no monetary consideration for this transfer.

Dated this _19_ day of ~~January,~~ *March* 2007.

_____
ANN M. WISNOVSKY

STATE OF OREGON     )
                    ) ss.
COUNTY OF JACKSON   )          ____3|19____, 2007

Personally appeared the above named ANN M. WISNOVSKY and acknowledged the foregoing instrument to be her voluntary act.

Before me:

OFFICIAL SEAL
PATRICK G. HUYCKE
NOTARY PUBLIC-OREGON
COMMISSION NO 379301
MY COMMISSION EXPIRES APR. 05, 2008

_____
Notary Public for Oregon

Exhibit 33 – Page 2 of 7

PDF Page 243

HUYCKE_000763
CONFIDENTIAL

## DECLARATION OF GIFT

The undersigned, ANN M. WISNOVSKY, hereby declares her intent to make a gift to MARK A. WISNOVSKY of 5,970 SHARES of COMMON STOCK of VALLEY VIEW WINERY, INC., an Oregon corporation.

By this declaration, the undersigned does hereby grant, transfer, assign and convey to the above named grantee all of her right, title and interest in the above described stock.  There is no monetary consideration for this transfer.

Dated this _19_ day of ~~January,~~ *March* 2007.

_Ann M. Wisnovsky_
ANN M. WISNOVSKY


STATE OF OREGON      )
                     ) ss.
COUNTY OF JACKSON    )                _3\17_           , 2007

Personally appeared the above named ANN M. WISNOVSKY and acknowledged the foregoing instrument to be her voluntary act.

Before me:

_____
Notary Public for Oregon

Exhibit 33 – Page 3 of 7

PDF Page 244

HUYCKE_000760
CONFIDENTIAL

CONSENT TO ACTION WITHOUT MEETING
BY SHAREHOLDERS AND DIRECTORS OF
VALLEY VIEW WINERY, INC.

The shareholders and directors of VALLEY VIEW WINERY, INC., consents to the following action without meeting:

"RESOLVED, that, due to a gifts of common stock of the corporation by ANN M. WISNOVSKY to MARK A. WISNOVSKY (5,970 shares), to JILL A. HAMILTON (5,970 shares), to MICHAEL J. WISNOVSKY (5970 shares), and to KIMBERLY L. WISNOVSKY (5,970 shares), the President and Secretary are authorized and directed to issue share certificates for the gifted shares to said individuals upon deposit with the secretary of the gift declarations for each gift and the original certificate(s) representing the shares transferred."

Date: March 19, 2007

MARK A. WISNOVSKY, Shareholder and Director

MICHAEL J. WISNOVSKY, Shareholder and Director

ANN M. WISNOVSKY, Shareholder and Director

Exhibit 33 – Page 4 of 7

PDF Page 245

HUYCKE_000748
CONFIDENTIAL

Plaintiff's Exhibit 33

Exhibit 33 – Page 5 of 7

PDF Page 246

CONFIDENTIAL

| Filters Used: | Email Report | Date Printed: **8/17/2022** |
|---|---|---|
| **1 Tagged  Record** | Form Format | Time Printed: **3:59PM** |
| | | Printed By: **WNT** |

| Date | **1/14/2008** | Time | **12:42PM** | **12:42PM** | Duration | **0.00** | (hours) | Code | |
|---|---|---|---|---|---|---|---|---|---|

Date **1/14/2008**  Time  **12:42PM**  **12:42PM**  Duration  **0.00**  (hours)  Code

Subject  **Valley View estate planning**  Staff  **Pat G Huycke**

Client  **Valley View, Valley V.**  MatRef  **Valley View Winery, Inc.**  MatNo  **5311H**

From  **"valleyviewwinery" <valleyviewwinery@charter.net>**

To  **"Pat Huycke" <pgh@medfordlaw.net>**

CC To  **"Mike and Kim Wisnovsky" <mikewine@charterinternet.com>**

Bcc To

Reminders  (days before) Follow  Done  Notify  Hide  Trigger  Private  Status

User1  User3
User2  User4

**Hi Pat,**

**Regarding the meeting on the 23rd, our mother would like to see something in writing outlining the proposal as well as our discussing it. We thought it would be more effective coming from you. Here are our ideas as to an "outline" of the plan:**

**In exchange for $4000 per month Michael and Mark will each receive 50% ownership of the winery, vineyard and all land. Ann will retain ownership of her house and the 2.5 acre parcel surrounding the house.**

**The winery will issue and distribute Preferred stock to the following individuals:**

| | |
|---|---|
| **Joanne Couvrette** | **500 shares** |
| **Anna Maria Wisnovsky** | **500 shares** |
| **Robert Wisnovsky** | **1000 shares** |
| **Pierce Wisnovsky** | **500 shares** |
| **Sophia Wisnovsky** | **500 shares** |
| **Quintin Wisnovsky** | **500 shares** |
| **Collin Wisnovsky** | **500 shares** |
| **Gabriella Wisnovsky** | **500 shares** |
| **Steven J. Wisnovsky** | **500 shares** |

**Each share of Preferred stock shall convey the following privileges:**
**1) A payment of $1 per share from Valley View Winery, Inc. annually and**
**2) A wine credit equal to $1 per share of the retail price of any Valley View wine to be issued annually upon          shareholder's 21st birthday. Credits do not accrue and must be redeemed annually.**

**Upon Ann's death:**

**1) The $4000 monthly payment shall end**
**2) Ann's house and surrounding acreage shall be given to Joanne and Robert Wisnovsky to be shared equally.**
**3) The remainder of Ann's estate shall be divided equally between Joanne, Robert, Mark and Michael Wisnovsky.**

**Unresolved issues:**

1

Exhibit 33 — Page 6 of 7
PDF Page 247

CONFIDENTIAL

**PLAINTIFF'S EXHIBIT**
**217**

HUYCKE_000655

CONFIDENTIAL

| Filters Used: | Email Report | Date Printed: **8/17/2022** |
|---|---|---|
| **1 Tagged   Record** | Form Format | Time Printed: **3:59PM** |
| | | Printed By:   **WNT** |

**Life Insurance: there is currently a $400,000 term policy which the winery is funding, is this still required, who should pay, etc.?**

**Thanks Pat,**

**Mark & Michael Wisnovsky**

2

Exhibit 33 – Page 7 of 7
CONFIDENTIAL

HUYCKE_000656

Plaintiff's Exhibit 34

March 14, 2008

Pat Huycke
Huycke, O'Connor, Jarvis, and Lohman
823 Alder Creek Drive
Medford, OR 97504

Fax: 541-772-3443
office@medfordlaw.net

Dear Pat;

I asked my son, Robert, to pick up a document from your office earlier this week. This document is entitled "MEMORANDUM" dated February 13, 2008. I was informed by my son, Michael, that this document was drawn up by your suggestion and by their approval.

I concur with the comment you made in paragraph two of the Memorandum regarding your conflict of interest in this matter, and would further suggest that your creation of the document represented a conflict of interest. I believe that you should have directed Mark and Mike to seek separate counsel to prepare their proposal.

Without comment on the substance of the plan proposed in the document, I want to clarify that I am your sole contact at Valley View Winery. No work, whether billable or not, shall be done without my consent. Should I wish to have an employee or family member interact with you, I will give you my prior written or verbal approval.

I want to make further changes in my estate planning documents as soon as possible. Please change the documents to delete Mark and Mike as executors of my estate, and replace them with Joanne and Robert. This extends to any powers of attorney, advanced directives, or any other duties related to my estate.

Sincerely,

Ann Wisnovsky

Ann Wisnovsky

PLAINTIFF'S EXHIBIT

221

Exhibit 34 – Page 1 of 1
PDF Page 250

HUYCKE_000470

Plaintiff's Exhibit 35

CONFIDENTIAL

| Filters Used: | | Email Report | | Date Printed: **8/16/2022** |
|---|---|---|---|---|

**1 Tagged   Record**

# Email Report

Form Format

Date Printed: **8/16/2022**
Time Printed: **11:03AM**
Printed By: **WNT**

---

Date    **2/13/2008**    Time    **3:14PM**    **3:14PM**    Duration    **0.00**   (hours)    Code      Staff    **Pat G Huycke**

Subject    **Winery Reorganization**

Client    **Wisnovsky, Mark**      MatRef    **Valley View Winery, Inc.**      MatNo    **5311H**

From    **PGH**

To    **Mark Wisnovsky <valleyviewwinery@charter.net>**

CC To

Bcc To

Reminders      (days before) Follow    Done    Notify   **N**   Hide    Trigger    Private    Status

User1            User3

User2            User4

**Mark and Mike:**
**Here's a revised memorandum on the reorganization of the winery and Ann's estate plan. Please review the memorandum and give me your comments and suggestions for changes. Whether or not you have suggestions for changes, we should discuss the memo a bit before I call Ann. Please call and schedule a time for a telephone or face-to-face conference.  Mike, I assume you called about the memo, so I'll wait to hear from you.** If you called about something else, please call again. Thanks.
Patrick G. Huycke
Huycke, O'Connor, Jarvis & Lohman, LLP
823 Alder Creek Drive
Medford, OR 97504
Phone:  541-772-1977
Fax:  541-772-3443

The information contained in this e-mail is intended only for the use of the designated recipients named above.  This email, and any documents, files or previous e-mails attached to it, may be a confidential attorney-client communication or otherwise privileged and confidential.  If you are not the intended recipient, you are hereby notified that you have received this transmittal in error, and that any review, dissemination, distribution or copying of the transmittal is STRICTLY PROHIBITED.  If you have received this e-mail in error, please notify us immediately by telephone at 541-772-1977.  Thank you.

IRS Circular 230 disclosure: To comply with regulations of the Internal Revenue Service, we are required to inform you that this communication, if it contains advice relating to Federal taxes, cannot be used for the purpose of (i) avoiding penalties that may be imposed under Federal tax law, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.

---

1

PLAINTIFF'S
EXHIBIT

**218**

Exhibit 35 – Page 1 of 5
PDF Page 252

CONFIDENTIAL

**HUYCKE_000665**






**MEMORANDUM:**

TO:          Ann Wisnovsky, Mark Wisnovsky, Mike Wisnovsky

FROM:       Pat Huycke

RE:          Valley View Winery

DATE:        February 13, 2008

---

This memorandum is drafted in response to recent concerns that have been expressed by each of you. I've communicated with Ann and met with Mark and Mike, and each of you have expressed concerns about stock ownership, vineyard ownership and a succession plan for the business. Recently, I met with Mark and Mike, and we discussed several of the concepts mentioned in the outline of a potential reorganization, which follows.

It's important to understand that, in the preparation of the outline, I am representing the corporation, and not any shareholder individually. I have obvious conflicts of interest in this manner and, if and when tentative agreements are reached, it will be important that each of you seek independent counsel. My objective is to assist you in developing a reasonable succession plan relative to the winery and to assist Ann is creating an estate plan that is coordinated with the succession plan. The goal of these efforts is to provide for reasonable management of the winery and maintain family harmony.

If the proposed 2008 gifts are completed, Ann will own 51,000 shares of the corporation, which based upon the 2005 appraisal have a value of $102,510. Mark and Mike believe the appraisal is still a valid reflection of the value of minority interest shares of the corporation. After the gifts, Ann will also continue to own the vineyard and rental house. These have Jackson county assessed Real Market Values as follows:

| Tax Lot and Account No. | Jackson Co. RMV |
|---|---|
| 382W34CC, TL 200, 1-047680-4 31.91 acres | $759,830 |
| 383W34B, TL 1800, 1-056361-0 | $831,220* |



PLAINTIFF'S EXHIBIT

**220**

Exhibit 35 – Page 2 of 5

PDF Page 253

HUYCKE_000421




43.5 acres

Total: 75.41 acres                                      $1,951,050

*The RMV for improvements is $553,230, which is not included in the RMV above. I believe the improvement value includes the rental house having 1447 sq. ft. and the tasting room, which is owned by the corporation.

Mark and Mike believe county's RMV is unrealistic; they believe the vineyard and winery land has a value of $8,000 per acre and the rental house has a value of $50 per square foot. They point out that the corporation owns the vines of the vineyard. Using these values, the land has a value of $603,280 and the rental house has a value of $72,350, for a total of $675,630. For purposes of the plan set forth in this memorandum, the values of the land and rental house will need to be appraised.

It is proposed that the corporation will issue 5,000 shares of preferred stock. Since the corporation is a C Corporation, it can have two classes of common stock. Initially, some of Ann's stock will be converted to preferred stock. Then, Ann will gift the preferred stock as follows:

| | |
|---|---|
| Joanne Couvrette | 500 shares |
| Anna Maria Wisnovsky | 500 shares |
| Robert Wisnovsky | 1000 shares |
| Pierce Wisnovsky | 500 shares |
| Sophia Wisnovsky | 500 shares |
| Quintin Wisnovsky | 500 shares |
| Collin Wisnovsky | 500 shares |
| Gabriella Wisnovsky | 500 shares |
| Steven J. Wisnovsky | 500 shares |

The preferred stock will have the following rights and preferences: i) it will be non-voting; ii) preferred shareholders will receive annual dividends of $1 per share, which may be converted by over age 21 shareholders into a credit for retail wine purchases at a value of $2 per share; iii) dividends will be paid annually, and the wine credits must be used within 12 months from the date of allowance of the credit; iv) preferred shareholders will have the right to purchase wine for personal use at ½ of the retail price; v) preferred stock may not be sold or transferred to any person or entity, other than the corporation; and vi) upon a request by or the death of a preferred shareholder, upon a sale by the corporation of substantially all of its assets, or upon a liquidation or dissolution of the corporation, the preferred stock shall be redeemed by the corporation at a value of $1 per share. The value of the preferred stock should be determined, because it will

Exhibit 35 – Page 3 of 5

PDF Page 254

HUYCKE_000422



reduce the value of the common stock held by Ann. The preferred stock commits the corporation to an annual dividend of $5,000. The present value of 10 years of the annual payout at a 5% discount rate is approximately $40,000; the present value of a 10-year payout is over $80,000.  If preferred stock is worth $40,000, then Ann's remaining stock is worth $62,510.

Based upon the estimated values, it is proposed that the corporation will redeem Ann's common stock for $62,510, and Mark and Mike will purchase the vineyard and rental house for $675,630, for a total purchase price of $738,140. Interest must be charged on the purchase price at a rate greater than or equal to the applicable federal rate, which is currently approximately 4.2%. Mark and Mike propose to pay the purchase price in monthly installments of $4,000 per month, including interest at the rate of 5% per annum. They also propose that the payments increase by 3% per year to protect Ann's cash flow from the effect of inflation. The payments of $4,000 per month would amortize the purchase in approximately 29 years. The monthly payments will be made first by the corporation against the stock redemption contract. When the redemption contract is paid in full, the payments will be made by Mark and Mike against the land purchase note.

As a result of the foregoing, Ann will receive a guaranteed income, other family members will maintain a family connection with the winery operation and Mark and Mike can pursue long term careers in the operation of the winery.

Although planning for Ann's estate may be somewhat presumptive, it should nevertheless be considered. After the stock redemption and land sale, my understanding is that Ann will have the redemption and land purchase notes, her home with 2.3 acres of land, and approximately $200,000 of other assets. Ann's home has an assessed Real Market Value of $390,400, but Mark and Mike estimate that it has a value of $574,400. Based upon the estimated value of Ann's home, the total value of Ann's estate is approximately $1,512,540.

As time passes, the balance owing on the redemption and land purchase notes will be reduced by principal payments, the value of Ann's home will, presumably, increase, and the value of Ann's other assets may increase or decrease. For purposes of this memorandum it is presumed that Ann's estate plan will provide equal benefit for her four children. After the gifts of common and preferred stock, the value of Ann's winery common stock and vineyard land, $738,140, is approximately equal to the value of Ann's home and other assets, $774,400. Ann may want to consider an estate plan whereby the redemption and land purchase notes are distributed to Mark and Mike and the home and other assets are

Exhibit 35 – Page 4 of 5

PDF Page 255

HUYCKE_000423



distributed to Robert and Joanne. I believe it is important to Mark and Mike that their notes be distributed to them on Ann's death so that they are not, after that time, indebted to Robert and Joanne. There is some risk to all 4 children that the distributions will not be equal because Ann's life expectancy is uncertain and the values of assets will change. Nevertheless, the approach suggested seems like a reasonable attempt at a fair distribution of assets to Ann's heirs.

