**Stephen M. Brigandi, Pro hac vice**
Law Office of Stephen Brigandi
3624 Caminito Cielo Del Mar
San Diego, CA 92130
858-775-4213
Email: brigandilaw@gmail.com
*ATTORNEY TO BE NOTICED*

**Timothy L. Murphy**
Murphy Law Group PC
PO Box 11870
Portland, OR 97211
503-550-4894
Fax: 503-296-2633
Email: tim@oregonlandlord.net
*ATTORNEY TO BE NOTICED*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| MICHELLE SULLIVAN, Personal Representative of the Ann Wisnovsky Estate; and WISNOVSKY LAND, LLC, <br><br> Plaintiffs, <br><br><br><br><br><br> v. <br><br> MARK A. WISNOVSKY, an individual; MICHAEL J. WISNOVSKY, an individual; VALLEY VIEW WINERY, INC., an Oregon corporation; <br><br> Defendants. | Case No.: 1:21-CV-00157-CL <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMMARY JUDGMENT** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Cases**

- **Anderson v. Liberty Lobby, 477 U.S. 242 (1986)**
  (Summary judgment standard requires absence of genuine dispute of material fact; credibility determinations are for the factfinder.)
- ~~Bancorp Leasing & Fin. Corp. v. Agresta, 320 Or. 377, 886 P.2d 1321 (1994)~~
  ~~(Valuation documents used in business settings may be admissible without expert testimony under Oregon Evidence Code.)~~
- ~~Barnes v. Euster, 233 Or. 155 (1962)~~
  ~~(Ratification requires knowledge of material facts and intent to adopt the agreement.)~~
- ~~Bates v. Bankers Life & Cas. Co., 848 F.3d 1236 (9th Cir. 2017)~~
  ~~(Explaining that ratification cannot occur where there is a lack of full disclosure and material omissions.)~~
- **Church v. Woods, 190 Or. App. 112 (2003)**
  (Recognizing that transfers under undue influence may constitute financial elder abuse under ORS 124.110.)
- **Coos County v. State of Oregon, 303 Or. 173 (1987)**
  (Setting forth the elements of equitable estoppel under Oregon law.)
- **Cook v. Johnson, 228 Or. 316 (1961)**
  (Holding contracts without consideration are unenforceable.)
- **Gaston v. Parsons, 318 Or. 247 (1994)**
  (Statute of limitations begins when plaintiff knows or should know of harm.)
- ~~Huffman v. Alexander, 197 Or. App. 283 (2005)~~
  ~~(Statute of limitations may be equitably tolled where fiduciaries conceal wrongdoing.)~~
- **Lemley v. Lemley, 221 Or. App. 172 (2008)**
  (Ratification requires knowledge of all material facts and a clear intent to adopt the prior act.)
- ~~Mitchell v. Sch. Dist. No. 40, 164 Or. App. 294, 991 P.2d 1069 (1999)~~
  ~~(Appraisals prepared for financial planning may qualify as business records under OEC 803(6).)~~
- **Murphy v. Allstate Ins. Co., 251 Or. App. 316 (2012)**
  (Under discovery rule, statute of limitations begins when plaintiff discovers or reasonably should discover undue influence or fraud.)
- **Neel v. Lee, 316 Or. App. 748 (2021)**
  (Affirming that removing an elder's name from title without fair justification can constitute financial abuse.)
- ~~Neel v. Lee, 240 Or. App. 70 (2010)~~
  ~~(Equity bars enforcement of agreements obtained by undue influence or lack of capacity.)~~
- ~~State ex rel. Dep't of Transp. v. Douglas, 295 Or. 674, 669 P.2d 777 (1983)~~
  ~~(Valuation documents prepared in the course of business held admissible under business records exception.)~~
- **State v. Cain, 320 P.3d 600 (Or. Ct. App. 2014)**
  (Business records are admissible under OEC 803(6) when prepared in the regular course of business.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gustitus Decl., Exhibit 1
Page 2 of 34

- ~~**Stevens v. Bispham, 316 Or. 221 (1993)**~~
  ~~(Defining elements required for equitable estoppel and setting high burden for proving reliance and concealment.)~~
- **Van Marter v. Van Marter, 130 Or. App. 500 (1994)**
  (Summary judgment disfavored in undue influence cases due to inherently factual nature of influence claims.)
- **Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553 (2007)**
  (Waiver and ratification cannot occur where contract was procured under unfair or oppressive circumstances.)
- **Waterway Terminals Co. v. P.S. Lord, 242 Or. 1 (1965)**
  (Waiver must be intentional and supported by evidence of full knowledge of rights being relinquished.)
- **Lewis v. Worley (In re Va. Worley Revocable Living Trust), 318 Or App 127 (2022)**
  (Oregon Court of Appeals emphasized that summary judgment is not appropriate in trust-related litigation where material factual disputes exist)

**Statutes & Rules**
- **ORS 12.110(1)** – Statute of Limitations
- **ORS 124.100, 124.110** – Elder Abuse
- **ORCP 47 C** – Summary Judgment Standard
- **OEC 401** – Relevance
- **OEC 702** – Expert Testimony
- **OEC 803(6)** – Business Records Exception

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gustitus Decl., Exhibit 1
Page 3 of 34

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Mark Wisnovsky, Michael "Mike" Wisnovsky, and Valley View Winery, Inc. (collectively, "Defendants") have moved for partial summary judgment seeking:

- Dismissal with prejudice of Plaintiffs' claims for Elder Abuse (First Claim for Relief), Declaratory Judgment (Second Claim for Relief), and Unjust Enrichment (Third Claim for Relief);
- A ruling in their favor on their Eighth Counterclaim for Breach of Contract, requiring Plaintiffs to transfer ownership of Wisnovsky Land, LLC and the Valley View property based on the alleged enforcement of a Redemption Agreement; and
- An award of attorney fees tied to their declaratory judgment claim and Eighth Counterclaim.

Plaintiffs oppose Defendants' Motion in its entirety. While Plaintiffs have separately moved for summary judgment on all counterclaims, including the Eighth, the record here further demonstrates that Defendants' claims are legally unsupported, factually disputed, and cannot survive summary judgment.

Summary judgment is not appropriate where material facts remain in dispute. And here, the record is replete with factual disagreements that go to the heart of the case and must be resolved by the trier of fact.

Defendants' central theory is that a collection of documents—including the Lease, Agreement to Make Payments, Redemption Agreement, and the so-called "April 2017 Consent Documents"—collectively form an enforceable "Inheritance Contract." Plaintiffs dispute that theory both as a matter

1

of law and on the facts. The evidence shows that these documents were not the product of fair or voluntary agreements, but were instead obtained through undue influence during a time when Ann Wisnovsky was physically dependent following surgeries and car accidents. Ann was not cognitively impaired, but her physical limitations and reliance on others made her vulnerable to manipulation— particularly by Defendants, who were in positions of trust and proximity.

