**Sandra S. Gustitus, OSB No. 143298**
Email: sgustitus@chenowethlaw.com
**Bradley T. Crittenden, OSB No. 173274**
Email: bcrittenden@chenowethlaw.com
Chenoweth Law Group, P.C.
510 SW Fifth Avenue, Fourth Floor
Portland, OR 97204
Telephone: 503-221-7958
Facsimile: 503-221-2182

**James R. Dole, OSB No. 892272**
Email: jdole@wlrlaw.com
Watkinson Laird Rubenstein, P.C.
1246 NE 7th Street, Suite B
Grants Pass, OR 97526
PO Box 10567
Eugene, OR 97440
Telephone: 541-484-2277
Facsimile: 541-484-2282

Of Attorneys for Defendants Mark A. Wisnovsky,
Michael J. Wisnovsky, and Valley View Winery, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Medford Division

| | |
|---|---|
| JOANNE COUVRETTE, as trustee of the Ann M. Wisnovsky Trust; and WISNOVSKY LAND, LLC,<br><br>                   Plaintiffs,<br><br>   v.<br><br>MARK A. WISNOVSKY, an individual; MICHAEL J. WISNOVSKY, an individual; PATRICK HUYCKE, an individual; VALLEY VIEW WINERY, INC., an Oregon corporation; JARVIS, DREYER, GLATTE & LARSEN, LLP, an Oregon partnership, fka Huycke O'Connor Jarvis, LLP,<br><br>                   Defendants. | Case No. 1:21-CV-00157-CL<br><br>**WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS** |

**WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.   OBJECTION TO PLAINTIFF JOANNE COUVRETTE'S DECLARATION TESTIMONY .....................3

III.  LEGAL ARGUMENT ...........................................................................................................4

      A.    Plaintiffs Are Attempting to Hide Behind the Law Licenses of the Absent Brigandi and Tim Murphy When the Evidence Shows That Couvrette Is Very Likely the Person Who Drafted the Sanctionable Briefs .........................................4

      B.    The Court's Issuance of a Show Cause Order Renders Plaintiff's "Safe Harbor" Arguments Legally Irrelevant ...............................................................................19

      C.    There Is No Dispute That Plaintiffs Said They Would Not Take Any Corrective Action Until After the Wisnovsky Defendants Filed Their Motion ...............................................................................................................21

      D.    Plaintiffs Waived the 21-Day Safe Harbor Provision, or They Are Estopped from Enforcing It ..................................................................................................24

      E.    Plaintiffs Did Not Take Corrective Action Within the Safe-Harbor Period ..........25

      F.    The Wisnovsky Defendants Seek an Award of Attorney Fees Against Plaintiffs, Striking of Their Three Rule-Violating Briefs, Dismissal of Their Lawsuit, and Monetary Sanctions Against Their Attorneys.......................................................28

      G.    Attorney Tim Murphy Should Be Held Accountable for Plaintiffs' Rule Violations...............................................................................................................30

IV.   CONCLUSION....................................................................................................................31

# TABLE OF AUTHORITIES

## CASES

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) ......................................................22, 23

*Brickwood Contractors, Inc. v. Datanet Eng's, Inc.*, 369 F.3d 385 (4th Cir. 2004)...............22, 23

*Day v. Advanced M & D Sales, Inc.*, 336 Or. 511 (2004)..............................................24

*Marshall v. Wilson*, 175 Or. 506 (1944) ............................................................25

*Powell v. Goff*, 126 Or. App. 194 (1994)...........................................................25

*Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) ......................................22, 23

*United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001) ..............................20, 21

*Shahid v. Esaam*, No. A25A0196, 2025 WL 1792657 (Ct. App. Ga. June 30, 2025)...................29

*Sneller v. City of Bainbridge Island*, 606 F.3d 636 (9th Cir. 2010)..................................25

*Triantos v. Guaetta & Benson, LLC*, 91 F.4th 556 (1st Cir. 2024)........................................22, 23

## STATUTES

Or. Rev. Stat. § 9.320........................................................................11

Or. Rev. Stat. § 127.545......................................................................26

## FEDERAL RULES

Fed. R. Civ. P. 11 ...................................................................... *passim*

Fed. R. Evid. 602 .............................................................................4

Fed. R. Evid. 801 .............................................................................3

Fed. R. Evid. 802 .............................................................................3

## LOCAL RULES

Local Rule 7-1.......................................................................... *passim*

Local Rule 83-3.............................................................................30

Local Rule 83-7.......................................................................... *passim*

**REPLY**

Defendants Mark Wisnovsky ("Mark"), Michael Wisnovsky ("Mike"), and Valley View Winery, Inc. ("Valley View") (collectively, "Wisnovsky Defendants") submit this reply in support of the Wisnovsky Defendants' *Motion for Sanctions* (ECF 184) and in rebuttal to the *Response to Defendants' Motion for Sanctions* (ECF 194) filed by Plaintiffs Joanne Couvrette ("Couvrette"), Wisnovsky Land, LLC ("Wisnovsky Land"), and Michelle Sullivan as Special Administrator to the Estate of Ann Wisnovsky ("Sullivan") (collectively, "Plaintiffs").

This reply is supported by the portions of the Court record cited below and the *Declaration of Mark Wisnovsky (Aug. 29, 2025)* ("Mark Wisnovsky Decl.") with Exhibits 3–12 and 15–16, the *Declaration of Mike Wisnovsky (Aug. 29, 2025)* ("Mike Wisnovsky Decl.") with Exhibit 20, the *Declaration of Bradley T. Crittenden (Aug. 29, 2025)* ("Crittenden Decl.") with Exhibits 13, 14, and 17, and the *Declaration of Sandra S. Gustitus (Aug. 29, 2025)* ("Gustitus Decl.") with Exhibits 18, 19, and 21.

For the reasons set forth below, the Court should grant the Wisnovsky Defendants' motion for sanctions.

## I.     INTRODUCTION

The Wisnovsky Defendants' motion showed that Plaintiffs were on notice as early as April 4, 2025, that their motion for summary judgment contained fake cases.  ECF 184 at 4–5. Instead of acknowledging they were caught using artificial intelligence to support their dispositive motion with fake legal authority, Plaintiffs doubled down and cited more fake cases in their response and reply briefs.  When the Wisnovsky Defendants served their motion for sanctions on Plaintiffs to provide a safe-harbor period in which to take corrective action and

Page 1 -     **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

avoid sanctions, Plaintiffs' counsel undeniably told the Wisnovsky Defendants' counsel he would not take any corrective action until after the motion was filed. And after the Wisnovsky Defendants filed their motion for sanctions, Plaintiffs did not even withdraw their sanctionable motion. Instead, they filed a notice of errata that asked the Court simply to disregard the two fake case citations in the motion, leaving intact the fake legal rules attributed to the fake cases, and also filed amended response and reply briefs that simply omitted the fake case citations and left intact all of the fake legal rules created by artificial intelligence.

Plaintiffs presented no evidence to contradict those facts. Instead, Plaintiffs' response misrepresents the facts, presents inadmissible evidence about attorney Brigandi's purported health condition, fails to explain attorney Tim Murphy's role in the violations even though Plaintiffs' counsel requested an extension of time to file the response solely because he needed more time to obtain Tim Murphy's testimony, and casts all blame for the fake citations and misrepresentations of law on attorney Brigandi who, until very recently, has allegedly been incapacitated and unable to explain his role in the violations. Neither Couvrette nor attorney Michelle Sullivan presented any testimony as to their role in the violations and have therefore failed to carry their burden in showing why the Court should not impose the requested sanctions, including striking Plaintiffs' three sanctionable filings, dismissing their claims and defenses with prejudice, and awarding reasonable attorney fees to the Wisnovsky Defendants.

