Verified Correct Copy of Original 7/12/2024.

Joanne Couvrette
Trustee, Ann M. Wisnovsky Trust
Member of Wisnovsky Land, LLC
13274 Jacarte Court
San Diego, CA 92130



RECEIVED AND FILED
JUL 09 2024
TRIAL COURT ADMINISTRATOR
DOCKETED BY

| | |
|---|---|
| Ann M. Wisnovsky Trust, Member on behalf of WISNOVSKY LAND, LLC<br><br>Plaintiffs,<br>v.<br><br>VALLEY VIEW WINERY, INC,<br><br>Defendant | **Case No. 24CV32833**<br>**COMPLAINT:** Amounts due under Vineyard Lease<br><br>**PRAYER AMOUNT:** $105,000 Filing Fee: $594 Amount claimed ORS 21.160(1)(c): Amount jury determines to be reasonable and in accordance with the law |

## BACKGROUND

The Ann M. Wisnovsky Trust entered a Lease, (Exhibit 1) with Tenant, Valley View Winery, Inc on March 24, 2016. The lease was Amended on November 24, 2016, transferring ownership to Wisnovsky Land LLC, whose sole member is the Ann M. Wisnovsky Trust and on February 17, 2017 adding additional land, rent and provisions. The Lease requires Tenant to pay all the Property Taxes (Section 8.1), which are considered to be Rent (Section 2.2).

**8.1 Property Taxes.** Tenant will do all that is reasonably necessary to maintain the special real property tax assessment that are presently available for the Premises. Tenant shall pay as due all taxes on its personal property located on the Premises. **Tenant shall pay as due all real property taxes and special assessments levied against the Premises.** As used herein, real property taxes include any fee or charge relating to the ownership, use, or rental of the Premises, other than taxes on the net income of Landlord or Tenant.

**2.2 Additional Rent.** All taxes, insurance costs, utility charges that Tenant is required to pay by this lease, and any other sum that Tenant is required to pay to Landlord or third parties shall be additional rent.

On November 29, 2023, Lessor notified Tenant that they were in Default of the Lease Terms due to their failure to pay the property tax as specified in the Lease, Section 8.1

Exhibit 4
Page 1 of 37

2

Verified Correct Copy of Original 7/12/2024.

"Property Tax" (Exhibit 2) and notifying the Tenant that they had 10 days to pay the rent or their lease would be terminated.

On 12-1-23, Tenant allegedly paid the rent, however their payment method was insufficient, and Jackson County reversed their payment on 12-28-2023 (Exhibit 3). Lessor, Wisnovsky Land, LLC discovered that the tax payment had been reversed on 1-8-2024 in connection with a title search being performed on the properties as part of a land partition. Wisnovsky Land, LLC paid the property taxes due on 1-8-2024.

On January 23, 2024, Wisnovsky Land, LLC notified Tenant that the lease was terminated (Exhibit 4). The Vineyard Lease includes a section regarding termination, which reads:

> **14.1 Termination**. In the event of a default the lease may be terminated at the option of Landlord by written notice to Tenant. Whether or not the lease is terminated by the election of Landlord or otherwise, Landlord shall be entitled to recover damages from Tenant for the default, and Landlord may reenter, take possession of the Premises, and remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.

Tenants have failed to vacate the property pursuant to the Lease Terms and Termination Letter, and Landlord is working with Tenant to settle matters regarding the Lease, but negotiations have been unsuccessful.

On May 15, 2024, Landlord filed a Small Claims Court Complaint to collect monies due under the Lease and Complaint served the Complaint on Valley View Winery, on June 7, 2024 (Exhibit 5).

Per the Terms of the Lease:

> **14.3 Damages:** 14.3 Damages. In the event of the termination or retaking of possession following default, Landlord shall be entitled to recover immediately, without waiting until the due date of any future rent or until the date fixed for expiration of the lease term, the following amounts as damages:
> (I) The loss of rental from the date of default until a new Tenant is, or with the exercise of reasonable efforts could have been, secured and paying out.

Exhibit 4
Page 2 of 37

Verified Correct Copy of Original 7/12/2024.

(2) The reasonable costs of reentry and reletting including without limitation the cost of and cleanup, refurbishing, removal of Tenant's property and fixtures, costs incurred under Section 14.5, or any other expense occasioned by Tenant's default including but not limited to, any repair costs, attorney fees, court costs, broker commissions, and advertising costs.

**16.7 Interest on Rent and Other Charges.** Any rent or other payment required of Tenant by this lease shall, if not paid within ten days after it is due, bear interest at the rate of **12% per annum** (but not in any event at a rate greater than the maximum rate of interest permitted by law) from the due date until paid. In addition, if Tenant fails to make any rent or other payment required by this lease to be paid to Landlord within five days after it is due, Landlord may elect to impose a late charge of five cents per dollar of the overdue payment or reimburse Landlord for the costs of collecting the overdue payment. Tenant shall pay the late charge upon demand by Landlord. Landlord may levy and collect a late charge in addition to all other remedies available for Tenant's default, and collection of a late charge shall not waive the breach caused by the late payment.

On June 21, 2024, the Jackson County Circuit Court sent Landlord a "Notice to File Formal Complaint" because Defendant, Tenant Valley View Winery, requested a Jury Trial (Exhibit 6).

Joanne Couvrette, Trustee of the Ann M. Wisnovsky Trust, as the sole member of Wisnovsky Land LLC, brings this complaint with the approval of and on behalf of the Wisnovsky Land, LLC, whose Operating Agreement, Section 2.1 which provides that the Member has authority to act to bind the Company upon authorization.

**2.1 Authority to Act:** No Member shall have any power or authority to bind the Company unless the Member has been authorized by the Company to act as an agent of the Company.

The Ann M. Wisnovsky Trust has been the sole member (100%) of Wisnovsky Land, LLC since its inception. The Trust provides the authority for the Trustee to take this action per the Trust's Section 10:

**Section 10 Trustee's Powers (R)** To prosecute, defend, contest or otherwise litigate actions, suits, claims or proceedings for the protection or benefit of the estate and the Trustee.

**POINTS AND AUTHORITIES**

Exhibit 4
Page 3 of 37

In Oregon, there are no statutes or regulations that dictate terms of a Commercial Lease and Oregon's new rent control law does not extend to commercial leases. The Terms of the Lease, attached here as Exhibit 1, are the only considerations for determining the obligation of the Tenant.

Under the Lease Terms Section 2.1, Tenant must pay a 5% late fee on any Late Rent.

Oregon Law permits an LLC Member to file a suit:

> **ORS 65.174 (1) Derivative suits**
> A proceeding may be brought in the right of a domestic corporation or foreign corporation to procure a judgment in the corporation's favor by:
> (a)Any member or members having two percent or more of the voting power or by 20 members, whichever is less;

Pursuant to Oregon Law, the Landlord is not limited to the amount in the original claim, and is solely limited to the "same controversy," which in this case is the amounts due under the Vineyard Lease:

> **ORS 46.465 (3)** *The plaintiff's claim in the formal complaint filed pursuant to this subsection is not limited to the amount stated in the claim filed in the small claims department, but the claim in the formal complaint must relate to the same controversy.*

### PRAYER

The Plaintiff prays for rents, penalties, costs, and interest in accordance with the Vineyard Lease as follows:

1. **Delinquent Property tax**, plus penalties and interest, pursuant to the lease.

   | | |
   |---|---|
   | Property Tax due on November 15, 2023 | $473.62 |
   | Late Fee as additional Rent (5%) | $ 23.68 |
   | **Total Delinquent Property Tax as Rent** | **$497.30** |
   | Plus Interest (12% per Annum) $59.67/YR | |

2. **Monthly Base Rent for Vineyard**, per Lease Term 14.3 (1) plus penalties and interest, pursuant to the lease, plus penalties and interest:

   | | |
   |---|---|
   | Monthly Rent (January through July 2024) | $4,405.03 |

Exhibit 4
Page 4 of 37

Verified Correct Copy of Original 7/12/2024.

