IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

| | |
|---|---|
| Ann M. Wisnovsky Trust, Member on behalf of WISNOVSKY LAND, LLC | Case No.  24CV32831 |
| Plaintiff, | DECLARATION OF JOANNE COUVRETTE |
| V. | |
| VALLEY VIEW WINERY, INC, | |
| Defendants | |

I, Joanne Couvrette declare and state as follows:

1. I am one of two beneficiaries of the Ann M. Wisnovsky Trust (the "Trust"), my brother Robert Wisnovsky being the second beneficiary.

2. There are two assets of the Trust, Wisnovsky Land, LLC  and Upper Applegate LLC.

3. Wisnovsky Land, LLC is a member managed LLC which owns certain property in Oregon which is leased by the Defendants under two separate lease agreements.  The first is the Winery Lease through which Defendants lease an event site, winery buildings, a warehouse, a tasting room, a parking lot, and the ground upon which those buildings and appurtenances sit.  The second is the Vineyard lease through which the Defendants lease

DECLARATION OF JOANNE
COUVRETTE - 1

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 1 of 9

agricultural land for the purpose of growing grapes and other crops.  Collectively the two lease agreements are referred to herein as the "Leases".

4.  I am a manager of Wisnovsky Land, LLC.

5.  The Leases contain the follows provisions:

> 8.1 Property Taxes. Tenant shall pay as due all taxes on its personal property located on the Premises. Tenant shall pay as due all real property taxes and special assessments levied against the Premises. As used herein, real property taxes include any fee or charge relating to the ownership, use, or rental of the Premises, other than taxes on the net income of Landlord or Tenant.[1]
> ***
> 2.2 Additional Rent. All taxes, insurance costs, utility charges that Tenant is required to pay by this lease, and any other sum that Tenant is required to pay to Landlord or third parties shall be additional rent.
> ***
> 15.1 Termination. In the event of a default the lease may be terminated at the option of Landlord by written notice to Tenant. Whether or not the lease is terminated by the election of Landlord or otherwise, Landlord shall be entitled to recover damages from Tenant for the default, and Landlord may reenter, take possession of the Premises, and remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.[2]
> ***
> 15.3 Damages: In the event of the termination or retaking of possession following default, Landlord shall be entitled to recover immediately, without waiting until the due date of any future rent or until the date fixed for expiration of the lease term, the following amounts as damages:
> (I) The loss of rental from the date of default until a new Tenant is, or with the exercise of reasonable efforts could have been, secured and paying out. (2) The reasonable costs of reentry and reletting including without limitation the cost of and cleanup, refurbishing, removal of Tenant's property and fixtures, costs incurred under Section 14.5, or any other expense occasioned by Tenant's default

---

[1] This is quoted from the Winery Lease, the Vineyard Lease contains a clause which is substantially similar but is preceded by "Tenant will do all that is reasonably necessary to maintain the special real property tax assessment that are presently available for the Premises."
[2] This is section 15.1 in the Winery lease and section 14.1 in the Vineyard lease

DECLARATION OF JOANNE
COUVRETTE - 2

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 2 of 9

including but not limited to, any repair costs, attorney fees, court costs, broker commissions, and advertising costs.[3]

\*\*\*

17.7 Interest on Rent and Other Charges. Any rent or other payment required of Tenant by this lease shall, if not paid within ten days after it is due, bear interest at the rate of 12% per annum (but not in any event at a rate greater than the maximum rate of interest permitted by law) from the due date until paid. In addition, if Tenant fails to make any rent or other payment required by this lease to be paid to Landlord within five days after it is due, Landlord may elect to impose a late charge of five cents per dollar of the overdue payment or reimburse Landlord for the costs of collecting the overdue payment. Tenant shall pay the late charge upon demand by Landlord. Landlord may levy and collect a late charge in addition to all other remedies available for Tenant's default, and collection of a late charge shall not waive the breach caused by the late payment.[4]

6.   The Defendants failed to pay the property taxes for 2022.

7.   On or about November 29, 2023, the Defendants were notified that they had failed to pay the property taxes and were given 10 days to cure the default.  Defendants failed to timely cure the default.

