# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

JOANNE COUVRETTE, MICHELLE
SULLIVAN, *as special administrator of the
estate of Ann M. Wisnovsky*; and
WISNOVSKY LAND, LLC, *an Oregon
limited liability company*,

      Plaintiffs,

v.

MARK A. WISNOVSKY; MICHAEL J.
WISNOVSKY; and VALLEY VIEW
WINERY, INC., *an Oregon Domestic
Business Corporation*,

      Defendants.

Case No. 1:21-cv-00157-CL

**OPINION AND ORDER**

---

**CLARKE,** United States Magistrate Judge.

      The issue before the Court is the appropriate sanctions for Plaintiffs' misuse of generative

artificial intelligence and continual violations of the Local Rules. In briefing the cross-motions

for summary judgment, Plaintiffs filed three briefs containing citations to fifteen non-existent

cases and fabricated quotations falsely attributed to eight legitimate authorities. This Opinion

does not include the names of the fictitious cases doctored by Plaintiffs, as doing so could

inadvertently amplify the lie that these cases exist.[1]

---

[1] Defendants' Motion for Sanctions accurately details the fictitious cases and fabricated quotations
filed in Plaintiffs' briefing. Defs.' Mot. for Sanctions at 4–11, ECF No. 184. The Court also

"[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643 (1976)). In the quickly expanding universe of cases involving sanctions for the misuse of artificial intelligence, this case is a notorious outlier in both degree and volume. Plaintiffs and their counsel have not been adequately forthcoming, candid, or apologetic about their conduct. If there was ever an "appropriate case" to grant terminating sanctions for the misuse of artificial intelligence, this is it. *Combs*, 927 F.2d at 488. The Court recounts the factual record in detail and finds that Plaintiffs share responsibility with their attorney, Mr. Brigandi, for statements of fiction misrepresented to the Court as statements of law.

The parties consent to the jurisdiction of a U.S. Magistrate Judge. ECF No. 38. Defendants' Motion for Imposition of Sanctions (ECF No. 184) is GRANTED in part and DENIED in part. The Court strikes the sanctionable briefs, orders Mr. Brigandi to pay monetary sanctions, orders Mr. Murphy to show cause, and dismisses Plaintiffs' claims with prejudice.

## LEGAL STANDARD

### I.    Fed. R. Civ. P. 11

Rule 11(b) of the Federal Rules of Civil Procedure "is intended to deter baseless filings in district court and imposes a duty of 'reasonable inquiry' so that anything filed with the court is 'well grounded in fact, legally tenable, and not interposed for any improper purpose.'" *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Rule 11(b) provides in relevant part:

---

identified an additional fabricated quotation falsely attributed to the Restatement (Second) of Contracts, explained below.

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b).

Under Rule 11(c)(2), a party may file a motion for sanctions that "describe[s] the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Under Rule 11(c)(3), the court, on its own initiative, may "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

## II.    Local Rule 83-7

Local Rule 83-7 requires every attorney admitted to general or special practice to "[b]e familiar and comply with the Oregon Rules of Professional Conduct and this Court's Statement of Professionalism." LR 83-7. Rule 3.3(a) of the Oregon Rules of Professional Conduct prohibits a lawyer from knowingly "mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Or. Rules Prof. Conduct R. 3.3(a). The Court's Statement of Professionalism prohibits attorneys from "knowingly misstat[ing] facts or law." General Guidelines 1.9, Statement of

Professionalism and Notice of Rule 83-6, https://www.ord.uscourts.gov/index.php/attorneys/ statement-of-professionalism (last visited November 26, 2025).

## FINDINGS OF FACT

### I.    The Wisnovsky Brothers, Ms. Couvrette, and Plaintiffs' Counsel

This case arises from a dispute over the family winery between the adult children of an aging mother. On January 29, 2021, Joanne Couvrette ("Ms. Couvrette") filed this case as trustee of the Ann M. Wisnovsky Trust and on behalf of her mother, Ann M. Wisnovsky ("Ann"). Defendants and Counter Claimants Mark and Michael Wisnovsky were Ann's sons (and Ms. Couvrette's brothers). After the case was filed, Ann passed away and the Court granted Plaintiffs' Motion to Substitute Michelle Sullivan as Trustee and Special Administrator of Ann's Estate for Ms. Couvrette for the limited purpose of litigating the estate's elder abuse claim against Defendants. Opinion and Order at 11, ECF No. 137. When granting Plaintiffs' motion to substitute, the Court noted that the substitution "does not relieve Ms. Couvrette of any of the Defendants' counterclaims alleged against her." *Id.* For ease of reference in this Opinion, the term "Plaintiffs" includes Counter Defendant Ms. Couvrette, who is also the sole member of Plaintiff Wisnovsky Land, LLC.

On February 7, 2024, attorney Stephen Brigandi appeared *pro hac vice* on behalf of Plaintiffs. Mr. Brigandi appeared by association with local counsel Timothy Murphy. On December 16, 2024, the Court found that when filing a motion on behalf of Plaintiffs, Mr. Brigandi failed to comply with the Conferral Rule, LR 7-1. Opinion and Order at 4, ECF No. 137. The Court declined to deny Plaintiffs' motion on that basis but gave notice that:

> [n]oncompliance with Local Rules is not something this Court takes lightly, and further noncompliance may result in denial or dismissal of this case. The Court recognizes that Plaintiffs' lead attorney is admitted to practice in this jurisdiction

*pro hac vice* and encourages local counsel [(Mr. Murphy)] to help ensure compliance with Local Rules.

*Id.*

On March 22, 2024, Ms. Couvrette's brother, non-party Robert Wisnovsky, called and left a voicemail for his brother, Defendant Michael Wisnovksy. Robert explained that Ms. Couvrette's daughter was dating attorney Mr. Brigandi's son. Michael Wisnovsky Decl. ¶ 4, ECF No. 207. The purpose of the call, however, was not to gossip about their niece's love life but instead to leverage the relative costs in prosecuting and defending the case. Robert explained in his voicemail:

> When I meant that we don't have an attorney, I really meant we're not paying for an attorney. . . . [Mr. Brigandi] was a corporate attorney for Jack-in-the-Box for 13 years and he's representing us for nothing. So, if you want to continue on, we're not spending a dollar compared to what you're spending. I filed a motion today to delay this other trial of this May 2nd thing, which they're going to grant. And you're just going to continue hemorrhaging money. Like I told you, when I saw him at the hearing, I saw you there. I ripped fucking Dole's heart out right there. I didn't even go to law school. And your boy, Jim. Oh, my God. What a failure that guy is. What about Brooks? 7 hour deposition. Took him out too, so I'm fully engaged now with this. Walk away. Make money and quit losing money. So if you're interested in that, call me.