Currently, there is a $400,000 term policy on Ann's life, that is paid for by the winery. Ownership of the policy should be determined. Presumably it's owned by the corporation; if not, it should be transferred to the corporation. Mark and Mike should have the discretion whether or not to continue the life insurance coverage.

Exhibit 35 – Page 5 of 5

PDF Page 256

HUYCKE_000424

Plaintiff's Exhibit 36

## REVIEW OF MEMORANDUM REGARDING PURCHASE OF VALLEY VIEW WINERY

Summary of Memorandum:

Mark and Mike propose to purchase VVV from Ann under the following conditions:

1) Mark/Mike already own 48% of the Corporation.   Their proposal implies that their 48% will not be included as part of Ann's Estate.
2) Mark/Mike propose a plan to purchase the property from Ann at a discounted rate and purchase the balance of her stock at a discounted rate.
3) Mark/Mike propose to issue non-voting preferred stock to Robert, Joanne, and all seven grandchildren.  This stock will pay a $1 per share annual dividend, which can be redeemed for $2 in wine.
4) Mark/Mike propose that Ann will carry back the note for the purchase of the aforementioned property and stock.  The note will be for $738,140.  They propose to pay 4.2% interest on a 29 year amortization of principal.  Monthly payments will be $4,000 to Ann.
5) Mark/Mike believe that Ann will have assets in the amount of $1,512,540 after execution of the purchase:

    -$574,400      Mark/Mike's estimate of current value of Ann's House
    -$200,000      Other liquid assets
    -$738,140      Note Receivable from Mark/Mike's purchase
    $1,512,540

6) Mark/Mike propose that upon Ann's death that the asset of the Note receivable be given to them, and Bob/Joanne be awarded the other assets.

Evaluation of the proposal requires more information than is provided in the memorandum, however, there is sufficient information to make a preliminary evaluation.

## DESCRIPTION AND VALUATION OF ANN'S ASSETS AND LIABILITIES:

1) Mark/Mike provide tax assessment values for the tax lots which they propose to purchase:

    $759,830       31.91 acres
    $831,220       43.50 acres
    $553,230       Improvements to Property
    $2,144,280

2) Mark/Mike provide tax assessment values for the Ann's residence:

    $390,400

3) Mark/Mike's valuation of VVV is flawed.  They use the valuation that was given to facilitate a rapid transfer of stock for tax/estate planning purposes.  This valuation is artificially low and was designed to effectuate a transfer between related parties.  This valuation is not an "arm's length" transaction and is inappropriate for setting a value for a buyout.  Mark/Mike

Exhibit 30 — Page 1 of 3
PDF Page 258

PLAINTIFF'S
EXHIBIT
219

JCOUVRETTE006234

do not provide any data for an evaluation of the corporation based on a fair market transaction. For example, they do not provide any financial statements or any numbers relating back to a financial statement. There are a number of accepted measurements of value for a business, most require financial statements. However, a very rudimentary valuation could be that Mark/Mike/Ann receive a combined salary and benefits from their association with VVV of approximately $141,800 (this does not include "trade"):

$120,000 Mark/Mike Salaries
$ 17,000 Mark/Mike Health Insurance
$ 60,000 Ann's Annual Lease Compensation from VVV for use of Land
$ 4,800 Company Vehicles
$199,800

4) Absent financial information, we can use the above numbers to set a value of $1,998,000 for VVV. This would equate to a 10% annual return on investment.

5) Ann has made capital investments into Valley View Winery totaling $626,000. Additionally, part of the capital investment was provided by a mortgage on Ann's house, for which Ann has be paying the interest. Although Ann gets a tax benefit from this interest payment, there is still a net cash contribution from Ann to VVV for these note payments.

Ann's Capital Investment to VVV:
-$250,000 proceeds from Frank's estate
-$100,000 proceeds from Ralph's estate
-$100,000 proceeds from Ann's mother's estate
-$176,000 mortgage proceeds invested into VVV
-Interest Payments made on mortgage for benefit of VVV (unknown)
$626,000

6) A conservative appraisal of Ann's assets (conservative because an Oregon Tax Assessment is historically only 80% of Fair Market Value):
-$2,144,280    Vineyard Property proposed to be purchased by Mark/Mike
-$ 390,400    Ann's House
-$1,998,000    VVV Corporation
$4,532,680

## ANALYSIS OF PROPOSAL

The proposal must be evaluated by the three measurements valuations, cash flow, and structure.

1) Valuation - Mark/Mike have manipulated valuations both up and down in an artificial manner. For example, they start with a base of the Tax Assessment and then adjust it unevenly. This is flawed for a number of reasons. These properties are adjacent to each other, it is illogical to assume that one property (Ann's house) is under assessed by 47% and the vineyard property (with a new tasting room) is over assessed by 63%. If you go further

Exhibit 36 – Page 2 of 3
PDF Page 259

JCOUVRETTE006235

into their valuations, we find that there is further evidence that their assessment is flawed. They assign a value of $72,350 for the rental house on the property. This house produces a positive net cash flow of $10,800 to Ann annually. Using a ten cap evaluation, the house would be valued at $108,000. Mark/Mike undervalue the house by 34%. Further, they state that the tasting room is owned by the corporation and omit it from the calculation of the property value.    Mark/Mike have previously stated that the stock gift agreement omitted the tangible assets of the corporation. If that is the case, the proposal assumes that the tasting room is being transferred to them at no cost. It must also be mentioned that the only lease that is a true measurement of Fair Market Value is the rental home lease, which is the only transaction between unrelated parties. Leases between Ann and VVV are not arm's length, and are therefore not appropriate gauges of fair market value.

Accordingly, the proposal is fatally flawed by its artificial unfounded manipulation of asset values.

2) Cash Flow – Ann currently generates $5,800 net income from leases on her property. These include $800 per month from the rental house and $5,000 from VVV. (The payments due from VVV are accrued to Ann and paid upon request.) The net result of this proposal would be to decrease Ann's monthly cash flow by $1,800 per month and to increase VVV's cash flow by $1,800 per month, while transferring ownership to Mark/Mike.   The proposal is fatally flawed on the basis of its cash flow effects. There is no economic benefit to Ann (and a great deal of economic risk).

3) Structure - Even if the valuation of the property made good economic sense for Ann, the structure of the deal is risky for her. Mark/Mike want Ann to be their bank. If Mark/Mike falter in their management of the corporation, Ann is left with no cash flow and a damaged asset.  Ann would be dependent on Mark/Mike to competently manage the business, but would have not oversight of same.  Ann continues to carry all the risk, while Mark/Mike assume none.

## CONCLUSION:

This proposal should be rejected by Ann.  There is no measurement or evaluation tool which would indicate any benefit to Ann, and in fact the reverse is true.

1) This proposal has the net effect of decreasing Ann's cash flow
2) This proposal places an inordinate amount of risk on Ann, while limiting her control
3) This proposal does not even seek to address or return Ann's capital investment
4) This proposal does not address Ann's mortgage liability, which should be a liability of the corporation
5) This proposal eliminates Ann's only third party revenue source, the rental house, thus reducing the diversity of her income
6) The proposal would have the effect of distributing 91.4 % of Ann's estate to Mark/Mike

Exhibit 36 – Page 3 of 3

PDF Page 260

JCOUVRETTE006236

Plaintiff's Exhibit 37

Ann W.

Fears w/ daughters in laws,
leaving son.
Change will to send to
[illegible] Therese
M Brulee City
387 Tumbleweed
[illegible] 97520

Change in 25% to all kids.

Boys own 24.5 eq.

[illegible] - steel [illegible].

Bob & [illegible] are excl.

▷ Gift w/ rt. f 1st refusal.

Still complete the gifting
we're set up.

Codicil → exer.
steel dist to.

Exhibit 37 – Page 1 of 1
PDF Page 262

PLAINTIFF'S
EXHIBIT
215

HUYCKE_000478

Plaintiff's Exhibit 38

# ARTICLES OF ORGANIZATION



Corporation Division
www.filinginoregon.com

**E-FILED**

Jan 10, 2017

**OREGON SECRETARY OF STATE**

**REGISTRY NUMBER**

128239597

**TYPE**

DOMESTIC LIMITED LIABILITY COMPANY

**1. ENTITY NAME**

THIRD GENERATION FARMS, LLC

**2. MAILING ADDRESS**

25 VINTAGE CIR

JACKSONVILLE OR 97530 USA

**3. NAME & ADDRESS OF REGISTERED AGENT**

MARK A WISNOVSKY

25 VINTAGE CIR

JACKSONVILLE OR 97530 USA

**4. ORGANIZERS**

MARK A WISNOVSKY

25 VINTAGE CIR

JACKSONVILLE OR 97530 USA

**5. MEMBERS/MANAGERS**

**MEMBER**

MICHAEL JOSEPH WISNOVSKY

2248 DELLWOOD AVE

MEDFORD OR 97504 USA

**6. DURATION**

PERPETUAL

**7. MANAGEMENT**

This Limited Liability Company will be member-managed by one or more members

**8. OPTIONAL PROVISIONS**

Exculpation of Liability. Unless otherwise provide by law or expressly assumed, a person who is a Member or Manager, or both, shall not be liable for the acts, debts or liabilities of the LLC to thirdpartiesi.e., persons other than the LLC or LLC Members.

Indemnification. Except as otherwise provided in this Article, the LLC shall indemnify any Member or Manager (and may indemnify any employee or agent) of the LLC who was or is a party or is threatened to be made a party to a potential, pending or completed action, suit or proceeding, whether civil,

Exhibit 38 – Page 1 of 2

Page 1

PDF Page 264

Corporation Division
www.filinginoregon.com

**OREGON SECRETARY OF STATE**

criminal, administrative, or investigative, and whether formal or informal, other than an action by or in the right of the LLC, by reason of the fact that such person is or was a Member, Manager, employee or agent of the LLC. Indemnification shall be limited to expenses, including attorney's fees, judgments, penalties, fines, and amounts paid in settlement actually and reasonably incurred by such person in connection with the action, suit or proceeding, if, and only if, the person acted in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances. For persons other than Members or Managers of the LLC, indemnification shall only be made after an affirmative vote of a majority in interest of LLC Members.

The company elects to indemnify its members, managers, employees, agents for liability and related expenses under ORS 63.160 to 63.170.

By my signature, I declare as an authorized authority, that this filing has been examined by me and is, to the best of my knowledge and belief, true, correct, and complete.  Making false statements in this document is against the law and may be penalized by fines, imprisonment, or both.

By typing my name in the electronic signature field, I am agreeing to conduct business electronically with the State of Oregon.  I understand that transactions and/or signatures in records may not be denied legal effect solely because they are conducted, executed, or prepared in electronic form and that if a law requires a record or signature to be in writing, an electronic record or signature satisfies that requirement.

**ELECTRONIC SIGNATURE**

**NAME**

MARK A WISNOVSKY

**TITLE**

AUTHORIZED AGENT

**DATE SIGNED**

01-10-2017

Exhibit 38 – Page 2 of 2

Page 2

PDF Page 265

Plaintiff's Exhibit 39

Return

# Find Past Check or Deposit Slip Images

## View Image

Account Checking - 8915
Check Number 1056
Date Processed 6/9/2015
Amount $50,000.00

Review Back

Print | Save

ANN M WISNOVSKY
PH. (541) 899-8896
1352 APPLEGATE RD.
JACKSONVILLE, OR 97530

24-22/1230                    1056

DATE 6/9/15

PAY TO THE
ORDER OF Mark Wisnovsky                    $ 50,000.

Fifty-thousand                              DOLLARS

**usbank.** All of us serving you®

00047  03182  0008  06/09/2015 04:04 USB
USB CK M   H

Ann Wisnovsky

MEMO

⑆123000220⑆ 1536668 28915⑈1056  $50,000.00

Done

Exhibit 39 – Page 1 of 1

PDF Page 267

Plaintiff's Exhibit 40

651118

| | |
|---|---|
| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

## Schedule K-1 (Form 1065)

Department of the Treasury
Internal Revenue Service

**2018**

For calendar year 2018, or tax year

beginning **01/01/2018**  ending **12/31/2018**

### Partner's Share of Income, Deductions, Credits, etc.

▶ See back of form and separate instructions.

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 354,533 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 6c | Dividend equivalents | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items |
| 9a | Net long-term capital gain (loss) | | | |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | 18 | Tax-exempt income and nondeductible expenses |
| 10 | Net section 1231 gain (loss) | | | |
| 11 | Other income (loss) | | | |
| | | | 19 | Distributions |
| 12 | Section 179 deduction | 39,035 | | |
| 13 | Other deductions | | 20 | Other information |
| A | | 163 | Z | 311,170 |
| 14 | Self-employment earnings (loss) | | | |
| A | | 354,533 | | |
| B | | 759,491 | | |

*See attached statement for additional information.*

### Part I — Information About the Partnership

A  Partnership's employer identification number
81-███████

B  Partnership's name, address, city, state, and ZIP code
THIRD GENERATIONS FARMS LLC

25 VINTAGE CIRCLE
JACKSONVILLE OR 97530-

C  IRS Center where partnership filed return
Ogden

D  ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

E  Partner's identifying number
████████

F  Partner's name, address, city, state, and ZIP code
MICHAEL WISNOVSKY

2248 Dellwood
MEDFORD OR 97504-

G  ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

H  ☒ Domestic partner   ☐ Foreign partner

I1  What type of entity is this partner?  Individual

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000 | 50.000 |
| Loss | 50.000 | 50.000 |
| Capital | 0.000 | 50.000 |

K  Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . $ | | $ |
| Qualified nonrecourse financing . . . . $ | | $ |
| Recourse . . . $ | | $ |

L  Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account . . . . . $ | |
| Capital contributed during the year . . $ | |
| Current year increase (decrease). . . $ | 315,335 |
| Withdrawals & distributions . . . . . $ | ( ) |
| Ending capital account . . . . . . . $ | 315,335 |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.
BCA

www.irs.gov/Form1065

Schedule K-1 (Form 1065) 2018

Exhibit 40 – Page 1 of 4

CONFIDENTIAL

VALLEYVIEW_003987

**651118**

| | Final K-1 | | Amended K-1 | OMB No. 1545-0123 |
|---|---|---|---|---|

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2018**

For calendar year 2018, or tax year

beginning  01/01/2018   ending  12/31/2018

### Partner's Share of Income, Deductions, Credits, etc.
▶ **See back of form and separate instructions.**

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| | | | |
|---|---|---|---|
| **1** Ordinary business income (loss) | 354,533 | **15** Credits | |
| **2** Net rental real estate income (loss) | | | |
| **3** Other net rental income (loss) | | **16** Foreign transactions | |
| **4** Guaranteed payments | | | |
| **5** Interest income | | | |
| **6a** Ordinary dividends | | | |
| **6b** Qualified dividends | | | |
| **6c** Dividend equivalents | | | |
| **7** Royalties | | | |
| **8** Net short-term capital gain (loss) | | **17** Alternative minimum tax (AMT) items | |
| **9a** Net long-term capital gain (loss) | | | |
| **9b** Collectibles (28%) gain (loss) | | | |
| **9c** Unrecaptured section 1250 gain | | **18** Tax-exempt income and nondeductible expenses | |
| **10** Net section 1231 gain (loss) | | | |
| **11** Other income (loss) | | | |
| | | **19** Distributions | |
| **12** Section 179 deduction | 39,035 | | |
| **13** Other deductions | | **20** Other information | |
| A | 163 | Z | 311,170 |
| **14** Self-employment earnings (loss) | | | |
| A | 354,533 | | |
| B | 759,491 | | |

**Part I    Information About the Partnership**

**A** Partnership's employer identification number

81-▮▮▮▮▮▮▮

**B** Partnership's name, address, city, state, and ZIP code

THIRD GENERATIONS FARMS LLC

25 VINTAGE CIRCLE
JACKSONVILLE OR 97530-

**C** IRS Center where partnership filed return

Ogden

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II    Information About the Partner**

**E** Partner's identifying number

▮▮▮▮▮▮▮

**F** Partner's name, address, city, state, and ZIP code

MARK WISNOVSKY

25 VINTAGE CIRCLE
JACKSONVILLE OR 97530-

**G** [X] General partner or LLC member-manager ☐ Limited partner or other LLC member

**H** [X] Domestic partner ☐ Foreign partner

**I1** What type of entity is this partner?  Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000 | 50.000 |
| Loss | 50.000 | 50.000 |
| Capital | 0.000 | 50.000 |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . $ | | $ |
| Qualified nonrecourse financing . . . . $ | | $ |
| Recourse . . . $ | | $ |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account . . . . . $ | |
| Capital contributed during the year . . $ | |
| Current year increase (decrease) . . . $ | 315,335 |
| Withdrawals & distributions . . . . . $ | ( ) |
| Ending capital account . . . . . . . $ | 315,335 |

[X] Tax basis  ☐ GAAP  ☐ Section 704(b) book

☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?