Defendants have also misrepresented the dates of key documents. The so-called "April Consent Documents" are actually dated March 25, 2017—a date when Ann was not in Oregon. This discrepancy is not minor. It directly undermines the Defendants' account of when and how these documents were executed and raises serious questions about their validity. The Defendants' decision to now refer to these as "April" documents appears calculated to conceal this conflict.

The defendants' attempt to enforce the Redemption Agreement also fails as a matter of law. The agreement was expressly revocable and was drafted as part of Ann's estate plan. Attorney Patrick Huycke, who prepared the document, confirmed that it was intended to be revocable. Moreover, Mark and Michael Wisnovsky were not parties to the agreement, which was executed solely between Ann's Trust and Wisnovsky Land, LLC. Their effort to enforce it is unsupported by any contractual right. Even more telling, Defendants admit they made no payments under the Agreement to Make Payments—the only alleged consideration supporting the Redemption Agreement. Their failure of performance is complete.

Plaintiffs also provide evidence that Defendants' actions caused substantial economic harm. The Powell Banz Appraisal, Tax Assessments and other documentation confirm that the leases executed under Defendants' direction slashed the value of the property. The lease terms—crafted to

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gustitus Decl., Exhibit 1
Page 5 of 34

benefit Defendants and their alter-ego company—included a 90-year duration, below-market rent, and subleasing rights that made the land commercially worthless while locking Ann into a financially devastating arrangement. (Exhibit 9: Powell Banz Appraisal)[1]

These disputes—about the nature and timing of the documents, the presence of undue influence, the failure of consideration, and the financial harm that resulted—are precisely the kinds of issues that cannot be resolved on summary judgment. They require credibility assessments and factfinding that must be made at trial.

Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion for Partial Summary Judgment in its entirety and grant Plaintiffs' own Motion for Summary Judgment.

## II.    STATEMENT OF FACTS

**Valley View Winery's Beginnings and Ann's Role**

In 1972, Frank Wisnovsky purchased 76 acres in Jackson County, Oregon, and began planting grapevines. He founded Valley View Winery in 1980 but passed away later that year. His wife, Ann Wisnovsky, who had only a high school eduction, inherited the land, vineyard, and winery. She managed bookkeeping and vendor relationships while relying on professional advisors for financial and legal matters.

Ann's eldest son, Robert Wisnovsky, returned home to help run the winery, deferring his own career. Ann often credited Robert with saving Valley View Winery during its most difficult years. (Declaration of Joanne Couvrette ¶¶ 5–7)

Footnote 1. *Exhibits 1–61 attached hereto are part of a compiled exhibit set used for both Plaintiffs' Motion for Summary Judgment and this Opposition and Reply. Not all exhibits are cited in this brief, but they are included for completeness and judicial economy.*

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Estate Planning and Early Stock Transfers**

In 1999, Ann retained attorney Patrick Huycke to assist with legal matters related to Valley View Winery and her estate planning. At the time, she was the sole shareholder of the winery and received $5,000 per month in rent under a 1989 lease agreement, in addition to employee benefits such as a vehicle, insurance, fuel and an expense account. (Declaration of Joanne Couvrette ¶ 8, Exhibit 4)

In 2002, Huycke proposed transferring minority shares of Valley View to Mark and Mike Wisnovsky as part of an estate tax strategy. He noted the monthly lease income and growing accounts receivable for unpaid rent. (Declaration of Joanne Couvrette ¶ 9, Exhibit 54)

Between 2006 and 2007, Ann transferred 49% of her stock to Mark and Mike in formal transactions conducted in Huycke's office. These transfers were properly documented and included notarized declarations of gift. (Declaration of Joanne Couvrette, Exhibit 32)

**2008 Proposal and Ann's Rejection**

In 2008, Huycke, acting at the direction of Mark and Mike, proposed and prepared a "Memorandum" involving the transfer of Valley View Winery and Ann's property. Ann was furious when she discovered the proposal. She accused Huycke of a conflict of interest, revoked powers of attorney previously granted to Mark and Mike, and instead appointed Joanne Couvrette and Robert Wisnovsky. She also instructed that legal correspondence be sent to trusted neighbors to prevent further interference. (Declaration of Joanne Couvrette ¶¶ 13–18, Exhibits 33, 34, 37)

Ann had a detailed five-page response prepared to the proposal titled "Review" of the Mark-Mike-Huycke Proposal (Exhibit 36). In it, she explained that Valley View Winery owed her over $626,000 in unpaid loans and paid-in capital. That figure **did not include** the substantial amount of accrued rent also owed to her. She stressed the importance of maintaining the $5,000/month rental

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

income and outlined that the proposal would result in the distribution of over 91% of her estate to Mark and Mike. Ann also explained that she had personally assumed Valley View Winery's debt by securing it as a mortgage on her own home. Defendants allegedly later "paid off" that mortgage with winery funds and then deducted the amount from her rent, effectively charging her twice. (Declaration of Joanne Couvrette ¶¶ 19–26)

Ann firmly rejected the proposal in 2008. Nonetheless, a version of it was carried out years later, when Ann had aged, suffered serious physical injuries, and become increasingly dependent on others.

**2016 Undocumented Stock Transfer and Loss of Control**

Sometime in 2016, Ann's remaining stock in Valley View was transferred to Mark and Mike. Unlike the formal transfers in 2006 and 2007, this later transfer lacked documentation, was not notarized, and raises serious questions regarding its execution and legitimacy. Plaintiffs allege that the transfer was procured under questionable circumstances and that it was not accompanied by any valid consideration. Although Defendants later produced an Agreement to Make Payments (Exhibit 7) purporting to compensate Ann for the loss of her interest, they admit that no payments were ever made. (Declaration of Mark Wisnovsky, Declaration of Joanne Couvrette ¶¶ 28–31)

As a result, Ann lost control of the corporation, her right to collect the accrued, unpaid rent and capital contributions, and the employee benefits she had previously received.

**Lease Manipulation and Financial Harm**

In conjunction with the stock transfer, Huycke drafted new leases that reduced Ann's rent from $5,000 to $1,583 per month and granted Mark and Mike essentially a 90-year renewal option. These leases radically altered the 1989 arrangement and were later assigned to their alter-ego company, Third Generation Farms, LLC. The new lease terms diverted profits away from Ann while

5

locking her into a long-term below-market agreement that stripped her of meaningful income and control over her land. (Exhibits 1, 2, 3, 38)

**Ann Seeks Help and Reasserts Control**

By 2019, Ann recognized that her financial security had been severely compromised, specifically that she was not receiving rent payments, and that the documents she had signed were not in her best interest. She reached out to her daughter Joanne for help.