Regardless of whether Couvrette's inadmissible testimony about Brigandi is true, the evidence presented with this reply strongly suggests that Couvrette is the person who drafted the sanctionable briefs that contained 15 fake cases and misrepresentations of seven real cases, and she simply had her *pro bono* attorney and friend Brigandi sign and file the documents for her.

Page 2 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

The Court should reject Plaintiffs' disingenuous attempt to escape accountability by blaming an attorney who suddenly is unavailable to speak for himself when Plaintiffs' case is at risk of being dismissed.

The facts of the matter are that Plaintiffs unapologetically filed three separate briefs with 15 fake cases and seven misrepresentations of real cases and said they would take no corrective action whatsoever until after the motion for sanctions was filed. They began their fraudulent and remorseless course of conduct a mere seven weeks after the Court warned them that their case could be dismissed if they continued to disobey the governing rules. The facts and the law show that the Wisnovsky Defendants' requested sanctions are necessary and appropriate.

## II.    OBJECTION TO PLAINTIFF JOANNE COUVRETTE'S DECLARATION TESTIMONY

The Wisnovsky Defendants object to the testimony stated in the *Declaration of Joanne Couvrette in Support of Plaintiffs' Response to Defendants' Motion for Imposition of Sanctions* (ECF 194-1) on the grounds that it is inadmissible hearsay and not based on personal knowledge. The Court should disregard that testimony in deciding whether and to what extent it should impose sanctions on Plaintiffs and/or their attorneys.

Rule 802 of the Federal Rules of Evidence states "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Rule 801 defines "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

Page 3 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Rule 602 states in relevant part, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Couvrette's declaration contains testimony about conversations she purportedly had with an individual named Connor Brigandi about Plaintiffs' attorney Stephen Brigandi. ECF 194-1 ¶¶ 3–7. Couvrette's declaration states what Connor Brigandi allegedly told Couvrette outside of court, and Couvrette is presenting Connor Brigandi's statements for the truth of the matter asserted. *Id.* ¶¶ 3–6. That testimony is inadmissible hearsay. Couvrette further testifies about Mr. Brigandi's physical and mental condition without introducing any evidence sufficient to support a finding that she has personal knowledge of his physical and mental condition. *Id.* ¶ 7. That testimony is inadmissible because it is not based on personal knowledge.

None of the testimony in ECF 194-1 is admissible because it is hearsay and not based on personal knowledge. The Court should therefore disregard it in deciding whether and to what extent it should impose sanctions on Plaintiffs and/or their attorneys.

### III.    LEGAL ARGUMENT

**A.    Plaintiffs Are Attempting to Hide Behind the Law Licenses of the Absent Brigandi and Tim Murphy When the Evidence Shows That Couvrette Is Very Likely the Person Who Drafted the Sanctionable Briefs.**

Plaintiffs argue sanctions are inappropriate because Brigandi was "the attorney responsible for drafting and filing the offending pleadings," and, according to Couvrette's inadmissible testimony, Brigandi "is no longer in a position to provide an explanation for his actions because of his current medical condition." ECF 194 at 10 (citing ECF 194-1 ¶¶ 3–7). Thus, Plaintiffs' response shows that their strategy to avoid sanctions is to blame Brigandi, hide

Page 4 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

behind his law license, and argue sanctions cannot be imposed because Brigandi is unavailable to account for his sanctionable conduct. Even if Couvrette's inadmissible testimony about Brigandi's health condition were true, sanctions would still be appropriate because Brigandi already had an opportunity to explain his conduct and the Court did not find that "explanation satisfactory to avoid the requested sanctions." ECF 189 at 2.

The evidence shows that Plaintiffs are also attempting to hide behind the law license of attorney Tim Murphy, who was allowed to withdraw from representing Plaintiffs on May 22, 2025—only two weeks after the Wisnovsky Defendants served their motion for sanctions on Plaintiffs. ECF 175; ECF 177 ¶ 3; Crittenden Decl. ¶ 10, Ex. 17 at 1.[1]

On June 16, the Court held a status conference, which Brigandi attended, to decide how to proceed in deciding the merits of the Wisnovsky Defendants' motion for sanctions. ECF 188. At the conference, the Court stated it would be issuing a show cause order and setting a deadline of June 30 for Plaintiffs to file a response to the motion for sanctions. ECF 188; ECF 189. Brigandi objected to the June 30 deadline multiple times and asked that Plaintiffs be given 30 days to file a response, but the Court reiterated that Plaintiffs would have only 14 days to file their response. Crittenden Decl. ¶ 3.

Plaintiffs were apparently dissatisfied with the Court's decision not to give them more time to draft a response, because, only four days after the hearing, Plaintiffs' counsel Curtis Glaccum emailed the Wisnovsky Defendants' counsel, requesting an extension of time to file a response to the Wisnovsky Defendants' motion for sanctions. Crittenden Decl. ¶ 4, Ex. 13.

---

[1] Tim Murphy did not comply with the conferral requirements of LR 7-1 before filing his motion, and the Wisnovsky Defendants never consented to his withdrawal. Crittenden Decl. ¶ 10, Ex. 17 at 1.

Page 5 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Mr. Glaccum wrote,

"Since the Court's hearing on Monday [i.e., June 16], I have been trying to reach Tim Murphy, who I have never spoken to. His office recently informed me that Tim had a death in the family and had to travel out of state to attend a funeral, and will not be back in the office until next Monday.

"I obviously need to speak to Tim in order to formulate a response, and I am hoping to touch base with him on Monday. However, given the delay, I would like to file a Motion for Extension of Time of our deadline to respond."

Ex. 13 at 3 (emphasis added). On June 23, the Wisnovsky Defendants' counsel responded that the requested extension is problematic because it will cause the Wisnovsky Defendants' deadline to file their reply brief to be one day before the scheduled hearing on their motion for sanctions, and they do not want to delay a hearing on their motion. *Id.* at 2. The Wisnovsky Defendants' counsel asked Mr. Glaccum to propose a shorter extension. *Id.*

Mr. Glaccum responded on June 23 that he cannot propose a shorter extension until he speaks with Tim Murphy and that he could instead "draft a *version* of a response without [Tim Murphy], but it doesn't give me the full picture." *Id.* at 1 (emphasis in original). After further conferral, the Wisnovsky Defendants decided not to object to Plaintiffs' request for a one-week extension to file their response brief. *Id.* On June 30, 2025, the Court granted Plaintiffs' requested extension and set a deadline of July 7 for Plaintiffs to file their response. ECF 192.

On July 7, 2025, Mr. Glaccum filed a letter addressed to the Court, describing how, on June 30, Brigandi was admitted to a hospital and was unconscious. ECF 193 at 1. Mr. Glaccum explained that Brigandi was "unable to sign any declaration in support of the Response to Defendants' Motion for Imposition of Sanctions[.]" *Id.* The next day, Plaintiffs filed their response brief and a declaration from Couvrette that cast all blame for the sanctionable filings on

Page 6 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Brigandi and mentioned Tim Murphy only for purposes of making clear that the Court had allowed him to withdraw from representing Plaintiffs. ECF 194 at 7, 10. Plaintiffs provided no explanation or evidence regarding Tim Murphy's role in the sanctionable filings, and yet that was the express and sole reason why Plaintiffs had requested an extension to file their response.