5

|   |   |
|---|---|
| Late Fee as additional Rent (5%) | $ 220 25 |
| **Total Rent** | **$4,625.28** |
| Plus Interest (12% per Annum) | |

3. **Annual Base for Land that is not Farmed or Fallow,** per Addendum 2, is $1,000 per acre per year, plus penalties and interest

|   |   |
|---|---|
| 2021 (35 Acres) | $35,000 |
| 2022 (35 Acres) | $35,000 |
| 2023 (20 10 Acres/8 months, 15 Acres/12 months) | $20,333 |
| Late Fee as additional Rent (5%) | $ 4,516 |
| **Total Annual Base Rent** | **$94,840** |

4. **Damages per Section 14.3 (2)**

|   |   |
|---|---|
| Attorney Fees Lease Termination | $2,800 |
| Court Costs Small Claims | $ 152 |
| Court Costs Civil Claim | TBD |
| Attorney Fees Civil Claim | TBD |

And any other relief the court believes is proper

Respectfully submitted,

Dated· July 10, 2024

Joanne Couvrette, Trustee
Ann M  Wisnovsky Trust
On behalf of Wisnovsky Land, LLC

Exhibit 4
Page 5 of 37

EXHIBIT 1

Verified Correct Copy of Original 7/12/2024

## VINEYARD LEASE

**Effective Date:**    *March 24*, 2016

**Between:**    THE ANN M. WISNOVSKY TRUST,    ("Landlord")
UTD AUGUST 2, 2012
1352 Applegate Road
Jacksonville, OR 97530

**And:**    VALLEY VIEW WINERY, INC., an    ("Tenant")
Oregon corporation
1000 Upper Applegate Road
Jacksonville, OR 97530

Landlord leases to Tenant and Tenant leases from Landlord the following described property (the "Premises") on the terms and conditions stated below:

THAT PORTION OF THE REAL PROPERTY DESCRIBED IN EXHIBIT A PRESENTLY PLANTED AS A VINEYARD AND LYING FALLOW, BUT EXCLUDING THE SINGLE FAMILY RESIDENCE PRESENTLY OWNED BY THE ANN M. WISNOVSKY, TRUSTEEE OF THE ANN M. WISNOVSKY TRUST, UTD 8/2/12, AND THE TWO PARCELS THAT HAVE BEEN OR MAY BE CREATED UNDER OREGON MEASURE 37 (ORS 197.352). THE PREMISES ARE DEPICTED IN THE MAP ATTACHED AS EXHIBIT B.

The Tenant shall have the right of ingress and egress over and across the real property described in Exhibit A as reasonably necessary to access the Premises.

This lease supersedes all prior leases and tenancies for the Premises, which are of no further force or effect.

### Section 1.    Occupancy and Commencement Date

**1.1    Original Term.** The term of this lease shall commence on the date hereof and shall continue for 10 years, unless sooner terminated as hereinafter provided.

**1.2    Possession.** Tenant's right to possession and obligations under the lease shall commence on the commencement date described in paragraph 1.1 above.

**1.3    Renewal Option.** If the lease is not in default at the time each option is exercised or at the time the renewal term is to commence, Tenant shall have the option to renew this lease for 8 successive terms of 10 years, each, as follows:

1 – VINEYARD LEASE

Exhibit 4
Page 6 of 37

Verified Correct Copy of Original 7/12/2024

(1)    Each of the renewal terms shall commence on the day following expiration of the preceding term.

(2)    The option will be automatically exercised unless written notice to Landlord is given for review not less than 180 days prior to the last day of the expiring term. The giving of such notice, not to renew, shall be sufficient to make the lease termination binding for the renewal term without further act of the parties.

(3)    The terms and conditions of the lease for each renewal term shall be identical with the original term except for rent. Rent for a renewal term shall be continued from the original term with escalation calculated in the same manner as during the original term.

## Section 2.    Rent

**2.1    Base Rent.** During the original term, Tenant shall pay to Landlord as monthly base rent the sum of $12.50 per acre of land that is being used for the production of agricultural crops. Presently there are 35 acres of land being used for the production of agricultural crops, so monthly base rent is $437.50. If any of such land that is now in production becomes fallow, no rent shall be paid on such land for a period of not more than 5 years; after a period of 5 years has expired, Tenant shall recommence paying rent for such land. Rent shall be payable on the first day of each month in advance at such place as may be designated by Landlord. If rent paid after the first day of the month, a five percent (5%) late fee will be due as additional rent.

**2.2    Additional Rent.** All taxes, insurance costs, utility charges that Tenant is required to pay by this lease, and any other sum that Tenant is required to pay to Landlord or third parties shall be additional rent.

## Section 3.    Escalation

Effective on the first day of the 61st month of the initial term of this lease and on the first day of each 61st month thereafter, monthly base rent shall be increased by an amount equal to 5% of the monthly base rent paid during the preceding 60 month period.

## Section 4.    Use of the Premises

**4.1    Permitted Use.** The Premises shall be used for the growing of grapes and other crops and for related uses. No other uses shall be made of the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

**4.2    Costs of Farming.** Tenant will be responsible for and pay all the costs of materials, labor, equipment, utilities, and other expenses necessary to farm the Premises and raise crops from the Premises during the lease term.

2 – VINEYARD LEASE

Exhibit 4
Page 7 of 37

Verified Correct Copy of Original 7/12/2024

**4.3    Manner of Farming and Conservation Laws.** Tenant will farm, cultivate, maintain, and operate the Premises consistent with the best agricultural practices employed by the farming industry in the area where the Premises is located. Tenant will refrain from practices that will cause unusual erosion to the Premises. Tenant will maintain the Premises in compliance with all federal, state, and other governmental laws, regulations, and directives.

**4.4    Chemicals and Fertilizers.** The parties understand that chemicals and fertilizers may be necessary to produce the highest financial returns from the Premises. They also understand that chemicals and fertilizers can damage the Premises if applied incorrectly or on crops that are excluded on a chemical's or fertilizer's product label. Subject to the limitations in Section 4 above, chemicals and fertilizers will be used by Tenant, if necessary, to produce the highest financial returns from the Premises, subject to the condition that Tenant will not, without Landlord's prior written consent, use any of the fertilizers or chemicals that would adversely affect the condition of the Premises and the crops grown after termination of this lease.

**4.5    Irrigation.** Tenant will maintain the water rights on the Premises. Tenant will be responsible for all water costs. Landlord assumes no responsibility to Tenant for any water shortage, nor does Landlord warrant the quality or quantity of the water available to the Premises.

**4.6    Restrictions on Use.** In connection with the use of the Premises, Tenant shall:

(1)    Conform to all applicable laws and regulations of any public authority affecting the Premises and the use, and correct at Tenant's own expense any failure of compliance created through Tenant's fault or by reason of Tenant's use.

(2)    Refrain from any use that would be reasonably offensive to other tenants or owners or users of neighboring premises or that would tend to create a nuisance or damage the reputation of the Premises.

(3)    Tenant shall not cause or permit any Hazardous Substance to be spilled, leaked, disposed of, or otherwise released on or under the Premises. Tenant may use or otherwise handle on the Premises only those Hazardous Substances typically used or sold in the prudent and safe operation of the business specified in Section 4.1. Tenant may store such Hazardous Substances on the Premises only in quantities necessary to satisfy Tenant's reasonably anticipated needs. Tenant shall comply with all Environmental Laws and exercise the highest degree of care in the use, handling, and storage of Hazardous Substances and shall take all practicable measures to minimize the quantity and toxicity of Hazardous Substances used, handled, or stored on the Premises. Upon the expiration or termination of this Lease, Tenant shall remove all Hazardous Substances from the Premises. The term Environmental Law shall mean any federal, state, or local statute, regulation, ordinance or any judicial or other governmental order pertaining to the protection of health, safety or the environment. The term Hazardous

3 – VINEYARD LEASE

Exhibit 4
Page 8 of 37

Substance shall mean any hazardous, toxic, infectious or radioactive substance, waste, and material as defined or listed by any Environmental Law and shall include, without limitation, petroleum oil and its fractions.

## Section 5.    Repairs and Maintenance

**5.1    Landlord's Obligations.** The Landlord shall have no responsibility of obligations for repairs and maintenance. The Tenant is responsible for all repairs and maintenance.

**5.2    Tenant's Obligations.** Tenant shall perform all maintenance and repairs to the Premises, including without limitation the following:

(1)    Any repairs necessitated by the negligence of Tenant, its agents, employees, and invitees.

(2)    Ordinary maintenance of the heating and air conditioning system and any repairs necessary because of improper maintenance.

(3)    Any repairs or alterations required under Tenant's obligation to comply with laws and regulations as set forth in Section 4.6 (1).

(4)    All other repairs necessary to maintain the Premises in good condition and repair.

**5.3    Reimbursement for Repairs Assumed.** If Tenant fails or refuses to make repairs that are required by this Section 5, Landlord may make the repairs and charge the actual costs of repairs to Tenant plus 10%, such expenditures by Landlord shall be reimbursed by Tenant on demand together with interest at the rate of 12% per annum from the date of expenditure by Landlord. Except in an emergency creating an immediate risk of personal injury or property damage, Landlord may not perform repairs which are the obligation of Tenant and charge Tenant for the resulting expense unless at least ten days before work is commenced, and Tenant is given notice in writing outlining with reasonable particularity the repairs required, and Tenant fails within that time to initiate such repairs in good faith.

**5.4    Inspection of Premises.** Landlord shall have the right to inspect the Premises at any reasonable time or times to determine the necessity of repair.