8.   On or about January 23, 2024, the Defendants were notified that the Leases were terminated for the above-described default.

9.   The Defendants failed to vacate the property after being notified that the Leases had been terminated due to the default.

10. My understanding of the Leases is that when a tenant defaults and causes the lease to be terminated, Wisnovsky Land, LLC is immediately entitled to seek damages including the unpaid property taxes, lost rents, and other costs incurred by Wisnovsky Land, LLC because of the tenant's default.

---

[3] This is section 15.3 in the Winery lease and section 14.3 in the Vineyard lease.
[4] This is section 17.7 in the Winery lease and section 16.7 in the Vineyard lease.

DECLARATION OF JOANNE
COUVRETTE - 3

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 3 of 9

11. On or about May 16, 2024, I caused the small claims actions No. 24SC15320 and 24SC15319 to be filed in the Jackson County Small Claims Court. These actions were bought as separate matters because they relate to separate lease agreements.

12. Defendants filed an answer to the Small Claims complaints requesting jury trials, which forced the removal of these matters from Small Claims Court to Circuit Court.

13. I then caused the captioned lawsuit to be filed on July 9, 2024, together with Jackson County Case No 24CV32833.

14. I am not an attorney, nor have I ever attended law school or been admitted to any state bar organization.

15. Throughout the course of my personal life and career I have had cause to represent myself and various business interests in legal proceedings, in both state (CA.) and federal court, approximately ten times.   I have used California Small Claims Courts for rent collections for non-human entities in California.  I have often been successful even when an attorney was present on the other side.

16. It has been my experience in California Small Claims Courts that a non-attorney may represent a non-human entity within that venue.

17. It has also been my experience in California Small Claims Courts that matters filed into that court are required to stay within Small Claims Courts.

18. I was not aware that a pro-se litigant could not represent a non-human entity in Oregon Small Claims Courts, nor that an action filed into Small Claims Courts could be forcibly removed to Circuit Court.

19. I filed these actions into Small Claims Court specifically to avoid causing either party to incur attorney's fees for what I feel is a low-value and straight-forward dispute.

DECLARATION OF JOANNE COUVRETTE - 4

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 4 of 9

20. I was not aware that when Defendant requested a jury trial in these matters that it would subject the losing party to a claim for attorney's fees.

21. When I learned that these matters were being moved to Circuit Court, I did research to determine if I could represent Wisnovsky Land, LLC. My research suggested that I could not represent Wisnovsky Land, LLC, but that pursuant to ORS 65.174(1) I could bring this as a "derivative suit" wherein I could represent the interests shared between myself the LLC in which I am a member. I was not aware of the Oregon case law which states that an attorney is still required in a derivative suit.

22. During the pendency of the above-described actions, I attempted to negotiate a settlement with the Defendants. Despite the land being owned by Wisnovsky Land, LLC, I suggested that we could sell the land and divide the proceeds 4 ways with equal shares for each of my mother's children. See Exhibit 1.

23. Based on my research and communications with potential buyers, I believe the value of the premises to be in excess of six million dollars ($6,000,000).

24. Settlement negotiations were going well and there was a potential buyer interested in purchasing the land. The Defendants however insisted on speaking with the buyer without myself or Robert present. Shortly thereafter the buyer backed out of the purchase discussions. The Defendants thereafter ceased communicating with me.

25. My brother Robert Wisnovsky ("Robert") and I share interests in these matters as the only two beneficiaries of the Trust. Robert has given me authority to act on behalf of the Trust in these matters. I have not given Robert any authority to represent the Trust in any legal matters, nor do I have the authority to do so since I am no longer trustee of the Trust. Robert periodically assists me with simple tasks such as filing documents, but

DECLARATION OF JOANNE COUVRETTE - 5

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 5 of 9

otherwise does not represent the Trust, the LLC, or me, in any legal capacity. Robert does not speak for me.

26. Shortly after July 18, 2024, I learned that my Robert had written to our brothers and expressed satisfaction that their legal bills would be increasing. Robert did not discuss this with me beforehand nor do I have any ability to control Robert's actions. When I discovered he had written this letter I was angry and asked him (not for the first time) not to communicate with our brothers or otherwise interfere with these legal proceedings.