Wisnovsky Decl. ¶ 4, ECF No. 207.[2] Unsurprisingly, Robert's voicemail did not lead to settlement of the case.

## II.    Plaintiffs' Fabrications of Law

### A.    Plaintiffs' Motion Cites Two Non-Existent Cases

On January 31, 2025, Plaintiffs filed a motion for summary judgment that contained purported legal arguments supported by citations to two non-existent cases. ECF No. 142. Defendants filed a cross motion for partial summary judgment that same day. ECF No. 143.

---

[2] Defendants' attorneys in this case include James "Jim" Dole and Brooks Foster. *See* ECF No. 29.

**B.    Plaintiffs' Response Cites Seven Non-Existent Cases**

On April 4, 2025, Plaintiffs filed their response brief to Defendants' cross motion for

partial summary judgment. ECF No. 155. Plaintiffs' response cited seven non-existent cases.

Later that day, Defendants filed their brief in response to Plaintiffs' motion for summary

judgment and identified the two non-existent cases cited in Plaintiffs' summary judgment

motion. Defs.' Resp. at 35, 80, ECF No. 160. Defendants suggested that these non-existent cases

were "perhaps hallucinated by artificial intelligence." *Id.* at 35. Defendants' response also noted

that Plaintiffs' summary judgment motion violated the Local Rules on word count limits (falsely

certifying compliance), formatting of exhibits, filing requirements for declarations, and factual

citation specificity on summary judgment briefing.

**C.    Plaintiffs File a Notice of Errata that Ignores their Use of Non-Existent Cases**

On April 25, 2025, Plaintiffs filed a Notice of Errata. ECF No. 165. Despite Defendants'

response brief noting Plaintiffs' use of non-existent cases, Plaintiffs' Notice of Errata did not

acknowledge, explain, or amend the portions of their briefs that relied on non-existent cases.

Instead, Plaintiffs asked the Court to ignore two benign sentences which were "included by

mistake" in Plaintiffs' motion for summary judgment. *Id.* at 2.[3]

**D.    Plaintiffs' Reply Cites Six Non-Existent Cases and Ten Fabricated Quotations**

On May 2, 2025, Plaintiffs filed their reply brief in support of their motion for summary

judgment. ECF No. 168. Plaintiffs' reply cited six additional non-existent cases, bringing the

total to fifteen fake cases cited across three briefs. Plaintiff's reply brief quoted three of the

---

[3] Plaintiffs Notice of Errata asked the Court to ignore a sentence in the introduction of their summary judgment motion that stated, "[t]his Motion highlights the undisputed facts, including Defendants' admissions, independent professional evaluations, and contractual terms, to show that no genuine issues of material fact exist." Notice of Errata at 2, ECF No. 165. Plaintiffs also asked the Court to ignore a sentence in the legal standard section of their summary judgment motion that stated, "[t]he additional case law cited reinforces the principles outlined and provides further support for the arguments presented." *Id.*

non-existent cases, contained fabricated quotations falsely attributed to seven real cases, and contained a fabricated quotation falsely attributed to the Restatement (Second) of Contracts. Plaintiffs' reply brief acknowledged Defendants' assertion that Plaintiffs' motion for summary judgment violated the Local Rules, but Plaintiffs' reply brief did not acknowledge Defendants' assertion that Plaintiffs submitted non-existent cases. *Id.* at 8.

Later that day, Defendants filed their reply brief, which identified the seven non-existent cases cited in Plaintiff's April 4, 2025, response. Defendants also noted Plaintiffs' failure to correct or explain the inclusion of two non-existent cases in Plaintiffs' January 31, 2025, motion for summary judgment.

## III.    Defendants' Motion for Sanctions and Plaintiffs' Response

### A.    Defendants Send Plaintiffs Notice of Intent to File a Motion for Sanctions

On May 7, 2025, Defendants served Plaintiffs with a proposed motion for sanctions in accordance with Rule 11(c)(2). ECF No. 177-1. Defendants' counsel asserted that Plaintiffs' citation to non-existent cases and inclusion of fabricated quotations violated LR 83-7 and Rule 11(b) by submitting legal contentions not warranted by existing law. Defendants demanded that Plaintiffs (1) withdraw the sanctionable briefing, (2) stipulate to dismissal with prejudice of Plaintiffs' claims, and (3) agree to pay Defendants' reasonable attorney's fees for the work performed since the date that Plaintiffs filed the first brief containing citations to non-existent cases. In accordance with Rule 11(c), Defendants' counsel demanded that these corrective measures be taken within 21-days.

### B.    Plaintiffs' Local Counsel Withdraws

On May 19, 2025, Plaintiffs' local counsel, Timothy Murphy, filed a motion to withdraw as local counsel, citing "that circumstances have arisen that allow for withdrawal." ECF No. 174. The Court granted the motion, allowing thirty days for Plaintiffs to retain new local counsel.

ECF No. 175. Because the summary judgment briefing was only recently under advisement and Defendants' motion for sanctions had not yet been filed, the Court was not aware of Plaintiffs' apparent misconduct when it granted local counsel's motion to withdraw. On June 11, 2025, Plaintiffs filed a notice of appearance of new local counsel. ECF No. 185.

### C.    Plaintiffs Respond to Defendants' Notice of Intent to File for Sanctions

On May 21, 2025, Plaintiffs' lead counsel, Mr. Brigandi, responded by letter to Defendants draft sanctions motion. ECF No. 177-2. Mr. Brigandi did not dispute, acknowledge, or accept responsibility for the use of non-existent cases and fabricated quotations. His response stated, in full: "This letter is in response to your letter dated May 7, 2025 regarding your stated intention to file a Motion for Sanctions in the Sullivan v. Wisnovsky litigation. Plaintiffs will not agree to the sanctions requested. If such Motion is filed, Plaintiffs will respond with a Notice of Errata and Corrections." *Id.*

### D.    Defendants File a Motion for Imposition of Sanctions

Because Mr. Brigandi stated that he would not take corrective action until after Defendants filed the sanctions motion, Defendants did not wait 21-days after service to file the motion. Sixteen days after service, on May 23, 2025, Defendants filed a motion for imposition of sanctions for Plaintiffs' use of non-existent cases, fabricated quotations, and violations of the Local Rules. ECF No. 176.