☐ Yes  [X] No

If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

**For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    **Schedule K-1 (Form 1065) 2018**
BCA

Exhibit 40 – Page 2 of 4

CONFIDENTIAL

VALLEYVIEW_003983

651119

| | Final K-1 | | Amended K-1 | OMB No. 1545-0123 |
|---|---|---|---|---|

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2019**

For calendar year 2019, or tax year

beginning **01/01/2019** ending **12/31/2019**

**Partner's Share of Income, Deductions, Credits, etc.**  ► **See back of form and separate instructions.**

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number

81- ████████

**B** Partnership's name, address, city, state, and ZIP code

THIRD GENERATION FARMS LLC
25 VINTAGE CIRCLE
JACKSONVILLE OR 97530

**C** IRS Center where partnership filed return ► Ogden

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)

████████

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

MICHAEL WISNOVSKY
2248 Dellwood
MEDFORD OR 97504

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:

TIN _____ Name _____

**I1** What type of entity is this partner? Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000 | 50.000 |
| Loss | 50.000 | 50.000 |
| Capital | 50.000 | 50.000 |

Check if decrease is due to sale or exchange of partnership interest . . ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . $ | | $ |
| Qualified nonrecourse financing . . . . $ | | $ |
| Recourse . . . $ | | $ |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account . . . . . $ | 315,335 |
| Capital contributed during the year . . $ | |
| Current year net income (loss) . . . . $ | 72,907 |
| Other increase (decrease) (attach explanation) $ | |
| Withdrawals & distributions . . . . . $ ( | 370,000 ) |
| Ending capital account . . . . . . $ | 18,242 |

**M** Did the partner contribute property with a built-in gain or loss?

☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**

Beginning . . . . . . . . . . . . $ _____
Ending . . . . . . . . . . . . . $ _____

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 70,763 | 15 | Credits |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4a | Guaranteed payments for services | | | |
| 4b | Guaranteed payments for capital | | | |
| 4c | Total guaranteed payments | | | |
| 5 | Interest income | 2,144 | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 6c | Dividend equivalents | | 17 | Alternative minimum tax (AMT) items |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | | |
| 11 | Other income (loss) | | 19 | Distributions |
| | | | A | 370,000 |
| 12 | Section 179 deduction | | 20 | Other information |
| 13 | Other deductions | | A | 2,144 |
| | | | Z | |
| 14 | Self-employment earnings (loss) | | | |
| A | | 70,763 | | |
| B | | 1,032,978 | | |

**21** ☐ More than one activity for at-risk purposes*

**22** ☐ More than one activity for passive activity purposes*

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   **Schedule K-1 (Form 1065) 2019**
BCA

Exhibit 40 – Page 3 of 4

PDF Page 271

CONFIDENTIAL

VALLEYVIEW_004117

651119

| | Final K-1 ☐ | | Amended K-1 ☐ | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**

**2019**

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year

beginning 01/01/2019 ending 12/31/2019

## Partner's Share of Income, Deductions, Credits, etc. ▶ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
81–▮▮▮▮▮▮

**B** Partnership's name, address, city, state, and ZIP code
THIRD GENERATION FARMS LLC
25 VINTAGE CIRCLE
JACKSONVILLE OR 97530

**C** IRS Center where partnership filed return ▶ Ogden

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
▮▮▮▮▮▮

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
MARK WISNOVSKY
25 VINTAGE CIRCLE
JACKSONVILLE OR 97530

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner    ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner? Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000 | 50.000 |
| Loss | 50.000 | 50.000 |
| Capital | 50.000 | 50.000 |

Check if decrease is due to sale or exchange of partnership interest . . ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . $ | | $ |
| Qualified nonrecourse financing . . . . $ | | $ |
| Recourse . . . $ | | $ |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account . . . . . $ | 315,335 |
| Capital contributed during the year . . $ | |
| Current year net income (loss) . . . . $ | 72,907 |
| Other increase (decrease) (attach explanation) $ | |
| Withdrawals & distributions . . . . . $ ( | 370,000 ) |
| Ending capital account . . . . . . $ | 18,242 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No    If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning . . . . . . . . . . . . $ _____
Ending . . . . . . . . . . . . . $ _____

| # | Item | | Value |
|---|---|---|---|
| 1 | Ordinary business income (loss) | | 70,763 |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4a | Guaranteed payments for services | | |
| 4b | Guaranteed payments for capital | | |
| 4c | Total guaranteed payments | | |
| 5 | Interest income | | 2,144 |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 6c | Dividend equivalents | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| 14 | Self-employment earnings (loss) | A | 70,763 |
| | | B | 1,032,978 |

| # | | Value |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| 17 | Alternative minimum tax (AMT) items | |
| 18 | Tax-exempt income and nondeductible expenses | |
| 19 | Distributions A | 370,000 |
| 20 | Other information A | 2,144 |
| | Z | |

**21** ☐ More than one activity for at-risk purposes*
**22** ☐ More than one activity for passive activity purposes*

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Schedule K-1 (Form 1065) 2019
BCA

Exhibit 40 – Page 4 of 4

Plaintiff's Exhibit 41



Account 100065825   Serial 43927   Amount 573.10   Sequence 78490460
TR 123205054   TranCode 0   Date 06-06-2019

**MOBILE DEPOSIT**

4866844006
Deposit amount: 573.10

⑆5552⑈0756⑆ 4866844006⑈ ⑈0000057310⑈

**DEPOSIT TICKET BACK**

Account 4866844006   Serial 0   Amount 573.10   Sequence 78490450
TR 55520756   TranCode 0   Date 06-06-2019

Account 40178878338423   Serial 0   Amount 365.04
Sequence 2017391435   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179857768382   Serial 0   Amount 204.00
Sequence 2017391430   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179761689062   Serial 0   Amount 138.42
Sequence 2017391425   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179857760993   Serial 0   Amount 94.52
Sequence 2017391420   TR 102100400   TranCode 0   Date 06-06-2019

Exhibit 41 – Page 1 of 14

PDF Page 274



Account 40179898615044   Serial 0   Amount 79.14
Sequence 2017391415   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179852664392   Serial 0   Amount 147.29
Sequence 2017391410   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179761504913   Serial 0   Amount 168.00
Sequence 2017391405   TR 102100400   TranCode 0   Date 06-06-2019

Account 4864849197   Serial 1203   Amount 73.94   Sequence 2017391400
TR 123205054   TranCode 0   Date 06-06-2019

Account 1608860084   Serial 1231   Amount 432.00
Sequence 2017391395   TR 125008547   TranCode 0   Date 06-06-2019

Account 9748881126   Serial 1749   Amount 239.76
Sequence 2017391390   TR 123006800   TranCode 0   Date 06-06-2019

Exhibit 41 – Page 2 of 14



Account 5716443170   Serial 509721   Amount 443.40
Sequence 2017391265   TR 123006800   TranCode 0   Date 06-06-2019

Account 974339319   Serial 3877   Amount 126.00   Sequence 2017391260
TR 123205054   TranCode 0   Date 06-06-2019

Account 9906906988   Serial 176263   Amount 59.07
Sequence 2017391255   TR 123205054   TranCode 0   Date 06-06-2019

Account 40179761504526   Serial 0   Amount 135.26
Sequence 2017391250   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179602075583   Serial 0   Amount 161.90
Sequence 2017391245   TR 102100400   TranCode 0   Date 06-06-2019

Account 40179329008257   Serial 0   Amount 82.45
Sequence 2017391240   TR 102100400   TranCode 0   Date 06-06-2019

Exhibit 41 – Page 3 of 14

PDF Page 276



Account 40179698601384    Serial 0    Amount 55.14
Sequence 2017391235    TR 102100400    TranCode 0    Date 06-06-2019

Account 40179744981687    Serial 0    Amount 250.56
Sequence 2017391230    TR 102100400    TranCode 0    Date 06-06-2019

Account 40179643929093    Serial 0    Amount 59.38
Sequence 2017391225    TR 102100400    TranCode 0    Date 06-06-2019

Account 100065825    Serial 43849    Amount 409.71
Sequence 2017391220    TR 123205054    TranCode 0    Date 06-06-2019

Account 9906906988    Serial 176282    Amount 119.70
Sequence 2017391215    TR 123205054    TranCode 0    Date 06-06-2019

Account 100065825    Serial 43902    Amount 295.00
Sequence 2017391210    TR 123205054    TranCode 0    Date 06-06-2019

Exhibit 41 – Page 4 of 14

PDF Page 277



Account 40179849700350    Serial 0    Amount 387.24
Sequence 2017391175    TR 102100400    TranCode 0    Date 06-06-2019

Account 40179712218348    Serial 0    Amount 62.99
Sequence 2017391170    TR 102100400    TranCode 0    Date 06-06-2019

Account 40179756309231    Serial 0    Amount 283.52
Sequence 2017391165    TR 102100400    TranCode 0    Date 06-06-2019

Account 4866844006    Serial 0    Amount 12051.66    Sequence 2017391140
TR 55520600    TranCode 0    Date 06-06-2019

Account 10501    Serial 125445392    Amount 3042.34    Sequence 1145170
TR 123200101    TranCode 0    Date 06-24-2019

Exhibit 41 – Page 5 of 14

Account 4866844006    Serial 0    Amount 3042.34    Sequence 1145160    PDF Page 278
TR 55520756    TranCode 0    Date 06-24-2019



Account 9906906988    Serial 176349    Amount 209.64
Sequence 2025880195    TR 123205054    TranCode 0    Date 06-25-2019

Account 5716443170    Serial 509812    Amount 287.57
Sequence 2025880200    TR 123006800    TranCode 0    Date 06-25-2019

Account 40179857763648    Serial 0    Amount 91.21
Sequence 2025880205    TR 102100400    TranCode 0    Date 06-25-2019

Account 4864849197    Serial 1232    Amount 69.14    Sequence 2025880210
TR 123205054    TranCode 0    Date 06-25-2019

Account 40179761507442    Serial 0    Amount 68.32
Sequence 2025880215    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179712303362    Serial 0    Amount 92.28
Sequence 2025880220    TR 102100400    TranCode 0    Date 06-25-2019

Exhibit 41 – Page 6 of 14

PDF Page 279



Account 40179766844181    Serial 0    Amount 274.21
Sequence 2025880225    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179852889770    Serial 0    Amount 88.00
Sequence 2025880230    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179642706677    Serial 0    Amount 117.45
Sequence 2025880235    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179909637335    Serial 0    Amount 79.71
Sequence 2025880240    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179857771766    Serial 0    Amount 208.14
Sequence 2025880245    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179849700836    Serial 0    Amount 182.67
Sequence 2025880250    TR 102100400    TranCode 0    Date 06-25-2019

Exhibit 41 – Page 7 of 14

PDF Page 280



Account 40179698608296    Serial 0    Amount 77.72
Sequence 2025880255    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179861573168    Serial 0    Amount 123.00
Sequence 2025880260    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179861572790    Serial 0    Amount 210.90
Sequence 2025880265    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179761506866    Serial 0    Amount 27.92
Sequence 2025880270    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179761506857    Serial 0    Amount 70.39
Sequence 2025880275    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179909636273    Serial 0    Amount 91.86
Sequence 2025880280    TR 102100400    TranCode 0    Date 06-25-2019

Exhibit 41 – Page 8 of 14

PDF Page 281



Account 40179849700593    Serial 0    Amount 256.49
Sequence 2025880285    TR 102100400    TranCode 0    Date 06-25-2019

Account 40179898619184    Serial 0    Amount 82.98
Sequence 2025880290    TR 102100400    TranCode 0    Date 06-25-2019

Account 4866844006    Serial 0    Amount 756.00    Sequence 7836820
TR 55520756    TranCode 0    Date 07-03-2019

Account 972871008    Serial 5947    Amount 756.00    Sequence 7836830
TR 123205054    TranCode 0    Date 07-03-2019

Account 40176692390640    Serial 0    Amount 89.07
Sequence 2031971830    TR 102100400    TranCode 0    Date 07-09-2019

Account 40179909638820    Serial 0    Amount 85.08
Sequence 2031971825    TR 102100400    TranCode 0    Date 07-09-2019

Exhibit 41 – Page 9 of 14

PDF Page 282



Account 40179861574986    Serial 0    Amount 86.45
Sequence 2031971820    TR 102100400    TranCode 0    Date 07-09-2019

Account 40179766920834    Serial 0    Amount 118.76
Sequence 2031971815    TR 102100400    TranCode 0    Date 07-09-2019

Account 40179797140314    Serial 0    Amount 130.08
Sequence 2031971810    TR 102100400    TranCode 0    Date 07-09-2019

Account 40179698609781    Serial 0    Amount 85.08
Sequence 2031971805    TR 102100400    TranCode 0    Date 07-09-2019

Account 40179329010282    Serial 0    Amount 99.00
Sequence 2031971800    TR 102100400    TranCode 0    Date 07-09-2019

Exhibit 41 – Page 10 of 14

Account 40179619093512    Serial 0    Amount 99.00
Sequence 2031971795    TR 102100400    TranCode 0    Date 07-09-2019



Account 40179898659621   Serial 0   Amount 112.14
Sequence 2031971790   TR 102100400   TranCode 0   Date 07-09-2019

Account 40179876635208   Serial 0   Amount 366.00
Sequence 2031971785   TR 102100400   TranCode 0   Date 07-09-2019

Account 153568696188   Serial 7246   Amount 99.00
Sequence 2031971780   TR 125000105   TranCode 0   Date 07-09-2019

Account 40179909637803   Serial 0   Amount 67.14
Sequence 2031971775   TR 102100400   TranCode 0   Date 07-09-2019

Account 40179852664878   Serial 0   Amount 43.14
Sequence 2031971770   TR 102100400   TranCode 0   Date 07-09-2019

Exhibit 41 – Page 11 of 14

Account 40179849700971   Serial 0   Amount 221.71
Sequence 2031971765   TR 102100400   TranCode 0   Date 07-09-2019



Account 40176692392872    Serial 0    Amount 59.00
Sequence 2036205105    TR 102100400    TranCode 0    Date 07-17-2019

119

Account 40179766845972    Serial 0    Amount 134.90
Sequence 2036205100    TR 102100400    TranCode 0    Date 07-17-2019

119

Account 40179852891498    Serial 0    Amount 123.14
Sequence 2036205095    TR 102100400    TranCode 0    Date 07-17-2019

119

Account 40179712287144    Serial 0    Amount 235.28
Sequence 2036205090    TR 102100400    TranCode 0    Date 07-17-2019

119

Account 40179766923228    Serial 0    Amount 63.76
Sequence 2036205085    TR 102100400    TranCode 0    Date 07-17-2019

119

Exhibit 41 – Page 12 of 14

Account 40179329011470    Serial 0    Amount 175.08
Sequence 2036205080    TR 102100400    TranCode 0    Date 07-17-2019

PDF Page 285



Account 40179852665175    Serial 0    Amount 117.01
Sequence 2041518745    TR 102100400    TranCode 0    Date 07-30-2019

Account 40176692224464    Serial 0    Amount 256.14
Sequence 2041518740    TR 102100400    TranCode 0    Date 07-30-2019

Account 40178230807683    Serial 0    Amount 188.34
Sequence 2041518735    TR 102100400    TranCode 0    Date 07-30-2019

Account 40179766924380    Serial 0    Amount 142.90
Sequence 2041518730    TR 102100400    TranCode 0    Date 07-30-2019

Account 40178038985310    Serial 0    Amount 41.94
Sequence 2041518725    TR 102100400    TranCode 0    Date 07-30-2019

Account 40179642707730    Serial 0    Amount 87.90
Sequence 2041518720    TR 102100400    TranCode 0    Date 07-30-2019

Exhibit 41 – Page 13 of 14

PDF Page 286



Account 40179797143293    Serial 0    Amount 123.78
Sequence 2041518715    TR 102100400    TranCode 0    Date 07-30-2019

Account 40179849701421    Serial 0    Amount 272.42
Sequence 2041518710    TR 102100400    TranCode 0    Date 07-30-2019

Account 972871008    Serial 5994    Amount 1116.00
Sequence 2041518705    TR 123205054    TranCode 0    Date 07-30-2019

Account 222997857    Serial 1859    Amount 103.50    Sequence 2041518700
TR 325070760    TranCode 0    Date 07-30-2019

Account 4864849197    Serial 1333    Amount 89.69    Sequence 2041518695
TR 123205054    TranCode 0    Date 07-30-2019

Account 100065825    Serial 45749    Amount 378.85
Sequence 2041518690    TR 123205054    TranCode 0    Date 07-30-2019

Exhibit 41 – Page 14 of 14

PDF Page 287

Case 1:21-cv-00157-CL    Document 169-1    Filed 05/02/25    Page 52 of 116

Plaintiff's Exhibit 42

PDF Page 288

## Marketability of Valley View Winery and Lis Pendens Impact, Winery Pricing Proposal

From: Lorrie Normann (lorrienormann@tripleoaksrealty.com)

To: Jcouvrette@sbcglobal.net

Date: Tuesday, March 4, 2025 at 10:19 AM PST

Dear Joanne,

Based on my experience in wine industry real estate and my analysis of Valley View Winery, I believe the property has strong market potential, but there are key challenges that need to be addressed to maximize its value.