At Ann's direct request, Joanne assisted her in preparing the Fourth Amendment to her Trust, which reinstated Joanne as co-trustee. The amendment was signed by Ann in front of a notary, with her granddaughter, Anna Maria Couvrette, present as a witness. Anna, who had just graduated from college, observed Ann acting with full clarity and independence during this process and has submitted a sworn declaration confirming that Ann was competent, calm, and deliberate in her decision to formalize these changes before returning to Oregon. (Declaration of Anna Maria Couvrette ¶ 4, Exhibit 27)

Joanne arranged for Ann to consult with **Gary Turner**, a highly respected estate attorney in Southern Oregon. Turner reviewed Ann's full legal file and confirmed her concerns. With his assistance, Ann revoked the Redemption Agreement and executed amendments to her trust reflecting her true intentions.

To avoid any conflicts, Joanne retained her own attorney, Richard Thierolf. These steps ensured that Ann's estate planning changes were independent, deliberate, and protected. (Declaration of Joanne Couvrette ¶¶ 78–81, Exhibit 30)

Importantly, **Turner himself drafted the Revocation of the Redemption Agreement**, a critical legal document that directly contradicts Defendants' theory of a binding inheritance contract. Turner's role as independent counsel, along with the involvement of Joanne's separate attorney,

6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Richard Thierolf, ensured that all changes to Ann's estate planning were handled with full legal oversight and without influence from any family member. (Declaration of Joanne Couvrette ¶¶ 78–81, Exhibit 30)

**Sophia's Support and Medical Confirmation of Capacity**

Due to Ann's limited mobility and the failure of a chairlift installed by Defendants—which was never functional and posed a serious fall risk—Joanne arranged for her niece, Sophia Wisnovsky, to stay with Ann in Oregon during beginning on June 24, 2019. Sophia's presence was necessary to ensure Ann's safety while arrangements were made to repair or replace the defective stairlift. (Declaration of Sophia Wisnovsky ¶¶ 2–5, Exhibit 44 chair lift photos)

On June 19, 2019, Mark woke Ann from a nap and pressured her to sign legal paperwork. Ann refused and immediately called Joanne, who notified Mark in writing that Ann had legal counsel and that trust actions required co-trustee authorization. (Declaration of Joanne Couvrette ¶¶ 83–86, Exhibit 14)

The next day, Mark returned and obtained Ann's signature on a lease amendment that would later be used in a $3.25 million claim. On June 21, 2019, Mark sent Ann's attorney, Gary Turner, a **staged "proof of life" photo** showing Ann holding a newspaper and a handwritten note stating she did not want changes to her estate plan. This disturbing and clearly manipulative image is attached as **Exhibit 31**. (Declaration of Joanne Couvrette ¶ 86)

On June 24, Sophia was present as Mark forcibly attempted to lift Ann into his truck to take her to a doctor's appointment that had not been scheduled. Ann experienced pain and distress. He took her to her longtime physician of over 40 years, **Dr. Alan Binette**, who evaluated her and found that she was **"clinically quite collected and capable."** Dr. Binette administered a **Mini Mental Status Exam**, which Ann passed easily. Although Mark shared his own personal belief that his

7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

mother was impaired, Dr. Binette recorded **no cognitive impairment**. (Declaration of Sophia Wisnovsky ¶¶ 4–5, Exhibit 29; Dr. Binette chart notes, Exhibit 57)

**Final Steps to Secure Her Wishes**

Joanne returned to Oregon, she and Ann met again with Gary Turner. Ann confirmed that she had been pressured into the photo sent to Turner but expressed relief that she had already taken steps to secure her estate. Shortly afterward, Joanne discovered laminated "Things to Remember" notes placed in drawers throughout Ann's home, reinforcing false narratives and suggesting ongoing efforts to manipulate her. They also discovered Ann's safe had been opened and her cash was missing. (Declaration of Sophia Wisnovsky ¶¶ 6–7, Exhibit 7)

Ann later returned to San Diego with Joanne and Sophia. Contrary to Defendants' claims, she was not isolated or manipulated. She was provided with a new iPhone, used Alexa to make calls, and remained in regular contact with family. She enjoyed outings to the zoo, beach, and weekly trivia nights. She was happy, relaxed, and surrounded by people who supported—not controlled—her. (Declaration of Sophia Wisnovsky ¶ 10)

Ann's actions during this time—including retaining respected independent counsel, revoking the Redemption Agreement, amending her trust, and distancing herself from Mark and Mike—reflect clarity, autonomy, and a strong effort to reclaim control over her life and her estate. Despite her physical limitations, she made deliberate, well-informed legal decisions that must be honored.

### III.    LEGAL ARGUMENT:

**Legal Standard for Summary Judgment**

Under Oregon Rule of Civil Procedure (ORCP) 47 C, summary judgment is appropriate only if there is no genuine dispute as to any material fact. The Oregon Court of Appeals has emphasized that summary judgment is generally inappropriate in cases involving allegations of undue influence

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

or elder abuse, as these claims often hinge on nuanced factual determinations best suited for a jury.

**Relevant Case Law**

- *Van Marter v. Van Marter*, 130 Or App 500 (1994): The Court noted the absence of precedent for granting summary judgment in undue influence cases, highlighting that such claims typically involve assessing a constellation of facts that collectively may indicate undue influence.

- *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986): The U.S. Supreme Court emphasized that the moving party must show there is no genuine dispute as to any material fact, and that they are entitled to judgment as a matter of law. That standard is not met in this case.

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' CLAIMS**

**A. First Claim for Relief: Elder Financial Abuse (ORS 124.100 & ORS 124.110)**

**1. Defendants' Conduct Constitutes Financial Abuse Under Oregon Law**

Genuine disputes of material fact preclude summary judgment for the Defendants on Plaintiffs' elder abuse claim. Plaintiffs oppose Defendants' Motion for Summary Judgment under ORS 124.100 and ORS 124.110, which define financial abuse to include any wrongful taking or appropriation of a vulnerable person's money or property. Oregon courts interpret "wrongful" to include actions taken through undue influence, deceit, or improper motives. The record demonstrates that Defendants structured a series of agreements—including long-term leases, stock transfers, and rent deductions—for their own benefit while depriving Ann Wisnovsky of income, control, and access to her property.