Thus, in the course of two weeks, Plaintiffs' strategy in formulating a response went from, "I obviously need to speak to Tim in order to formulate a response," to, "Brigandi is responsible, but he's lying unconscious in a hospital and cannot answer for himself—and by the way, we have nothing to say about Tim except that he withdrew six weeks ago."

Plaintiffs' response suggested Brigandi "may not survive" and he "may never practice law again." ECF 194 at 10. On July 8, the Court stayed the sanctions proceedings and ordered the parties to file a joint status report by August 11. ECF 195. Over the next few weeks, Plaintiffs produced no admissible evidence of Brigandi's purported health condition, despite repeated requests from the Wisnovsky Defendants. Crittenden Decl. ¶ 5. Plaintiffs nonetheless continued to represent to the Court and the Wisnovksy Defendants that Brigandi was in such poor condition that he could not answer for himself. ECF 196 at 2–3. The Wisnovsky Defendants made clear in the joint status report that they were ready, willing, and able to proceed to a decision on the merits of their motion for sanctions regardless of whether Brigandi was able to answer for himself. *Id.* at 3–5.

On August 12, the Court scheduled a hearing on the Wisnovsky Defendants' motion to occur on October 29, 2025. ECF 198. Approximately four hours after the Court entered that order—and contradicting Plaintiffs' many representations about Brigandi's ability to speak for

Page 7 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

himself—Brigandi made an appearance in Court by filing what he falsely described as an unopposed motion to be dismissed as counsel for Plaintiffs. ECF 199 at 1–2; ECF 200 at 2–3.

The Wisnovsky Defendants filed a response to Brigandi's motion that disputed his false representation to the Court that he had conferred with all counsel in this matter, thus violating LR 7-1 and LR 83-7, and Mr. Glaccum also sent an email to the Court requesting a status conference because Brigandi had "inaccurately asserted that his client and all counsel in this case did not object to his withdrawal." ECF 200 at 2–3; Gustitus Decl. ¶ 7, Ex. 21. The Court held a status conference on August 28, 2025, at 10:00 a.m., and decided not to allow Brigandi to withdraw.

About five hours after the status conference ended, Brigandi sent an email to the Wisnovsky Defendants' counsel with an attached reply and order in support of his motion for leave to withdraw that he intended to file with the Court. Gustitus Decl. ¶ 3, Ex. 18. Brigandi's reply brief included the following explanation of how he thought he had complied with LR 7-1:

> "On or about August 5, 2025, Brigandi called Defendants' Attorney Sandra Gustitus ('Gustitus') to meet and confer regarding this Motion to Withdraw. When Gustitus did not answer the call, Brigandi was transferred to the Law Firm's primary receptionist, who informed Brigandi that Gustitus's voicemailbox [*sic*] was full, and asked if a message should be taken. Brigandi informed the receptionist that he wished for Gustitus to return the call. Gustitus never called back."

Ex. 18 at 3. Brigandi's statements are demonstrably false (*see* Gustitus Decl. ¶ 5), but more to the point, they plainly show that Brigandi has the capacity and wherewithal not only to draft a motion, reply brief, and a proposed order, but also to explain in detail how he thinks he complied with the Court's rules.

Page 8 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

The Wisnovsky Defendants' counsel responded to Brigandi's email about an hour later:

> "I've reviewed the reply brief and order you sent and that you apparently intend to file in support of your motion to withdraw. Like your motion to withdraw, it contains lies and misrepresentations to the court. You never called our office that day to confer on the motion to withdraw. Despite that, we are glad to see that you are capable of drafting briefing and corresponding regarding this matter.

> "Given that you appear to be in adequate health to explain your side of the story with respect to your desire to withdraw from this lawsuit, we hope you are also able to finally provide an explanation regarding Plaintiffs' sanctionable filings that the Court ordered you and Plaintiffs to provide in the June 16, 2025 show cause order. You have not yet provided that explanation solely because, as Curtis Glaccum and Ms. Couvrette have informed us for several weeks, you were incapacitated and/or suffered from cognitive difficulties that prevented you from testifying about your involvement in the sanctionable filings. Your motion and reply brief demonstrate that you are no longer incapacitated or suffering from cognitive difficulties that would prevent you from providing the explanation ordered by the Court in its show cause order.

> "Please provide any further explanation as soon as possible to comply with the Court's order regarding the sanctionable filings. Please confirm you'll do so by noon tomorrow, August 29, 2025, as our reply brief in support of our motion for sanctions is due tomorrow and we would like the opportunity to address any explanation you may give."

Ex. 19 at 1. Brigandi has not responded to that email as of the filing of this reply brief. Gustitus Decl. ¶ 6.

Notably missing from this four-month-long saga that Plaintiffs have created around two conveniently absent attorneys is an explanation from Couvrette and attorney Michelle Sullivan about their roles in the rule violations. Neither Couvrette nor Sullivan deny that they had full knowledge and awareness of the Wisnovsky Defendants' numerous filings that called attention to the fake citations and case quotations. If, as Couvrette states, Brigandi is indeed the "attorney

Page 9 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

responsible for drafting and filing the offending pleadings," then Couvrette and/or Sullivan apparently authorized him to do that because they were aware he was doing it, and neither of them provided any testimony or evidence excusing their role in the violations. Plaintiffs should therefore not avoid sanctions for Couvrette and Sullivan's respective roles in the violations they have failed to excuse.

Moreover, that conclusion is supported by the evidence that shows it is more likely than not that Couvrette drafted the three sanctionable briefs, and her good friend and *pro bono* transactional attorney, Brigandi, simply agreed to file them for her, through Tim Murphy's Oregon license.

### 1. Couvrette is an experienced pro se *litigant.*

Couvrette has a long history of appearing *pro se* in litigation, going back at least to a 2007 California court of appeals case in which she appeared *pro se* in a divorce proceeding. *In re Marriage of Couvrette*, No. D047566, 2007 WL 3154269, at *1 (Cal. Ct. App. 4th Dist. Oct. 30, 2007). In that case, the court of appeals reversed the trial court's judgment regarding a modification to spousal and child support because the trial court issued its judgment based on Couvrette's declaration that contained inadmissible hearsay, similar to the declaration she filed in support of Plaintiffs' response to the Wisnovsky Defendants' motion. *Id.* at *4–6.

More recently, on July 9, 2024, Couvrette filed two *pro se* lawsuits in Jackson County small claims court on behalf of Plaintiff Wisnovsky Land, LLC that alleged breach of lease claims against Defendant Valley View Winery, Inc. Mark Wisnovsky Decl. ¶ 4. Valley View removed the two cases to Jackson County Circuit Court. *Id.* Couvrette continued to appear *pro se* on behalf of Wisnovsky Land and filed two complaints against Valley View. *Id.*, Exs. 3, 4.