## Section 6.    Condition of Premises

**6.1    Alterations Prohibited.** Tenant will make no improvements or alterations on the Premises of any kind without first obtaining Landlord's written consent. All alterations will be made in a good and workmanlike manner, and in compliance with applicable laws and building codes.

4 – VINEYARD LEASE

Exhibit 4
Page 9 of 37

Verified Correct Copy of Original 7/12/2024

**6.2    Ownership and Removal of Alterations.** All improvements and alterations performed on the Premises by either Landlord or Tenant will be the property of Landlord when installed unless the applicable Landlord's consent or work sheet specifically provides otherwise. At Landlord's option, Tenant will remove its improvements and alterations and restore the Premises to its original condition, unless the applicable Landlord's consent or work sheet specifically provides otherwise.

**Section 7.    Insurance**

Tenant shall obtain and keep continuously in force during the term of this lease a comprehensive liability insurance policy naming Landlord as an additional named insured to protect against loss by reason of injury to persons or damage to property of third persons with personal injury limits of not less than $2,000,000.00 for each person, $2,000,000.00 for each occurrence, and $2,000,000.00 for property damage, and provide to Landlord certificates of such coverage.

**Section 8.    Taxes; Utilities**

**8.1    Property Taxes.** Tenant will do all that is reasonably necessary to maintain the special real property tax assessment that are presently available for the Premises. Tenant shall pay as due all taxes on its personal property located on the Premises. Tenant shall pay as due all real property taxes and special assessments levied against the Premises. As used herein, real property taxes include any fee or charge relating to the ownership, use, or rental of the Premises, other than taxes on the net income of Landlord or Tenant.

**8.2    Special Assessments.** If an assessment for a public improvement is made against the Premises, Landlord may elect to cause such assessment to be paid in installments, in which case all of the installments payable with respect to the lease term shall be treated the same as general real property taxes for purposes of Section 8.1.

**8.3    Contest of Taxes.** Tenant shall be permitted to contest the amount of any tax or assessment as long as such contest is conducted in a manner that does not cause any risk that Landlord's interest in the Premises will be foreclosed for nonpayment. Landlord shall cooperate in any reasonable manner with such contest by Tenant.

**8.4    Proration of Taxes.** Tenant's shall pay the taxes and assessments for the February and May installments of the current tax year that this lease is in effect.

**8.5    New Charges or Fees.** If a new charge or fee relating to the ownership or use of the Premises or the receipt of rental there from or in lieu of property taxes is assessed or imposed, then, to the extent permitted by law, Tenant shall pay such charge or fee. Tenant, however, shall have no obligation to pay any income, profits, or franchise tax levied on the net income derived by Landlord from this lease.

5 – VINEYARD LEASE

Exhibit 4
Page 10 of 37

Verified Correct Copy of Original 7/12/2024

**8.6** **Payment of Utilities Charges.** Tenant shall pay when due all charges for services and utilities incurred in connection with the use, occupancy, operation, and maintenance of the Premises, including (but not limited to) charges for irrigation and electricity. If the charges are not separately metered or stated, Landlord shall apportion the charges on an equitable basis, and Tenant shall pay its apportioned share on demand.

**Section 9.** **Eminent Domain**

**9.1** **Partial Taking.** If a portion of the Premises is condemned and Section 9.2 does not apply, the lease shall continue on the following terms:

(1) Landlord shall be entitled to all of the proceeds of condemnation, and Tenant shall have no claim against Landlord as a result of the condemnation.

(2) Landlord shall proceed as soon as reasonably possible to make such repairs and alterations to the Premises as are necessary to restore the remaining Premises to a condition as comparable as reasonably practicable to that existing at the time of the condemnation.

(3) After the date on which title vests in the condemning authority or an earlier date on which alterations or repairs are commenced by Landlord to restore the balance of the Premises in anticipation of taking, the rent shall be reduced in proportion to the reduction in value of the Premises as an economic unit on account of the partial taking. If the parties are unable to agree on the amount of the reduction of rent, the amount shall be determined by arbitration in the manner provided in Section 17.

(4) If a portion of Landlord's property not included in the Premises is taken, and severance damages are awarded on account of the Premises, or an award is made for detriment to the Premises as a result of activity by a public body not involving a physical taking of any portion of the Premises, this shall be regarded as a partial condemnation to which Sections 9.1 (1) and 9.1 (3) apply, and the rent shall be reduced to the extent of reduction in rental value of the Premises as though a portion had been physically taken.

**9.2** **Total Taking.** If a condemning authority takes all of the Premises or a portion sufficient to render the remaining Premises reasonable unsuitable for the use that Tenant was then making of the Premises, the lease shall terminate as of the date the title vests in the condemning authorities. Such termination shall have the same effect as a termination under Section 9.1 (1). Landlord shall be entitled to all of the proceeds of condemnation, and Tenant shall have no claim against Landlord as a result of the condemnation.

**9.3** **Sale in Lieu of Condemnation.** Sale of all or part of the Premises to a purchaser with the power of eminent domain in the face of a threat of probability of the exercise of the power shall be treated for the purposes of this Section 9 as a taking by condemnation

6 – VINEYARD LEASE

Exhibit 4
Page 11 of 37

(

12

Verified Correct Copy of Original 7/12/2024.

## Section 10.    Liability and Indemnity

### 10.1    Liens

(1)    Except with respect to activities for which Landlord is responsible, Tenant shall pay as due all claims for work done on and for services rendered or material furnished to the Premises, and shall keep the Premises free from any liens. If Tenant fails to pay any such claims or discharge any lien, Landlord may do so and collect the cost as additional rent. Any amount so added shall bear interest at the rate of 12% per annum from the date expended by Landlord and shall be payable on demand. Such action by Landlord shall not constitute a waiver of any right or remedy, which Landlord may have on account of Tenant's default.

(2)    Tenant may withhold payment of any claim in connection with a good-faith dispute over the obligation to pay, as long as Landlord's property interests are not jeopardized. If a lien is filed as a result of nonpayment, Tenant shall, within ten days after knowledge of the filing, secure the discharge of the lien or deposit with Landlord cash or sufficient corporate surety bond or other surety satisfactory to Landlord in an amount sufficient to discharge the lien plus any costs, attorney fees, and other charges that could accrue as a result of a foreclosure or sale under the lien.

**10.2    Indemnification.** Tenant shall indemnify and defend Landlord from any claim, loss, or liability arising out of or related to any activity of Tenant on the Premises or any condition of the Premises in the possession or under the control of Tenant including any such claim, loss, or liability that may be caused or contributed to in whole or in part by Landlord's own negligence. Landlord shall have no liability to Tenant for any injury, loss, or damage caused by third parties, or by any condition of the Premises except to the extent caused by Landlord's gross negligence or willful breach of duty under this lease.

## Section 11.    Quiet Enjoyment; Mortgage Priority

**11.1    Landlord's Warranty.** Landlord warrants that it is the owner of the Premises and has the right to lease them. Landlord will defend Tenant's right to quiet enjoyment of the Premises from the lawful claims of all persons during the lease term.

**11.2    Mortgage Priority.** Any deed of trust, mortgage or other lien ("Mortgage") granted by Landlord which affects the Premises shall be and remain, as it may be modified or extended, at all times, a lien or charge on the Premises prior and superior to the lien or charge of this lease.

**11.3    Attornment.** In the event the holder of any Mortgage forecloses its lien, exercises any power of sale, or exercises any other remedy under any loan documents encumbering the Premises, or in the event of conveyance of title to the Premises by deed in lieu of foreclosure, Tenant agrees to accept and attorn to the purchaser of the Premises, and its successors and assigns as the new Landlord of the Premises, and, until terminated

7 – VINEYARD LEASE

Exhibit 4
Page 12 of 37

Verified Correct Copy of Original 7/12/2024

13

pursuant to its provisions, this lease shall continue in full force and effect as a direct lease between such purchaser and its successors and assigns and Tenant, with privity of contract and with the same force and effect as if this lease had initially been entered into between them.

**11.4    Estoppel Certificate.** Either party will, within twenty days after notice from the other, execute and deliver to the other party a certificate stating whether or not this lease has been modified and is in full force and effect and specifying any modifications or alleged breaches by the other party. The certificate shall also state the amount of monthly base rent, the dates to which rent has been paid in advance, and the amount of any security deposit or prepaid rent. Failure to deliver the certificate within the specified time shall be conclusive upon the party from whom the certificate was requested that the lease is in full force and effect and has not been modified except as represented in the notice requesting the certificate.

**Section 12.    Assignment and Subletting**

No part of the Premises may be assigned, mortgaged, or subleased, nor may a right of use of any portion of the property be conferred on any third person by any other means, without the prior written consent of Landlord. This provision shall apply to all transfers by operation of law. If Tenant is a corporation or partnership, this provision shall apply to any transfer of a majority voting interest in stock or partnership interest of Tenant. No consent in one instance shall prevent the provision from applying to a subsequent instance. Landlord may withhold or condition such consent in its sole and arbitrary discretion. In determining whether to consent to assignment Landlord may consider the following factors: financial ability of assignee; business experience of assignee; and any other factor deemed relevant and reasonable by Landlord.