27. On or about September 10, 2024, I spoke with counsel for Defendants about their intent to move for a dismissal of cases 24CV32831 and 24CV32833. We were also discussing a global settlement of all the issues. I commented that we have all spent too much money on attorney fees.

28. I believed that that these 2 lease violation cases were distinct from the federal case which does not include a demand for rent, taxes, or wrongful withholding.

29. Based on my understanding of ORS 65.174(1) I believed that I could appear in this case pro-se. Therefore, I informed Defendants counsel of my intent to object to their motions to dismiss.

30. During the conversation described in ¶ 27, I also expressed that I felt all of this, meaning the state and federal litigations (there is also a lawsuit from these Defendants seeking to have me removed as Trustee of the Trust, a position from which I have already resigned), were a waste of time and money because the right thing to do is to simply sell the property and divide the proceeds evenly. I do not recall saying the objection "will not affect me the same way because I have plenty of time am litigating without a lawyer * * * does not cost me anything", nor can I recall any statement that could have been

DECLARATION OF JOANNE
COUVRETTE - 6

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 6 of 9

interpreted as such.  If I had wanted these matters to incur legal fees for the Defendants, I wouldn't have filed into Small Claims Court where attorneys aren't allowed.

I hereby declare that the foregoing statements are true, based on my knowledge and belief, and I understand that they are intended to be used as evidence in court and subject to the penalty for perjury.

_____
Joanne Couvrette

_____
Date

DECLARATION OF JOANNE
COUVRETTE - 7

Murphy Law Group, P.C.
333 NE Russell St., Ste. 200
Portland, OR 97212
(503) 550-4894 phone / (503) 296-2633 fax

Exhibit 6
Page 7 of 9

----- Forwarded Message -----
**From:** Joanne Couvrette <jcouvrette@sbcglobal.net>
**To:** Mark Wisnovsky <markawisnovsky@gmail.com>
**Cc:** Mike Wisnovsky <mike@valleyviewwinery.com>
**Sent:** Monday, June 17, 2024 at 07:58:38 AM PDT
**Subject:** Re: Small Claims proposal

I am interested in a global settlement.

The two lots (1800, 200) were valued at $6.5M in 2023.

We are getting sale inquiries without actually listing it properly.   You never contacted the agent as you had requested.

The only way to know if it will actually sell for more than $5M is to properly list it without lease and lien.

We would sign a settlement to:

1) List property (1800, 200) for $7M, selling it as winery/vineyard/new home site.

2) Split net proceeds of sale 25% each, with $5M sales price floor or $2.5M floor for your and Mike's share.

3) Drop all litigation/remove Lis Pendens.

4) VVW pays delinquent rent/tax and lease is reinstated upon payment of delinquency and signed settlement agreement.   Lease terminates on sale.

If it doesn't sell, you just keep renting per existing lease.   No down side for you, as if we can't close a sale at >$5M, you continue VVW with a very low rent.  If you are correct and it won't sell at $5M, then WL may want to sell it for less, but your share would still be $2.5M.  Example: if it sells at $4M your/Mike's share would still be $2.5M (minus the closing costs).

Joanne

> On Jun 14, 2024, at 11:46 AM, Mark Wisnovsky <markawisnovsky@gmail.com> wrote:

> Joanne,

> We have been reasonably skeptical, as you would be, of the information provided by Steve Brigandi or Bob in the past about potential offers to purchase.  They did not appear to be

legitimate.  But if a legitimate buyer is willing to pay enough money, it would be worthwhile to explore a potential comprehensive settlement involving a sale of the vineyard and winery property.  We would need more information about the buyer's interest before spending more time exploring that possibility.

We are also interested in a resolution of the small claims for unpaid rent and taxes.  While we obviously dispute the amount, would you consider an agreement in which we pay the amounts due for the property taxes and lease rents as listed in the small claims suit and Wisnovsky Land withdraws the small claims, its notices of default and eviction and agrees not to sue on this issue in the future?

Mark and Michael