### E.    Plaintiffs File a Notice of Errata, Amended Response, and Amended Reply

On May 26, 2025, Plaintiffs filed a notice of errata of their motion for summary judgment, an amended response to Defendants' motion for summary judgment, and an amended reply in support of their motion for summary judgment (collectively, "amended briefing"). ECF No. 178. Plaintiffs subsequently filed a second amended response to Defendants' motion for summary judgment. ECF No. 182. The only difference was that Plaintiffs' second amended

response added Mr. Murphy to the case caption, despite the fact that Mr. Murphy's motion to

withdraw was granted before the first amended response was filed.

Plaintiffs' notice of errata proclaimed that Plaintiffs were withdrawing the citations to

two non-existent cases "which were inadvertently included in their Motion for Summary

Judgment (ECF 142) . . . No other changes to ECF 142 are necessary." *Id.* at 2. Plaintiffs'

amendments to their response brief and reply brief were similarly superficial: Plaintiffs deleted

the non-existent cases and fabricated quotations while leaving the surrounding text intact. The

algorithmically generated statements of purported law that were not in quotes remained in place

without citation.[4]

There is no evidence that Mr. Brigandi or Plaintiffs took any steps to verify the veracity

of the legal arguments contained in the amended briefing. In at least one instance, Mr. Brigandi

deceptively deleted only the quotation marks surrounding the fabricated statement of law:

Plaintiffs' reply brief originally stated "[a]s the Restatement (Second) of Contracts § 2, cmt. b

(1981) explains, 'Recitals of fact or intent in a written contract are not promises and do not

impose duties.'" Pls.' Reply at 25, ECF No. 168. Plaintiffs' amended reply omitted only the

internal quotation marks, Pls.' Am. Reply at 24, ECF No. 178-2, but the Restatement (Second) of

Contracts § 2, cmt. b (1981) does not explain whether recitals of fact or intent in a written

contract are promises or impose duties.[5] Therefore, the statement included in Plaintiffs' amended

---

[4] E.g., *compare* Pls.' Resp. at 28, ECF No. 155 ("Oregon law is clear that a party cannot recover fees under a contract alleged to be void or unenforceable unless and until the contract is upheld." (citing a non-existent case) *with* Plaintiffs' Sec. Am. Resp. at 28, ECF No. 182 (stating identical purported rule without citation to any authority).

[5] What the Restatement (Second) of Contracts § 2, cmt. b (1981) actually explains is "*Manifestation of intention.* Many contract disputes arise because different people attach different meanings to the same words and conduct. The phrase 'manifestation of intention' adopts an external or objective standard for interpreting conduct; it means the external expression of intention as distinguished from undisclosed intention. A promisor manifests an intention if he believes or has reason to

reply continued to be misattributed, even after the purported correction.

### F.    Plaintiffs' Response to Defendants' Sanctions Motion Violates the Local Rules

On May 30, 2025, Plaintiffs filed a motion to strike or deny Defendants' motion for

sanctions. Pls.' Mot. to Strike and Resp., ECF No. 181. Despite the Court's previous warning to

Plaintiffs that "further noncompliance [with the Local Rules] may result in denial or dismissal of

this case," Opinion and Order at 4, ECF No. 137, Mr. Brigandi did not confer with Defendants'

counsel prior to filing the motion, violating LR 7-1(a). Gustitus Decl. ¶ 3, ECF No. 187.

Plaintiffs' response also violated LR 7-1(b) by improperly combining the motion to strike with a

response in opposition to Defendants' sanctions motion.

Plaintiffs' motion/response did not provide a meaningful explanation for the repeated use

of non-existent cases and fabricated quotations. Instead, Plaintiffs passively stated that "[t]he

inclusion of inaccurate citations was inadvertent and the result of reliance on an automated legal

citation tool." Pl.'s Mot. to Strike and Resp. at 2, ECF No. 181. Plaintiffs argued that

Defendants' sanctions motion should be stricken or denied because (1) it was filed before the

expiration of the 21-day safe harbor period under Rule 11(c); (2) Plaintiffs took corrective action

before the safe harbor period expired; and (3) Defendants demand letter exceeded the scope of

Rule 11.

### G.    Defendants Withdraw and Refile Their Motion for Sanctions

On June 4, 2025, Defendants filed a notice of withdrawal of their May 23, 2025, motion

for sanctions (ECF No. 176). ECF No. 183. Defendants then refiled their motion for sanctions

---

believe that the promisee will infer that intention from his words or conduct. Rules governing cases
where the promisee could reasonably draw more than one inference as to the promisor's intention
are stated in connection with the acceptance of offers (see §§ 19 and 20), and the scope of
contractual obligations (see §§ 201, 219))."

and argued that the 21-day safe harbor period had now elapsed, and Plaintiffs had still not taken appropriate corrective action. ECF No. 184.

### H.    The Court Holds a Status Conference and Issues an Order to Show Cause

On June 16, 2025, the Court held a status conference to address Plaintiffs' apparent misconduct. ECF No. 188. The Court did not find Plaintiffs' explanation satisfactory to avoid the requested sanctions and ordered Plaintiffs to show cause in writing as to why Defendants' requested sanctions should not be imposed and this action dismissed. Order to Show Cause at 2, ECF No. 189. The Court subsequently granted Plaintiffs an extension of time, and Plaintiffs' response was due July 7, 2025. ECF No. 192.

## IV.    Post Show-Cause Events

### A.    Mr. Brigandi's Medical Emergency and Plaintiffs' Response to Show Cause

On July 7, 2025, Plaintiffs filed an Emergency Notice Regarding Incapacitation of Plaintiffs' Counsel. ECF No. 193. Plaintiffs' local counsel stated that on June 30, 2025, Mr. Brigandi suffered a medical emergency, was admitted to the intensive care unit, and was unable to continue representing Plaintiffs. Later that day, Plaintiffs filed their response to the Court's Order to Show Cause and Defendants' Motion for Imposition of Sanctions. ECF No. 194. Plaintiffs' response placed all the blame on the unavailable Mr. Brigandi while simultaneously failing to explain what had even happened. Despite Defendants' articulated suspicions that Ms. Couvrette was the one pulling the strings, Plaintiffs provided no evidence or explanation of who drafted the summary judgment briefs, nor did they provide evidence that Ms. Couvrette had no knowledge or involvement in drafting or submitting the briefs.