**Proposed Pricing Strategy & Market Positioning**

- **Total Asset Sale Value:** $4,858,000

- **Suggested Listing Price:** $5.5M (without access to full financials)

- **Stepped-Up Basis Valuation at Time of Death:** $6.5M (is this correct?)

While the winery's financials may not significantly drive the valuation, goodwill and brand reputation play an important role in attracting buyers. However, to accurately determine an appropriate Cap Rate and EBITDA, I will need access to the financial statements. These figures will be essential in positioning the property competitively and appealing to serious buyers who evaluate wineries based on income-generating potential.

**Market Challenges & Considerations**

1. **Lis Pendens – A Significant Sales Barrier**

   o The Lis Pendens clouds the title, making it a major hurdle in securing a buyer. Buyer's agents will uncover it during due diligence, and many will steer their clients away from properties with encumbrances.

   o **Solution:** I highly recommend that we either have the Lis Pendens removed or negotiate a written agreement that:

     ▪ **Allows the property to be listed and marketed with a clear resolution in place**

     ▪ **States that the Lis Pendens will be removed upon acceptance of an offer**

     ▪ **Confirms that the lease will terminate upon closing**

2. **Current Market Conditions**

   o The wine industry is facing an oversupply of inventory, which has softened winery property values. While I believe this is a temporary issue, it does affect buyer demand.

   o That said, well-positioned wineries continue to sell when marketed effectively.

3. **Deferred Maintenance Considerations**

   o Some buyers may see this as a concern, but I believe it is less of an obstacle than the Lis Pendens. Winery and vineyard sales are always about finding the right buyer, and this property will be ideal for the right person with vision.

Exhibit 42 – Page 1 of 2

PDF Page 289

**Potential Capital Gains Tax Advantage**

• The property received a stepped-up basis of $6.5M at the time of your mother's passing. Given that current market conditions have caused a slight decline in values, it is possible that there would be minimal or no capital gains tax liability on the sale.

• I am not a tax professional and cannot provide tax advice, but I strongly recommend consulting with a financial expert to determine if this could be a financial advantage when structuring the sale.

**Next Steps: Addressing the Lis Pendens & Financial Evaluation**

In order to effectively market and sell Valley View Winery, I strongly recommend:

\* **Full removal of the Lis Pendens before listing**, OR
\* **A written agreement stating that the Lis Pendens will be removed upon acceptance of an offer** and that the **lease will terminate upon closing**.

Additionally, I would appreciate access to the financial statements in order to determine the property's EBITDA and Cap Rate. These metrics will be crucial in identifying the right buyer pool and ensuring that the property is priced accurately based on its income potential.

Given current market conditions and the challenge of attracting buyers to an encumbered property, having a clear resolution strategy for the Lis Pendens and an accurate financial assessment will be critical to securing a strong offer.

I encourage all parties to consider the benefits of resolving these issues proactively so we can position Valley View Winery competitively in today's market. Please let me know a convenient time to discuss this further.

I look forward to working together to achieve a successful outcome.

Sincerely,

Lorrie Normann



 Lorrie Normann

Real Estate Broker

(541) 556-8127

**Triple Oaks Realty**
1005 Green Acres Rd #101, Eugene, OR 97408
tripleoaksrealty.com
*Licensed Broker in the State of Oregon*

Plaintiff's Exhibit 43

After Recording Return to:
James R. Dole, OSB No. 892272
Watkinson Laird Rubenstein, P.C.
PO Box 10567
Eugene, OR 97440

Jackson County Official Records **2022-035249**
R-ANP
Stn=7 SIMPSOHP    **12/14/2022 10:22:01 AM**
$10.00 $10.00 $13.00 $11.00 $11.00    **$119.00**
$60.00 $4.00
I, Christine Walker, County Clerk for Jackson County, Oregon, certify
that the instrument identified herein was recorded in the Clerk
records.
Christine Walker - County Clerk

## AMENDED NOTICE OF PENDENCY OF ACTION

The prior Notice of Pendency of Action was signed and recorded by the undersigned on August 5, 2022, as Document Number 2022-024456 in the Jackson County Official Records in Jackson County, Oregon. The undersigned is recording this Amended Notice of Pendens of Action to conform the legal description of the affected property to the litigation now pending as referenced below.

Pursuant to ORS 93.740, the undersigned states:

1.  On January 29, 2021, Plaintiffs JOANNE COUVRETTE, as Trustee of the Ann M. Wisnovsky Trust, and WISNOVSKY LAND, LLC, filed an action in the United States District Court for the District of Oregon, Case No. 21-CV-00157-CL, and filed an amended complaint on March 16, 2022, against the defendants named below alleging claims for relief including statutory elder abuse, declaratory relief, unjust enrichment, breach of fiduciary duty, and professional negligence.

2.  The defendants are:  MARK A. WISNOVSKY; MICHAEL J. WISNOVSKY; PATRICK HUYCKE; VALLEY VIEW WINERY, INC.; JARVIS, DREYER, GLATTE & LARSEN, LLP fka Huycke O'Connor Jarvis, LLP.

3.  The object of the action is:  Adjudication of certain of the parties' rights and obligations with respect to commercial and agricultural leasehold interests in the real property described below and adjudication of plaintiffs' purported right or rights to control, use, occupancy, and disposition of the described property. Wisnovsky Defendants seek declaratory relief and money damages.

4.  The description of the real property to be affected is more particularly described on **Exhibit A**, attached hereto.

WATKINSON LAIRD RUBENSTEIN, P.C.

By: _____
James R. Dole, OSB No. 892272
Of Attorneys for Defendants Mark A. Wisnovsky,
Michael J. Wisnovsky and Valley View Winery, Inc.

STATE OF OREGON; County of ___Lane___ ) ss.

The foregoing instrument was acknowledged before me on December 14, 2022, by James R. Dole.

OFFICIAL STAMP
**LAINNA MICHELLE OLSON**
NOTARY PUBLIC - OREGON
COMMISSION NO. 990248
MY COMMISSION EXPIRES AUGUST 07, 2023

_____
Notary Public for Oregon
My Commission Expires: 8-7-2023

AMENDED NOTICE OF PENDENCY OF ACTION                              Page 1 of 1

Exhibit 43 – Page 1 of 5
PDF Page 292

## EXHIBIT "A"

Real property in the County of Jackson, State of Oregon, described as follows:

TRACT A:

COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 89° 44' 41" WEST 1112.65 FEET TO A 1.5 INCH INSIDE DIAMETER IRON PIPE (RECORD 2 INCH PIPE), FROM WHICH THE CENTER OF A 48 INCH DIAMETER OAK TREE BEARS NORTH 47° EAST 21.4 FEET (RECORD 20.0 FEET), SAID PIPE MARKING THE SOUTHWEST CORNER OF SAID PARCEL DESCRIBED IN DOCUMENT NO. 78-08539; THENCE CONTINUING ALONG THE WESTERLY, NORTHERLY, AND EASTERLY BOUNDARY OF SAID DESCRIBED PARCEL THE FOLLOWING; NORTH 6° WEST 1574.0 FEET, MORE OR LESS, TO THE NORTH LINE OF LOT 4 OF SAID SECTION 33; THENCE EAST 1336 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF LOT 4 OF SECTION 34, SAID TOWNSHIP AND RANGE; THENCE NORTH 608 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF LOT 3 OF SAID SECTION 34; THENCE EAST 736.8 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE, ALONG SAID RIGHT OF WAY BOUNDARY, SOUTH 7° 13' 10" WEST 1837.72 FEET TO A POINT OF CURVE; THENCE ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 3° 38' 17" WEST 242.34 FEET) A DISTANCE OF 242.50 FEET TO THE POINT OF BEGINNING.

NOTE: This Legal Description was created prior to January 01, 2008.

Exhibit 43 – Page 2 of 5

PDF Page 293

| Jackson County Official Records | **2022-024456** |
|---|---|
| R-NP | |
| Stn=7 SIMPSOHP | **08/05/2022 01:07:07 PM** |
| $15.00 $10.00 $13.00 $11.00 $11.00 | **$124.00** |
| $60.00 $4.00 | |

I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.      Christine Walker - County Clerk

**After Recording Return to:**
James R. Dole, OSB No. 892272
Watkinson Laird Rubenstein, P.C.
PO Box 10567
Eugene, OR 97440

## NOTICE OF PENDENCY OF ACTION

Pursuant to ORS 93.740, the undersigned states:

1.      On January 29, 2021, Plaintiffs JOANNE COUVRETTE, as Trustee of the Ann M. Wisnovsky Trust, and WISNOVSKY LAND, LLC, filed an action in the United States District Court for the District of Oregon, Case No. 21-CV-00157-CL, and filed an amended complaint on March 16, 2022, against the defendants named below alleging claims for relief including statutory elder abuse, declaratory relief, unjust enrichment, breach of fiduciary duty, and professional negligence.

2.      The defendants are:    MARK A. WISNOVSKY; MICHAEL J. WISNOVSKY; PATRICK HUYCKE; VALLEY VIEW WINERY, INC.; JARVIS, DREYER, GLATTE & LARSEN, LLP fka Huycke O'Connor Jarvis, LLP.

3.      The object of the action is:    Adjudication of certain of the parties' rights and obligations with respect to commercial and agricultural leasehold interests in the real property described below and adjudication of plaintiffs' purported right or rights to control, use, occupancy, and disposition of the described property.    Wisnovsky Defendants seek declaratory relief and money damages.

4.      The description of the real property to be affected is more particularly described on **Exhibit A**, attached hereto.

WATKINSON LAIRD RUBENSTEIN, P.C.

By:
James R. Dole, OSB No. 892272
Of Attorneys for Defendants Mark A. Wisnovsky,
Michael J. Wisnovsky and Valley View Winery, Inc.

STATE OF OREGON; County of Lane) ss.

The foregoing instrument was acknowledged before me on __August 5__, 2022,    by James R. Dole.

| OFFICIAL STAMP | |
|---|---|
| LAINNA MICHELLE OLSON | |
| NOTARY PUBLIC - OREGON | |
| COMMISSION NO. 990248 | |
| MY COMMISSION EXPIRES AUGUST 07, 2023 | |

Notary Public for Oregon
My Commission Expires: __8-7-2023__

NOTICE OF PENDENCY OF ACTION                                                    Page 1 of 1

Exhibit 43 – Page 3 of 5

PDF Page 294

First American Title Company of Oregon

File No.: 7169-2290459
July 22, 2014

## Exhibit "A"

Real property in the  County of Jackson, State of Oregon, described as follows:

PARCEL I:
COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF
THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16
FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID
PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG
SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO
THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE
OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID
RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH
75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO
A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH
86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A
5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH
87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A
5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO
THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID
IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG
CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE
SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO
THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF
17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT
RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32
FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE
ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2°
59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET;
THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO
WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE
NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL
DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON;
THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY
BOUNDARY OF SAID LANE, SOUTH 89° 44' 41" WEST 1112.65 FEET TO A 1.5 INCH INSIDE DIAMETER
IRON PIPE (RECORD 2 INCH PIPE), FROM WHICH THE CENTER OF A 48 INCH DIAMETER OAK TREE
BEARS NORTH 47° EAST 21.4 FEET (RECORD 20.0 FEET), SAID PIPE MARKING THE SOUTHWEST
CORNER OF SAID PARCEL DESCRIBED IN DOCUMENT NO. 78-08539; THENCE CONTINUING ALONG THE
WESTERLY, NORTHERLY, AND EASTERLY BOUNDARY OF SAID DESCRIBED PARCEL THE FOLLOWING;
NORTH 6° WEST 1574.0 FEET, MORE OR LESS, TO THE NORTH LINE OF LOT 4 OF SAID SECTION 33;
THENCE EAST 1336 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF LOT 4 OF SECTION 34,
SAID TOWNSHIP AND RANGE; THENCE NORTH 608 FEET, MORE OR LESS, TO THE NORTHWEST
CORNER OF LOT 3 OF SAID SECTION 34; THENCE EAST 736.8 FEET, MORE OR LESS, TO THE
WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE, ALONG SAID RIGHT OF WAY
BOUNDARY, SOUTH 7° 13' 10" WEST 1837.72 FEET TO A POINT OF CURVE; THENCE ALONG THE ARC
OF A 1939.86 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 3° 38'
17" WEST 242.34 FEET) A DISTANCE OF 242.50 FEET TO THE POINT OF BEGINNING.

PARCEL II:

Exhibit A
Page 1 of 2

*First American Title*

Exhibit 43 – Page 4 of 5

PDF Page 295

First American Title Company of Oregon

File No.: 7169-2290459
July 22, 2014

COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 87° 33' 02" EAST 21.12 FEET TO A 5/8" IRON PIN; THENCE NORTH 88° 21' 48" EAST 109.22 FEET TO A 5/8" IRON PIN ; THENCE SOUTH 84° 56' 41" EAST 56.34 FEET TO A 5/8" IRON PIN ; THENCE ALONG THE ARC OF A 460.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS NORTH 81° 05' 40" EAST 221.96 FEET ) A DISTANCE OF 224.17 FEET TO A 5/8" IRON PIN; THENCE NORTH 67° 08' 01" EAST 137.72 FEET TO A 5/8" IRON PIN; THENCE NORTH 89° 17' 20" EAST 16.48 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH NORTH 00° 19' 38" WEST 26.00 FEET) A DISTANCE OF 26.00 FEET TO THE POINT OF BEGINNING.

NOTE: This Legal Description was created prior to January 01, 2008.

*First American Title*

Exhibit 43 – Page 5 of 5

PDF Page 296

Plaintiff's Exhibit 44

Exhibit 44 Chair Lift Photos 2019



Exhibit 44 – Page 1 of 1

PDF Page 298

Plaintiff's Exhibit 45

**John L. Scott®**
**REAL ESTATE**

May 1, 2023

To Whom It May Concern:

The property located in Jackson County, Oregon; Tax lots 1800 and 200, as of May 1st 2023 had an estimated value of $6,500,000. This valuation did not include the home at 1140 Upper Applegate Rd. Jacksonville OR 97530.