Defendants argue:

1. That the leases do not constitute a "taking or appropriation."

2. That Ann ratified the leases.

9

3. That the claim is barred by waiver.

4. That estoppel applies.

5. That there is no admissible evidence of property devaluation.

Each argument fails. In fact, their 8th Counterclaim—asserting enforcement of these same agreements as part of an "inheritance contract"—demonstrates the extent to which Defendants leveraged their influence to gain financial control over Ann's assets.

## 2. The Leases Were a Wrongful Taking

Under ORS 124.110(1)(a), wrongful taking includes transactions that transfer control of property under inequitable circumstances. Plaintiffs contend that the leases, executed under undue influence and without fair consideration, granted Defendants exclusive control over Ann's land at drastically below-market rates, with renewal rights extending up to 90 years.

In *Church v. Woods*, 190 Or App 112 (2003), the court held that a "taking" occurs even without outright theft if the elder's property interest is diminished under undue influence. Similarly, in *Neel v. Lee*, 316 Or App 748 (2021), the court found that removing a vulnerable person from a property title without justification constitutes a wrongful taking. Here, the leases dropped Ann's monthly rent from $5,000 to $1,583, deprived her of control, and allowed expansion without fair compensation.

The Powell Banz Appraisal (Exhibit 9) and other valuation evidence (Exhibits 35, 42, 45, 48) show the property was devalued from $4.2 million to near zero. This financial harm supports the conclusion that the leases were a wrongful appropriation.

## 3. Defendants Misstate Joanne Couvrette's Testimony

Defendants mischaracterize Joanne Couvrette's deposition to claim that Ann ratified the leases with full understanding. Joanne made clear distinctions between Ann's general cognitive

10

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

competence and her ability to analyze complex legal and financial documents:

"I think competent to analyze this lease. **I'm not sure that she was competent to understand this lease. And I'm not sure competent is the right word. I don't think she had the skill set.** I had trouble with it myself." (Exhibit 61, p. 144)

Joanne further testified that Ann relied on legal counsel:

"I think she needed guidance from an attorney for complex matters like this… a tax plan that relies on the valuation of a minority share in order to reduce potential inheritance tax is probably beyond most people at any age." (Exhibit 61, p. 470)

This directly refutes the Defendants' claim that Joanne believed Ann was competent to understand the lease. Lacking the skill set to analyze a complex business lease is not the same as lacking competence. This refutes Defendants' argument and highlights that Ann depended on others—often the Defendants themselves—to explain or handle legal matters.

## 4. Ratification Requires Full Knowledge and Voluntary Intent

In *Lemley v. Lemley*, 221 Or App 172 (2008), the court held that ratification requires full knowledge of material terms and intent to adopt the agreement. ~~In *Bates v. Bankers Life & Cas. Co.*, 848 F.2d 1236, the court held that~~ fraud or concealment precludes ratification.

Here, Ann lacked:

- An appraisal or understanding of market value;

- Awareness of the Second Addendum's self-serving terms;

- Understanding that the lease removed virtually all resale value from her land.

As the Powell Banz Appraisal later showed, the lease rendered the property unmarketable. Thus, ratification cannot be found as a matter of law.

## 5. Disputed Facts Preclude Summary Judgment

In *Worley v. Lewis*, Or App Docket No. A177518 (2025), the court denied summary judgment in an elder abuse case where factual disputes existed regarding the elder's understanding and the

11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

influence exerted over them. The same applies here: whether Ann knowingly agreed to the lease and understood its impact remains a central and hotly contested issue.

**6. Defendants Argue That There is No Admissible Evidence of Property Value**

An appraisal was commissioned by Joanne Couvrette in her capacity as Manager of Wisnovsky Land and Trustee of the Trust in the Fall of 2020 to assess the fair market value of the property and lease agreements for business administration purposes. At the time, Joanne was concerned about Ann Wisnovsky's ability to cover the costs of her care and considered selling the property subject to the lease to generate income for her mother. The appraisal was not obtained in anticipation of litigation, and its subsequent use in legal proceedings does not alter its original purpose as a business record. The appraisal, by Powell Banz, was admitted as Exhibit as a business record of Wisnovsky Land, LLC.

Additionally, Defendants themselves provided evidence of valuation in their 2008 Memorandum as presented to Ann by Huycke (Exhibit 35) and current Tax Assessments Value the property, albeit at a discounted rate due to Farmland Zoning, at over $2 million.  The sales value of the property subject to the lease is minimal, with an annual cash flow of just $24,000 per year, it does not require expert testimony to realize that no one will be pay $2 million, per the tax assessment, or $4.2 million per the Powell Banz Appraisal or $5.5 million per the Real Estate Agent to earn just $24,000 a year.  A Time of Death Valuation of Ann's Property, done by a Real Estate Agent, puts the value of the Property, without the leases, at $6.5 million. (Exhibits 9, 35, 42 45, 48)

Joanne commissioned the Powell Banz appraisal in 2020, before litigation, to assess whether Ann could afford her care or needed to sell the property. It was created in the ordinary course of business and is admissible as a business record under OEC 803(6).

Oregon courts have consistently held that appraisals used for financial planning qualify as

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

business records. See:

- *State v. Cain*: records made in regular business operations are admissible.

- ~~*Mitchell v. Sch. Dist. No. 40*: appraisals prepared for business purposes are admissible.~~

- ~~*State ex rel. Dept. of Transp. v. Douglas*: distinguishes factual records from expert opinions~~.

This appraisal was not prepared for litigation but for business evaluation, and its content is supported by tax records and other independent valuations.

Furthermore, other appraisals were conducted related to these properties for legitimate business and financial reasons, including:

- An appraisal used to value stock for tax purposes in the early 2000's

- Another appraisal conducted to determine the value of Mark Wisnovsky's interest in Valley View Winery

- An appraisal on Ann's rental property, owned by Upper Applegate LLC commissioned in an effort to secure a loan for her care.

The Powell Banz Appraisal was part of this broader financial assessment process and was not litigation driven. Courts generally focus on the intent at the time the record was created, rather than its subsequent use. See **Neel v. Lee**, where the court examined the circumstances surrounding the creation of documents rather than their later use in litigation to determine whether a "taking" occurred under ORS 124.110(1)(a). Thus, the **Powell Banz Appraisal was a routine business valuation, created independently of litigation**, and is **admissible as a business record under OEC 803(6)**.

Defendants attempt to exclude the Powell Banz Appraisal by categorizing it as expert testimony under OEC 702, which governs the admission of scientific, technical, or specialized knowledge. However, Oregon courts have repeatedly rejected this argument when appraisals are used

13

for business valuation rather than litigation purposes.