Page 10 -     **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Valley View filed motions to dismiss the complaints pursuant to ORS 9.320, which generally prohibits an LLC from appearing in Oregon courts without an attorney. Mark Wisnovsky Decl. ¶ 5. Couvrette responded in opposition to the motions, presenting her own legal argument and analysis. *Id.* ¶ 6, Ex. 5. The trial court dismissed both lawsuits pursuant to ORS 9.320. Mark Wisnovsky Decl. ¶ 7. Valley View then sought an award of attorney fees pursuant to the leases Couvrette had sought to enforce against Valley View. *Id.*

Couvrette finally hired a law firm to represent Wisnovsky Land in opposition to Valley View's attorney fee petitions. *Id.* ¶ 8. The opposition brief included Couvrette's sworn declaration dated December 26, 2024, containing the following testimony:

> "Throughout the course of my personal life and career <u>I have had cause to represent myself and various business interests in legal proceedings, in both state (CA.) and federal court, approximately ten times</u>. I have used California Small Claims Courts for rent collections for non-human entities in California. <u>I have often been successful even when an attorney was present on the other side.</u>
> . . .
> "When I learned that these matters were being moved to Circuit Court, <u>I did research to determine if I could represent Wisnovsky Land, LLC. My research suggested that I could not represent Wisnovsky Land, LLC, but that pursuant to ORS 65.174(1) I could bring this as a 'derivative suit' wherein I could represent the interests shared between myself the LLC [*sic*] in which I am a member.</u> I was not aware of the Oregon case law which states that an attorney is still required in a derivative suit."

*Id.* ¶ 9, Ex. 6 at 4:10–15, 5:3–8 (emphasis added).

Based on Couvrette's declaration, Wisnovsky Land argued it was objectively reasonable for non-attorney Couvrette to represent it in Oregon court:

> "Likewise, bringing this claim pro-se was reasonable for Ms. Couvrette. <u>Ms. Couvrette has far more litigation experience than the average lay person, including litigating multiple lease violation claims on behalf of school districts in California small claims</u>

Page 11 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

courts.  It was Ms. Couvrette's experience that this matter brought in small claims may be litigated by a non-attorney, and that matters brought in small claims court remain in that venue.

"After Defendants forced the removal of this claim to Circuit Court, Ms. Couvrette did her diligence to determine if she could represent the LLC.  In her research she reviewed ORS 65.174(1) which states:

> A proceeding may be brought in the right of a domestic corporation or foreign corporation to procure a judgment in the corporation's favor by:
> (a) Any member or members having two percent or more of the voting power or by 20 members, whichever is less. . . .

"Being so qualified, Ms. Couvrette reasonably understood that she could bring this matter as a 'derivative suit' and represent the interests of the LLC pro-se."

Mark Wisnovsky Decl. ¶¶ 10–11, Ex. 7 at 9:1–14; Ex. 8 at 8:1–14 (emphasis added; internal citation and ellipsis omitted).  Judge Bloom of the Jackson County Circuit Court was unpersuaded and awarded Valley View almost $40,000 in attorney fees.  Mark Wisnovsky Decl. ¶ 12, Exs. 9, 10.

The foregoing evidence shows Couvrette has been litigating *pro se* against the Wisnovsky Defendants in lawsuits occurring contemporaneously with this one, she has "far more litigation experience than the average lay person," she has represented herself in approximately ten lawsuits in state and federal courts, and on several occasions she has represented business entities in California small claims court where she was "often" successful in cases where the opposing parties were represented by licensed attorneys.  Couvrette likely drafted or substantially participated in drafting the three-rule violating summary judgment briefs filed by Plaintiffs in this case.

Page 12 -   **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

**2. *Couvrette filed briefs containing fake cases while representing herself* pro se *in a recent Oregon Court of Appeals proceeding.***

Additional evidence makes it even more likely that Couvrette drafted or participated in the drafting of Plaintiffs' summary judgment briefs. This evidence shows that Couvrette recently represented herself before the Oregon Court of Appeals and filed two legal briefs that each cite a fake judicial opinion to support her legal arguments. She filed those two briefs at about the same time Brigandi filed the three sanctionable briefs in this case. The three briefs filed by Brigandi are conspicuously similar in format and style to Couvrette's briefs in the Oregon Court of Appeals proceeding.

On October 10, 2024, Couvrette filed a notice of appeal in Mark and Mike Wisnovsky's Oregon state court trust administration action that this Court previously remanded to the Jackson County Probate Department. Mark Wisnovsky Decl. ¶ 13; *Wisnovsky v. Couvrette*, Case No. 1:23-cv-00414-CL, 2023 WL 7404860, at *1 (D. Or. Nov. 9, 2023) (granting Mark and Mike Wisnovsky's motion to remand to state court). The trial court in the state court action denied Couvrette's motion for the trial court to take judicial notice of an alleged fact. Mark Wisnovsky Decl. ¶ 14. Couvrette appeared *pro se* in her appeal of the trial court's order, and Mark and Mike filed a motion to dismiss the appeal because the trial court's order was not appealable. *Id.* Mark and Mike also sought an award of attorney fees pursuant to ORS 20.105 and ORS 130.815 because the appeal lacked an objectively reasonable basis and related to the validity or administration of a trust, respectively. *Id.*

On January 7, 2025, Couvrette filed a response to Mark and Mike's motion and cited the fake case of *Crandon Capital Partners v. Shelk*, 181 Or. App. 139, 45 P.3d 463 (2002), to

Page 13 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

support the fake rule, "Oregon law, as affirmed in [*Crandon*], prohibits the award of attorney fees when the underlying claims have been rendered moot." Mark Wisnovsky Decl. ¶ 15, Ex. 11 at 4; *see also* Ex. 11 at 5, 9, 12–13, 16 (citing *Crandon Capital Partners* nine more times). "181 Or. App. 139" leads to *Leppanen v. Lane Transit District*, 181 Or. App. 136 (2002). "45 P.3d 463" leads to the case of *State v. Ciancanelli*, 45 P.3d 451 (2002). Neither of those cases have anything to do with the alleged legal rule that Couvrette attributed to *Crandon Capital Partners*. There are at least five *Crandon Capital Partners v. Shelk* cases, but none that have the reporter citations Couvrette attributed to that case name, and none that support the rule Couvrette attributed to it:

- *Crandon Capital Partners v. Shelk*, 345 Or. 158, 190 P.3d 379 (2008) (Table);
- *Crandon Capital Partners v. Shelk*, 342 Or. 555, 157 P.3d 176 (2007);
- *Crandon Capital Partners v. Shelk*, 340 Or. 483, 135 P.3d 318 (2006) (Table);
- *Crandon Capital Partners v. Shelk*, 219 Or. App. 16, 181 P.3d 773 (2008); and
- *Crandon Capital Partners v. Shelk*, 202 Or. App. 537, 123 P.3d 385 (2005).

On February 3, 2025, the court dismissed Couvrette's appeal, and Mark and Mike filed an attorney fee petition to recover their attorney fees incurred on appeal. Mark Wisnovsky Decl. ¶ 16. On May 13, 2025, Couvrette filed a response to the fee petition and again cited the fake case of *Crandon Capital Partners v. Shelk*, 181 Or. App. 139 (2002), writing, to support the alleged rule, "In [*Crandon*], the Court of Appeals reaffirmed that once a case becomes moot the trial court loses its authority to decide the merits of the case or to award attorney fees." *Id.* ¶ 17, Ex. 12 at 6; *see also* Ex. 12 at 3, 8, 11 (citing *Crandon Capital Partners* three more times).

Couvrette file her first *pro se* appellate brief citing the fake case on January 7, 2025, and she filed her second on May 13, 2025. Plaintiffs filed their motion for summary judgment on January 31, 2025 (ECF 142), response brief on April 4, 2025 (ECF 155), and reply brief on May

Page 14 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

2, 2025 (ECF 168). Thus, Couvrette was filing her sanctionable *pro se* briefs in the Oregon Court of Appeals contemporaneously with Brigandi's filing of Plaintiffs' sanctionable briefs in this case.