**Section 13.    Default**

The following shall be events of default:

**13.1    Default in Rent.** Failure of Tenant to pay any rent or other charge within ten days after notice to Tenant that it is due.

**13.2    Default in Other Covenants.** Failure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges) within twenty days after written notice by Landlord specifying the nature of the default with reasonable particularity. If the default is of such a nature that it cannot be completely remedied within the twenty-day period, this provision shall be complied with if Tenant begins correction of the default within the twenty-day period and thereafter proceeds with reasonable diligence and in good faith to effect the remedy as soon as practicable.

**13.3    Insolvency.** Insolvency of Tenant; and assignment by Tenant for the benefit of creditors; the filing by Tenant of a voluntary petition in bankruptcy; and

8 – VINEYARD LEASE

Exhibit 4
Page 13 of 37

14

Verified Correct Copy of Original 7/12/2024

adjudication that Tenant is bankrupt or the appointment of a receiver of the properties of Tenant; the filing of any involuntary petition of bankruptcy and failure of Tenant to secure a dismissal of the petition within thirty days after filing; attachment of or the levying of execution on the leasehold interest and failure of Tenant to secure discharge of the attachment or release of the levy of execution within ten days shall constitute a default. If the lease has been assigned, the events of default so specified shall apply only with respect to the one then exercising the rights of Tenant under the lease.

**13.4    Abandonment.** Failure of Tenant for seven days or more to occupy the Premises for one or more of the purposes permitted under this lease, unless such failure is excused under other provisions of this lease.

### Section 14.    Remedies on Default

**14.1    Termination.** In the event of a default the lease may be terminated at the option of Landlord by written notice to Tenant. Whether or not the lease is terminated by the election of Landlord or otherwise, Landlord shall be entitled to recover damages from Tenant for the default, and Landlord may reenter, take possession of the Premises, and remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.

**14.2    Reletting.** Following reentry or abandonment, Landlord may relet the Premises and in that connection may make any suitable alterations or refurbish the Premises, or both, or change the character or use of the Premises, but Landlord shall not be required to relet for any use or purpose other than that specified in the lease or which Landlord may reasonably consider injurious to the Premises, or to any Tenant that Landlord may reasonably consider objectionable. Landlord may relet all or part of the Premises, alone or in conjunction with other properties, for a term longer or shorter than the term of this lease, upon any reasonable terms and conditions, including the granting of some rent-free occupancy or other rent concession.

**14.3    Damages.** In the event of the termination or retaking of possession following default, Landlord shall be entitled to recover immediately, without waiting until the due date of any future rent or until the date fixed for expiration of the lease term, the following amounts as damages:

(1)    The loss of rental from the date of default until a new Tenant is, or with the exercise of reasonable efforts could have been, secured and paying out.

(2)    The reasonable costs of reentry and reletting including without limitation the cost of and cleanup, refurbishing, removal of Tenant's property and fixtures, costs incurred under Section 14.5, or any other expense occasioned by Tenant's default including but not limited to, any repair costs, attorney fees, court costs, broker commissions, and advertising costs.

9 – VINEYARD LEASE

Exhibit 4
Page 14 of 37

Verified Correct Copy of Original 7/12/2024

(3)    Any excess of the value of the rent and all of Tenant's other obligations under this lease over the reasonable expected return from the Premises for the period commencing on the earlier continuing through the end of the term. The present value of future amounts will be computed using a discount rate equal to the prime loan rate of major Oregon banks in effect on the date of the written declaration of default by Landlord.

**14.4    Right to Sue More Than Once.** Landlord may sue periodically to recover damages during the period corresponding to the remainder of the lease term, and no action for damages shall bar a later action for damages subsequently accruing.

**14.5    Landlord's Right to Cure Defaults.** If Tenant fails to perform any obligation under this lease, Landlord shall have the option to do so after thirty days written notice to Tenant. All of Landlord's expenditures to correct the default shall be reimbursed by Tenant on demand with interest at the rate of 12 percent per annum from the date of expenditure by Landlord. Such action by landlord shall not waive any other remedies available to Landlord because of the default.

**14.6    Remedies Cumulative.** The foregoing remedies shall be in addition to and shall not exclude any other remedy available to Landlord under applicable law.

**Section 15.    Surrender on Expiration**

**15.1    Condition of Premises.** At the termination of this lease, with the exception of permitted alterations, the Premises will be returned to Landlord in the same condition as at the commencement of this lease, reasonable wear and tear excepted.

**15.2    Holdover**

(1)    If Tenant does not vacate the Premises at the time required, Landlord shall have the option to treat Tenant as a Tenant from month to month, subject to all provisions of this lease except the provisions for term and renewal and at a rental rate equal the rent last paid by Tenant during the original term, or to eject Tenant from the Premises and recover damages caused by wrongful holdover.

(2)    If a month-to-month tenancy results from a holdover by Tenant under this Section 15.2, the tenancy shall be terminable at the end of any monthly rental period on written notice from Landlord given not less than ten days prior to the termination date which shall be in the notice. Tenant waives any notice that would otherwise be provided by law with respect to a month-to-month tenancy.

**Section 16.    Miscellaneous**

**16.1    Non-waiver.** Waiver by either party of strict performance of any provision of this lease shall not be a waiver of or prejudice the party's right to require strict performance of the same provision in the future or of any other provision.

10 – VINEYARD LEASE

Exhibit 4
Page 15 of 37

16

Verified Correct Copy of Original 7/12/2024

**16.2    Attorney Fees.**   If suit or action is institute in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover in addition to costs such sum as the court may adjudge reasonable as attorney fees at trial, on petition for review, and on appeal.

**16.3    Notices.**   Any notice required or permitted under this lease shall be given when actually delivered or 48 hours after deposited in United States mail as certified mail addressed to the address first given in this lease or to such other address as may be specified from time to time by either of the parties in writing.

**16.4    Succession.**   Subject to the above stated limitations on transfer of Tenant's interest, this lease shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.

**16.5    Recordation.**   This lease shall not be recorded without the written consent of Landlord.

**16.6    Entry for Inspection.**   Landlord shall have the right to enter upon the Premises at any time to determine Tenant's compliance with this lease, to make necessary repairs to the building or to the Premises, or to show the Premises to any prospective tenant or purchaser, and in addition shall have the right, an any time during the last two months of the term of this lease, to place and maintain upon the Premises notices for leasing or selling of the Premises.

**16.7    Interest on Rent and Other Charges.**   Any rent or other payment required of Tenant by this lease shall, if not paid within ten days after it is due, bear interest at the rate of 12% per annum (but not in any event at a rate greater than the maximum rate of interest permitted by law) from the due date until paid. In addition, if Tenant fails to make any rent or other payment required by this lease to be paid to Landlord within five days after it is due, Landlord may elect to impose a late charge of five cents per dollar of the overdue payment or reimburse Landlord for the costs of collecting the overdue payment. Tenant shall pay the late charge upon demand by Landlord. Landlord may levy and collect a late charge in addition to all other remedies available for Tenant's default, and collection of a late charge shall not waive the breach caused by the late payment.

**16.8    Proration of Rent.**   In the event of commencement or termination of this lease at a time other than the beginning or end of one of the specified rental periods, then the rent shall be prorated as of the date of commencement or termination and in the event of termination for reasons other than default, all prepaid rent shall be refunded to Tenant or paid on its account.

**16.9    Time of Essence.**   Time is of the essence of the performance of each of Tenant's obligations under this lease.

11 – VINEYARD LEASE

Exhibit 4
Page 16 of 37

Verified Correct Copy of Original 7/12/2024

17

## Section 17.   Arbitration

**17.1   Disputes to be Arbitrated.**   If any dispute arises between the parties as to a matter, which this lease says should be arbitrated, or as to any other question involving apportionment or valuation, either party may request arbitration and appoint as an arbitrator an independent real estate appraiser having knowledge of valuation of rental properties comparable to the Premises.  The other party shall also choose an arbitrator with such qualifications, and the two arbitrators shall choose a third.  If the choice of the second or third arbitrator is not made within ten days of the choosing of the prior arbitrator, then either party may apply to the presiding judge of the judicial district where the Premises are located to appoint the required arbitrator.

**17.2   Procedure for Arbitration.**  The arbitrator shall proceed according to the Oregon statutes governing arbitration, and the award of the arbitrators shall have the effect therein provided.  The arbitration shall take place in the county where the leased premises are located.  Costs of the arbitration shall be shared equally by the parties, but each party shall pay its own attorney fees incurred in connection with the arbitration.