In response to Mr. Brigandi's medical emergency, the Court stayed all deadlines and hearings. On July 29, 2025, Mr. Brigandi was discharged from the hospital. Dr. Lakhera Decl. ¶ 5, ECF No. 213. A declaration from Mr. Brigandi's treating physician later explained that Mr.

Brigandi was suffering from severe kidney disease, which "materially and significantly impaired his cognitive function and mental capacity during the weeks and months leading up to his hospitalization on June 30, 2025. Also, he was severely hypercalcemic on admission which could cause delirium and altered mental states." Dr. Lakhera Decl. ¶ 18. The doctor opined that "Mr. Brigandi may not have been fully aware of the extent of his cognitive decline or his diminished capacity to fulfill his professional responsibilities during this period." Dr. Lakhera Decl. ¶ 20. Mr. Brigandi was now on dialysis and his doctor did not opine on his mental state following discharge from the hospital. *Id.* ¶ 11.

The physician's declaration was filed on October 27, 2025, and was in support of their July 7, 2025, response to Defendants' sanctions motion. However, Plaintiffs did not seek leave prior to filing the declaration, nor did they show cause as to why the declaration should be accepted more than three months after the Court-imposed deadline to respond. *See* Fed. R. Civ. P. 16 and LR 16-3 (requiring a motion and good cause for extending a deadline). Plaintiffs filed the declaration two days before the October 29, 2025, sanctions hearing, but did not contact the courtroom deputy to give prompt notice of their eleventh-hour submission. *See* LR 5-3(d) (requiring notice to the courtroom deputy by telephone or email of electronic filings submitted within three business days of a related hearing). Because of Plaintiffs' untimely filing of Mr. Brigandi's doctor's declaration, Defendants did not have the opportunity to challenge the doctor's opinion through deposition or presentation of their own expert witness.

### B.    Mr. Brigandi's Motion to Withdraw

By order of the Court, on August 11, 2025, the parties filed a Joint Status Report. ECF No. 196. Plaintiffs reported that Mr. Brigandi's current physical and cognitive limitations were preventing him from working and that he was experiencing "significant cognitive difficulties, including confusion regarding his whereabouts, circumstances, and recent events." *Id.* at 2.

On August 12, 2025, the Court scheduled a hearing on Defendants' motion for sanctions. Mr. Brigandi then filed what he falsely described as an "unopposed" motion to withdraw. ECF No. 199. Mr. Brigandi asserted that his motion was unopposed by his client and all counsel in this case. However, Mr. Brigandi had conferred with no one, and Defendants opposed the motion. Defs.' Resp. to Motion to Withdraw at 2–3, ECF No. 200; Gustitus Decl. ¶ 7, ECF No. 206-3.

On August 28, 2025, the Court held a status conference on Mr. Brigandi's motion to withdraw. Following the status conference, Mr. Brigandi emailed Defendants' counsel a draft reply and proposed order in support of his motion for leave to withdraw as counsel. Gustitus Decl. at 1, ECF No. 206-1. Mr. Brigandi's draft reply explained that he had left a message with Defendants' counsel's receptionist and the draft provided (flawed) reasoning for how Mr. Brigandi had satisfied the conferral requirement. *Id.* at 3. Defendants' counsel responded to Mr. Brigandi's email and noted that his explanation of who and when he called to confer was demonstrably false. Gustitus Decl. at 1, ECF No. 206-2. Defendants' counsel also noted:

> [g]iven that you appear to be in adequate health to explain your side of the story with respect to your desire to withdraw from this lawsuit, we hope you are also able to finally provide an explanation regarding Plaintiffs' sanctionable filings that the Court ordered you and Plaintiffs to provide in the June 16, 2025 show cause order.

*Id.* Defendants' counsel requested a prompt response so that they could address Mr. Brigandi's explanation in their reply in support of the motion for sanctions. *Id.* Mr. Brigandi did not respond. Gustitus Decl. ¶ 6, ECF No. 206.

On August 29, 2025, the Court denied Mr. Brigandi's motion to withdraw and later clarified that Mr. Brigandi was ordered not to file anything on behalf of Plaintiffs, who were adequately represented by local counsel. ECF No. 212.

C.    **Hearing Regarding Motion for Imposition of Sanctions**

On October 29, 2025, the Court held a sanctions hearing. ECF No. 214. Defendants'

reply in support of their motion for sanctions cited circumstantial evidence that Ms. Couvrette

likely drafted or participated in drafting Plaintiffs' sanctionable summary judgment briefs. Defs.'

Reply at 10–19, ECF No. 204. The Court found Defendants' evidence and reasoning concerning

Ms. Couvrette's direct involvement persuasive and asked Plaintiffs' counsel if there was any

evidence that Ms. Couvrette was merely an innocent client. In response, Plaintiffs' counsel

asserted that Ms. Couvrette's involvement was irrelevant because the burden falls on the attorney

to sign off on the legal merits of the arguments filed.

For the reasons explained in Discussion Sections III(E) and III(F) below, the Court finds

that Ms. Courvrette shares responsibility for the use of non-existent cases and fabricated

quotations, warranting dismissal of Plaintiffs' claims with prejudice.

## DISCUSSION

Plaintiffs argue that the Court should deny Defendants' motion for sanctions because (1)

Plaintiffs corrected the summary judgment briefing within the safe harbor period and (2) the

requested sanctions exceed the scope of Rule 11. The Court disagrees.

**I.    Defendants Filed Their Motion for Sanctions After the 21-day Safe Harbor Period**

Plaintiffs argue that Defendants' motion should be denied because Defendants

improperly filed their motion for sanctions before expiration of the 21-day safe harbor period. A

party may not file a motion for sanctions "unless there is strict compliance with Rule 11's safe

harbor provision." *Islamic Shura Council of S. California*, 757 F.3d at 872. "That provision

provides that any motion for sanctions must be served on the offending party at least 21-days

before the motion is filed with the court." *Id.* "The safe harbor provision further dictates that the

motion may not be filed if the offending party timely 'withdraws or appropriately corrects' the

challenged contention during the safe harbor period." *Id.* at 872–73 (brackets omitted) (quoting Fed. R. Civ. P. 11(c)(2)). The purpose of the safe harbor provision is to ensure "that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (emphasis added) (quoting Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am.).