Respectfully,

**Benjamin Kinney**
*Veteran Realtor*
John L. Scott Real Estate
541-951-9377

Exhibit 45 – Page 1 of 1

PDF Page 300

Plaintiff's Exhibit 46



Exhibit 46 – Page 1 of 1

PDF Page 302

Plaintiff's Exhibit 47

JERRY A. JACOBSON*
RICHARD B. THIEROLF, JR.
*Admitted in Oregon & California

ROBERT R. DICKEY (Retired)

**JACOBSON, THIEROLF & DICKEY, P.C.**
ATTORNEYS AT LAW
POST OFFICE BOX 4687
TWO NORTH OAKDALE AVENUE
MEDFORD, OREGON 97501

TELEPHONE:    (541) 773-2727
FACSIMILE :    (541) 734-7269

August 27, 2019

**REGULAR MAIL AND E-MAIL: mweaver@brophylegal.com/
dcampanella@brophylegal.com**

Dominic M. Campanella
Mark R. Weaver
Attorneys at Law
Brophy Schmor, LLP
P O Box 128
Medford, OR 97501

Re:    Valley View Winery, Inc./Wisnovsky Land, LLC
       August 21, 2019, Notice of Breach of Vineyard Lease

Gentlemen:

I received your August 21st letter, "Notice of Breach of Vineyard Lease," which asserts that "the landlord" has breached the Vineyard Lease. "The landlord" would be Wisnovsky Land, LLC. Thus, I am responding to your August 21st letter as Wisnovsky Land's attorney, for the limited purpose of addressing your concerns about the so-called "breach of lease." Ann Wisnovsky and Joanne Couvrette, the members of Wisnovsky Land, are confused about your letter, and want clarification or explanation of why Mark and Mike Wisnovsky think Wisnovsky Land breached the lease.

The first paragraph of the August 21st letter refers to "[t]he agent." Is Robert Wisnovsky "the agent"? In any event, "the agent's" actions were for Ann Wisnovsky's benefit, not for Wisnovsky Land, LLC.

Exhibit "A" attached to the Vineyard Lease, which is a legal description for approximately 75 acres of land, is also attached to the Winery Lease. I would like to know why the legal description attached to each lease is apparently the same. Be this as it may, neither lease covers the property where Ann Wisnovsky's residence is located.

Someone broke into Ann Wisnovsky's residence recently. Robert Wisnovsky discovered this on Tuesday, August 20th. It seems that nothing was taken from the residence. Instead, all three of Ann's television cable boxes and her internet router were damaged, which disables her video surveillance system. In other words, the break-in was vandalism, not theft. This is why Robert Wisnovsky locked the gate. Do your clients Mark and Mike Wisnovsky, or Valley View Winery, have any comments concerning the break-in? What are their comments?

The photos accompanying the August 21st "Notice of Breach of Vineyard Lease" letter show the gate across Ann Wisnovsky's driveway. The driveway leads to her house. Neither her driveway nor her house are located on land of Wisnovsky Land, LLC. Valley View Winery does not have an easement to use the driveway. The gate belongs to Ann Wisnovsky. My understanding is that Valley View Winery has legal access to its facilities so that it need not use Ann Wisnovsky's driveway. Valley View Winery does not lose such access when Ann closes the gate across her driveway.

Exhibit 47 – Page 1 of 2

PDF Page 304

Dominic M. Campanella
Mark R. Weaver
August 27, 2019
Page 2

My understanding is that the gate opener does not belong to Valley View Winery. Regardless, the gate opener works.

Your letter states that Valley View Winery employees use Ann Wisnovsky's driveway (*i.e.*, the "south entrance"). Ann does not carry insurance to cover such employees or their families. These people should not go onto her property.

Your August 21st letter refers to Section 8.6 of the Vineyard Lease, concerning utilities charges. My understanding is that Valley View Winery is using Ann Wisnovsky's power for buildings that are not covered by the lease; these are buildings that Ann Wisnovsky herself does not use, but she (not Wisnovsky Land, LLC) owns them. Mark Wisnovsky pays Ann's entire power bill, and then deducts that amount from Valley View Winery's rent. Paying Ann Wisnovsky's personal power bill is no substitute for full payment of rent under the Vineyard Lease. Wisnovsky Land, LLC, does not agree that Valley View Winery is entitled to offset Ann's power bill against its rent. Ann Wisnovsky is not "the landlord." At any rate, the power is turned off to these buildings. Valley View Winery should use its own power. It should not use buildings and land that it doesn't lease. It should not matter, for any purpose relating to the Vineyard Lease, whether or not Ann turns off the power to buildings not covered by the lease.

Your August 21st letter states, "[T]he landlord's agent took steps to prevent Valley View Winery from using a storage shed located on the premises." The shed is on Ann Wisnovsky's property; it is therefore not subject to the Vineyard Lease or, for that matter, the Winery Lease. This is an example of the type of buildings discussed in the preceding paragraph.

The break-in and vandalism aside, does the discussion above cause Valley View Winery to reconsider its conclusion that Wisnovsky Land breached the lease? We look forward to hearing from you.

Yours truly,

JACOBSON, THIEROLF & DICKEY, P.C.

Richard B. Thierolf, Jr.

RBT/gml
cc:    Garrison F. Turner, Esq.
       Joanne Couvrette

Exhibit 47 – Page 2 of 2

PDF Page 305

Plaintiff's Exhibit 48



**JACKSON COUNTY TAXATION**
PO BOX 1569
MEDFORD OR 97501-0242

**REAL PROPERTY TAX STATEMENT**
JULY 1, 2023 TO JUNE 30, 2024
www.jacksoncountyor.gov/tax
541-774-6541

**TAX ACCOUNT: 10476804**

| | |
|---|---:|
| EDUCATION SERVICE DISTRICT | 11.86 |
| RCC | 17.25 |
| MEDFORD SD 549C | 148.47 |
| EDUCATION TOTAL: | 177.58 |
| | |
| JACKSON COUNTY | 67.63 |
| 4-H EXTENSION SERVICE DISTRI | 1.43 |
| VECTOR CONTROL | 1.44 |
| JACKSON SOIL & WATER CONS | 1.68 |
| JACKSON COUNTY LIBRARY DIS | 17.50 |
| APPLEGATE V RFPD #9 | 29.75 |
| APPLEGATE V RFPD #9 LOCAL LI | 18.61 |
| GENERAL GOVT TOTAL: | 138.04 |
| | |
| JACKSON COUNTY BONDS ECSC | 2.29 |
| RCC BONDS | 2.81 |
| RCC SHARED BONDS | 1.57 |
| MEDFORD SD 549C BONDS-2007 | 39.37 |
| OR FORESTRY FIRE SURCHARG | 47.50 |
| OR FORESTRY FIRE, TIMBER | 31.63 |
| OR FORESTRY FIRE, GRAZING | 32.83 |
| BONDS - OTHER TOTAL: | 158.00 |

10476804

WISNOVSKY LAND LLC
JOANNE COUVRETTE, TRUSTEE
13274 JACARTE CT
SAN DIEGO CA  92130-1859

CODE:   4946  MAP:   383W34-C0-00200   ACRES:   31.91
SITUS:        1352 UPPER APPLEGATE RD MEDFORD/CO

| VALUES: | LAST YEAR | THIS YEAR |
|---|---:|---:|
| REAL MARKET (RMV) | | |
| LAND | 542,250 | 542,250 |
| STRUCTURES | 20,760 | 20,760 |
| TOTAL RMV | 563,010 | 563,010 |
| SPECIALLY ASSESSED VALUE | 45,533 | 42,844 |
| TOTAL ASSESSED VALUE | 32,669 | 33,648 |
| VETERAN/MISC EXEMPTION | | |
| NET TAXABLE: | 32,669 | 33,648 |
| TOTAL PROPERTY TAX: | 438.29 | 473.62 |

If you pay the 1/3 or 2/3 option a reminder
statement will be mailed before the next payment is due.

POTENTIAL ADDITIONAL TAX LIABILITY

IMPORTANT INFORMATION ON BACK

PAYMENT QUESTIONS          (541) 774-6541
VALUE QUESTIONS            (541) 774-6059

TOTAL TAXES DUE   (Includes discount)     459.41

Please include this coupon with payment.  NO STAPLES, PAPER CLIPS, OR TAPE!

**Due November 15th, 2023**

| | | |
|---|---:|---|
| 3% Discount......☐ | 459.41 | |
| 2% Discount......☐ | 309.44 | **Next Payment** 05/15/2024 |
| Trimester Option☐ | 157.88 | **Next Payment** 02/15/2024 |

☐ Mailing address
change on back

| ACCOUNT NO. |
|---|
| 10476804 |
| AMOUNT ENCLOSED |
| $ |



WISNOVSKY LAND LLC
JOANNE COUVRETTE, TRUSTEE
13274 JACARTE CT
SAN DIEGO CA  92130-1859

JACKSON COUNTY TAXATION
PO BOX 1569
MEDFORD OR 97501-0242



JACKSON COUNTY TAXATION
PO BOX 1569
MEDFORD OR 97501-0242

REAL PROPERTY TAX STATEMENT
JULY 1, 2023 TO JUNE 30, 2024
www.jacksoncountyor.gov/tax
541-774-6541

**TAX ACCOUNT: 10563610**

10563610

WISNOVSKY LAND LLC
JOANNE COUVRETTE, TRUSTEE
13274 JACARTE CT
SAN DIEGO CA  92130-1859

CODE:  4946  MAP:  383W34-B0-01800    ACRES:  43.50
SITUS:    1140 UPPER APPLEGATE RD MEDFORD/CO

| VALUES: | LAST YEAR | THIS YEAR |
|---|---|---|
| REAL MARKET (RMV) | | |
| LAND | 788,530 | 740,500 |
| STRUCTURES | 824,010 | 792,180 |
| TOTAL RMV | 1,612,540 | 1,532,680 |
| SPECIALLY ASSESSED VALUE | 44,387 | 41,775 |
| TOTAL ASSESSED VALUE | 612,006 | 630,359 |
| VETERAN/MISC EXEMPTION | | |
| NET TAXABLE: | 612,006 | 630,359 |
| TOTAL PROPERTY TAX: | 7,465.32 | 7,686.01 |

| | |
|---|---|
| EDUCATION SERVICE DISTRICT | 222.14 |
| RCC | 323.25 |
| MEDFORD SD 549C | 2,781.33 |
| EDUCATION TOTAL: | 3,326.72 |
| JACKSON COUNTY | 1,266.96 |
| 4-H EXTENSION SERVICE DISTRI | 26.85 |
| VECTOR CONTROL | 27.04 |
| JACKSON SOIL & WATER CONS | 31.52 |
| JACKSON COUNTY LIBRARY DIS⌐ | 327.79 |
| APPLEGATE V RFPD #9 | 1,038.23 |
| APPLEGATE V RFPD #9 LOCAL L⌐ | 649.40 |
| GENERAL GOVT TOTAL: | 3,367.79 |
| JACKSON COUNTY BONDS ECSC | 42.99 |
| RCC BONDS | 52.70 |
| RCC SHARED BONDS | 29.50 |
| MEDFORD SD 549C BONDS-2007 | 737.52 |
| OR FORESTRY FIRE SURCHARG | 47.50 |
| OR FORESTRY FIRE, TIMBER | 32.96 |
| OR FORESTRY FIRE, GRAZING | 48.33 |
| BONDS - OTHER TOTAL: | 991.50 |

If you pay the 1/3 or 2/3 option a reminder
statement will be mailed before the next payment is due.

POTENTIAL ADDITIONAL TAX LIABILITY

IMPORTANT INFORMATION ON BACK

| | |
|---|---|
| PAYMENT QUESTIONS | (541) 774-6541 |
| VALUE QUESTIONS | (541) 774-6059 |

DELINQUENT TAXES:
    2022-23 TAX AND INTEREST DUE          4096.60

TOTAL TAXES DUE   (Includes discount)   11,552.03

Please include this coupon with payment.  NO STAPLES, PAPER CLIPS, OR TAPE!

## Due November 15th, 2023

3% Discount......☐    11,552.03
2% Discount......☐     9,118.13    **Next Payment**    05/15/2024
Trimester Option☐     6,658.61    **Next Payment**    02/15/2024

☐ Mailing address change on back



| ACCOUNT NO. |
|---|
| 10563610 |
| AMOUNT ENCLOSED |
| $ |

WISNOVSKY LAND LLC
JOANNE COUVRETTE, TRUSTEE
13274 JACARTE CT
SAN DIEGO CA  92130-1859

JACKSON COUNTY TAXATION
PO BOX 1569
MEDFORD OR 97501-0242

Plaintiff's Exhibit 49



Exhibit 49 – Page 1 of 1

PDF Page 310

Plaintiff's Exhibit 50

THIS CHECK IS DELIVERED IN
CONNECTION WITH THE FOLLOWING ACCOUNT(S)

| DATE | | AMOUNT |
|---|---|---|
| | | |

TOTAL OF INVOICES

LESS ——— % DISCOUNT

LESS

TOTAL DEDUCTIONS

AMOUNT OF CHECK

For _____

**VALLEY VIEW WINERY, INC.**
1352 UPPER APPLEGATE ROAD
JACKSONVILLE, OREGON 97530
541-899-8468

3442

24-22/1230

Date 6/1/06

Pay to the
Order of Ann Wisnovsky                    $ 5,000.00

Five thousand                             Dollars

US BANK

00368  04599  0022  06/05/2006  10:59 USB
USB CK M      153603855807

Ann Wisnovsky

⑈003442⑈ ⑆123000220⑇ 153603855807⑈          ⑈0000500000⑈

Exhibit 50 – Page 1 of 1

PDF Page 312

Plaintiff's Exhibit 51



Exhibit 51 – Page 1 of 1

PDF Page 314

Plaintiff's Exhibit 52



*Ms. Ann Wisnovsky*

#

M & M

→ winery stock
→ we pay for vineyard
land

B & J

2.3 acres
→ HOUSE/LAND
$600,000 ±
→ CASH
$150-200,000
→ M & M PAY
THEM $280,000
—————————
$1,020,000 —
$1,080,000

JUNE 1, 2019 : $2600 month

750
250

Exhibit 52 – Page 1 of 1

PDF Page 316

Plaintiff's Exhibit 53

# Spectrum▶

April 15, 2019
Account Number:  **8751 22 002 0466957**
Security Code:  **6564**
Service At:      1352 UPPER APPLEGATE RD
                 APPLEGATE OR 97530-9178

Auto Pay Notice

### SPECTRUM NEWS

**NOTE.** Taxes, Fees and Charges listed in the Summary only apply to Spectrum TV and Spectrum Internet and are detailed on the following page. Taxes, Fees and Charges for Spectrum Voice are detailed in the Billing Information section.

**Have questions about your bill?**
Visit us at **spectrum.net/billing**
Or, call us at 855-75-SPECTRUM (1-855-757-7328)

**Enrolled in Auto Pay:** Your Auto Pay payment will be deducted on your due date.

**Summary** Service from 04/25/19 through 05/24/19
details on following pages

| | |
|---|---:|
| Previous Balance | 206.16 |
| Payments Received -Thank You! | -206.16 |
| **Remaining Balance** | **$0.00** |
| Spectrum TV™ | 107.49 |
| Spectrum Internet™ | 59.99 |
| Spectrum Voice™ | 19.99 |
| Other Charges | 11.99 |
| Taxes, Fees and Charges | 6.70 |
| Current Charges | $206.16 |
| *YOUR AUTO PAY WILL BE PROCESSED 05/05/19* | |
| **Total Due by Auto Pay** | **$206.16** |

**IMPORTANT BILLING NOTICE:**
Effective with your May billing statement, changes will be made to the following:
• Your new Bill Statement Date will be on or after the 25th of each month.
• Your new Due Date will be on or after the 11th of each month.

If you use the AutoPay feature, your payment date will be the same as your Due Date.
• If you pay by credit card, the date your credit card is charged may change in accordance with your new Due Date.
• Please note you may need to make adjustments with your financial institution to account for these date changes.

Be sure to review your next statement for these updates.

Effective on or after June 23, 2019 and consistent with the Terms and Conditions of Service, Spectrum will no longer provide a pro rata credit for services sold on a monthly basis that are cancelled prior to the end of the current billing month.

**Thank you for choosing Spectrum.**
We appreciate your prompt payment and value you as a customer.

**Auto Pay.** Thank you for signing up for auto pay. Please note your payment may be drafted and posted to your Spectrum account the day after your transaction is scheduled to be processed by your bank.