- ~~State ex rel. Dep't of Transp. v. Douglas, 295 Or. 674 (1983) — Holding that appraisals used in business transactions are admissible as factual records rather than expert opinions.~~
- ~~Bancorp Leasing & Fin. Corp. v. Agresta, 320 Or. 377 (1994) — Finding that valuation records routinely used for financial decision-making do not fall under the stricter scrutiny of expert testimony under OEC 702.~~

Here, the **Powell Banz Appraisal** was not prepared for the purpose of proving or defending against a legal claim. Rather, it was commissioned for estate administration, business asset valuation, and potential property sale considerations. The mere fact that the appraisal later became relevant to litigation does not retroactively transform it into expert testimony subject to exclusion under OEC 702.

The decision to litigate after the appraisal was conducted does not alter its original purpose or admissibility. Oregon courts focus on the intent at the time the record was created to determine whether it qualifies under the business records exception.

In **Church v. Woods** the court examined the circumstances surrounding a transaction to determine whether a "taking" had occurred under ORS 124.110(1)(a), rather than looking at later events.

Similarly, here, the admissibility of the Powell Banz Appraisal depends on its original purpose, not its later use in litigation. Courts recognize that business records may later become relevant to legal claims, but this does not invalidate their admissibility under OEC 803(6). Defendants fail to present any evidence that the appraisal was commissioned with litigation in mind. Instead, the facts show that the appraisal was an ordinary financial valuation, commissioned as part of the Trust's ongoing management of assets. Couvrette provided the Powell Banz appraisal shortly

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gustitus Decl., Exhibit 1
Page 17 of 34

after it was completed in the hopes that they would agree to purchase the Wisnovsky Land, LLC's property. Defendants were in possession of the appraisal prior to any litigation.

Additionally, the Powell Banz Appraisal is not the sole evidence that will be used to support Plaintiff's Elder Abuse Claim.

The Powell Banz Appraisal is directly relevant to the Elder Abuse claim because it demonstrates the financial harm caused to Ann Wisnovsky by the lease terms imposed by Defendants. The appraisal shows:

- The fee simple market value of the property was $4.2 million,

- The value of the property subject to the lease was effectively reduced to zero,

- The below-market lease terms severely impaired Ann's ability to sell or leverage the property as a financial asset.

Under OEC 401, evidence is admissible if it makes a material fact more or less probable than it would be without the evidence. The appraisal is critical to proving financial elder abuse because it quantifies the damage done by the unfair lease terms, making it directly probative and highly relevant to this case.

Defendants' argument that the Powell Banz Appraisal is inadmissible is legally unsound and unsupported by Oregon law. The appraisal is a business record under OEC 803(6), not expert testimony under OEC 702, and is therefore admissible. Furthermore, its probative value in demonstrating financial harm is substantial. Courts have consistently recognized that appraisals used in business valuation, financial planning, and estate administration are reliable evidence and should not be excluded simply because they later become relevant to litigation.

Accordingly, the Powell Banz Appraisal should be admitted into evidence for purposes of evaluating the financial consequences of Defendants' lease agreements and their impact on Ann

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Wisnovsky's property value.

## 7. Waiver Does Not Apply

Defendants argue that Ann Wisnovsky waived her elder abuse claim by accepting rent payments under the lease. However, this argument ignores the oppressive and unconscionable nature of the lease, which granted defendants a **90-year term at below-market rates** and included provisions that prevented Ann from selling or otherwise benefiting from her own property.

The Oregon Court of Appeals has held that waiver requires a knowing and voluntary relinquishment of a known right. However, a party cannot waive a claim when the contract itself is unfairly structured to deprive them of meaningful choice. In Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or App 553 (2007), the court found that contracts containing oppressive terms, particularly when obtained through undue influence or an imbalance in bargaining power, cannot be ratified by mere acquiescence. Here, Ann's continued acceptance of rent does not indicate voluntary acceptance but rather reflects the reality that she was trapped in a contract that stripped her of all reasonable alternatives.

Moreover, defendants' own legal position undermines their waiver argument. They argue in their 8th Counterclaim that the lease was part of an overarching inheritance contract, tying it to the Agreement to Make Payments and the Redemption Agreement. If, as defendants claim, these documents were interconnected, then Ann could not have knowingly waived any claims regarding the lease without full knowledge of the financial and legal implications of all related agreements—which she did not receive until years later.

In *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553 (2007), the court held that oppressive terms secured through undue influence cannot be ratified through silence or acquiescence. Here, Ann had no meaningful alternative and no clear understanding of the lease's consequences.

16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gustitus Decl., Exhibit 1
Page 19 of 34

Defendants' own 8th Counterclaim further undermines their waiver defense. If the lease was part of an interdependent inheritance contract, Ann could not have knowingly waived her claims without understanding all interrelated documents—many of which were concealed from Joanne until 2019–2021.

## 8. Estoppel Fails as a Matter of Law

Defendants argue that Plaintiff is estopped from asserting this claim. But estoppel requires:

1. Concealment or misrepresentation of material facts;

2. Knowledge of the truth by the estoped party;

3. Reliance by the other party. (*Coos County v. State of Oregon*, 303 Or 173 (1987))

Joanne has stated that she did not receive the full lease package or the Agreement to Make Payments until years after their execution in 2019 and 2020. Nor did she know about rent deductions until reviewing Ann's accounts in 2019. Defendants' claim that all documents formed one contract only confirms that Joanne could not have knowingly acquiesced without access to the full agreement. (Declaration of Joanne Couvrette)

## 9. The Claim Is Timely Under Oregon's Discovery Rule

Under ORS 12.110(1) and *Gaston v. Parsons*, 318 Or 247 (1994), the statute of limitations begins when the harm is discovered or should have been.

Plaintiffs could not have discovered the financial abuse until:

- 2019: Joanne reviewed Ann's bank accounts and discovered unauthorized rent deductions;

- 2019: Joanne received the executed leases and Second Addendum;

- 2020: Powell Banz Appraisal confirmed the financial damage;

- 2020-21: Joanne received the Agreement to Make Payments and Amendment.

## 10. Equitable Tolling Also Applies

17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

~~In *Huffman v. Alexander*, 197 Or App 283 (2005), the court held that fiduciary concealment tolls the statute of limitations.~~ Mark and Mike controlled Ann's property and communications from 2015 to 2019. Joanne's declaration (¶¶27–43) documents how they withheld financial records and exerted control.  Joanne, the Co-Trustee of the Trust, had these documents hidden from her.

Whether tolling applies is a question of fact and further supports denial of summary judgment.

## B. Plaintiffs' Declaratory Judgment Claim to Invalidate the Lease

Defendants argue that Plaintiffs' claim to invalidate the leases should be dismissed based on ratification, waiver, estoppel, and the statute of limitations. Each of these arguments fails as a matter of law and fact.