The briefs Couvrette filed in the court of appeals are drafted and formatted in a conspicuously similar manner to the three sanctionable briefs Brigandi filed in this lawsuit. *Compare* Ex. 11 and Ex. 12 *with* ECF 142, ECF 155, and ECF 168. Couvrette is engaged in the exact same sanctionable behavior of citing fake cases in other lawsuits she is litigating *pro se*. This must weigh heavily on any determination of sanctions in the present case.

### 3. *Transactional attorney Brigandi has been representing Plaintiffs* pro bono *in this lawsuit.*

The evidence further shows that Brigandi is a transactional attorney who has been representing Plaintiffs *pro bono* in this lawsuit so that Couvrette has a licensed attorney through whom to file documents she has drafted.

Brigandi's LinkedIn profile states his current private practice focuses "on general business and corporate transactions, real estate, franchising, and labor and employment law" with a "[s]pecial emphasis on representing restaurant owners and operators." Crittenden Decl. ¶¶ 6–7, Ex. 14 (showing screen shots of Brigandi's LinkedIn profile, located at https://www.linkedin.com/in/stevebrigandi, as of August 28, 2025). Brigandi's prior work experience shows that he is a transactional attorney who has specialized in intellectual property, franchising, and corporate law. Crittenden Decl. ¶ 8; Ex. 14 at 1–2. For instance, he was corporate counsel for Jack-in-the-Box for almost 12 years and then served as its vice president of franchising for another year. Crittenden Decl. ¶ 8; Ex. 14 at 2.

Page 15 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Unlike Couvrette who has almost two decades of litigation experience, Brigandi apparently has no prior litigation experience at all—words such as "litigation," "dispute," "plaintiff," "defendant," and "lawsuit" do not appear in his LinkedIn profile.  Crittenden Decl. ¶ 9; Ex. 14 at 1–2.

On March 22, 2024, about six weeks after Brigandi filed his motion for leave to appear *pro hac vice* in this lawsuit (ECF 107), Couvrette's litigation partner, supporter, and agent, Robert Wisnovsky, called Mike Wisnovsky and left a voicemail stating that Brigandi's son, Connor, was dating Couvrette's daughter, Anna Maria, and that Brigandi is appearing *pro bono* for Couvrette and Robert in this lawsuit, apparently as a favor so Plaintiffs can litigate this case without incurring legal fees.  Mike Wisnovsky Decl. ¶ 4.  Robert stated the following in his voicemail:

> "Hey, hopefully you got my other message.  When I meant that we don't have an attorney, I really meant <u>we're not paying for an attorney</u>.  I don't know if you remember Connor who was Anna Maria's girlfriend?  Excuse me, Anna Maria's boyfriend, <u>whose dad was a corporate attorney for Jack-in-the-Box for 13 years and he's representing us for nothing.  So, if you want to continue on, we're not spending a dollar compared to what you're spending</u>.  I filed a motion today to delay this other trial of this May 2nd thing, which they're going to grant.  And you're just going to continue hemorrhaging money.  Like I told you, when I saw him at the hearing, I saw you there.  I ripped fucking Dole's heart out right there.  I didn't even go to law school.  And your boy, Jim.  Oh, my God.  What a failure that guy is.  What about Brooks?  7 hour deposition.  Took him out too, so I'm fully engaged now with this.  Walk away.  Make money and quit losing money.  So if you're interested in that, call me."

*Id.* (emphasis added).

Page 16 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

About four months later, on July 18, 2024, Robert emailed Mark and Mike Wisnovsky, as well as their attorneys in this lawsuit, stating:

> "Got your latest motion.  Pretty funny.  Actually, accomplishes nothing except increase your legal bills!  This is getting fun.  Look forward to more hearings, motions and appeals.  <u>Cost us nothing</u>!  I wonder what an appeal to the Oregon Appellate court will cost you. If you have so much money to burn with your worthless attorneys, then maybe you should pay your rent before you are evicted."

Mark Wisnovsky Decl. ¶ 18, Ex. 15 (emphasis added).  In this context, the word "us" could have only referred to Robert and Couvrette, who have been aligned and working together for several years now in their efforts to deprive the Wisnovsky Defendants of their rightful inheritance. Robert's email therefore communicated that Robert and Couvrette were jointly carrying out a scheme to harass the Wisnovsky Defendants through *pro se* "hearings, motions and appeals" that would only increase the Wisnovsky Defendants' legal bills while costing Robert and Couvrette "nothing" since they would not be paying for attorneys.

On November 5, 2024, Robert emailed Mark and Mike regarding Couvrette's recent loss in the state court lease cases.  Robert asserted he and Couvrette were even more determined to increase the cost of litigation for the Wisnovsky Defendants.  Robert wrote:

> "Anywhere [*sic*] after yesterday's minor setback we have reloaded and changed our strategy.  Gey [*sic*] ready to get your checkbook out.  We will get our rent and probable eviction.  We will never stop."

Mark Wisnovsky Decl. ¶ 19, Ex. 16.  This evidence confirms that Couvrette and Robert ("we") "will never stop" their campaign of Couvrette's *pro se* litigation against the Wisnovsky Defendants as long as the courts allow it to continue.  As part of that campaign, Couvrette

Page 17 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

convinced her friend Brigandi to represent Plaintiffs *pro bono* in this lawsuit and to file the summary judgment briefs she drafted, replete with fake case law.

### 4. *Couvrette likely drafted or participated in drafting Plaintiffs' sanctionable summary judgment briefs.*

The foregoing evidence shows (1) about a year ago Couvrette proudly boasted of her substantial *pro se* litigation experience in state and federal courts dating back at least to 2007 and her professed ability to win lawsuits against parties represented by counsel, (2) within the past year Couvrette filed two lawsuits as a *pro se* litigant on behalf of Wisnovsky Land against Valley View, (3) only a few months ago Couvrette filed in the Oregon court of appeals two legal briefs containing fake cases that are very similar in form and appearance to the three sanctionable briefs Plaintiffs filed in this case, and (4) transactional, corporate attorney Brigandi has been representing Plaintiffs *pro bono* in this lawsuit as a favor to Couvrette, who is the mother of his son's girlfriend.  It is very likely that Couvrette inserted the fake citations hallucinated by artificial intelligence into Plaintiffs' three sanctionable summary judgment briefs.

Couvrette has not denied that she was fully aware of the Wisnovsky Defendants' filings that identified the fake cases and misrepresentations of law.  Couvrette decided not to provide any excuse for Plaintiffs' sanctionable conduct and instead decided to cast all blame on Brigandi who, according to her inadmissible testimony, is mentally incapable of explaining his role in the violations.  We now know that is not true because, on August 28, 2025, Brigandi emailed the Wisnovsky Defendants a reply brief in support of his motion for leave to withdraw that explains how he thinks he complied with the Court's rules in filing his motion for leave to withdraw. Gustitus Decl. ¶ 3, Ex. 18 at 3.

Page 18 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

The Court already found Brigandi's explanation for the fake cases unsatisfactory, and Plaintiffs did nothing to cure that deficiency after the Court ordered them to "show cause as to why the requested sanctions should not be imposed, and this action dismissed[.]"  ECF 189 at 2. Plaintiffs failed to carry their burden to avoid the imposition of sanctions, including the sanction of their claims and defenses being dismissed with prejudice.