Landlord:                                          Tenant:

THE ANN M. WISNOVSKY TRUST,          VALLEY VIEW WINERY, INC.
UTD AUGUST 2, 2012

By:_____          By:_____
      Ann M. Wisnovsky, Trustee                Mark A. Wisnovsky, President

                                                   By:_____
                                                         Michael J. Wisnovsky,
                                                         Vice President/Secretary

12 – VINEYARD LEASE

Exhibit 4
Page 17 of 37

18

Verified Correct Copy of Original 7/12/2024

represents and warrants that Tenant has inspected the Property, and that Tenant has made his or her own determination of the value and condition of the Property.

Landlord:

THE ANN M. WISNOVSKY TRUST,
UTD AUGUST 2, 2012

By: _Ann M. Wisnovsky_
    Ann M. Wisnovsky, Trustee

_Phyl. a. Rollason_
03/24/16

Tenant:

VALLEY VIEW WINERY, INC.

By: _Mark A. Wisnovsky_
    Mark A. Wisnovsky, President

By: _Michael J. Wisnovsky_
    Michael J. Wisnovsky,
    Vice President/Secretary

OFFICIAL STAMP
ELIJAH A. ROLLASON
NOTARY PUBLIC - OREGON
COMMISSION NO. 835543
MY COMMISSION EXPIRES JANUARY 19, 2019

12 - VINEYARD LEASE

Exhibit 4
Page 18 of 37

(9

First American Title Company of Oregon

File No : 7169-2290459
July 22, 2014

**Verified Correct Copy of Original 7/12/2024**

## Exhibit "A"

Real property in the County of Jackson, State of Oregon, described as follows:

PARCEL I:
COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 89° 44' 41" WEST 1112.65 FEET TO A 1.5 INCH INSIDE DIAMETER IRON PIPE (RECORD 2 INCH PIPE), FROM WHICH THE CENTER OF A 48 INCH DIAMETER OAK TREE BEARS NORTH 47° EAST 21.4 FEET (RECORD 20.0 FEET), SAID PIPE MARKING THE SOUTHWEST CORNER OF SAID PARCEL DESCRIBED IN DOCUMENT NO. 78-08539; THENCE CONTINUING ALONG THE WESTERLY, NORTHERLY, AND EASTERLY BOUNDARY OF SAID DESCRIBED PARCEL THE FOLLOWING; NORTH 6° WEST 1574.0 FEET, MORE OR LESS, TO THE NORTH LINE OF LOT 4 OF SAID SECTION 33; THENCE EAST 1336 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF LOT 4 OF SECTION 34, SAID TOWNSHIP AND RANGE; THENCE NORTH 608 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF LOT 3 OF SAID SECTION 34; THENCE EAST 736.8 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE, ALONG SAID RIGHT OF WAY BOUNDARY, SOUTH 7° 13' 10" WEST 1837.72 FEET TO A POINT OF CURVE; THENCE ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 3° 38' 17" WEST 242.34 FEET) A DISTANCE OF 242.50 FEET TO THE POINT OF BEGINNING.

PARCEL II:

Exhibit _A_
Page _1_ of _2_

First American Title

Exhibit 4
Page 19 of 37

20

First American Title Company of Oregon

File No.: 7169-2290459
July 22, 2014

COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 87° 33' 02" EAST 21.12 FEET TO A 5/8" IRON PIN; THENCE NORTH 88° 21' 48" EAST 109.22 FEET TO A 5/8" IRON PIN ; THENCE SOUTH 84° 56' 41" EAST 56.34 FEET TO A 5/8" IRON PIN ; THENCE ALONG THE ARC OF A 460.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS NORTH 81° 05' 40" EAST 221.96 FEET ) A DISTANCE OF 224.17 FEET TO A 5/8" IRON PIN; THENCE NORTH 67° 08' 01" EAST 137.72 FEET TO A 5/8" IRON PIN; THENCE NORTH 89° 17' 20" EAST 16.48 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH NORTH 00° 19' 38" WEST 26.00 FEET) A DISTANCE OF 26.00 FEET TO THE POINT OF BEGINNING.

NOTE: This Legal Description was created prior to January 01, 2008.

First American Title

EXHIBIT _A_
Page _2_ of _2_

Exhibit 4
Page 20 of 37

Verified Correct Copy of Original 7/12/2024

**Google Maps** 1000 Upper Applegate Rd



Imagery ©2016 Google, Map data ©2016 Google    200 ft.



**1000 Upper Applegate Rd**
Jacksonville, OR 97530

*VINEYARD LEASE LANDS*
*EXCLUDE ALL PROPERTY*
*INCLUDED IN THE WINERY*
*LEASE.*

*Mark Wisnovsky*
*04/12/16*



Exhibit _B_
Page _1_ of _1_

Exhibit 4
Page 21 of 37

Verified Correct Copy of Original 7/12/2024

# SECOND ADDENDUM TO
# VINEYARD LEASE

22

**Effective Date:**   February 23, 2017

**Between:**      WISNOVSKY LAND, LLC, an          ("Landlord")
                  Oregon limited liability company
                  1352 Applegate Road
                  Jacksonville, OR 97530

**And:**          VALLEY VIEW WINERY, INC., an     ("Tenant")
                  Oregon corporation
                  1000 Upper Applegate Road
                  Jacksonville, OR 97530

**Recitals:**

A.    The Ann M. Wisnovsky Trust, UTD August 2, 2012, and Tenant are parties to a lease dated effective March 24, 2016, ("Lease").

B.    The original landlord's interest in the lease and the original landlord's title to the real property that is subject to the Lease has been assigned to Landlord.

C.    Landlord and Tenant desire to modify some of the terms and conditions of the Lease.

**Agreements:**

1.    **Base Rent.** Section 2.1 of the Lease is revised to read as follows:

"Prior to March 1, 2017, Tenant has paid as "Monthly Base Rent" the sum of $12.50 per acre of land that was being used for the production of agricultural crops. Commencing March 1, 2017, Tenant shall pay to Landlord:
          (1) Monthly Base Rent equal to the sum of $16.67 per acre of land that is presently being used for the production of agricultural crops ("Current Production Land"). Presently the Current Production Land consists of 35 acres, so Monthly Base Rent is $583.45;
          (2) Monthly Base Rent equal to the sum of $16.67 per acre of land that is hereafter used for the production of agricultural crops, excluding hemp and cannabis agricultural crops, over and above the Current Production Land ("Future Production Land");
          (3) Monthly Base Rent equal to the sum of $83.33 per acre of land that is hereafter used for the production of hemp and cannabis agricultural crops over and above the Current Production Land ("Future Production Hemp Land"); and

1 - SECOND ADDENDUM TO VINEYARD LEASE

Exhibit 4
Page 22 of 37

23

(4) "Annual Base Rent" equal to the lesser of: (a) $1,000.00 per acre of Future Production Hemp Land; or (b) annual percentage rent equal to 5% of the gross sale proceeds realized upon the sale of the agricultural crops grown on the Future Production Hemp Land ("Percentage Rent").

Monthly Base Rent shall be paid on or before the first day of each calendar month. Annual Base Rent shall be paid on a calendar year basis and shall be prorated for partial years. Annual Base Rent shall be paid on or before February 1 of the year following the end of the calendar year for which the Annual Base Rent is due. Percentage Rent shall be calculated as of the last day of each calendar year, commencing December 31, 2017, and the calculation shall be completed by January 31 of the following year. Payment of Annual Base Rent shall be accompanied by a statement of the gross sales for the prior year. Tenant shall maintain or cause to be maintained complete and accurate records showing gross sales of agricultural crops grown on the Future Production Hemp Land, and Tenant retain or cause to be retained such records until the expiration of 3 years following the termination of this Lease. Tenant shall take action necessary to ensure that Landlord has the right to inspect and audit such records.

Tenant shall use good farming practices and diligently work to grow crops on land that, at any time, becomes Future Production Land and Future Production Hemp Land. If any Current Production Land, Future Production Land or Future Production Hemp Land becomes fallow following the date hereof, no rent shall be paid on such land for a period of not more than a total of 5 years; after the 5 years have expired, Tenant shall recommence paying rent for such land. Annual Base Rent that is due for Future Production Hemp Land that is fallow or not farmed diligently with good farming practices shall be equal to $1,000.00 per acre. Monthly Base Rent shall be payable on the first day of each month in advance at such place as may be designated by Landlord. If rent is unpaid for a period of 10 days or more, Tenant shall pay, as additional rent a late charge equal to 5% of the amount due."

    2.    **Restrictions on Use.** Section 4.6(1) is revised to read as follows:

"Conform to all applicable laws and regulations of any state authority affecting the Premises and the use, and correct at Tenant's own expense any failure of compliance created through Tenant's fault or by reason of Tenant's use."

    3.    **Subletting.** Landlord agrees that Tenant may sublet all or any part of the Future Production Land to Mark A. Wisnovsky and/or Michael J. Wisnovsky and/or to a limited liability company wholly owned by Mark A. Wisnovsky and/or Michael J. Wisnovsky and/or any of their lineal descendants.