Plaintiffs overlook the procedural history of the case. On May 7, 2025, Defendants served Plaintiffs with a proposed motion for sanctions in accordance with Rule 11(c)(2). On May 21, 2025, Mr. Brigandi responded by letter to Defendants; he did not dispute, acknowledge, or accept responsibility for the use of non-existent cases and fabricated quotations. Instead, Mr. Brigandi affirmatively stated that he would refuse to act until after Defendants filed their motion. Two days later (sixteen days after service), Defendants filed a motion for sanctions (ECF No. 176). Mr. Brigandi hypocritically objected to Defendants' decision to file the motion within the safe harbor period. Defendants then withdrew and refiled their sanctions motion (ECF No. 184) after the 21-day safe harbor period.

Plaintiffs cannot seek refuge in the harbor that Mr. Brigandi abandoned. Defendants' argument that Plaintiffs should be estopped from asserting the safe harbor period as a defense is well taken. Regardless, the issue is a red herring because Defendants withdrew their original motion for sanctions, refiled it after the safe harbor period, and Plaintiffs have failed to take appropriate corrective action.

## II.    Plaintiffs Failed to Take Appropriate Corrective Action

Plaintiffs argue that "[w]hile the use of inaccurate or fictitious citations is potentially grounds [for] sanctions, in this case, the appropriate corrections were made within the time and

scope required under Rule 11." Pls.' (Sec.) Response at 10, ECF No. 194. Plaintiffs understate

the severity of the misconduct at issue and overstate the corrective action taken. The Court finds

it disingenuous for Plaintiffs to characterize the use of fifteen non-existent cases and eight

fabricated quotations across three briefs as "potentially grounds" for sanctions.

Non-existent cases and fabricated quotations are not "existing law" and do "not provide a

non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new

law." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) (footnote omitted).

Numerous courts across the country have sanctioned parties and their attorneys under Rule

11(b)(2) for the use of non-existent cases and fabricated quotations in legal briefs generated by

artificial intelligence. Such misconduct "degrades or impugns the integrity of the Court and

interferes with the administration of justice." *United States v. Hayes*, 763 F. Supp. 3d 1054, 1064

(E.D. Cal. 2025) (quotation marks omitted).

Plaintiffs repeatedly disguised statements of fiction as statements of law and failed to

take appropriate corrective action. In addition to wasting judicial resources, the use of artificial

intelligence to generate legal arguments without meaningful review "jeopardizes the rule of

law." *Id.* at 305. As the Oregon Court of Appeals recently explained:

> By reviewing and applying precedent to each case that comes before it, a court
> ensures that similarly situated parties are treated equally and that differences in
> treatment are justified by principled reasons. It is by studying, learning, and
> applying precedent, that we maintain the rule of law and develop the competency
> needed to maintain the rule of law.
>
> . . .
>
> The injection of false precedent into the practice of law shakes the foundation of
> our judicial system. Although courts no doubt are equipped to catch false citations
> and statements of law, as noted above, any time we must spend verifying and
> directing attorneys to address a false statement of law is time away from our core
> mission: deciding cases that have been briefed under law that, in fact, exists.

*Id.*

Importantly, to date, Plaintiffs have failed to take appropriate corrective action. Rather than a correction, Mr. Brigandi attempted a coverup. He failed at both. Simply removing the non-existent cases and fabricated quotations did not abate the harm of Plaintiffs' deceptive practices. There is no evidence that Mr. Brigandi took any steps to verify the veracity of the legal arguments contained in the amended briefing, which continue to contain misstatements of law.[6] It is well known and documented that:

> chatbots, including legal 'AI' chatbots, are large-language models (LLMs), not a true 'artificial intelligence' out of the pages of science fiction. They are not designed to answer questions factually. They are designed to mimic patterns of words, probabilistically. When they are 'right,' it is because correct things are often written down in the dataset they were trained on.

*Green Bldg. Initiative, Inc. v. Peacock*, No. 3:24-CV-298-SI, 2025 WL 3002143, at *2 (D. Or. Oct. 27, 2025) (quoting *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, 2025 WL 2105286, at *1 (E.D. Mich. July 28, 2025)). Mr. Brigandi submitted Plaintiffs' amended briefing without conducting "an inquiry reasonable under the circumstances" to determine whether the legal contentions contained therein were "warranted by existing law." Fed. R. Civ. P. 11(b)(2). The amended briefing as it stands is independently sanctionable and falls far short of the appropriate corrective action necessary to avoid sanctions.

Mr. Brigandi also violated LR 83-7 per a violation of Rule 3.3(a) of the Oregon Rules of Professional Conduct, which prohibits lawyers from knowingly "mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Or. Rules Prof. Conduct R. 3.3(a).

---

[6] For example, Plaintiffs' Notice of Errata to their motion for summary judgment failed to correct Plaintiffs' false statement that ORS 127.545(1) relates to dismissal of a claim as moot, *see* ECF No. 142 at 6, and Plaintiffs' amended reply contains a statement of law falsely attributed to the Restatement (Second) of Contracts, ECF No. 178-2 at 25.

### III.    The Scope of Sanctions Imposed Under Rule 11(b) and the Local Rules

Defendants seek (1) an order striking Plaintiffs' summary judgment briefs under Rule 11(c)(4); (2) an award of attorney's fees against Plaintiffs under Rule 11(c)(2); (3) monetary sanctions against Plaintiffs' attorneys under Rule 11(c)(4); and (4) dismissal of Plaintiffs' claims and defenses with prejudice under Rule 11(c)(4) and pursuant to the Court's warning to Plaintiffs that continued noncompliance with the Local Rules may result in dismissal.

"An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata*, 678 F. Supp. 3d at 461. "[A] court should discipline those who harass their opponents and waste judicial resources by abusing the legal process." *United Nat. Ins. Co.*, 242 F.3d at 1115 (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 194 F.3d 323, 341 (2d Cir.1999)). Under Rule 11, "[t]he court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am. The Court also has significant discretion when enforcing the Local Rules and "may impose sanctions including, where appropriate, default or dismissal." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).