## Spectrum▶

4145 S FALKENBURG RD RIVERVIEW FL 33578-8652
8634 0150 NO RP 15 04162019 NYYNNNNN 01 003284 0012

**MARK WISNOVSKY**
1352 UPPER APPLEGATE RD
APPLEGATE OR 97530-9178

April 15, 2019

**MARK WISNOVSKY**

Account Number:  8751 22 002 0466957
Service At:      1352 UPPER APPLEGATE RD
                 APPLEGATE OR 97530-9178

**Total Due by Auto Pay** $206.16

CHARTER COMMUNICATIONS
PO BOX 60188
LOS ANGELES CA  90060-0188

8751220020466957002206169

Exhibit 53 – Page 1 of 1

PDF Page 318

Plaintiff's Exhibit 54



**HUYCKE, MAULDING, O'CONNOR & JARVIS, LLP**

Attorneys at Law
502 West Main Street,
Suite 102
Medford, OR 97501

Phone: 541/772-1977
Fax: 541/772-3443

Office E-mail:
office@medfordlaw.net

Patrick G. Huycke
Thomas R. Maulding
Daniel B. O'Connor
Darrel R. Jarvis

Writer's Direct E-mail:
pgh@medfordlaw.net

Writer's Assistant:
Shirley Penney

December 16, 2002

Mrs. Ann Wisnovsky
1000 Upper Applegate Road
Jacksonville, Oregon 97530

Re: Estate Planning

Dear Ann:

I am very late in writing this letter, and I apologize. I want to give you a summary of the estate planning you and I discussed. After our last meeting, I met with both Jerry Burns and Ron Holzcamp. We also discussed your estate planning. The following summary will focus on the issues relevant to your overall planning and the actions necessary to complete your estate planning.

## Gift of Stock

You will gift 49% of the outstanding stock of the winery corporation to Mark and Mike. This will require an appraisal of the business and the filing of a gift tax return. No gift tax will be due because I believe we all agree that the value of the gift will be less than $1,000,000. To the extent the value of the gift exceeds $11,000 per donee, you will be using some of the exemption available to you for gift and estate tax purposes. Currently, the exemption is $1,000,000.

Note that, although the gift tax exemption will stay at $1,000,000 for the next several years, the estate tax exemption is gradually increasing through the year 2009, when it is to be $3,500,000. Estate tax is scheduled to disappear in 2010, but come back in 2011. Recent estate tax reform has created some uncertainty regarding future potential estate tax liability.

## Board of Directors, Bylaws and Miscellaneous Corporate Issues

Because you will no longer be the sole shareholder of the corporation, we should document the reorganization of the corporation. I assume Mark and Mike may occupy positions on the board of directors and as officers of the corporation. It will be necessary to adopt shareholder and director resolutions for these purposes, and it may be necessary to amend the bylaws of the corporation. You will still control the corporation as a result of your ownership of 51% of the outstanding stock. If you so desired, you could reconstitute the

Exhibit 54 – Page 1 of 7

PDF Page 320

Mrs. Ann Wisnovsky
December 16, 2002
Page 2

board membership in a manner necessary to ensure your control over the day-to-day operations of the company that are controlled by the board.

I would like to review a balance sheet for the corporation and discuss in detail its assets and liabilities. My purpose is to ensure that the corporation owns and controls all assets that it intends to own and control and that its liabilities to you or other shareholders are consistent with your understanding and desires.

Buy-Sell Agreement

The transfer of Mark's and Mike's shares of the corporation should be limited through a buy-sell agreement. The agreement will be structured so that it will be binding on all shareholders of the corporation, other than you. In this way, it will continue in effect following your death. The agreement will: i) except as noted below, prevent shareholders from transferring or encumbering their shares without the consent of the corporation and all other shareholders; ii) allow the transfer of shares upon death only to lineal descendants; iii) establish an option to purchase for the corporation and other shareholders which may be exercised an attempted transfer or encumbrance in violation of the agreement. As a result, you can ensure that ownership of shares of the corporation will stay within the family, unless the shareholder/family members otherwise agree. The option to purchase should be based on an appraised value. Since the purpose of the agreement is to prevent certain transfers, in the event the option is triggered by an attempted transfer, you might consider including provisions in the buy-sell agreement which providing for a discounting of the value of shareholder interests because of "lack of control" and "lack of marketability" discounts which are frequently considered when valuing stock in a closely held corporation. We might want to discuss with Ron Holzcamp an agreed discount percentage to use for these purposes.

You might want to consider whether the buy-sell agreement should limit your right to transfer shares, or, if you desire to transfer shares, whether such event should trigger an option to purchase in favor of Mark and Mike.

Winery Building Ownership

The corporation's interest in the new building should be clarified. To me, it makes the most sense, to treat all winery buildings in the same manner.

Exhibit 54 – Page 2 of 7

PDF Page 321

Mrs. Ann Wisnovsky
December 16, 2002
Page 3

I believe the corporation owns the new building. One alternative is for the corporation to own all of the winery buildings. It could acquire the buildings that it doesn't presently own. The value of the older buildings, when separated from the land should be relatively low. Having the corporation own the buildings might aid in minimizing the value of the land as an asset of your estate. The corporation could purchase the buildings that it doesn't presently own by giving you promissory note, payable on specified terms. Then, the corporation will lease only the land; see my comments concerning the lease, below.

Alternatively, you could own the buildings, contribute them, with the land, to a limited liability company ("LLC") and lease the buildings and land to the corporation. Please note the discussion concerning the LLC and lease, below. Under this alternative, you and the corporation will need to sort out the investment into the new building. Much of the cost of the new building was funded through a loan. You could assume the loan. To the extent the corporation actually paid for the building, you could reimburse the corporation by offsetting the amount it paid against unpaid, accrued rent, and possibly other debt, owed to you. I tend to prefer this alternative because it places all of the real property interests (land and buildings) under the same ownership and preserves the value of the real property as an asset of your estate. Under the lease, the corporation will pay rent for the land and buildings, and you will pay the mortgage payment on the new building. All equipment will remain in the ownership of the corporation.

I would like more input from Ron Holzcamp concerning these alternatives, which we can discuss when we next meet. In the meantime, it would be helpful to have copies of the loan documents with the bank, cost figures for construction of the new building and information as to who paid the costs of construction not funded by the bank loan.

Employment Agreement

You, Mark and Mike will have employment agreements with the corporation. The agreements, in general, will describe each employee's duties and position. The agreements will establish the compensation arrangements and benefits for each employee. Although the employment agreements may not change the currently effective

Exhibit 54 – Page 3 of 7

PDF Page 322

Mrs. Ann Wisnovsky
December 16, 2002
Page 4

compensation/benefit arrangements, you may want to consider if any modifications of the compensation/benefit arrangements should occur automatically following your death.

You might want to consider whether the employment agreements should have limitations on the corporation's ability to terminate Mark's and Mike's employment. For instance, it could be agreed that the term of employment, unless ended sooner at the election of the employee, will continue until your death, subject only to good cause termination by the corporation. Alternatively, a notice of termination of employment could trigger some type of purchase option for some or all of the corporate stock that you presently own. We can discuss these and other employment issues when we next meet.

Limited Liability Company

You should form a LLC and contribute to it your interest (100%) in the vineyard and winery real property. The LLC will insulate you from liability for personal injuries and other claims relating to the land and buildings. The LLC provides a convenient vehicle for transferring interests in the real property while retaining control of the LLC. As the years pass, you might want to gift interests in the LLC (and, thus, the real property) to your children and grandchildren. Despite doing so, you can remain the manager and in control of the LLC for as long as you want. The LLC provides a management organization for the management of the real property following your death. Actions concerning the real property can be subject to approval by the vote of a specified percentage of ownership interests held by members of the LLC, or approval by one or more appointed managers. Buy-sell provisions will be included in the LLC operating agreement that will limit the transferability of ownership interests and provide mechanisms for the purchase and sale of ownership interests upon the happening of specified events, e.g., death, bankruptcy, attempted transfers outside of the family, etc.

Lease

The corporation's leasehold arrangements for the real property should be clarified. Presently, a short-form lease provides for a month-to-month tenancy at a rental rate of $5,000 per month. I have no knowledge

Exhibit 54 – Page 4 of 7

PDF Page 323

Mrs. Ann Wisnovsky
December 16, 2002
Page 5

concerning fair market value rent for the vineyard acreage and winery buildings and grounds. I am concerned that rent is not being paid, and a significant liability is accruing for the corporation. I believe Ron Holzcamp has suggested that past due rent be forgiven and that this can occur without adverse tax consequences. Assuming you do not expect payment of past due rent, I believe you should follow though on Ron's suggestion. Upon your death, I don't believe there should be any possible dispute between the corporation and the landlord (LLC) concerning past due rent.

Going forward, during your life, I would like rent established at a level that is acceptable to you, can be justified as within the range of fair market rent and can be paid by the corporation. You might want to consider a sharecropping arrangement. The lease can continue to be established as a month-to-month tenancy, thus retaining for you a substantial amount of control, but the terms of the lease ought to be clarified. I believe the intent is to have a triple-net lease, where the tenant pays all taxes, insurance and maintenance on the land and buildings. Because the lease will provide, in essence, for a month-to-month tenancy, rent can be adjusted upon notice.

Upon you death, we have discussed that the lease will, automatically convert to a lease for a 5-year term, with four successive options for 5-year renewal terms. We will need to determine whether an adjustment of rent will occur immediately following your death and rent adjustments during the remainder of the initial term and during renewal terms of the lease.

## Revocable Trust

The primary purpose of the Trust is to avoid the probate your estate upon your death. The Trust serves another valuable function in that it allows a successor trustee to manager your affairs in the event of incapacity.

The Trust will provide for the distribution of tangible personal property pursuant to your Trustee's discretion, the desires of the individuals (your children) who are to receive such property and a letter to be left by you, stating your desires in this regard. You will want to provide for a general instructions for the distribution of tangible personal property not

Exhibit 54 – Page 5 of 7

PDF Page 324

Mrs. Ann Wisnovsky
December 16, 2002
Page 6

otherwise specifically provided for in your letter.  I
will prepare a form you can use for this purpose.

The Trust will provide that, upon death, your
shares of the corporation are to be distributed so that
Mark and Mike each have 30% of the outstanding stock,
Bob has 25% of the outstanding stock and Joanne has 15%
of the outstanding stock.  The residue of the trust
estate will be distributed equally to your children,
subject, however, to an option in favor of Mike to
purchase your residence for fair market value, to be
determined by appraisal if the option is exercised.
Mike will have a reasonable period, following your
death, in which to exercise the purchase option.

In the event of your death or incapacity, the Trust
provides that Robert and Joanne will serve as Successor
Co-trustees.

## Will

At the time a trust agreement is executed, you will
sign a "Pour-over Will".  The function of this Will is
to act as a safety net device.  Any assets inadvertently
omitted from your Trust will be placed ("poured over")
into your Trust pursuant to the terms of the Will and
administered according to the Trust's terms.  Assuming
your Trust Agreement is properly structured and funded
with your assets, it is likely that a probate of the
"Pour-over Will" won't be necessary.

## General Power of Attorney

I suggest that you grant a General Power of
Attorney to Robert and Joanne.  Although you won't
deliver the Power of Attorney to them, they should have
a means by which to obtain access to the Power of
Attorney in the event you are incapacitated.  The
General Power of Attorney is intended to supplement and
complement the Revocable Trust Agreement.  In
combination, the two documents working together should
ensure that all of your assets could be managed in the
event of an unforeseen incapacity.

## Advance Directive

The Advance Directive is document provided for under
Oregon law by the Oregon legislature.  It is a combination
of the former Living Will (Directive to Physicians) and
Health Care Power of Attorney.  Under the terms of the

Exhibit 54 – Page 6 of 7

PDF Page 325

Mrs. Ann Wisnovsky
December 16, 2002
Page 7

Advance Directive, you may designate a primary health care agent and an alternate agent to make medical decisions for your in the event you become ill, injured or otherwise incapacitated. In addition, the Advance Directive provides your instructions as to the type of life support you want in the event of a terminal illness. You have indicated that Mark will be your first choice as health care representative, and Mike will be the alternate health care representative.

<u>Life Insurance</u>

I understand you have life insurance that will provide $415,000 in death benefits. We may want to look and the possibility of: i) converting the term insurance to some type of permanent insurance; and ii) transferring ownership of the insurance policies to your children or to a trust created for their benefit. We can discuss this possibility when we next meet, or, possibly, after other work is completed.

Please let me know how you want to proceed. Again, I apologize that this letter is so late in coming.

Very truly yours,

HUYCKE, MAULDING, O'CONNOR & JARVIS, LLP

PATRICK G. HUYCKE

cc: Ron Holzcamp

Exhibit 54 – Page 7 of 7

PDF Page 326

Plaintiff's Exhibit 55

| Filters Used:<br>1 Tagged  Record | **Note Report**<br>Form Format | Date Printed: **3/13/2014**<br>Time Printed: **9:04AM**<br>Printed By:  **LAM** |

Date       **3/12/2014**      Time **1:32PM**      **1:32PM**     Duration    **0.00** (hours)        Code
Desc       **Ann Wisnovsky Signatures and Docs**                                    Staff     **PGH**
Client     **Wisnovsky, Ann**                      Mat Ref     **Wisnovsky, Ann - Estate Planning**       Mat No      **6364H**
Alerts                 (days before)Follow  **N**  Done   **N** Notify    **Y** Hide      **N** Trigger  **N**  Private  **N**       Status
User1                                                              User3
User2                                                              User4

Path/Name

I spoke with Joanne C. today. Ann will return home a week from Sunday. After this contact her to make arrangements for she and Mark to come in and sign the stock certificate. Mark and Mike may also be able to help us get the legal descriptions for the parcels that Ann owns, so discuss that with them then. Joanne will be getting us more information on the Griffin Creek parcels. A title report may have already been done because of a recent sale that fell through. When we get those parcels sorted out, they too will need to be conveyed to the trust.

Plaintiff's Exhibit 56

## Ann Wisnovsky Trust

| | |
|---|---|
| From: | Deanna Costen (deannac@davishearn.com) |
| To: | mweaver@brophylegal.com |
| Cc: | rthierolf@jtdlegal.com; jcouvrette@sbcglobal.net; garyt@davishearn.com |
| Date: | Thursday, December 5, 2019 at 12:36 PM PST |

Dear Mark:

Attached is a letter to you from Gary Turner, together with a pdf of the Certification of Trust for the Ann Wisnovsky Trust.

Regards,
Deanna Costen
Assistant to Garrison F. Turner
Davis, Hearn, Anderson & Turner, P.C.
515 East Main Street
Ashland, OR  97520
(541) 482-3111
(541) 488-4455 fax
deannac@davishearn.com

CONFIDENTIALITY NOTICE:
This email may contain information which is confidential or subject to the attorney-client privilege.  It is intended only for use by the individual to whom it is addressed.  If you are not the intended recipient, you are hereby notified that the forwarding, dissemination, distribution, or copying of this communication, or the use of this information for any purpose, is strictly prohibited by state and Federal privacy laws.  If you have received this communication in error, please immediately telephone our law firm at (541) 482-3111 and delete this message from your system.

 Ltr to Mark Weaver 12-05-19.pdf
113.3kB

 Signed 11-25-2019 Certification of Trust.pdf
376.6kB

## CERTIFICATION OF TRUST

I, Joanne Couvrette, being first duly sworn, depose and say as follows:

1.      There is currently in existence a Trust known as the "Ann M. Wisnovsky Trust," which was created pursuant to a Trust Agreement dated August 2, 2012, and executed in Jackson County, Oregon.

2.      Ann M. Wisnovsky is the Settlor of that Trust, and I am the currently serving Trustee of that Trust.

3.      The Trust powers, as enumerated in the Trust Agreement, include at least those trust powers set forth in ORS 130.715 to 130.725.

4.      The mailing address of the currently serving Trustee is 13274 Jacarte Court, San Diego, CA  92130.

5.      The Trust is modifiable and revocable by the Settlor, who alone can modify or revoke the trust.

6.      The taxpayer identification number for the Trust is Settlor Ann M. Wisnovsky's social security number, ending in xxx-xx-9050.

7.      Title to Trust assets should be taken as follows: "Joanne Couvrette, Trustee, or the successor trustee of the Ann M. Wisnovsky Trust UTAD August 12, 2012."

8.      I certify that the Trust has not been revoked, modified, or amended in any manner that would cause the representations contained in this certification to be incorrect.

DATED this 25th day of November, 2019.