## 1. Ann Did Not Ratify the Lease with Full Knowledge or Intent

Defendants assert that Ann ratified the leases, but Oregon law requires full knowledge of the material terms and an intent to adopt the agreement. ~~In *Barnes v. Euster*, 233 Or. 155, 160 (1962), the court emphasized that ratification cannot occur without a clear understanding of the facts.~~

Joanne Couvrette testified:

"I think competent to analyze this lease. I'm not sure that she was competent to understand this lease. And I'm not sure competent is the right word. **I don't think she had the skill set**. I had trouble with it myself." (Exhibit 61, p. 144)

"I think **she needed guidance from an attorney for complex matters** like this… a tax plan that relies on the valuation of a minority share in order to reduce potential inheritance tax is probably beyond most people at any age." (Exhibit 61, p. 470)

Attorney Patrick Huycke confirmed that no appraisal was conducted before the leases were executed (Exhibit 5), further illustrating Ann's lack of access to essential information. The Powell Banz Appraisal (Exhibit 9) later confirmed that the leases rendered the property unsellable. Therefore, any claim of ratification is unsupported.

## 2. Waiver Does Not Apply

18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Waiver requires a knowing and voluntary relinquishment of a known right. See *Waterway Terminals Co. v. P.S. Lord*, 242 Or. 1, 24 (1965). There is no evidence that Ann was informed she had the right to challenge the leases, nor that she knowingly waived that right. Oregon law also holds that undue influence nullifies purported waiver. Defendants' failure to demonstrate clear and convincing evidence of waiver is fatal to their claim.

## 3. Defendants Cannot Establish Estoppel

To succeed on estoppel, Defendants must show:

- Concealment or misrepresentation by Plaintiffs,

- Knowledge by the estopped party,

- Detrimental reliance by Defendants. ~~See *Stevens v. Bispham*, 316 Or. 221, 234 (1993)~~.

Plaintiffs did not conceal material facts. Instead, it was Defendants—who drafted and executed the leases—who were in the best position to understand their terms. They cannot now claim detrimental reliance when they structured the agreements and benefited from them.

## 4. The Claim Is Timely Under Oregon's Discovery Rule

ORS 12.110(1) governs the two-year statute of limitations for fraud-based claims, including undue influence. In *Murphy v. Allstate Ins. Co.*, 251 Or. App. 316, 321 (2012), the court held that discovery occurs when a plaintiff knows or reasonably should know of the basis for the claim.

Plaintiffs did not receive all relevant lease documents and related agreements until 2019–2021. The Powell Banz Appraisal confirmed that the leases made the property unsellable. Joanne testified that Ann lacked the legal and financial expertise to evaluate the lease. These facts support the conclusion that Plaintiffs filed within the applicable statute of limitations.

## C. Plaintiffs' Claim to Invalidate the Stock Transfer

Defendants seek summary judgment on Plaintiffs' claim challenging the validity of the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

alleged stock transfer of Valley View Winery to Mark and Michael Wisnovsky. They argue that the transfer was valid and supported by consideration. However, Plaintiffs present overwhelming evidence that the transaction lacked consideration, failed to follow required formalities, and was never properly executed.

## 1. No Consideration Was Ever Paid

The Agreement to Make Payments, drafted to provide consideration for the transfer of Ann's stock, was never fulfilled. Mark Wisnovsky admitted that no payments were made. Defendants caused Valley View to transfer valuable assets—including the Cannabis Lease and related permits—to a separate company controlled by Defendants to avoid triggering payments. (Declaration of Joanne Couvrette ¶¶ 73–76; Exhibit 7)

Under Oregon law, contracts that lack consideration are unenforceable. See *Cook v. Johnson*, 228 Or. 316, 323 (1961) (holding that illusory promises do not constitute valid consideration). Because no payments were made, there was no valid consideration to support the stock transfer as required by the Agreement to Make Payments.

## 2. Disputed Execution of the Stock Certificate

There is a material factual dispute as to whether Ann ever knowingly and voluntarily executed the stock certificate. Earlier transfers of minority stock (in 2006, 2007, and 2014) occurred in an attorney's office, with notarization, witnesses, and gift tax documentation. The alleged majority transfer in 2016 lacked all of these protections—it was undated, not notarized, had no witness or tax filing, and occurred without attorney oversight. (Declaration of Joanne Couvrette ¶¶ 28–30; Exhibits 32, 51.)

The stock certificate required the same signatories on the reverse side as are identified on the face of the certificate, including both Ann Wisnovsky and Joanne Couvrette. (Declaration of Joanne

20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Couvrette ¶ 31; Exhibit 32.) Couvrette, the Co-Trustee of the Ann M. Wisnovsky Trust, never signed the certificate and was unaware of the transfer. This alone renders the transfer legally ineffective under applicable trust and corporate governance requirements.

**3. Deviation from Corporate Formalities Renders the Transfer Invalid**

The stark procedural deviation between the formal stock distributions and the alleged 2016 transfer raises serious doubts and introduces the element of Defendants' Undue Influence over Ann. There was no legal review, notarization, attorney oversight, or tax documentation. Such discrepancies weigh heavily against the legitimacy of the transfer.

**4. Incomplete Execution Bars Enforcement**

Even if Ann intended to transfer the stock, the certificate was never fully executed. As the document explicitly required the same signatories listed on its face—including Joanne Couvrette—and she never signed, the certificate was never validly completed.

**5. Material Disputes of Fact Preclude Summary Judgment**

Genuine disputes remain regarding whether:

- Ann signed the stock certificate;

- Any valid consideration was paid;

- The transaction complied with required corporate procedures;

- The transfer was fully executed as required by the certificate itself.

These disputes preclude summary judgment. Plaintiffs are entitled to proceed with their claim to invalidate the alleged stock transfer.

## IV. PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ ON EIGHTH COUNTERCLAIM: THE ALLEGED INHERITANCE CONTRACT

21

Defendants seek summary judgment on their Eighth Counterclaim, asserting breach of an alleged "inheritance contract" purportedly made up of the Redemption Agreement, Agreement to Make Payments, and various related documents. This claim fails as a matter of law and fact. The documents were explicitly revocable, no valid contract existed, Defendants were not parties to the Redemption Agreement, and the agreements were procured through undue influence.

Furthermore, the factual record is riddled with misstatements and contradictions that preclude summary judgment.

**A. The Legal Standard for an Inheritance Contract**

To prevail on a claim for breach of an inheritance contract, Defendants must prove:

1. The existence of a valid and enforceable contract to make a will or devise property;

2. A breach of that agreement; and

3. Damages resulting from the breach. See *Allen v. Hall*, 328 Or. 276, 286 (1999).

Oregon law requires that an inheritance contract be clear and definite, and courts scrutinize such agreements closely. Where an agreement is revocable, such as the Ann M. Wisnovsky **Revocable** Trust, it cannot serve as the basis for an irrevocable inheritance contract. See also *Restatement (Second) of Contracts* § 33 (contract terms must be certain and definite to be enforceable).