The Court should not be persuaded by Plaintiffs' dishonest "blame Brigandi" strategy to avoid the sanctions the Court in December 2024 warned it could impose if Plaintiffs continued their rule-flouting conduct.  Plaintiffs did not heed the Court's warning and instead violated Rule 11 and LR 83-7 at least 22 times in the five months following that warning.  And, as shown in the sections below, Plaintiffs still have not taken corrective action to avoid sanctions.  The Court should grant the Wisnovsky Defendants' motion for sanctions in full.

**B.    The Court's Issuance of a Show Cause Order Renders Plaintiff's "Safe Harbor" Arguments Legally Irrelevant.**

Plaintiffs' response argues that sanctions should not be imposed because Plaintiffs were not given the full 21-day safe harbor period under Rule 11(c)(2) to avoid the Wisnovsky Defendants' motion for sanctions.  ECF 194 at 4–5.  That argument is factually wrong for reasons stated in Section C below, and it is legally irrelevant because a party is not afforded safe harbor to take corrective action when, as the Court did here, the party is ordered to "show cause as to why the requested sanctions should not be imposed, and this action dismissed[.]"  ECF 189 at 2.

Rule 11(c)(3) allows district courts to issue show cause orders that "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated

Page 19 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Rule 11(b)." When a district court issues a show cause order compelling a plaintiff to explain why certain conduct should not be sanctioned, the rules do not grant the plaintiff 21 days to take corrective action to avoid sanctions. Adv. Comm. Notes, 1993 Amend. ("Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative."); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001) (quoting Adv. Comm. Notes, 1993 Amend., and construing Rule 11(c)(3) as not allowing safe harbor opportunity to correct sanctionable conduct).

The Court's June 16, 2025 *Order to Show Cause* is apparently based on Rule 11(c)(3) because the order describes Plaintiffs' rule-violating conduct as being akin to a contempt of court. The order references Plaintiffs' prior rule violations, the Court's prior admonishment not to violate the rules, and expressly orders Plaintiffs to show cause why the conduct specifically described in the order does not violate Rule 11(b). The show cause order states:

> "On December 16, 2024, the Court issued an Opinion and Order in which it acknowledged Plaintiffs' failure to adhere to Local Rules and warned, '[n]oncompliance with Local Rules is not something this Court takes lightly, and further noncompliance may result in denial or dismissal of this case.' Since then, Plaintiffs appear to have violated at least four Local Rules (7-1(a), 7-1(b), 83-3(a)(1), and 83-7).

> "Plaintiffs have also filed three briefs (ECF Nos. 142, 155, and 168) which appear to violate Federal Rule of Civil Procedure 11(b). Across these briefs Plaintiffs cite to fifteen non-existent cases and misrepresent quotations from seven real cases. Plaintiffs attempt to justify this by claiming, '[t]he inclusion of inaccurate citations was inadvertent and the result of reliance on an automated legal citation tool.'

Page 20 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

> "In response to Plaintiffs' violations of both local and federal rules, Defendants filed a Motion for Imposition of Sanctions. As of today, June 16, 2025, the Court does not find Plaintiffs' explanation satisfactory to avoid the requested sanctions.
>
> "Therefore, IT IS ORDERED that Plaintiffs shall show cause as to why the requested sanctions should not be imposed, and this action dismissed . . . ."

ECF 189 at 1–2 (internal citations omitted). Because the order describes Plaintiffs' prior rule-violating conduct and quotes the Court's warning about continuing to violate Local Rules, the Court issued the show cause order in a situation "akin to a contempt of court." Accordingly, Rule 11 does not provide Plaintiffs a safe harbor. Adv. Comm. Notes, 1993 Amend.; *United Nat. Ins. Co.*, 242 F.3d at 1116.

The effect of the Court's show cause order is that Plaintiffs are at risk of being subjected to sanctions on two independent procedural grounds, *viz.*, the Wisnovsky Defendants' motion under Rule 11(c)(2) and the Court's own initiative under Rule 11(c)(3). And, under Rule 11(c)(3), Plaintiffs are not afforded a safe harbor opportunity to correct their sanctionable conduct. Thus, all of Plaintiffs' "safe harbor" arguments are irrelevant and fail to explain why their conduct should not be sanctioned.

**C.     There Is No Dispute That Plaintiffs Said They Would Not Take Any Corrective Action Until After the Wisnovsky Defendants Filed Their Motion.**

The Wisnovsky Defendants' motion showed that Plaintiffs unequivocally told the Wisnovsky Defendants that they would take no corrective action until after the Wisnovsky Defendants filed their motion for sanctions. ECF 184 at 13 (citing ECF 177-2 at 1).

Plaintiffs' response disingenuously argues the motion for sanctions should be denied because the Wisnovsky Defendants prematurely filed their motion such that Plaintiffs were not

Page 21 -     **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

given 21 days to correct their flagrant misrepresentations of law to the Court. ECF 194 at 4–5. Plaintiffs cite *Triantos v. Guaetta & Benson, LLC*, 91 F.4th 556, 561 (1st Cir. 2024), *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998), *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997), and *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004), as supporting their argument that a party must be given 21 days to withdraw violative filings, even if, as Plaintiffs did here, the party states that they will not withdraw the filings unless and until the motion for sanctions is filed. Those cases do not support Plaintiffs' argument and do not control the Court's decision on the Wisnovsky Defendants' motion.

In *Triantos*, the First Circuit reversed the district court's grant of the defendant's motion for sanctions because the defendant served its motion for sanctions on the plaintiff after the district court had dismissed the case with prejudice. *Triantos*, 91 F.4th at 564. The First Circuit held the defendant's service of the motion for sanctions after dismissal of the lawsuit was too late because, by that time, the plaintiff could not withdraw the sanctionable pleadings in order to avoid sanctions. *Id.*

In *Barber*, the defendant gave "informal warnings" of its intent to seek sanctions, but the defendant never served his motion on the plaintiff before filing the motion. *Barber*, 146 F.3d at 710. The Ninth Circuit held the district court erred in granting the motion for sanctions because the defendant failed to serve the motion at all prior to filing. *Id.* at 711.

Similarly, the defendant in *Ridder* altogether failed to serve its motion for sanctions on the plaintiff before filing it with the court. *Ridder*, 109 F.3d at 296. The Sixth Circuit reversed the order imposing sanctions because the defendant failed to serve the motion prior to filing. *Id.* at 297.

Page 22 -     **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Finally, like the defendants in *Barber* and *Ridder*, the plaintiff in *Brickwood Contractors, Inc.* completely failed to serve its motion for sanctions on the defendant prior to filing. *Brickwood Contractors, Inc.*, 369 F.3d at 390. And like the defendant in *Triantos*, the plaintiff did not file its motion for sanctions until after the district court dismissed the defendant's claims on summary judgment, thus precluding the defendant from withdrawing the sanctionable filing to avoid sanctions. *Id.*

All of Plaintiffs' cited cases are inapplicable because the Wisnovsky Defendants served their motion for sanctions on Plaintiffs prior to filing, Plaintiffs admitted they received the motion for sanctions, and Plaintiffs said they would neither comply with the Wisnovsky Defendants' demands for corrective action nor file what Plaintiffs described as a "Notice of Errata and Corrections" unless and until the Wisnovsky Defendants filed their motion. ECF 177-2 at 1. By stating that they would not take action until after the motion is filed, Plaintiffs thereby communicated that they did not need the 21 days provided by Rule 11 to decide whether they wanted to try to protect themselves from a motion for sanctions. They practically invited the motion for sanctions.