//

//

//

2 - SECOND ADDENDUM TO VINEYARD LEASE

Exhibit 4
Page 23 of 37

24

Verified Correct Copy of Original 7/12/2024

IN WITNESS, the parties have executed this agreement to be effective on the date set forth above.

Landlord:                                      Tenant:

WISNOVSKY LAND, LLC                            VALLEY VIEW WINERY, INC.

By: THE ANN M. WISNOVSKY TRUST                 By: _____
    UTD AUGUST 2, 2012                             Mark A. Wisnovsky, President

    By: _____             By: _____
        Ann M. Wisnovsky, Trustee                 Michael J. Wisnovsky,
                                                   Vice President/Secretary

3 - SECOND ADDENDUM TO VINEYARD LEASE

Exhibit 4
Page 24 of 37

EXHIBIT 2                    25

Verified Correct Copy of Original 7/12/2024.

November 29, 2023

**First-class mail and certified mail return receipt requested, and electronic mail to *jdole@wlrlaw.com***

James R. Dole
Attorney at law
Watkinson Laird Rubenstein PC
1203 Willamette, Suite 200
Eugene, Oregon 97401
*jdole@wlrlaw.com*

Valley View Winery, Inc.
c/o Registered Agent Mark Wisnovsky
All Other Occupants
1000 Upper Applegate Road
Jacksonville, Oregon 97530

**Re: NOTICE OF DEFAULT**

Dear Mr. Dole, Valley View Winery, Inc., an Oregon corporation, their agents, officers, owners, and All Other Occupants:

### Introduction

This letter is in regard to Wisnovsky Land, LLC the landlord of the real property commonly known as 1140 and 1352 Upper Applegate Road, Jacksonville, Jackson County, Oregon 97350, that portion of the real property described as having been previously planted as a vineyard, but excluding the single family residence, and more specifically described on the attached exhibits A and B (the "premises"), which were allegedly leased to Valley View Winery, Inc., by a Commercial Lease Agreement dated on or about March 24, 2016, amended by Addendum to and Assignment by Landlord, dated on or about November 2, 2016, and second addendum to vineyard lease, dated February 23, 2017 (the "Lease"). This our

### 10-DAY NOTICE OF DEFAULT

of your alleged tenancy of the said premises because failure to pay property taxes and additional rent due under the Lease of the said premises. Property taxes in the total sum of $473.62 are presently owing for tax year 2023, all of which are

Exhibit 4
Page 25 of 37

26

_Verified Correct Copy of Original 7/12/2024._

past due at this time, and demand is hereby made for payment of that sum. This amount does not include other charges which may also be due and payable, including interest, penalties, and additional taxes or rent and other charges pursuant to Section 16.7 of the Lease.

To correct this default and avoid termination of your alleged tenancy you must pay the sum of $473.62 on or before **11:59 p.m., December 11, 2023** (which includes at least an additional 48 hours because this notice is served by U.S. mail, certified or registered mail, postage prepaid). If the said sums are not paid by **11:59 p.m., December 11, 2023**, then we will consider the alleged tenancy to be terminated. If you fail to remedy the default as set for above, the Lease provides the Landlord the right to re-enter the premises, remove all persons and property, and retake possession.

If you fail to remedy the defaults as set for above, the alleged Lease provides the Landlord the right to re-enter the premises, remove all persons and property, and retake possession. These notices are supplemental to all prior notices with respect to this alleged Lease and the dates stated herein shall be in addition to the effective dates in connection with any termination or eviction by the landlord pursuant to any prior notice. If you have questions about your rights, you should seek your own counsel.

Regards,

Joanne Couvrette
Manager, Wisnovsky Land LLC
Trustee of the Ann M. Wisnovsky Trust

13274 Jacarte Court
San Diego, CA  92130

---

### VETERANS DISCLOSURE

Oregon law requires that we also provide the following disclosure. If you are a Veteran, of the armed forces assistance may be available from a county veteran's service officer, a community action agency, by dialing 2-1-1 or from the following:
• County veteran's service officer for the county where Tenant lives 1000 E Main St, Ste 3, Medford, Oregon 97504 (541)774-8214
• Community action agency for the area where Tenant lives ACCESS, 3630 Aviation Way, Medford, Oregon 97504 (541)494-1210

Exhibit 4
Page 26 of 37

Verified Correct Copy of Original 7/12/2024.

# Tax Account History
## JACKSON COUNTY TAX COLLECTOR
## JACKSON COUNTY COURTHOUSE
## MEDFORD, OR 97501
### (541) 774-6541

6-Jul-2024

| Tax Account # | 10476804 | Lender Name |
|---|---|---|
| Account Status | A | Lender ID |
| Roll Type | Real | Property ID  4946 |
| Situs Address | | |

| Tax Year | Tax Type | Due Date | Trans Type | Sub Type | Transaction Date | As Of Date | Amount Received | Tax Due | Discount Amount | Interest Charged | Refund Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | ADVALOREM | 11-15-2023 | PAYMENT | RECEIPT | 01-29-2024 | 01-26-2024 | $463.24 | ($459.41) | $0.00 | $3.83 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2023 | ADVALOREM | 11-15-2023 | PAYMENT | RECEIPT | 12-07-2023 | 12-06-2023 | $14.21 | ($14.21) | $0.00 | $0.00 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2023 | ADVALOREM | 11-15-2023 | PAYMENT | RECEIPT | 12-28-2023 | 11-30-2023 | ($459.41) | $459.41 | $0.00 | $0.00 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2023 | ADVALOREM | 11-15-2023 | PAYMENT | RECEIPT | 12-01-2023 | 11-30-2023 | $459.41 | ($459.41) | $0.00 | $0.00 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2023 | ADVALOREM | 11-15-2023 | IMPOSED | TAXROLL | 10-05-2023 | 11-15-2023 | $0.00 | $473.62 | $0.00 | $0.00 | $0.00 |
| Payor | | | | | | | | $0.00 | | | |
| 2022 | ADVALOREM | 11-15-2022 | PAYMENT | RECEIPT | 02-17-2023 | 02-17-2023 | $89.80 | ($89.80) | $0.00 | $0.00 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2022 | ADVALOREM | 11-15-2022 | PAYMENT | RECEIPT | 02-13-2023 | 02-11-2023 | $352.39 | ($348.49) | $0.00 | $3.90 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2022 | ADVALOREM | 11-15-2022 | IMPOSED | TAXROLL | 10-07-2022 | 11-15-2022 | $0.00 | $438.29 | $0.00 | $0.00 | $0.00 |
| Payor | | | | | | | | $0.00 | | | |
| 2021 | ADVALOREM | 11-15-2021 | PAYMENT | RECEIPT | 02-13-2023 | 02-11-2023 | $556.56 | ($479.79) | $0.00 | $76.77 | $0.00 |
| Payor | . | | | | | | | | | | |
| 2021 | ADVALOREM | 11-15-2021 | IMPOSED | TAXROLL | 10-07-2021 | 11-15-2021 | $0.00 | $479.79 | $0.00 | $0.00 | $0.00 |
| Payor | | | | | | | | | | | |

Exhibit 4
Page 27 of 37

28

_Verified Correct Copy of Original 7/12/2024._

# Murphy Law Group P.C.

333 NE Russell St., Ste. 200                                Phone. 503 550 4894
Portland, OR 97212                                          Fax:  503 296 2633

Tim@oregonlandlord.net                                     www oregonlandlord.net

---

**Sent via certified mail**

January 23, 2024

Valley View Winery, Inc.
c/o Registered Agent Mark Wisnovsky
1000 Upper Applegate Rd.
Jacksonville, OR 97530

James R. Dole
Attorney at Law
Watkinson Laird Rubenstein PC
1203 Willamette St., Ste  200
Eugene, OR 97401

        RE:    Termination of tenancy of Valley View Winery, Inc.

Dear Mr. Wisnovsky and Mr. Dole.

        This office represents Joanne Couvrette, who is the trustee of The Ann M. Wisnovsky Trust and managing member of Wisnovsky Land, LLC.

        Wisnovsky Land, LLC is the current landlord to the lease dated March 24, 2016 entered into between The Ann M. Wisnovsky Trust and Valley View Winery, Inc.  The property (hereinafter "Vineyard") described in that lease is:

        THAT PORTION OF THE REAL PROPERTY DESCRIBED IN EXHIBIT A PRESENTLY PLANTED AS A VINEYARD AND LYING FALLOW, BUT EXCLUDING THE SINGLE FAMILY RESIDENCE PRESENTLY OWNED BY THE ANN M. WISNOVSKY, TRUSTEEE OF THE ANN M. WISNOVSKY TRUST, UTD 8/2/12, AND THE TWO PARCELS THAT HAVE BEEN OR MAY BE CREATED UNDER OREGON MEASURE 37 (ORS 197 352). THE PREMISES ARE DEPICTED IN THE MAP ATTACHED AS EXHIBIT B

See Exhibits A and B to the lease dated March 24, 2016 entered into between The Ann M. Wisnovsky Trust and Valley View Winery, Inc.