### A.    Striking Plaintiffs' Summary Judgment and Amended Briefs

The Court strikes without leave to refile Plaintiffs' summary judgment briefing (ECF Nos. 142, 155, and 168) and amended briefs (ECF No. 178 and 182) for violation of Rule 11(b)(2) and for failure to comply with the Court's previous warning that noncompliance with the Local Rules would not be tolerated. This is an obvious consequence for the egregious misconduct and failure to meaningfully accept responsibility or take appropriate corrective action.

**B.    Monetary Sanctions Against Plaintiffs**

Defendants seek an award of attorney's fees against Plaintiffs under Rule 11(c)(2).

Plaintiffs respond that monetary sanctions against a represented party are prohibited for a Rule

11(b)(2) violation. The Court agrees.

Plaintiffs' sanctionable misconduct arises under Rule 11(b)(2). Courts are prohibited

from imposing a "monetary sanction . . . against a represented party for violating Rule 11(b)(2)."

Fed. R. Civ. P. 11(c)(5). "Monetary responsibility for such violations is more properly placed

solely on the party's attorneys." Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am. Defendants'

request for an award of attorney's fees against Plaintiffs is therefore denied. However, Plaintiffs

are still in hot water. Rule 11's "restriction does not limit the court's power to impose sanctions

or remedial orders that may have collateral financial consequences upon a party, such as

dismissal of a claim, preclusion of a defense, or preparation of amended pleadings[,]" discussed

below. *Id.*

**C.    Monetary Sanctions Against Mr. Brigandi**

Defendants move for an award of monetary sanctions against Plaintiffs' attorneys

pursuant to Rule 11(c)(4). Monetary sanctions may include "an order to pay a penalty into court;

or, if imposed on motion and warranted for effective deterrence, an order directing payment to

the movant of part or all of the reasonable attorney's fees and other expenses directly resulting

from the violation." Fed. R. Civ. P. 11(c)(4). Plaintiffs respond that if the Court finds that

monetary sanctions are warranted, they should only be imposed against counsel who submitted

the offending pleadings.

"At its core, an attorney who signs a legal document certifies that they have 'read the

document, have conducted a reasonable inquiry into the facts and the law and are satisfied that

the document is well grounded in both, and is acting without any improper motive.'" *Wadsworth*

*v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991) (brackets omitted)). This is a "nondelegable responsibility." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989).

Mr. Brigandi signed and submitted the sanctionable briefs and must be held accountable. Mr. Brigandi's medical emergency, which left him hospitalized from June 30, 2025, to July 29, 2025, adds some complexity to the factual record. The Court does not question the credibility of Mr. Brigandi's treating physician, who opined that Mr. Brigandi's medical condition would have caused his mental faculties to gradually deteriorate during the weeks and months leading up to his hospitalization. However, given the history of this case, the Court does not give full weight to Dr. Lakhera's declaration, which was untimely filed and without prompt notice to the Court. To the extent that the declaration sheds light on Mr. Brigandi's mental state leading up to his hospitalization, it provides no evidence explaining Mr. Brigandi's fraudulent attempt to withdraw from the case following his discharge from the hospital.[7] Mr. Brigandi's total lack of remorse is underscored by the fact that, to date, he has utterly failed to explain his conduct, meaningfully accept responsibility, or take appropriate remedial action. Mr. Brigandi willfully abused the judicial process, multiplying the proceedings and increasing costs.

Determining what amount of monetary sanction would "not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons" is difficult. Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am. The Oregon Court of Appeals recently sanctioned an attorney (for violation of the state court equivalent to Rule 11(b)(2)) $500 per non-existent case and $1,000 per fabricated quotation

---

[7] Plaintiffs' counsel's statement in the August 11, 2025, Joint Status Report that Mr. Brigandi "continues to experience significant cognitive difficulties" is not evidence in the record. ECF No. 196 at 2.

included in an appellate brief. *Ringo*, 345 Or. App. at 303. The Court adopts this valuation. Mr. Brigandi submitted fifteen non-existent cases and eight fabricated quotations falsely attributed to legitimate authorities.[8] Mr. Brigandi is ordered to pay the Clerk of the Court $15,500 within 30 days of the date of this order.

Additionally, the Court finds that imposing reasonable attorney's fees and expenses against Mr. Brigandi (and potentially Mr. Murphy) is necessary to deter similarly situated persons from engaging in this kind of misconduct. Attorneys weigh risks and rewards for a living. With a known price tag, an attorney could decide that the risk paying $500 per non-existent case or $1,000 per fabricated quotation is outweighed by the potential reward of getting away with outsourcing to a chatbot the time intensive work of legal research and writing. Defendants are entitled to an award of reasonable attorney's fees and other expenses directly resulting from Plaintiffs' and their attorneys' violations of the Federal and Local Rules, dating back to Plaintiffs' January 31, 2025, motion for summary judgment (ECF No. 142). The Court orders Defendants to submit a bill of costs and reasonable attorney's fees supported by affidavits or declarations. Plaintiffs have already received notice and an opportunity to be heard and shall not file a response. Fed. R. Civ. P. 54(2)(E); *see Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766–67 (1980).

### D.    Plaintiffs' Former Local Counsel, Timothy Murphy

Defendants move to vacate the order allowing Mr. Murphy to withdraw and ask the Court to issue a show cause order demanding that Mr. Murphy explain why sanctions should not be imposed on him as well.

---

[8] The briefs submitted by Mr. Brigandi included seven fabricated quotations falsely attributed to real cases and one fabricated quotation falsely attributed to the Restatement (Second) of Contracts. The Court does not impose an additional monetary sanction for the three fabricated quotations attributed to non-existent cases.

The Court previously encouraged Mr. Murphy "to help ensure compliance with Local Rules" when it warned Plaintiffs that further noncompliance may result in dismissal of this case. Opinion and Order at 4, ECF No. 137. Local Rule 83-3 requires local counsel to "meaningfully participate in the preparation and trial of the case." LR 83-3(a)(1). Mr. Murphy was local counsel of record when Plaintiffs filed their summary judgment briefing and when Defendants responded and replied with notice of Plaintiffs' apparent use of non-existent cases and fabricated quotations. Mr. Murphy either failed to meaningfully participate in the case or violated Rule 11 and LR 83-7 by allowing those briefs to be filed.