_____
Joanne Couvrette, Trustee

(California Jurat appears on the following page)

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

STATE OF CALIFORNIA          )
                             ) §
County of San Diego          )

Subscribed and sworn to (or affirmed) before me on this _25_ day of November, 2019, by
_Joanne Courcette_ ————————————————————————, proved to me on the
basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal)      Signature _____

Plaintiff's Exhibit 57



Exhibit 57 – Page 1 of 1

PDF Page 334

Plaintiff's Exhibit 58

## REVOCATION AND TERMINATION OF REDEMPTION AGREEMENT

On February 23, 2017, Wisnovsky Land, LLC, an Oregon Limited Liability Company, and Ann M. Wisnovsky, as a trustee of the Ann M. Wisnovsky Trust UTD August 2, 2012, entered into a "Redemption Agreement." Attached to that agreement was "Exhibit A," an unsigned specimen form of a Promissory Note. That Redemption Agreement was entered into upon the recommendation of Ann's prior attorney and the urging of Mark Wisnovsky and Michael Wisnovsky.

The estate plan in effect at the itme the Redemption Agreement was executed is no longer in existence, and therefore, there is no purpose in having the "Redemption Agreement" in place. In fact, it is inconsistent with, and contrary to, the existing estate plan of Ann M. Wisnovsky.

Now therefore, pursuant to the powers reserved to the trustees of the Ann M. Wisnovsky Trust, which is the sole member of Wisnovsky Land, LLC, the Redemption Agreement is hereby revoked and terminated, effective immediately.

Dated: _____7/2/19_____    _Ann M. Wisnovsky_____
Ann M. Wisnovsky, Co-Trustee of the
Ann M. Wisnovsky Trust

Dated: ____7-2-19_____    _____
Joanne Couvrette, Co-Trustee of the Ann
M. Wisnovsky Trust

For Wisnovsky Land, LLC, and its sole Member::

Dated: ____7/2/.19_____    _Ann M. Wisnovsky_____
Ann M. Wisnovsky Trust dated August 2,
2012, by Ann M. Wisnovsky, Co-Trustee

Dated: ____7-2-19_____    _____
Ann M. Wisnovsky Trust dated August 2,
2012, by Joanne Couvrette, Co-Trustee

(Acknowledgment on next page)

Exhibit 58 – Page 1 of 2
PDF Page 336

## ACKNOWLEDGMENT

STATE OF OREGON           )
                          ) ss
County of Jackson         )

On the 2nd day of July, 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared Ann M. Wisnovsky and Joanne Couvrette, personally known to me or proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this instrument, and acknowledged that they executed it.

OFFICIAL STAMP
**DEANNA MONIQUE COSTEN**
NOTARY PUBLIC-OREGON
COMMISSION NO. 965478
MY COMMISSION EXPIRES AUGUST 10, 2021

_____
Notary Public for Oregon

Exhibit 58 – Page 2 of 2
PDF Page 337

Exhibit 59

## Laurie Miller

| | |
|---|---|
| **From:** | Mark Wisnovsky <mark@valleyviewwinery.com> |
| **Sent:** | Friday, March 04, 2016 9:50 AM |
| **To:** | Laurie Miller; Pat Huycke |
| **Cc:** | mike@valleyviewwinery.com |
| **Subject:** | RE: Valley View Winery, Inc.; and Estate Planning |
| **Attachments:** | 254650145-213237319.pdf |

Attached is the signed "Agreement to make payments" we are finishing the review of the other documents and will be sending soon. My mother would like as much as possible to be done by the time she leaves for San Diego on March 22.

Thanks,

Mark

---

**From:** Laurie Miller [mailto:lam@medfordlaw.net]
**Sent:** Wednesday, February 17, 2016 11:33 AM
**To:** 'Mark Wisnovsky'; 'mike@valleyviewwinery.com'
**Cc:** Pat Huycke
**Subject:** RE: Valley View Winery, Inc.; and Estate Planning

Hello Mike and Mark:

We have been having email issues for a couple of weeks now and at times do not know if emails are being sent and/or received. Pat sent the following email yesterday, but from Mark's email of this morning, we are assuming you did not receive it so I am resending it to you. Please let us know if you receive this email.

Thank you.

Laurie Miller
Assistant to Patrick G. Huycke
Huycke O'Connor Jarvis, LLP
823 Alder Creek Drive
Medford, OR 97504
Phone: 541-772-1977
Fax: 541-772-3443

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this e-mail is intended only for the use of the designated recipients named above. This email, and any documents, files or previous e-mails attached to it, may be a confidential attorney-client communication or otherwise privileged and confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error, and that any review, dissemination, distribution or copying of the transmittal is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify us immediately by telephone at 541-772-1977. Thank you.
IRS Circular 230 disclosure: To comply with regulations of the Internal Revenue Service, we are required to inform you that this communication, if it contains advice relating to Federal taxes, cannot be used for the purpose of (i) avoiding penalties that may be imposed under Federal tax law, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.

1

Exhibit 59 – Page 1 of 4

PDF Page 339

HUYCKE_000812
CONFIDENTIAL

----- Original Message -----
**From:** PGH
**To:** Mike Wisnovsky <mike@valleyviewwinery.com>; Mark Wisnovsky <mark@valleyviewwinery.com>
**Sent:** 2/15/2016 12:31PM
**Subject:** LLC Operating Agreement; Winery Lease; Vineyard Lease

Hello Mike and Mark:

Last August, I prepared the new stock certificates, some corporate resolutions and an amendment for Ann's trust. Copies of the resolutions were sent to you and a copy of the amendment was sent to Ann.

Attached are rough drafts of an operating agreement for the winery and vineyard real property and leases for the winery and vineyard. There are blanks in the leases that I cannot complete until I have additional information.

Please call and schedule a time for you and Ann to come and discuss the stock transfers, Ann's amendment and the attached documents. You can all come together, but, for part of the time that you are here, I will want to meet with Ann separately.

Thanks.

Patrick G. Huycke
Huycke O'Connor Jarvis, LLP
823 Alder Creek Drive
Medford, OR 97504
Phone: 541-772-1977
Fax: 541-772-3443

The information contained in this e-mail is intended only for the use of the designated recipients named above. This email, and any documents, files or previous e-mails attached to it, may be a confidential attorney-client communication or otherwise privileged and confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error, and that any review, dissemination, distribution or copying of the transmittal is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify us immediately by telephone at 541-772-1977. Thank you.
IRS Circular 230 disclosure: To comply with regulations of the Internal Revenue Service, we are required to inform you that this communication, if it contains advice relating to Federal taxes, cannot be used for the purpose of (i) avoiding penalties that may be imposed under Federal tax law, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.

---

**From:** Mark Wisnovsky [mailto:mark@valleyviewwinery.com]
**Sent:** Wednesday, February 17, 2016 10:30 AM
**To:** Laurie Miller
**Subject:** RE: Valley View Winery, Inc.; and Estate Planning

Hi,

Can you let me know the status of this?

Thanks,

Mark

2

Exhibit 59 – Page 2 of 4

PDF Page 340

HUYCKE_000813
CONFIDENTIAL

**From:** Laurie Miller [mailto:lam@medfordlaw.net]
**Sent:** Monday, October 26, 2015 11:05 AM
**To:** mark@valleyviewwinery.com; mike@valleyviewwinery.com
**Subject:** Valley View Winery, Inc.; and Estate Planning

Hello Mark & Mike:

Attached please find a copy of a letter from Pat to you and your mother regarding the above subject matters.

If you have any questions, please do not hesitate to contact our office.

Laurie Miller
Assistant to Patrick G. Huycke
Huycke O'Connor Jarvis, LLP
823 Alder Creek Drive
Medford, OR 97504
Phone: 541-772-1977
Fax: 541-772-3443

*********************************************************************************************************
****************************************************************

The information contained in this e-mail is intended only for the use of the designated recipients named above. This email, and any documents, files or previous e-mails attached to it, may be a confidential attorney-client communication or otherwise privileged and confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error, and that any review, dissemination, distribution or copying of the transmittal is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify us immediately by telephone at 541-772-1977. Thank you.

IRS Circular 230 disclosure: To comply with regulations of the Internal Revenue Service, we are required to inform you that this communication, if it contains advice relating to Federal taxes, cannot be used for the purpose of (i) avoiding penalties that may be imposed under Federal tax law, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.

3

Exhibit 59 – Page 3 of 4

PDF Page 341

HUYCKE_000814
CONFIDENTIAL

| Filters Used:<br>1 Tagged   Record | Email Report<br>Form Format | Date Printed: 8/27/2015<br>Time Printed: 11:46AM<br>Printed By: LAM |
|---|---|---|

Date      8/27/2015     Time      9:53AM           Duration    0.00  (hours)     Code
Subject   **Corporate Consent Resolutions**                                      Staff   **PGH**
Client    **Wisnovsky, Mark**                  MatRef    **Valley View Winery**        MatNo   **5311H**
From      **PGH**
To        mark@valleyviewwinery.com; Mike Wisnovsky <mike@valleyviewwinery.com>
CC To
Bcc To
Reminders                    (days before) Follow     Done     Notify  **Y** Hide      Trigger     Private     Status

User1                                                 User3
User2                                                 User4

**Mark and Mike:**

When the stock is transferred to the two of you, I suggest you adopt the attached resolutions and Ann sign to resign as a director.

**cc: Ann Wisnovsky**

**Patrick G. Huycke**
**Huycke O'Connor Jarvis, LLP**
**823 Alder Creek Drive**
**Medford, OR 97504**
**Phone: 541-772-1977**
**Fax: 541-772-3443**

The information contained in this e-mail is intended only for the use of the designated recipients named above. This email, and any documents, files or previous e-mails attached to it, may be a confidential attorney-client communication or otherwise privileged and confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error, and that any review, dissemination, distribution or copying of the transmittal is STRICTLY PROHIBITED. If you have received this e-mail in error, please notify us immediately by telephone at 541-772-1977. Thank you.

IRS Circular 230 disclosure: To comply with regulations of the Internal Revenue Service, we are required to inform you that this communication, if it contains advice relating to Federal taxes, cannot be used for the purpose of (i) avoiding penalties that may be imposed under Federal tax law, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.

1

Exhibit 59 – Page 4 of 4<br>PDF Page 342

HUYCKE_000791<br>CONFIDENTIAL

Exhibit 60

**U.S. Bank Confidential Communication**

Requested by: Kenzie McKillip

This check image contains confidential information. If you print this image, please store it in a secure place to avoid unauthorized usage of this information. Increased security awareness when discarding or destroying this document is recommended.

---

**Item #3**

Account No.: 4866001433    Check No.: 0

Sequence No.: 008955466484    Amount: $1583.33

Routing No.: 12320505    Date: 10/11/2018

Front:

THIRD GENERATION FARMS, LLC
25 VINTAGE CIR
JACKSONVILLE, OR 97530

1069

9/13/18

Pay to the Order of: Wisnovsky Lands LLC    $ 1,583.33

One Thousand Five hundred Eighty three and $3/100 Dollars

UMPQUA BANK  1-866-4UMPQUA (1-866-486-7782)

For _____

⑆123205054⑆   4866001433⑈  1069

---

**Item #4**

Account No.: 4866001433    Check No.: 0

Sequence No.: 008955466485    Amount: $1000.00

Routing No.: 12320505    Date: 10/11/2018

Front:

THIRD GENERATION FARMS, LLC
25 VINTAGE CIR
JACKSONVILLE, OR 97530

1070

9/13/18

Pay to the Order of: Wisnovsky Lands LLC    $ 1,000.00

One Thousand and No/100 s —————— Dollars

UMPQUA BANK  1-866-4UMPQUA (1-866-486-7782)

For _____

⑆123205054⑆   4866001433⑈  1070

---

Exhibit 60 – Page 1 of 1

PDF Page 344

Exhibit 60

**Page 1**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
Medford Division

JOANNE COUVRETTE, as trustee )
of the Ann M. Wisnovsky )
Trust; and WISNOVSKY LAND, )   Case No.
LLC, )   1:21-CV00157-CL
)
        Plaintiffs, )
)
    vs )
)
MARK A. WISNOVSKY, an )
individual; MICHAEL J. )
WISNOVSKY, an individual; )
PATRICK HUYCKE, an )
individual; VALLEY VIEW )
WINERY, INC., an Oregon )
corporation; JARVIS, DREYER, )
GLATTE & LARSEN, LLP, an )
Oregon partnership, fka )
Huycke O'Connor Jarvis, LLP, )
)
        Defendants. )

DEPOSITION OF JOANNE COUVRETTE
Taken in behalf of the Defendants

December 6, 2022

**Page 2**

BE IT REMEMBERED THAT the deposition of JOANNE COUVRETTE was taken before Chris Villano Iba, Registered Professional Reporter and Certified Shorthand Reporter of the State of Oregon, on Tuesday, December 6, 2022, commencing at the hour of 10:02 a.m., in the Conference Room of the law firm of Richardson Wang, 807 SW Broadway, Suite 470, in the City of Portland, County of Multnomah, State of Oregon.
        -:-
APPEARANCES:

ATTORNEY FOR THE PLAINTIFFS:

Bonnie Richardson
Marissa Korbel-via videoconference
Richardson Wang
805 SW Broadway
Suite 470
Portland, Oregon  97205
503 517-8200
Bonnie@richardsonwang.com
Marissa@richardsonwang.com

ATTORNEY FOR THE DEFENDANTS WISNOVSKY AND VALLEY VIEW WINERY:

Brooks M. Foster
Chenoweth Law Group
510 SW Fifth Avenue
4th Floor
Portland, Oregon  97204
503 221-7958
Bfoster@chenowethlaw.com

**Page 3**

ATTORNEY FOR THE DEFENDANT HUYCKE:

Bernard S. Moore-via videoconference
Frohnmayer Deatherage
2592 E. Barnett Road
Medford, Oregon  97504
541 779-2333
Moore@fdfirm.com

ATTORNEY FOR THE DEFENDANT JARVIS, DREYER, GLATTE & LARSEN:

Gregory T. Lusby-via videoconference
Arnold Gallagher
800 Willamette Street, Suit 800
PO BOX 1758
Eugene, Oregon  97440
541 484-0188
Glusby@arnoldgallagher.com

Also present:  Mark Wisnovsky; Michael Wisnovsky; Ryan Kidder-Discovery Media Productions

Also present via videoconference:  Darrell Jarvis; Patrick Huycke, Esq.; Sarah Troutt, Esq.; Amy Hoven, Esq.