There was no bargained-for exchange or consideration to support the alleged inheritance contracts. The documents lack mutual obligations and do not demonstrate that any party provided anything of value in exchange for the purported promises. Defendants' claims amount to an attempt to enforce an unenforceable gift, rather than a legally binding contract.

**B. The Redemption Agreement Was Expressly Revocable and Properly Revoked**

The Redemption Agreement itself states:

22

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**"The terms and conditions of this Agreement may be amended, modified, or waived only by a written agreement signed by both the Trust and the Corporation." (Exhibit 7)**

Attorney Patrick Huycke, who drafted the Redemption Agreement, testified:

**Q: "And if she changed her mind about this Redemption Agreement, would Ann be able to revoke it?"**

**A: "Well, she could amend her trust, because the redemption agreement was part of an amendment to her trust."**
*(Exhibit 5, Huycke Depo. p. 238:21, 240:5–7)*

The Trust itself was revocable, and the Redemption Agreement was part of that revocable trust instrument. In 2019, Ann Wisnovsky lawfully revoked the Redemption Agreement. The Revocation, drafted by her independent counsel Gary Turner, states:

> On February 23, 2017, Wisnovsky Land, LLC, an Oregon Limited Liability Company, and Ann M. Wisnovsky, as a trustee of the Ann M. Wisnovsky Trust UTD August 2, 2012, entered into a "Redemption Agreement." Attached to that agreement was "Exhibit A," an unsigned specimen form of a Promissory Note. **That Redemption Agreement was entered into upon the recommendation of Ann's prior attorney and the urging of Mark Wisnovsky and Michael Wisnovsky.**
>
> The estate plan in effect at the time the Redemption Agreement was executed is no longer in existence, and therefore, there is no purpose in having the "Redemption Agreement" in place. In fact, it is inconsistent with, and contrary to, the existing estate plan of Ann M. Wisnovsky.
>
> **Now therefore, pursuant to the powers reserved to the trustees of the Ann M. Wisnovsky Trust, which is the sole member of Wisnovsky Land, LLC, the Redemption Agreement is hereby revoked and terminated, effective immediately.** (Exhibit 58)

It was signed in Turner's office and notarized on July 2, 2019. Defendants' claim fails on this basis alone.

## C. Defendants Were Not Parties to the Redemption Agreement and Lack Standing

The Redemption Agreement was between the Ann M. Wisnovsky Trust and Wisnovsky Land, LLC. Defendants Mark and Michael Wisnovsky were not parties to the agreement and did not sign it. They have no standing to assert breach of contract claims on an agreement to which they were

23

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

not parties and from which they received no enforceable rights. The sole signatories were Ann Wisnovsky, as Trustee, and as Member of the LLC. That alone bars the claim.

**D. There Was No Consideration or Performance**

The Agreement to Make Payments required Defendants to pay the Trust if:

- Valley View Winery is sold,

-  Valley View Winery transferred any assets, or

- Payments were made to Mark or Mike above their base salaries.

Despite transferring the Cannabis Lease and related income stream to a separate entity and receiving substantial personal compensation, no payments were made to Ann. Mark Wisnovsky admitted this. (Defendants' MSJ, Wisnovsky Declaration; Exhibit 40)

Oregon law is clear: an agreement lacking consideration is unenforceable. See *Cook v. Johnson*, 228 Or. 316, 323 (1961). Defendants' failure to perform extinguishes any contractual claim.

**E. The Documents Were Procured Through Undue Influence**

Plaintiffs present substantial evidence that the Redemption Agreement and related documents were executed during a time when Ann was isolated and subject to undue influence. Anna Maria Couvrette, Ann's granddaughter, witnessed Ann's clear regret and the coercive circumstances surrounding the agreements. (Exhibit 27)

Ann later expressed shame about having signed the agreements. This emotional reaction and the surrounding facts strongly support the finding of undue influence. Under Oregon law, any document procured through undue influence is voidable. See *Neel v. Lee*, ~~240 Or App 70 (2010)~~; *Church v. Woods*, ~~190 Or App 112 (2003).~~

**F. Defendants' Factual Allegations Are Contradicted by the Record**

Defendants' MSJ contains numerous factual misstatements, contradictions, and unsupported

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

claims. These factual disputes preclude summary judgment:

1. **Misstatement of Agreement to Make Payments** – Defendants wrongly claim payment was required only upon sale of assets. The agreement also required payment if Valley View transferred any asset or paid Mark and Mike above salary.

*Exhibits 7, 40*

2. **Mischaracterization of Couvrette's Testimony** – Defendants selectively quote Couvrette, omitting her statement that Ann lacked the skills to understand the lease.

*Exhibit 61*

3. **Contradictory Claims on Reliance for Formation of Third Generation Farms** – Defendants claim reliance on documents executed *after* the business was formed on January 10, 2017.

*Exhibits 3, 38*

4. **False Date for Consent Documents** – Consent documents cited as "April 2017" are actually dated March 25, 2017—when Ann was out of state. Ann could not have signed these documents.

*Exhibit 26, Exhibit 15*

5. **False Allegation of Declining Mental Capacity** – No medical evidence supports this claim; Dr. Binette confirmed Ann's competence.

*Exhibit 29, Anna Couvrette and Sophia Wisnovsky Declarations*

6. **False Allegation That Trust Amendments Were Kept Secret** – Joanne Couvrette and Gary Turner emailed Mark and his attorney about the amendments to the Trust.

*Exhibits 14, 56*

7. **Misattribution of Revocation** – The Revocation was drafted by Attorney Turner, not

25

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Couvrette, and executed by Ann with a Notary in Turner's office.

*Exhibit 58*

8. **False Allegation That Couvrette Took Ann's Phone and "Flew Her Away"** – Ann booked her own trip, and her phone was replaced after it broke.

*Sophia Wisnovsky Declaration*

9. **False Claim Ann Did Not Know Her Attorney** – Ann gave Mark the name of her attorney, and Mark contacted him.

*Couvrette Declaration ¶¶95–97; Exhibit 14*

10. **False Claim That Sixth Amendment Was Kept Secret** – Attorney Turner provided a Certificate of Trust reflecting the amendment.

*Exhibit 56*

11. **False Claim of an Irrevocable Inheritance Contract** – The Redemption Agreement contains no irrevocability clause and was explicitly revocable.

*Exhibit 5, Exhibit 7, Exhibit 58*

12. **False Claim That Consideration Was Paid** – Mark Wisnovsky admitted no payments were made.