Plaintiffs did not cite, and the Wisnovsky Defendants' counsel was unable to find, a case in any federal jurisdiction where a court denied a motion for sanctions because the rule-violating party did not receive the full 21-day period despite that party acknowledging receipt of the motion for sanctions and affirmatively communicating before the lapse of the 21-day period that they would not take any corrective action until <u>after</u> the motion for sanctions is filed.

Plaintiffs were given the opportunity to correct their egregious violations of Rule 11 and LR 83-7, and they said they would file a Notice of Errata and Corrections only after the motion

Page 23 -     **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

was filed.  There appears to be no case law supporting denial of a motion for sanctions involving those facts.

Even though Plaintiffs' argument is unsupported by case law, the Wisnovsky Defendants withdrew their motion for sanctions on June 4, 2025, and re-filed it later the same day, thus providing more than 21 days for Plaintiffs to perform the corrective actions demanded by the Wisnovsky Defendants.  ECF 183; ECF 184.  Plaintiffs have still not performed the necessary corrective actions.

The Court should reject Plaintiffs' hyper-technical argument on which they ironically rely to avoid sanctions for citing 15 fake cases and misrepresenting seven real cases to the Court.

**D.      Plaintiffs Waived the 21-Day Safe Harbor Provision, or They Are Estopped from Enforcing It.**

Plaintiffs waived the 21-day safe harbor provision, or they are estopped from enforcing it, because they told the Wisnovsky Defendants that they would not take corrective action until after the Wisnovsky Defendants filed their motion.  Plaintiffs' response shows that they knew they had 21 days to take corrective action upon receiving the motion for sanctions, and their attorney's May 21 letter to the Wisnovsky Defendants (ECF 177-2) shows that they did not need the full 21 days to decide what, if anything, to do in order to avoid having to defend against the motion for sanctions.  They told the Wisnovsky Defendants they would not act until after the motion was filed.

The Wisnovsky Defendants have thoroughly briefed Oregon law regarding waiver and estoppel in their motion for partial summary judgment.  ECF 143 at 34:6–38:24 (citing *Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 519 (2004) (stating elements of equitable estoppel);

Page 24 -      **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

*Marshall v. Wilson*, 175 Or. 506, 518 (1944) (holding defendants were equitably estopped from avoiding contract where evidence satisfied estoppel elements); *Powell v. Goff*, 126 Or. App. 194, 198 (1994) (holding plaintiff waived rescission and restitution claims by failing to take action consistent with intent to rescind despite having knowledge of relevant facts)).  Those legal authorities are incorporated herein, and they support the conclusion that when parties make representations like the ones Plaintiffs made in response to receiving a motion for sanctions, they either waive the 21-day safe harbor provision or are estopped from enforcing it.

The Court should reject Plaintiffs' arguments and impose the Wisnovsky Defendants' requested sanctions.

**E.    Plaintiffs Did Not Take Corrective Action Within the Safe-Harbor Period.**

Plaintiffs argue the motion for sanctions should be denied because they were not required to perform the Wisnovsky Defendants' demands to avoid sanctions and were instead required only to "amend" their "offending pleadings" by filing their *Notice of Errata and Filing of Amended Briefs Pursuant to Rule 11(c)(2)* (ECF 178; "notice of errata") and the *Second Amended Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment (Replaces ECF 155)* (ECF 182; "second amended opposition brief").  ECF 194 at 5–7.  Plaintiffs cite *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010), in support of their argument.  In *Sneller*, the Ninth Circuit reversed an award of sanctions against the plaintiffs because the plaintiffs complied with the defendant's demands to withdraw several claims for relief within the safe harbor period by filing a motion to amend that withdrew all of the challenged claims.  *Sneller*, 606 F.3d at 639.  *Sneller* is distinguishable and does not control the Court's decision here.

Page 25 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

The Wisnovsky Defendants' May 7 letter and motion for sanctions demanded in part that Plaintiffs withdraw their three rule-violating filings entirely. ECF 177-1 at 1–2. On May 21, Plaintiffs responded to the Wisnovsky Defendants that they would file a notice of errata only after the Wisnovsky Defendants filed their motion. ECF 177-2. After the Wisnovsky Defendants filed their motion, Plaintiffs did not withdraw their sanctionable motion and instead filed a notice of errata that removed the fake cases of *In re Estate of McCarty* and *Matter of Estate of Holt*. ECF 178 at 1–2. Plaintiffs stated that they "do not rely on these citations for any argument and respectfully request that the Court disregard them. No other changes to ECF 142 are necessary." *Id.* at 2 (emphasis added). By Plaintiffs' own admission, they never withdrew the sanctionable motion.

Moreover, Plaintiffs' statement that they do not rely on those two fake cases for argument is false because Plaintiffs' motion does rely on those two cases for legal argument. Plaintiffs motion cites *McCarty* and *Holt* as supporting the following legal arguments and rules:

> "Courts routinely dismiss claims as moot when they involve legal instruments that cease to have effect upon the principal's death, such as powers of attorney and advance directives (*Matter of Estate of Holt*, 757 F.2d 159, 161 (8th Cir. 1985) . . . ."[2]
> . . .

---

[2] Plaintiffs also cite ORS 127.545(1) as supporting its argument that "[c]ourts routinely dismiss claims as moot when they involve legal instruments that cease to have effect upon the principal's death[.]" ECF 142 at 6. ORS 127.545(1) does not support that argument and is apparently yet another misrepresentation of the law. That statute provides: "An advance directive or a health care decision by a health care representative may be revoked: (a) If the advance directive or health care decision involves the decision to withhold or withdraw life-sustaining procedures or artificially administered nutrition and hydration, at any time and in any manner by which the principal is able to communicate the intent to revoke; or (b) At any time and in any manner by a capable principal." That statute plainly says nothing about legal instruments ceasing to have effect upon a principal's death or about claims that courts deem to be moot when such instruments cease to have effect.

Page 26 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

> "The death of Ann Wisnovsky rendered moot any challenges to the Power of Attorney and Advance Directive, as these documents ceased to have legal effect upon her death (Matter of Estate of Holt, 757 F.2d 159, 161 (8th Cir. 1985)).
>
> . . .
>
> "Challenges to the Power of Attorney and Advance Directive executed by Ann Wisnovsky on May 31, 2019, are moot. These documents ceased to have any legal effect upon Ann's death (Matter of Estate of Holt, 757 F.2d 159, 161 (8th Cir. 1985).
>
> . . .
>
> "The short duration of interaction between Ann and Joanne in May 2019 undermines the claim of undue influence. Oregon courts have consistently held that undue influence requires a sustained and significant relationship of trust and control.
>
> - **In re Estate of McCarty, 208 Or. 220, 779 P.2d 984 (1989):** The court emphasized the importance of a long-term confidential relationship in establishing undue influence. A brief interaction, such as two weeks, is unlikely to meet this standard unless accompanied by overwhelming evidence of coercion or manipulation."

ECF 142 at 6, 28, 33, 36 (emphasis in original). Thus, instead of withdrawing their motion as they now argue is required under Rule 11, Plaintiffs' notice of errata leaves their motion intact and falsely describes their motion as citing fake cases that do not support any legal argument. This is further evidence of Plaintiffs' contemptuous attitude toward their obligations under Rule 11 and LR 83-7.