Exhibit 4
Page 28 of 37

29

_Verified Correct Copy of Original 7/12/2024._

You are hereby notified that the Vineyard lease dated March 24, 2016 between The Ann M. Wisnovsky Trust and Valley View Winery, Inc., including the first and second and any other addenda, (hereinafter "Vineyard Lease") is terminated immediately. Pursuant to an addendum dated November 2, 2016 to the original March 24, 2016 lease, The Ann M. Wisnovsky Trust assigned its interest in the Vineyard Lease to Wisnovsky Land, LLC.

On November 29, 2023, you were issued a 10-Day Notice of Default for failure to pay the property taxes required pursuant to the Vineyard Lease. You subsequently remitted payment to Jackson County via personal check, however, the check was later returned for insufficient funds.

The Vineyard Lease includes a section regarding termination, which reads.

> **14.1 Termination.** In the event of a default the lease may be terminated at the option of Landlord by written notice to Tenant. Whether or not the lease is terminated by the election of Landlord or otherwise, Landlord shall be entitled to recover damages from Tenant for the default, and Landlord may reenter, take possession of the Premises, and remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.

This letter serves as written notice of your landlord's termination of the Vineyard Lease. Please contact the undersigned attorney with any questions. If you fail to vacate the rental premises pursuant to this termination notice by 12:01 am on January 26, 2024, an FED will be filed against you.

Thank you.

Signed,
Landlord's Agent:
Timothy L Murphy
Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
Telephone: (503) 550-4894
Facsimile: (503) 296-2633

Exhibit 4
Page 29 of 37

30

**Verified Correct Copy of Original 7/12/2024.**

First American Title Company of Oregon

File No.: 7169-2290459
July 22, 2014

### Exhibit "A"

Real property in the County of Jackson, State of Oregon, described as follows:

PARCEL I:
COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 89° 44' 41" WEST 1112.65 FEET TO A 1.5 INCH INSIDE DIAMETER IRON PIPE (RECORD 2 INCH PIPE), FROM WHICH THE CENTER OF A 48 INCH DIAMETER OAK TREE BEARS NORTH 47° EAST 21.4 FEET (RECORD 20.0 FEET), SAID PIPE MARKING THE SOUTHWEST CORNER OF SAID PARCEL DESCRIBED IN DOCUMENT NO. 78-08539; THENCE CONTINUING ALONG THE WESTERLY, NORTHERLY, AND EASTERLY BOUNDARY OF SAID DESCRIBED PARCEL THE FOLLOWING; NORTH 6° WEST 1574.0 FEET, MORE OR LESS, TO THE NORTH LINE OF LOT 4 OF SAID SECTION 33; THENCE EAST 1336 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF LOT 4 OF SECTION 34, SAID TOWNSHIP AND RANGE; THENCE NORTH 608 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF LOT 3 OF SAID SECTION 34; THENCE EAST 736.8 FEET, MORE OR LESS, TO THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE, ALONG SAID RIGHT OF WAY BOUNDARY, SOUTH 7° 13' 10" WEST 1837.72 FEET TO A POINT OF CURVE; THENCE ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 3° 38' 17" WEST 242.34 FEET) A DISTANCE OF 242.50 FEET TO THE POINT OF BEGINNING.

PARCEL II:

First American Title

Exhibit ___A___
Page ___1___ of ___2___

Exhibit 4
Page 30 of 37

31

_Verified Correct Copy of Original 7/12/2024._

First American Title Company of Oregon

File No.: 7169-2290459
July 22, 2014

COMMENCING AT THE SOUTHEAST CORNER OF SECTION 33, TOWNSHIP 38 SOUTH, RANGE 3 WEST OF THE WILLAMETTE MERIDIAN, JACKSON COUNTY, OREGON; THENCE NORTH 39° 48' 33" EAST 2122.16 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD, SAID PIN BEING 30.00 FEET RIGHT OF ENGINEER'S CENTERLINE STATION PT 69+35.8; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS NORTH 3° 51' 13" WEST 264.58 FEET) A DISTANCE OF 264.79 FEET TO A 5/8" IRON PIN, FOR THE TRUE POINT OF BEGINNING.; THENCE, LEAVING SAID RIGHT OF WAY BOUNDARY, SOUTH 89° 43' 32" WEST 83.26 FEET TO A 5/8" IRON PIN; THENCE NORTH 75° 39' 31" WEST 110.87 FEET TO A 5/8" IRON PIN; THENCE NORTH 65° 12' 52" WEST 77.57 FEET TO A 5/8" IRON PIN; THENCE NORTH 5° 34' 09" WEST 80.64 FEET TO A 5/8" IRON PIN; THENCE NORTH 86° 01' 00" WEST 127.25 FEET TO A 5/8" IRON PIN; THENCE NORTH 3° 00' 09" WEST 37.24 FEET TO A 5/8" IRON PIN; THENCE NORTH 34° 08' 21" WEST 87.37 FEET TO A 5/8" IRON PIN; THENCE SOUTH 87° 40' 11" WEST 71.86 FEET TO A 5/8" IRON PIN; THENCE SOUTH 2° 30' 32" EAST 129.86 FEET TO A 5/8" IRON PIN WITNESS MONUMENT; THENCE CONTINUING SOUTH 2° 30' 32" EAST 10.73 FEET TO THE CENTERLINE OF THE FARMER'S DITCH (IRRIGATION); THENCE ALONG THE CENTERLINE OF SAID IRRIGATION DITCH, ALONG THE ARC OF A 70.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 59° 03' 39" WEST 11.40 FEET) A DISTANCE OF 11.41 FEET; THENCE SOUTH 63° 43' 55" WEST 1.04 FEET; THENCE ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 38° 32' 36" WEST 17.02 FEET) A DISTANCE OF 17.59 FEET; THENCE SOUTH 13° 21' 18" WEST 31.90 FEET; THENCE ALONG THE ARC OF A 60.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 18° 29' 32" EAST 63.32 FEET) A DISTANCE OF 66.70 FEET; THENCE SOUTH 50° 20' 23" EAST 51.96 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH BEARS SOUTH 2° 59' 16" WEST 35.29 FEET) A DISTANCE OF 40.95 FEET; THENCE SOUTH 56° 18' 55" WEST 70.70 FEET; THENCE ALONG THE ARC OF A 22.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS SOUTH 42° 24' 35" WEST 10.57 FEET) A DISTANCE OF 10.68 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF THAT LANE REFERRED TO AS THE SOUTH BOUNDARY OF THAT PARCEL DESCRIBED IN DOCUMENT NO. 78-08539 OFFICIAL RECORDS OF JACKSON COUNTY, OREGON; THENCE, LEAVING SAID IRRIGATION DITCH CENTERLINE FOLLOWING ALONG THE NORTHERLY BOUNDARY OF SAID LANE, SOUTH 87° 33' 02" EAST 21.12 FEET TO A 5/8" IRON PIN; THENCE NORTH 88° 21' 48" EAST 109.22 FEET TO A 5/8" IRON PIN ; THENCE SOUTH 84° 56' 41" EAST 56.34 FEET TO A 5/8" IRON PIN ; THENCE ALONG THE ARC OF A 460.00 FOOT RADIUS CURVE TO THE LEFT (THE LONG CHORD TO WHICH BEARS NORTH 81° 05' 40" EAST 221.96 FEET ) A DISTANCE OF 224.17 FEET TO A 5/8" IRON PIN; THENCE NORTH 67° 08' 01" EAST 137.72 FEET TO A 5/8" IRON PIN; THENCE NORTH 89° 17' 20" EAST 16.48 FEET TO A 5/8" IRON PIN ON THE WESTERLY RIGHT OF WAY BOUNDARY OF APPLEGATE ROAD; THENCE ALONG SAID WESTERLY RIGHT OF WAY BOUNDARY, ALONG THE ARC OF A 1939.86 FOOT RADIUS CURVE TO THE RIGHT (THE LONG CHORD TO WHICH NORTH 00° 19' 38" WEST 26.00 FEET) A DISTANCE OF 26.00 FEET TO THE POINT OF BEGINNING.

NOTE: This Legal Description was created prior to January 01, 2008.

Exhibit _A_
Page _2_ of _2_

*First American Title*

Exhibit 4
Page 31 of 37

32

_Verified Correct Copy of Original 7/12/2024._

4/4/2016                                    1000 Upper Applegate Rd - Google Maps

## Google Maps    1000 Upper Applegate Rd



Imagery ©2016 Google. Map data ©2016 Google    200 ft



**1000 Upper Applegate Rd**
Jacksonville, OR 97530

VINEYARD LEASE LANDS
EXCLUDE ALL PROPERTY
INCLUDED IN THE WINERY
LEASE.