The Court was not yet aware of Plaintiffs' misconduct when it granted Mr. Murphy's motion to withdraw, and that order (ECF No. 175) is vacated. Mr. Murphy is ordered to appear in writing within fourteen days and show cause as to why he should not be subject to sanctions or, in the alternative, to propose what sanctions are appropriate. Such sanctions may include but are not limited to sharing a portion of the attorney's fees and costs imposed on Mr. Brigandi.

**E.    Dismissal of Plaintiffs' Claims and Defenses with Prejudice under Rule 11**

Defendants move to dismiss Plaintiffs' claims and defenses with prejudice under Rule 11(c)(4). The Court dismisses Plaintiffs' claims with prejudice. Having stricken Plaintiffs' response in opposition to Defendants' motion for partial summary judgment, dismissing with prejudice Plaintiffs' defenses to Defendants' counterclaims would be more severe than reasonably necessary.

Plaintiffs previously attempted to justify their misconduct by claiming "[t]he inclusion of inaccurate citations was inadvertent and the result of reliance on an automated legal citation tool." Pls.' (First) Resp. at 2, ECF No. 181. The Court rejected this position but generously allowed Plaintiffs another opportunity to explain what had happened and to show cause as to why the Court should not grant Defendants' requested relief. Order to Show Cause at 1–2, ECF

No. 189. In response, Plaintiffs new counsel regurgitated the previously rejected position that terminating sanctions were inappropriate because "the admittedly erroneous citations" were corrected during the 21-day safe harbor period. Pls.' (Sec.) Resp. at 9, ECF No. 194. Plaintiffs' repeated attempt to minimize the misconduct at issue by characterizing it as an "erroneous citation" is not well taken. The Court also rejects Plaintiffs' assertion that Mr. Brigandi took appropriate corrective action.

Sanctions under Rule 11 should be imposed on the people "responsible for the violation." Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am. "The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and *in most situations* is the person to be sanctioned for a violation." *Id.* (emphasis added). However, under "unusual circumstances," a represented party may share responsibility for a violation of Rule 11(b)(2). Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am.

The Court finds that Plaintiffs share responsibility with Mr. Brigandi for the submission of fifteen non-existent cases and eight fabricated quotations. Plaintiffs have submitted no evidence to rebut Defendants' persuasive evidence that Ms. Couvrette is a serial self-represented litigator who was likely the person responsible for using artificial intelligence to draft the summary judgment briefs in this case. Nor did Plaintiffs submit any evidence that Ms. Couvrette mistakenly believed that Mr. Brigandi was verifying her drafts prior to submission. Ms. Couvrette's and Mr. Brigandi's silence, despite multiple opportunities to explain their side of the story, speaks volumes. Plaintiffs share responsibility with Mr. Brigandi for the inclusion of non-existent cases and fabricated quotations misrepresented to the Court as statements of law.

The Court finds that terminating sanctions are appropriate under the circumstances. Although Plaintiffs are now represented by new counsel, who appear less reckless than Mr.

Brigandi, the Court must also consider the importance of deterring "comparable conduct by similarly situated persons." Fed. R. Civ. P. 11 Adv. Comm. Notes, 1993 Am. "[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *Combs*, 927 F.2d at 488 (quoting *National Hockey League,* 427 U.S. at 643). The number of cases involving sanctions for the misuse of artificial intelligence is growing at an alarming rate.[9] Yet the misconduct at issue in this case is a notorious outlier in both degree and volume. Moreover, Plaintiffs have not been adequately forthcoming, candid, or apologetic about their conduct. The declaration of Mr. Brigandi's treating physician provides some context, but conspicuously missing from the record is a declaration by Ms. Couvrette, Mr. Brigandi—or anyone—explaining what happened and why the Court can be certain it won't happen again. Plaintiffs referenced the attorney client privilege and work product doctrine in the August 11, 2025, Joint Status Report, ECF No. 196 at 3, but that argument was never presented on motion or in a response brief. In any event, the Court placed the burden on Plaintiffs to show cause as to why Defendants' requested sanctions should not be imposed, and Plaintiffs bear the consequences of their decision to stonewall. If there was ever an "appropriate case" to grant terminating sanctions for the misuse of artificial intelligence, this is it. *Combs*, 927 F.2d at 488. Plaintiffs' claims are dismissed with prejudice under Rule 11(c)(4).

### F.    Dismissal with Prejudice Against Plaintiffs Under the Local Rules

Defendants also move to dismiss Plaintiffs' claims and defenses with prejudice in accordance with the Court's prior warning that further noncompliance with the Local Rules may result in dismissal of the case. The Court finds that Plaintiffs' continual noncompliance with the

---

[9] Court decisions addressing non-existent cases and fabricated quotations generated by artificial intelligence are compiled at https://www.damiencharlotin.com/hallucinations/ (last visited December 4, 2025) (identifying 431 cases in the United States) [https://perma.cc/KL5E-S95Y].

Local Rules provides an additional basis for terminating sanctions against Plaintiffs' claims. The Court declines to dismiss Plaintiffs' defenses with prejudice.

District courts have broad "discretion in connection with the application of local rules." *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 582 (9th Cir. 2010) (quoting *United States v. Warren,* 601 F.2d 471, 474 (9th Cir. 1979) (per curiam)). In exercising this discretion in connection with the power to control their docket, district courts "may impose sanctions including, where appropriate, default or dismissal." *Thompson*, 782 F.2d at 831. "Because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." *Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981). Before imposing the sanction of dismissal, district courts must "weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Thompson*, 782 F.2d at 831. No single factor is determinative. *Henderson v. Duncan*, 779 F.2d 1421, 1425 (9th Cir. 1986).

The Court recounts Plaintiffs' violations of the local rules,[10] weighs the factors described above, and finds that terminating sanctions against Plaintiffs are warranted for the continual violation of the Local Rules.

On December 16, 2024, the Court warned Plaintiffs that "[n]oncompliance with Local Rules is not something this Court takes lightly, and further noncompliance may result in denial or dismissal of this case." Opinion and Order at 4, ECF No. 137. Despite this warning:

      1.  Plaintiffs' Motion for Summary Judgment (ECF No. 142): (1) contained a false certification that it contained fewer than 11,000 words, violating LR 7-2(b); (2) failed to comply with the formatting and filing requirements of attaching exhibits

---

[10] These violations are in addition to the violations of LR 83-7 for the use of non-existent cases and fabricated quotations.

and declarations, violating LR 10-1(e)(2) and LR 10-3(a); and (3) failed to comply with factual citation requirements on summary judgment, violating LR 56-1.