**Page 4**

I N D E X

| Examinations | | | Page | |
|---|---|---|---|---|
| EXAMINATION BY MR. FOSTER: | | | 11 | |

Exhibits

| No. | Description | | Page | Line |
|---|---|---|---|---|
| 1050 | Joanne Wisnovsky signature | | 45 | 11 |
| 501 | Valley View Winery Stock Transfers, JCOUVRETTE002581 | | 45 | 16 |
| 502 | Email, 14 Mar 2008, JCOUVRETTE004857-4861 | | 59 | 18 |
| 503 | Email, 14 Mar 2008, JCOUVRETTE004863-4867 | | 72 | 5 |
| 504 | Memorandum, Feb. 13, 2008, HUYCKE_000421-424 | | 74 | 21 |
| 505 | Letter, March 14, 2008, JCOUVRETTE004862 | | 75 | 9 |
| 506 | Letter, March 14, 2008, HUYCKE_00470 | | 79 | 8 |
| 507 | Email, 30 Mar2008, JCOUVRETTE004868-4869 | | 80 | 3 |
| 508 | Email, 31 Mar 2008, JCOUVRETTE004870-4883 | | 82 | 5 |

JOANNE COUVRETTE, 12/6/ 2022    COUVRETTE, ET AL, V WISNOVSKY, ET AL

**5**

| No. | Description | Page | Line |
|---|---|---|---|
| 509 | Email, 31 Mar 2008, JCOUVRETTE004887 | 83 | 12 |
| 1023 | General Power of Attorney, HUYCKE_000442-449 | 87 | 24 |
| 511 | Email Report, 7/31/2012, JCOUVRETTE0001190 | 90 | 25 |
| 512 | Inter Vivos Revocable Trust, JCOUVRETTE000052-86 | 91 | 22 |
| 513 | Last Will of Ann M. Wisnovsky, JCOUVRETTE000090-94 | 96 | 7 |
| 516 | Email, 14 Feb 2014, JCOUVRETTE002638-2640 | 98 | 7 |
| 517 | Email, March 10, 2014, JCOUVRETTE001163 | 99 | 18 |
| 519 | Note Report, 3/13/2014, JCOUVRETTE001160 | 100 | 23 |
| 518 | Invoice, 3/31/2014, THIEROLF 000135 | 104 | 10 |
| 520 | Email, 26 Jun 2014, JCOUVRETE009930 | 105 | 12 |
| 521 | Email, 10 Feb 2015, JCOUVRETTE002579-2581 | 106 | 13 |
| 522 | Email, 24 Feb 2015, JCOUVRETTE002546-2548 | 107 | 25 |
| 523 | Email, April 6, 2015, | 111 | 10 |

**6**

| No. | Description | Page | Line |
|---|---|---|---|
| | VALLEYVIEW_001800 | | |
| 526 | Email, 06 May 2015, VALLEYVIEW_001768-1775 | 112 | 2 |
| 533 | Email, 31 Mar 2016, JCOUVRETTE002675-2676 | 115 | 1 |
| 540 | Email, 1 Apr 2016, JCOUVRETTE002682-2683 | 116 | 5 |
| 534 | Letter, March 31, 2016, VALLEYVIEW_001828-1829 | 118 | 16 |
| 535 | Article of Organizaiton, Mar 30, 2016 (No Bates Number) | 121 | 8 |
| 538 | Addendum to and Assignment by Landlord Vineyard Lease, VALLEYVIEW_001866-1868 | 122 | 7 |
| 541 | Email, 1 Apr 2016, JCOUVRETTE002684-2686 | 122 | 23 |
| 542 | Email, 5 Apr 2016, JCOUVRETTE002582-2584 | 124 | 12 |
| 543 | Email, 13 Apr 2016, JCOUVRETTE004932 | 125 | 4 |
| 530 | Winery Lease, VALLEYVIEW_001345-1361 | 129 | 25 |
| 531 | Vineyard Lease, VALLEYVIEW_001382-1398 | 131 | 19 |
| 544 | Email 13 Aug 2016, | 152 | 15 |

**7**

| No. | Description | Page | Line |
|---|---|---|---|
| | JCOUVRETTE002522 | | |
| 546 | Email, 8/16/2016, JCOUVRETTE000985-986 | 153 | 9 |
| 547 | Email, 16 Aug 2016, JCOUVRETTE002585-2626 | 156 | 23 |
| 548 | Memorandum, August 16, 2016, JCOUVRETTE000217-218 | 163 | 18 |
| 549 | Email, 30 Aug 2016, VALLEYVIEW_001755-1758 | 169 | 1 |
| 555 | Email, 03 Mar 2017, VALLEYVIEW_001776-1781 | 176 | 8 |
| 557 | Email, 07 Nov 2017, VALLEYVIEW_001723-1725 | 186 | 3 |
| 559 | Durable Power of Attorney of Ann Marie Wisnovsky, JCOUVRETTE005126-5135 | 187 | 12 |
| 1018 | Handwritten note, 5/30/19, JCOUVRETTE006067 | 193 | 4 |
| 562 | Oregon Advance Directive of Ann Wisnovsky, JCOUVRETTE006224-6231 | 195 | 10 |
| 560 | Fourth Amendment to Inter Vivos Revocable Trust, JCOUVRETTE002457-2458 | 197 | 6 |
| 561 | Email, May 31, 2019, JCOUVRETTE000784-785 | 220 | 13 |

**8**

| No. | Description | Page | Line |
|---|---|---|---|
| 564 | Fifth Amendment to the Ann M. Wisnovsky Trust, JCOUVRETTE002452-2456 | 222 | 9 |
| 563 | Letter, June 6, 2019, JCOUVRETTE004991 | 223 | 9 |
| 566 | Email, 19 Jun 2019, VALLEYVIEW_001276 | 230 | 24 |

| Requested Information | Page | Line |
|---|---|---|
| | | |

| Instruction By Counsel | Page | Line |
|---|---|---|
| (INSTRUCTION-BY-COUNSEL) | 40 | 8 |
| (INSTRUCTION-BY-COUNSEL) | 40 | 18 |

9

THE VIDEOGRAPHER: We are now on the video record. Today's date is Tuesday, December 6, 2022, and the time is 10:04 a.m. This is the video-recorded deposition of Joanne Couvrette being taken in the matter of Joanne Couvrette and Wisnovsky Land, LLC, V Mark A Wisnovsky, et al, being held in the United States District Court, District of Oregon, Medford Division, Case No. 121-CV-00157-CL.

We are located today at the law offices of Richardson Wang, LLP, in Portland, Oregon.

Counsel, will you please introduce yourselves and state for whom you represent.

MR. FOSTER: Brooks Foster, representing Mark Wisnovsky and Michael Wisnovsky and Valley View Winery, Inc.

MS. RICHARDSON: Bonnie Richardson, representing Joanne Couvrette.

MR. MOORE: Bernard Moore, representing Pat Huycke.

MR. LUSBY: Greg Lusby, representing the law firm of Jarvis, Glatte, Larsen & Bunick.

THE VIDEOGRAPHER: My name is Ryan Kidder with Discovery Media Productions, and the court reporter is Chris Iba, representing Iba,

10

Symonds & Dunn, who will now swear or affirm the witness.

11

JOANNE COUVRETTE was thereupon produced as a witness in behalf of the Defendants and, having been first duly sworn on oath, was examined and testified as follows:

EXAMINATION

BY MR. FOSTER:

Q. Ms. Couvrette, please state your entire legal name.

A. Joanne Couvrette.

Q. And can you spell that, please?

A. J O A N N E, C O U V R E T T E.

Q. Can you please state your residence address.

A. 13274 Jacarte Court, San Diego, California 92130.

Q. Can you -- do you receive mail at any other addresses?

A. No.

Q. Do you own any other real property?

A. Yes.

Q. Can you identify all real property that you own by address?

A. I own a property at 1755 Captain Molly Drive.

12

Q. Where is that?

A. Park City, Utah.

Q. Do I correctly understand that is not property owned by the Ann Wisnovsky Trust?

A. Correct --

Q. Do you own --

A. -- not owned by the Ann Wisnovsky Trust.

Q. And you claim to be the trustee of the Ann Wisnovsky Trust, correct?

A. Yes.

Q. Does the trust own real estate?

A. Yes.

Q. Does it own it through business entities that it owns?

A. Yes.

Q. Can you please identify those items of real estate by their addresses and who owns them.

A. 1352 Upper Applegate Road, my mother's residence, is owned by Upper Applegate, LLC.

Q. Does the trust through -- on its own or through any entity own any other real estate?

A. Yes.

Q. What else is that?

A. At 1000 and 1140 and 1352 Upper Applegate Road, the trust owns membership in an LLC.

Case 1:21-cv-00157-CL     Document 169-1     Filed 05/02/25     Page 113 of 116

141

A. It was not stated how it would be determined, when it would be determined, who would determine it. There are -- there's a clause about it's being planted with hemp, and then it's not being planted with hemp, and then it's fallow, and the rent isn't paid during some of that period. But there's no clarification as to how any of that is determined.

Q. Mr. Huycke was the only lawyer, to your knowledge, who was involved in the drafting of the leases, correct?

A. Yes, to my knowledge he was the only lawyer.

Q. In fact, Mark and Mike were unrepresented in those lease transactions, correct?

A. I don't know if that's correct because I saw bills and communications that said client, Mark Wisnovsky, Mike Wisnovsky.

Q. And from those documents, you -- you interpreted that to mean that Mr. Huycke's firm considered Mark and Mike to be their clients?

A. Yes.

Q. Did you have any other reason to believe that --

A. Oh, I'm sorry. I was going to add

142

something.

Q. I'll give you a chance to add, but can I just ask you this question first. Actually, go ahead. What were you going to add?

A. Well, I hadn't given all the reasons.

Q. Okay.

A. So I became aware that I wasn't given all of the documents in 2019. And that was because Mr. Huycke and the firm, Jarvis, told me that the Valley View vineyard file, which they did not give me, could only be released when Mark and Mike said it was allowable.

And it -- I later learned that a lot of these transactions occurred when Mark and Mike were allegedly the owners of the Valley View stock. So it seemed like Pat was still representing Valley View with Mark and Mike as the president and vice president, and my mother.

Q. Because his firm was maintaining a file of Valley View documents, and believed that Valley View had the right to determine whether that firm should release those documents to you; is that correct?

A. I -- I don't know the reason that they -- they said that they couldn't release Valley View

143

without Mark and Mike's consent. They didn't explain their rationale behind that.

Q. As of the March 24, 2016, leases, what documents had previously been signed by both you and Ann as co-trustees?

A. The trust.

Q. That's it, right? Just the trust?

A. The bank accounts.

Q. Okay.

A. The deed that transferred ownership of the land from the trust to -- I mean from my mother to the trust. I'm not sure the name of that. It's -- perhaps it's a grant deed. So that -- that document had both of our signatures and was filed with Jackson County. And I believe there were others, but that's what I remember off the top of my head.

Q. The leases did not require your signature as co-trustee, correct?

MS. RICHARDSON: I'm going to object to the way that that's phrased.

Go ahead and answer.

Q. Did the leases require your signature as co-trustee?

A. No.

144

Q. Ann did not require the leases to include a place for your signature, correct?

MS. RICHARDSON: I'm going to object to the word "require."

A. I have no idea who -- who did what.

Q. You're not aware of Ann ever asking Huycke to include a signature line in the leases for your signature, correct?

A. I don't know who asked what or did what.

Q. And as of March 24, 2016, was Ann competent to handle her affairs?

A. I think competent to analyze this lease. I'm not sure that she was competent to understand this lease. And I'm not sure competent is the right word. I don't think she had the skill set. I had trouble with it myself.

Was she competent to state her general desires for how she wanted her estate to be dealt with? Yes.

Q. Do you know if anybody prevented Ann from obtaining the advice of another attorney before entering into the leases other than Huycke?

A. No, I have no idea if anyone did that.

Q. You mentioned that Mark had moved in with Ann around that time when the leases were signed,

467

Q. Okay. What about 2017?

A. I cannot.

Q. So I've asked your lawyer to give you Exhibit 422. Can you take a look at that.

[EXB. 422 identified]

A. Yes.

Q. Now, I -- and Bonnie may want you to read the whole things at some point, but right now I just want to know if you've ever seen this document before.

A. Yes, I have.

Q. Okay. And is it fair to say that you helped your lawyers prepare the answers to these interrogatories?

A. Yes.

Q. Okay. I want to ask you some questions about some of the answers. So would you go to interrogatory No. 1 for me, which is page 3. And go ahead and read that interrogatory to yourself, and then read the response, and let me know when you're finished.

A. Yes, I'm finished.

Q. So for the record, the interrogatory asked you to identify all evidence you contend supports the allegation in the complaint that Ann

468

Wisnovsky relied on defendant Huycke when gifting 49 percent of her stock in Valley View Winery to her sons Mark and Michael.

Now, I want to ask you questions about the last -- second to the last full sentence, the last full sentence in the second paragraph of the response. At the bottom of page 3 it starts, "Plaintiff further states." Do you see that?

A. Yes.

Q. It says "Plaintiff further states that Ann Wisnovsky depended on the professional advice of defendant Huycke concerning the management of her estate and when executing complex financial transactions, particularly because she only had a high school education, was elderly, and vulnerable."

Did I read that correctly?

A. Yes.

Q. Your mom ran Valley View by herself, on her own, with hired help, from the time your dad died until Robert came to help at some point?

A. She -- she ran it with a winemaker.

Q. Sure.

A. And then Robert came.

Q. But she was -- she was involved in the

469

day-to-day running of the winery during that period of time, wasn't she?

A. She -- she was, somewhat.

Q. Now, it says that she was elderly and vulnerable. What did you mean by vulnerable?

A. I would mean it from a non-attorney's standpoint, do you mean? Like what -- how -- what would I say vulnerable or the legal conclusion of vulnerable?

Q. This is -- this is the word that was used in your response, so I'm asking you what you meant by it.

A. I think that because she -- she's elderly, vulnerable means that people who -- as they attain greater age or -- are more likely to be victims of crime, victims of scams, to not be quite as sharp as they once were.

I believe there's also a legal definition there that I do not fully know how to describe.

Q. So the stock transactions we're talking about here happened in 2006 and 2008, if my memory's correct. Do you believe that she was a vulnerable person in 2006 and 2008?

A. With regards to these transactions, I think

470

it is more complex than she had knowledge to understand. And I am confused, actually, about that 49 percent number because I don't think that corresponds to either stock transaction.

Q. Well, let me put it to you this way. Do you think Ann Wisnovsky was capable of handling her own financial and legal affairs in 2006 and 2008?

A. I think that she needed guidance from an attorney for complex matters like this. I think she could balance her checkbook, I think she could pay her bills. But I think that a tax plan that relies on the valuation of a minority share in order to reduce potential inheritance tax is probably beyond most people at any age, and they would rely on their attorney.

Q. Were you present at any meetings that your mom had with Pat Huycke when the transfer of stock was discussed?

A. No.

Q. So it would be fair to say you have no personal knowledge of what advice Mr. Huycke did or did not give your mother?

A. Correct.

Q. So can we go to interrogatory No. 2. Just

515

redemption agreement, some other documents are referring to information that there was a belief that there could be three total lots, not just two.

Q.  But at this time, as I understand, you're not aware of any actual consequences because of that; is that correct?  That information that you claim was incorrect from Mr. O'Connell or Mr. O'Connor?

A.  Yes, correct.

MS. RICHARDSON:  So I think we've been going over seven hours.

MR. LUSBY:  Well, I'm done.  I think Bernie's got a little bit of cleanup.  And I'm done.  I appreciate it.  Thank you.

MS. RICHARDSON:  Okay.

MR. MOORE:  Actually, I don't have any further questions.  Can we stop the screen share, though?

MR. LUSBY:  I don't want to look at you, Bernie.

MR. MOORE:  I don't want to look at you either.

MS. RICHARDSON:  You guys are on the record.

516

MR. LUSBY:  That can be on the record.

All right.  I have no further questions.  Thank you.

MR. MOORE:  And I have no additional questions.

MS. RICHARDSON:  Okay.  All right.

(DEPOSITION CONCLUDED:  5:19 p.m.)

(The witness at the time of their deposition did not request the right to review)

517

C E R T I F I C A T E

I, Chris Villano Iba, a Certified Shorthand Reporter of the State of Oregon, do hereby certify that JOANNE COUVRETTE personally appeared before me at the time and place mentioned in the caption herein; that the witness was first duly sworn on oath, and examined upon oral interrogatories propounded by counsel; that said examination, together with the testimony of said witness, was taken down by me in stenotype and thereafter reduced to print; and that the foregoing transcript, Pages 235 to 517, inclusive, constitutes a full, true and accurate record of said examination of and testimony by said witness, and of all other oral proceedings had during the taking of said proceedings, and of the whole thereof.

Witness my hand and seal as Certified Shorthand Reporter at Portland, Oregon, this 3rd day of January, 2023.

Chris Villano Iba
Certified Shorthand Reporter
Certificate No. 90-0062
Expires September 30, 2024

233

MR. FOSTER: Is that a good stopping point for you, Bernie?

MR. MOORE: Well, because of your representation we'd be done by 5, I scheduled another meeting for 5:15, so --

MR. FOSTER: Okay. Off the record.

(DEPOSITION ADJOURNED: 5:01 p.m.)

(The witness at the time of their deposition did not request the right to review)

234

C E R T I F I C A T E

I, Chris Villano Iba, a Certified Shorthand Reporter of the State of Oregon, do hereby certify that JOANNE COUVRETTE personally appeared before me at the time and place mentioned in the caption herein; that the witness was first duly sworn on oath, and examined upon oral interrogatories propounded by counsel; that said examination, together with the testimony of said witness, was taken down by me in stenotype and thereafter reduced to print; and that the foregoing transcript, Pages 1 to 234, inclusive, constitutes a full, true and accurate record of said examination of and testimony by said witness, and of all other oral proceedings had during the taking of said proceedings, and of the whole thereof.

Witness my hand and seal as Certified Shorthand Reporter at Portland, Oregon, this 3rd day of January, 2023.

Chris Villano Iba
Certified Shorthand Reporter
Certificate No. 90-0062
Expires September 30, 2024