*Wisnovsky Declaration; Exhibit 7; Couvrette Declaration*

13. **False Reliance on Consent Documents for Rent Deductions** – Defendants claim reliance on disputed documents to justify unpaid rent and alleged improvements—none of which are substantiated.

*Couvrette Declaration ¶¶62*

**G. Conclusion**

Defendants' Eighth Counterclaim fails as a matter of law and fact. The Redemption

26

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Agreement was explicitly revocable, and Ann lawfully revoked it. The Defendants were not parties to the agreement, no consideration was paid, and there is substantial evidence that the documents were procured through undue influence. Additionally, the factual record is riddled with contradictions, unsupported claims, and outright misrepresentations.

Even assuming arguendo that the Redemption Agreement or related documents created a valid contract—which Plaintiff disputes—Defendants' claim fails as a matter of equity.

The alleged "inheritance contract" would result in Defendants receiving over $4 million in property and control of Valley View Winery in exchange for no performance and no consideration and would conflict with Ann's later Trust Amendments. (See Couvrette Declaration ¶¶53–58; Exhibit 7; Exhibit 58).

Ann Wisnovsky revoked the Redemption Agreement in writing after obtaining independent legal counsel in 2019. As detailed in the Couvrette Declaration ¶¶50–52 and ¶¶57–58, she expressed deep regret, stating she was ashamed of the documents she had signed under pressure.

The Defendants were not even parties to the Redemption Agreement. It was between the Trust and Valley View Winery, not Mark and Michael individually. They lack standing to enforce a contract to which they were not parties and from which they received no enforceable rights.

**Equity does not compel enforcement** of a document that was procured through undue influence, lacked consideration, was later revoked, and would unjustly enrich the Defendants at the expense of their elderly mother and her estate. See *Neel v. Lee*, 240 Or App 70 (2010); *Church v. Woods*, 190 Or App 112 (2003).

For these reasons, summary judgment in favor of Defendants on their Eighth Counterclaim must be denied. Plaintiffs respectfully request that the Court enter judgment in their favor.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## V. DEFENDANTS ARE NOT ENTITLED TO ATTORNEY FEES

Defendants' request for attorney fees is premature, unsupported by statute, and unwarranted given the genuine disputes of material fact and the equitable nature of Plaintiffs' claims. Plaintiffs have asserted valid claims for elder abuse, unjust enrichment, and declaratory relief based on extensive factual evidence. These claims are not frivolous, brought in bad faith, or otherwise sanctionable, and Defendants cite no authority entitling them to fees at this stage.

First, to the extent Defendants seek fees under Fed. R. Civ. P. 54(d)(2), such a request is procedurally improper at the summary judgment stage. Rule 54 permits a prevailing party to file a motion for attorney fees **after** entry of judgment—not in advance of a determination on the merits.

Second, the Defendants' attempt to characterize this case as one governed by contractual fee-shifting provisions in the Vineyard or Winery Leases ignores the fact that Plaintiffs are expressly challenging the validity of those very agreements. Oregon law is clear that a party cannot recover fees under a contract alleged to be void or unenforceable unless and until the contract is upheld. ~~See Pac.orp. v. Henne, 314 Or. 511, 516 (1992)~~. Moreover, **Defendants are in default under the very leases they seek to enforce**, having failed to meet payment obligations and other material terms. A party in breach cannot invoke contractual provisions for attorney fees where it has not performed.

Third, as to Defendants' counterclaim for breach of the so-called "inheritance contract," their reliance on contractual attorney fee provisions also fails. Not only are Plaintiffs challenging the existence and enforceability of that alleged contract, but **Defendants are not even parties to the Redemption Agreement they seek to enforce**. The Redemption Agreement was entered into between the Trust and Wisnovsky Land, LLC—not Mark or Michael Wisnovsky individually. Lacking contractual privity, Defendants have no legal basis to claim fees under that agreement, even if it were enforceable.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Finally, Plaintiffs have presented extensive evidence of undue influence, lack of consideration, and procedural irregularities that raise significant equitable concerns. Even if attorney fees were statutorily available, this Court should decline to award them as a matter of equity and fairness. Plaintiffs have litigated in good faith and with factual support.

Accordingly, Defendants' request for attorney fees should be denied in its entirety, or, at minimum, deferred pending final resolution of all claims.

## VI. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court **deny Defendants' Motion for Partial Summary Judgment in its entirety**, including Defendants' claims for declaratory relief and enforcement of the Redemption Agreement.

Plaintiffs' own Motion for Summary Judgment, filed January 31, 2025, asks the Court to rule on **narrow issues of law** based on **undisputed material facts**, while Defendants' motion relies heavily on facts that are **genuinely disputed** and therefore inappropriate for resolution at the summary judgment stage. Because Defendants' motion raises fact questions that must be resolved by the trier of fact, their motion should be denied.

In *Lewis v. Worley (In re Va. Worley Revocable Living Trust)*, 318 Or App 127 (2022), the Oregon Court of Appeals emphasized that **summary judgment is not appropriate in trust-related litigation where material factual disputes exist**, including those involving a party's standing and their alleged misuse of trust-related authority. While *Lewis* addressed trustee conduct, the underlying principle applies here: courts must allow such factual disputes—particularly those involving **undue influence** to proceed to trial. Plaintiff alleges and facts support that Defendants used undue influence to procure the documents they now seek to enforce and enrich themselves.

Plaintiffs further request that the Court **grant summary judgment in Plaintiffs' favor on**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Defendants' Eighth Counterclaim for Breach of Contract**, as the Redemption Agreement was both **revocable and unsupported by consideration**, and Defendants have no enforceable rights under it.

Finally, Defendants' request for attorney fees should be denied.

Plaintiffs also incorporate by reference the evidentiary record and legal arguments presented in support of their dispositive motion, ~~including the documentary evidence confirming the revocability of the Redemption Agreement~~.

Dated: April 4, 2025

By: Stephen M. Brigandi

   s\*Stephen M. Brigandi/*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Proof of Service

I, Stephen M. Brigandi, hereby declare under penalty of perjury, that on April 4, 2025 I served the above Opposition to Motion for Partial Summary Judgment via this Court's on-line filing system in accordance with the Local Rules. The document was served upon:

Brooks M. Foster, Esq.
Chenowith Law Group
bfoster@chenowithlaw.com


James R. Dole, Esq.
Watkinson Laird Rubenstein, P.C.
jdole@woroaw.com


I declare under penalty of perjury that the foregoing is true and correct.


April 4, 2025

Stephen M. Brigandi

*By: /s/ Stephen M. Brigandi*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT


Gustitus Decl., Exhibit 1
Page 34 of 34