Plaintiffs' notice of errata also includes copies of an *Amended Opposition to Defendants' Motion for Partial Summary Judgment* and *Amended Reply in Support of Plaintiffs' Motion for Summary Judgment* ("amended reply"). ECF 178 at 2. Plaintiffs state those two "amended briefs fully replace and supersede the original filings at ECF 155 and ECF 168, which are hereby withdrawn in their entirety." *Id.* Plaintiffs subsequently filed a second amended opposition brief (ECF 182) to replace the *Amended Opposition to Defendants' Motion for Partial Summary Judgment*. The second amended opposition and amended reply, however, merely removed the

Page 27 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

fake citations generated by artificial intelligence and left intact all of the purported legal rules and holdings that were falsely attributed to those cases by artificial intelligence. ECF 187 ¶ 4; ECF 187-1 at 2, 3, 14, 16, 17, 21, 22, 27, 30, 31; *compare* ECF 155 at 2, 15–17, 21, 31 *with* ECF 178-1 at 2, 15–17, 20, 30.

Thus, even if Plaintiffs were required only to withdraw their sanctionable filings in order to avoid sanctions, Plaintiffs did not do that because they did not withdraw their rule-violating motion at all and filed "corrected" response and reply briefs that are still asking the Court to grant their motion for summary judgment and deny the Wisnovsky Defendants' motion for partial summary judgment based on legal rules that were hallucinated by artificial intelligence. To this day, Plaintiffs' filings are still in violation of Rule 11 and LR 83-7. The Court should impose the requested sanctions on Plaintiffs and their attorneys.

**F.     The Wisnovsky Defendants Seek an Award of Attorney Fees Against Plaintiffs, Striking of Their Three Rule-Violating Briefs, Dismissal of Their Lawsuit, and Monetary Sanctions Against Their Attorneys.**

Plaintiffs' response argues monetary sanctions cannot be imposed on Plaintiffs themselves and "may only be imposed on counsel who submitted the offending pleadings[.]" ECF 194 at 7–8.

To be clear, the Wisnovsky Defendants seek an award of attorney fees against Plaintiffs pursuant to Rule 11(c)(2) and monetary sanctions against Plaintiffs' attorneys pursuant to Rule 11(c)(4). The Wisnovsky Defendants also request Plaintiffs' three sanctionable briefs be stricken and dismissal of Plaintiffs' claims and defenses with prejudice pursuant to Rule 11(c)(4), the case law cited in the Wisnovsky Defendants' motion (ECF 184 at 15–17), and the

Page 28 -     **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Court's December 2024 order in which the Court warned Plaintiffs that their continued violations may result in dismissal of their lawsuit against the Wisnovsky Defendants (ECF 137 at 4).

The propriety of the Wisnovsky Defendants' requested sanctions cannot be understated. Only about eight weeks ago, on June 30, 2025, the Georgia Court of Appeals issued an opinion reversing a trial court's judgment that was based on "an order that relied on non-existent case law." *Shahid v. Esaam*, No. A25A0196, 2025 WL 1792657, at *1 (Ct. App. Ga. June 30, 2025). The defendant had filed a motion in trial court that cited two fake cases. *Id.* The plaintiff failed to point out to the trial court that the motion contained those fake cases, and the trial court apparently lacked sufficient resources to research the case law cited in the defendant's motion to determine if the defendant had accurately cited and quoted the case law. *Id.* at *1–2. The trial court relied on the defendant's representations of law and cited the defendant's fake cases in an order granting the defendant's motion. *Id.* The court of appeals reversed the judgment because it was based on fake cases and also imposed monetary sanctions on the attorney who filed the sanctionable motion. *Id.* at *1, 4.

*Shahid* demonstrates the damage that can result from parties such as Plaintiffs who cite fake case law in requesting relief from a court—the integrity of the judicial system can be so terribly compromised as to award relief to a party based on non-existent legal authority. It is no secret that most courts lack adequate resources to research every case cited in a litigant's brief. Courts therefore routinely and reasonably rely on counsel to accurately and candidly represent the law to the courts. But, here, if it were not for the Wisnovsky Defendants' counsel diligently researching Plaintiffs' case citations in three briefs consisting of 128 pages, there is a

Page 29 -    **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

considerable risk the Court may have not noticed and relied on Plaintiffs' 15 fake cases or seven misrepresentations of real cases in deciding the parties' dispositive cross-motions. If that had happened, the integrity of the Court would have been severely damaged.

The Court should send a clear message to litigants who appear in the District of Oregon that litigants who misrepresent the law in violation of Rule 11 and LR 83-7 will suffer uncompromising consequences, such as the sanctions requested by the Wisnovsky Defendants.

## G. Attorney Tim Murphy Should Be Held Accountable for Plaintiffs' Rule Violations.

Even though the Court granted attorney Tim Murphy's motion to withdraw—which did not certify he conferred via telephone or in person as otherwise required by LR 7-1—the Court should vacate its order allowing him to withdraw and issue a show cause order demanding that he explain why sanctions should not be imposed on him for Plaintiffs' rule violations.

Murphy was Plaintiffs' local counsel of record when Plaintiffs filed their briefs citing 15 fake cases and misrepresenting the law. Murphy certified in Brigandi's motion to appear *pro hac vice* that he had read LR 83-3, which requires local counsel to "meaningfully participate in the preparation and trial of the case." LR 83-3(a)(1). If Murphy failed to correct the sanctionable briefs before they were filed, then he did not meaningfully participate in the case, thus violating LR 83-3(a)(1). If Murphy did meaningfully participate in the case, then he must have knowingly violated Rule 11 and LR 83-7 by allowing those briefs to be filed. Either way, he should be required to account for his role in the violations.

/ / /

/ / /

/ / /

Page 30 -   **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

**CONCLUSION**

For the foregoing reasons, the Court should grant the Wisnovsky Defendants' motion for sanctions in full.

DATED: August 29, 2025

CHENOWETH LAW GROUP, PC

*/s/ Bradley T. Crittenden*
Sandra S. Gustitus, OSB No. 143298
Bradley T. Crittenden, OSB No. 173274
510 SW Fifth Avenue, 4th Floor
Portland, OR  97204
Phone: (503) 221-7958
Fax:  (503) 221-2182
Email: sgustitus@chenowethlaw.com
bcrittenden@chenowethlaw.com

*Attorneys for Defendants Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I caused to be served a copy of the foregoing **WISNOVSKY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS** on the following person(s) in the manner indicated below:

Stephen M. Brigandi
3624 Caminito Cielo Del Mar
San Diego, CA 92130
Brigandilaw@gmail.com

*Attorneys for Plaintiffs/Counter-Defendants Joanne Couvrette, Wisnovsky Land LLC, and Michelle Sullivan*

James Dole
Watkinson Laird Rubenstein PC
1246 NE 7th St., Ste. B
Grants Pass, OR 97525
jdole@wlrlaw.com

*Attorney for Defendant Mark Wisnovsky, Michael Wisnovsky and Valley View Winery*

Curtis Glaccum
Josh Newton
Best Best & Krieger LLP
360 SW Bond St., Suite 400
Bend, OR 97702
Curtis.glaccum@bbklaw.com
Josh.newton@bbklaw.com

*Attorney for Plaintiffs Michelle Sullivan and Wisnovsky Land, LLC*

by the following method(s):

 xx     by **emailing** a full, true and correct copy thereof to the parties at the email addresses shown above, which are the last-known email addresses of the parties, on the date set forth below.

xx     by **e-service via CM/ECF** on the date set forth below.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it may be used as evidence in court and is subject to penalty for perjury.


 */s/ Jami Asay*
Jami Asay, Paralegal


Page 32 -    **CERTIFICATE OF SERVICE**