Mark Wisnovsky
04/12/16



Exhibit __B__
Page __1__ of __1__

https://www.google.com/maps/place/1000+Upper+Applegate+Rd,+Jacksonville,+OR+97530/@42.2218035,-123.0511662,665m/data=!3m1!1e3!4m2!3m1!1s0x5...    1/2

Exhibit 4
Page 32 of 37

*102—*
EXHIBIT 5  33

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF _Jackson_
**Small Claims Department**

Wisnovsky Land LLC

_____
                          Plaintiff
(Inmate SID #, if applicable, _____)

v.

Valley View Winery
_____
                          Defendant
☐Defendant is a public body

**24SC15319**
Case No: Judge: Small Claims, Judge

**SMALL CLAIM AND
NOTICE OF SMALL CLAIM**
Filing fee at ORS 46.570

☐ Subject to UTCR 5.180(3)
☐ Subject to ORS 646A.070(1) and UTCR 5.180(2)

**PLAINTIFF** (☐Additional on attached page)

Wisnovsky Land LLC
Name

13274 Jacarte Ct.
Street

San Diego, CA 92130
City / State / Zip

619-750-8509   San Diego
Phone              County

**DEFENDANT** (☐Additional on attached page)

Valley View Winery
Name (enter Registered Agent, if necessary, on next page)

1000 Upper Applegate Rd
Street (do not use a P.O. Box)

Jacksonville, OR 97530
City / State / Zip

541-899-8468    Jackson
Phone              County

➤ I need an interpreter: ☐ Spanish ☐ ASL ☐ other: _____

I, Plaintiff, claim that on or about (date) 11-15-23 to 5-15-24 , the above-named defendants owed me the sum of (or property valued at) $ 6,789 83 because failure to pay rents under "Vineyard Lease" Default notice sent 11-29-23 for past due property tax which is considered rent    4736 62

Late fee    23 68

Rent under 14.3 (1) Jan-May 2024    3146 45

Late fee for delinquent rent    157 36

Interest (17%) under 16.7    188 76

Cost for default termination    280 00

_____, and this amount is still due. $ 6789 8?

I have paid (or will pay):
filing fees of $ 102—
and service costs of $ 50

| Claim | $ 6789 83 |
|-------|-----------|
| + Fees | $ 102 |
| +Costs | $ 50 |
| TOTAL | $ 6941 83 |

Small Claim and Notice of Small Claim
Page 1 of 3

O.JD OFFICIAL
(Rev 2022)

Exhibit 4
Page 33 of 37

34

_ Verified Correct Copy of Original 7/12/2024._

## DECLARATION OF GOOD FAITH EFFORT

I, Plaintiff, have made a good faith effort to collect this claim from the defendants before filing this claim with the court clerk.

(Describe your efforts): _Sent multiple offers of settlement_

If this case is subject to ORS 646A.670(1) (see the box at the top of page 1)
See the Oregon Judicial Department website for information about debt collection cases:
www.courts.oregon.gov/debtcollection

☐ I have complied with ORS 646A.670(1) and UTCR 5.180. A completed *Consumer Debt Collection Disclosure Statement* is attached and incorporated into this pleading as required by UTCR 5.180(2)(iii).

**I hereby declare that the above statements are true to the best of my knowledge and belief. I understand they are made for use in court and I am subject to penalty for perjury.**

_5-15-21_
Date

_Joanne Cavrette Manger_
Plaintiff Signature          Wisnovsky Land LCC

_Joanne Cavrette_
Plaintiff Name (print)

### DEFENDANT'S REGISTERED AGENT:

_Mark Wisnovsky_
Name

_25 Vintage Circle_
Street (do not use a P.O. Box)

_Jacksonville, OR 97530_
City / State / Zip

_541-899-8468_      _Jackson_
Phone                County

OJD OFFICIAL
(Feb 2021)

Exhibit 4
Page 34 of 37

35

_Verified Correct Copy of Original 7/12/2024._

# NOTICE TO DEFENDANT:
## READ THESE PAPERS CAREFULLY!

Within **14 DAYS**\* after receiving this notice you **_MUST_** do **_ONE_** of the following things in writing:

- Pay the claim plus filing fees and service expenses paid by plaintiff (send payment directly to the plaintiff, not to the court) **OR**
- Demand a hearing and pay the fee required (below) **OR**
- Demand a jury trial and pay the fee required (below). This option is available **only** if amount claimed is more than $750.

If you fail to do one of the above within 14 DAYS\* after you get this notice, the plaintiff may ask the court to enter a judgment against you. The judgment will be for the amount of the claim, plus filing fees and service costs paid by the plaintiff, plus a prevailing party fee. If you are not able to respond in time because you are in active military service of the United States, talk to a legal advisor about the Servicemembers Civil Relief Act.

**COURT NAME / ADDRESS / PHONE #**    541-776-7171

> Jackson County Court
> 100 S. Oakdale
> medford, OR 97501

**Defendant's Filing Fees** (_must be filled in by the PLAINTIFF_):

(1) To demand a hearing if the amount claimed is $2,500 or less    $ 57.
(2) To demand a hearing if the amount claimed is more than $2,500    $ ~~157~~ 105
(3) To demand a jury trial (only if amount claimed is over $750)    $ 170

You can fill out and file your _Response_ online at _www.courts.oregon.gov/iforms._ If you have questions about filing procedures, go to _www.courts.oregon.gov._ Or you may contact the court clerk. The clerk _cannot_ give you legal advice about the claim.

\*NOTE: If the plaintiff is an <u>adult in custody</u> (ORS 30.642) AND the defendant is a <u>government agency or other public body</u> (ORS 30.260), the defendant must respond within <u>30 days</u> after receiving this Notice.

OJD OFFICIAL
(Feb 2022)

Exhibit 4
Page 35 of 37

_Verified Correct Copy of Original 7/12/2024._

36

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF JACKSON
100 S. Oakdale Ave
Medford Oregon  97501
541-776-7171                          http://courts.oregon.gov/jackson

June 21, 2024

Wisnovsky Land LLC
13274 Jacarte Ct
San Diego CA  92130

Re: Wisnovsky Land LLC vs Valley View Winery
Case #: 24SC15319

### NOTICE TO FILE FORMAL COMPLAINT

The defendant has claimed the right to a jury trial in this case.  Because of this, your case will not be heard in the Small Claims Department.

If you want to continue with your case, you have to file a formal complaint. You must serve the defendant with a copy of the formal complaint and a summons by mail within **20 days** of the date of this notice.  **If you do not file a formal complaint within the time limit your case will be dismissed.**

Please reference the small claim's case number on the upper right hand corner of the new complaint.

You are not limited to the amount stated in the original claim, but it must involve the same controversy.  Summons and complaint forms are NOT available at our office.  It is advisable, but not required, that you consult an attorney.  Please refer to the Oregon Revised Statute (ORS) 46.465(3), a copy of which can be found in the Jackson County Law Library, which is located in the basement of our building.

Additional filing fees will be due when you file the formal complaint.  Please check the current filing fee schedule located at www.courts.oregon.gov/Jackson for the correct fee.

The defendant must file an appearance within 10 DAYS after the date on which the summons and complaint would be delivered to the defendant in due course of mail.  Thereafter the case shall proceed as other causes in the Circuit Court.  The case will be assigned to the Appropriate Dispute Resolution (ADR) program.  You will receive further information on the ADR program at that time.

Exhibit 4
Page 36 of 37

37



Verified Correct Copy of Original 7/12/2024

## DECLARATION OF SERVICE

I certify that on July 8, 2024, I served:

**Case No. 24CV32833**
**COMPLAINT:** Amounts due under Vineyard Lease

**PRAYER AMOUNT:** $105,000 Filing Fee: $594 Amount claimed ORS 21.160(1)(c): Amount jury determines to be reasonable and in accordance with the law

**And**

**Case No. 24CV32831**
**COMPLAINT·** Amounts due under Winery Lease

**PRAYER AMOUNT:** $20,000 Filing Fee: $283 Amount claimed ORS 21.160(1)(b): Amount jury determines to be reasonable and in accordance with the law

to:

Valley View Winery
Mark Wisnovsky, Registered Agent
24 Vintage Circle
Jacksonville, OR 97530

I served these documents by mailing to the above parties a true copy thereof, certified by me as such, contained in a sealed envelope, with postage paid, addressed to said parties at their last known address and deposited it in the Post Office in Del Mar, California.

I declare under penalty of perjury under the laws of the State of California and the State of Oregon that the foregoing is true and correct, and that this declaration is executed on this July 11, 2024 in San Diego, California.

Anna Couvrette

Exhibit 4
Page 37 of 37