2. Plaintiffs' response in opposition to Defendants' motion for sanctions (ECF No. 181): (1) contained a motion to strike without conferral, violating LR 7-1(a); and (2) improperly combined a response brief with a motion, violating LR 7-1(b).

3. Following his discharge from the hospital, Mr. Brigandi's motion to withdraw as counsel (ECF No. 199): (1) was filed without conferral, violating LR 7-1(a); and (2) falsely certified that the motion was unopposed, violating LR 83-7.

4. Plaintiffs' new local counsel—which the Court notes bear no responsibility for the misuse of artificial intelligence at issue in this case—filed a declaration in support of their response to Defendants' sanctions motion (ECF No. 213): (1) after the deadline to file a response and without leave of the Court, violating LR 16-3; and (2) without notice to the Court's courtroom deputy, despite the declaration's relation to a scheduled court proceedings within three business days of the filing, violating LR 5-3(d).

The following factors weigh in favor of a finding that extreme circumstances exist, justifying terminating sanctions:

### 1.    Public Interest in Expeditious Resolution of the Litigation

The public's interest in expeditious resolution of the litigation weighs in favor of terminating sanctions. Plaintiffs' misconduct has multiplied the proceedings and there is circumstantial evidence that Plaintiffs sought undue delay as a strategy for increasing costs to Defendants. Wisnovsky Decl. ¶ 4, ECF No. 207 (voicemail from Ms. Couvrette's brother bragging that Mr. Brigandi was representing them for free and "if you want to continue on, we're not spending a dollar compared to what you're spending."). Terminating sanctions are an appropriately expeditious resolution of the case under the circumstances.

### 2.    The Court's Management of Its Docket

The Court's need to manage its docket also weighs in favor of terminating sanctions. Plaintiffs' Complaint was filed nearly five years ago, and management of this case as a result of the misconduct at issue has required the Court to spend excessive time and resources managing

this case. For example, in response to Plaintiffs' misconduct, the Court held a status conference, entered a show cause order, granted Plaintiffs an extension of time, stayed the proceedings pending Mr. Brigandi's medical emergency, ordered a joint status report, held another status conference, and heard oral argument on Defendants' sanctions motion. Plaintiffs have placed a disproportionate burden on the Court's docket compared to the nature and complexity of the claims.

### 3. The Risk of Prejudice to Defendants

Dismissal of Plaintiffs' claims will not result in undue prejudice to Defendants. To the contrary, Defendants will benefit from dismissal of Plaintiffs' claims. The Court does not seek to reward Defendants for Plaintiffs' misconduct, but any prejudice appropriately lies with the offending party, Plaintiffs.

### 4. The Public Policy of Favoring Disposition of the Case on the Merits

Dismissing Plaintiffs' claims with prejudice weighs against the public policy favoring disposition of the case on the merits. This factor weighs against terminating sanctions but is not determinative. *See Henderson*, 779 F.2d at 1425.

### 5. The Availability of Less Drastic Sanctions

The Court finds that less drastic sanctions are inappropriate under the circumstances. "The district court need not exhaust every sanction short of dismissal before finally dismissing a case but must explore possible and meaningful alternatives." *Id.* Meaningful alternatives include warning counsel of the consequences of further noncompliance or "the issuance of an order to show cause why sanctions should not be imposed against the attorneys involved." *Raiford*, 640 F.2d at 945 n.1. To no avail, the Court has explored both of these alternatives and provided additional meaningful opportunities for Plaintiffs to be heard.

The legitimacy of the judiciary depends, in part, on its predictability. Plaintiffs have failed to show cause as to why the Court should not follow through with its warning about the consequences for further noncompliance with the Local Rules. Dismissal of Plaintiffs' claims with prejudice is a harsh penalty, appropriately matched with the "extreme circumstances" of this case. *Id.* at 945.

## CONCLUSION

For the reasons stated above, the Court ORDERS the following sanctions for violation of Federal Rule of Civil Procedure 11(b) and noncompliance with the Local Rules:

1. Plaintiffs' summary judgment briefs (ECF Nos. 142, 155, 168) and amended filings (ECF Nos. 178 and 182) are STRICKEN without leave to refile.

2. The Court ORDERS Mr. Brigandi to pay the Clerk of the Court $15,500 within 30 days of the date of this Order. Payments may be made in person at the Clerk's Office or mailed to the Clerk's Office at 310 W 6th St., Medford, OR 97501 for processing. Mr. Brigandi must include the case number and a copy of this Order with his payment.

3. Defendants are entitled to an award of reasonable attorney's fees and other expenses directly resulting from Plaintiffs' and their attorneys' violations of the Federal and Local Rules, dating back to Plaintiffs' January 31, 2025, motion for summary judgment (ECF No. 142). The Court ORDERS Defendants to submit a bill of costs and reasonable attorney's fees supported by affidavits or declarations within fourteen days. Following review of Mr. Murphy's response to this Order to Show Cause, the Court will enter an order specifying the amount and apportionment of reasonable attorney's fees and expenses owed to Defendants' attorneys.

4.  The Order granting Mr. Murphy's motion to withdraw (ECF No. 175) is VACATED. Plaintiffs are ORDERED to serve Mr. Murphy a copy of this Order and to submit proof of service within fourteen days. Mr. Murphy is ORDERED to appear in writing within fourteen days of Plaintiffs' service of this Order and to show cause as to why he should not be subject to sanctions, or in the alternative, to propose the appropriate sanctions to be imposed.

5.  Plaintiffs' claims are DISMISSED with PREJUDICE. The parties are ORDERED to submit a joint status report within fourteen days explaining how this case should proceed. This is not an invitation to move for reconsideration, the joint proposal shall be reasonable and in accordance with this Order.

6.  The Court DIRECTS the Clerk of the Court to send a copy of this Order to the Oregon State Bar and to Mr. Murphy.

**IT IS SO ORDERED.**

DATED this __12__ day of December, 2025.

_____
MARK D. CLARKE
United States Magistrate Judge