UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOANNE COUVRETTE, MICHELLE
SULLIVAN, *as special administrator of the
estate of Ann M. Wisnovsky*; and
WISNOVSKY LAND, LLC, *an Oregon
limited liability company*,

        Plaintiffs,

    v.

MARK A. WISNOVSKY; MICHAEL J.
WISNOVSKY; and VALLEY VIEW
WINERY, INC., *an Oregon Domestic
Business Corporation*,

        Defendants.

Case No. 1:21-cv-00157-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge.

This case arises from an intrafamily dispute over the tenancy and ownership of their winery. Now before the Court is Defendants' Motion for Partial Summary Judgment. ECF No. 143. The parties consent to jurisdiction by a United States Magistrate Judge. ECF No. 38. The Court has determined that oral argument is not necessary to resolve Defendants' Motion. LR 7-1(d)(1). Defendnats' Motion is DENIED in part as MOOT as it relates to Plaintiffs' claims, which the Court has already dismissed with prejudice. ECF No. 215. Defendants' Motion is GRANTED in part as it relates to their eighth counterclaim for breach of contract. The Court ORDERS specific performance and reasonable attorney fees.

Page 1 — OPINION AND ORDER

## BACKGROUND

Defendants' Motion is unopposed by any written briefing. The Court has carefully reviewed the record and considers the following facts undisputed for purposes of ruling on Defendants' Motion. Fed. R. Civ. P. 56(e)(2); *Heinemann v. Satterberg*, 731 F.3d 914, 916–17 (9th Cir. 2013).

### I.    The Wisnovsky Family, Valley View Winery, and the LLC

Joanne Couvrette, Robert Wisnovsky, and Defendants Mark and Mike Wisnovsky are the adult children of Frank and Ann Wisnovsky. In 1971 Ann and Frank purchased agricultural land in Jackson County and founded the Valley View Winery, which Ann later incorporated. Ann and Frank developed the vineyard and winery together until Frank died in an accident in 1980. After Frank's death, Ann continued operating Valley View Winery. Ann owned the real property and buildings ("Property") where Valley View Winery operated.

In 1989, Ann promoted Mark to the position of President of Valley View Winery, and in 1991 Ann made Mike the Vice President of Valley View Winery. Ann served as Chairman of the Board, Treasurer, and Secretary until January 1, 2016. In 2006 Ann gave Mark and Mike about 46% of the stock of Valley View Winery and retained the remainder, about 54%, for herself.

### II.    Ann's Trust

On August 2, 2012, Ann created the *Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Trust"). Mark Wisnovsky Decl. (Wisnovsky Decl.) ¶ 8, ECF No. 146; Wisnovsky Decl. Ex. 512, ECF No. 146-1. The Trust initially appointed Ann and Couvrette as co-trustees but required Couvrette to exercise her trustee powers only in accordance with the written direction of Ann. The Trust owned the Property where Valley View Winery operated and received rent from Valley View Winery. Ann later transferred ownership of the Property to

Wisnosky's Land, LLC ("the LLC"), which the Trust owned. The Trust initially provided for Couvrette and Robert to inherit minority interests in Valley View Winery stock, and it provided for Mark, Mike, Couvrette, and Robert to each inherit 25% of the residue of the Trust. Oregon attorney Patrick Huycke ("Huycke") drafted the Trust and represented and advised Ann regarding her estate planning from 1999 until May 22, 2019.

### III.    Ann Gifts Her Valley View Winery Shares to Mark and Mike

Effective January 1, 2016, Ann gifted the Trust's shares of Valley View Winery to Mark and Mike, making them each 50% owners of Valley View Winery. As a condition of these gifts, Ann required Mark and Mike to enter into an *Agreement to Make Payments*, drafted by Huycke. Wisnovsky Decl. ¶ 11, Ex. 528 at 1, ECF No. 146-2. The Agreement to Make Payments required Mark and Mike to make certain payments to the Trust if they sold Valley View Winery stock or assets for more than $750,000 within five years of Ann's gifts of stock.

### IV.    The First Trust Amendment

On March 14, 2016, Huycke helped Ann execute the *First Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("First Trust Amendment"). Wisnovsky Decl. ¶ 12, Ex. 529, ECF No. 146-3. The First Trust Amendment provided that upon Ann's death, Couvrette, Robert, Mark, and Mike would each receive an equal 25% interest in the LLC. It also amended the distribution of the residue of the Trust: Couvrette and Robert would each receive 35% and Mark and Mike would each receive 15%.

### V.    The Trust's Lease Agreements with Valley View Winery

Effective March 24, 2016, the Trust and Valley View Winery entered into a Winery Lease and a Vineyard Lease whereby the Trust leased the Property to Valley View Winery. Wisnovsky Decl. ¶ 13, Exs. 530, 531, ECF Nos. 146-4, 146-5. Under the Winery Lease, Valley

View Winery agreed to pay the Trust a monthly base rent of $1,000 to lease the portion of the Property with the tasting room, winery buildings, warehouse, and parking lot. Wisnovsky Decl. ¶ 14, Ex. 530 at 1–2. Under the Vineyard Lease, Valley View Winery agreed to lease certain areas of land and to pay the Trust a monthly base rent of $12.50 per acre of land used for the production of agricultural crops." Wisnovsky Decl. ¶ 15, Ex. 531 at 1–2.

Both Leases required Valley View Winery to pay property taxes, insurance premiums, repairs, maintenance costs, and utility costs for the Property. Wisnovsky Decl. Ex. 530 at 2–6; Ex. 531 at 2–6. Both Leases contained rent escalation agreements and renewal options for "8 successive terms of 10 years, each" with the rent continuing to escalate as in the original term. Wisnovsky Decl. ¶ 17, Ex. 530 at 1–2; Ex. 531 at 1–2. The Leases also contained attorney fee provisions entitling the prevailing party to costs and reasonable attorney fees in connection with any suit arising out of the Leases. Wisnovsky Decl. ¶ 18, Ex. 530 at 12 § 17; Ex. 531 at 11 § 16.2.

Couvrette and Robert opposed the terms of the Leases which they believed were overly generous to Valley View Winery at the detriment of the Trust. Foster Decl. ¶ 2, Exs. 543 and 549, ECF No. 145-1.

## VI.    Ann Transfers Ownership of the Property from the Trust to the LLC

Effective November 2, 2016, Ann deeded the Valley View Property from the Trust to the LLC. Wisnovsky Decl. ¶ 21, Ex. 1245. The sole member of the LLC was the Trust. Ann also assigned the Trust's interest in the Leases with Valley View Winery to the LLC. Wisnovsky Decl. ¶ 22, Exs. 1222, 1223.

## VII.    The February 2017 Documents

On February 20, 2017, Mark faxed to Huycke a letter signed by Ann containing changes to Trust assets and distributions. The signed letter stated that "[a]t the time of her death, Wisnovsky Lands LLC will be distributed equally to Mark and Michael." Wisnovsky Decl. ¶ 24, Ex. 1019, ECF No. 146-14. On February 22, 2017, Huycke wrote a letter to Ann, Mark, and Mike, informing them that Ann had asked him to prepare documents to "amend the Vineyard Lease" and "make arrangements for [Couvrette] and Robert to be paid $200,000 pursuant to a promissory note upon Ann's death," which would be given to them "in lieu of them receiving any interest in Wisnovsky Land upon Ann's death." Wisnovsky Decl. ¶ 25, Ex. 1021, ECF No. 146-15. "For this purpose," Huycke wrote, "I prepared a redemption agreement and an amendment to Ann's trust." *Id.* Huycke then sent copies of the prepared documents to Mark, Mike, and Ann.

On February 23, 2017, Huycke met with Ann and then with Ann, Mark, and Mike at Huycke's office, where Mark, Mike, and Ann signed the *First Amendment to and Restatement of Agreement to Make Payments* ("Amended Agreement to Make Payments") and *Second Addendum to Vineyard Lease* ("Second Vineyard Addendum"). Ann also signed the *Redemption Agreement* and *Second Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Second Trust Amendment"). Wisnovsky Decl. ¶ 26, Exs. 552–54, 1019, 1225 (collectively, the "February 2017 Documents"). Mark and Mike signed the documents on behalf of Valley View Winery; Ann signed the documents on behalf of the Trust and the LLC.

### A.    The Amended Agreement to Make Payments

Under the original Agreement to Make Payments, Mark and Mike agreed to pay the Trust if they sold Valley View Winery within five years of Ann's gift of her shares. The Amended Agreement to Make Payments extended this encumbrance on their ownership rights to ten years

and added additional conditions. Wisnovsky Decl. ¶ 27, Ex. 553, ECF No. 146-7. The Amended Agreement to Make Payments also stated that Ann had determined to amend the Trust; that the LLC and Valley View Winery had agreed to amend the Vineyard Lease; and that "the agreement to make such changes [wa]s conditioned upon the execution of this Agreement." *Id.* In other words, in consideration for signing the Amended Agreement to Make Payments, Mark, Mike, and Ann agreed to amend the Vineyard Lese and the Trust.

### B.    The Second Vineyard Addendum

Under the Second Vineyard Addendum, Valley View Winery's rent increased. The Second Vineyard Addendum also authorized Valley View Winery to sub-lease part of the property to an entity wholly owned by Mark and Mike. In reliance on the Second Vineyard Addendum, Mark and Mike formed Third Generation Farms, LLC and began cultivating hemp on the property. These lease amendments substantially increased the rental income the LLC stood to receive under the Vineyard Lease.

### C.    The Redemption Agreement

In coordination with the Second Trust Amendment, discussed below, the Redemption Agreement set the framework so that upon Ann's death, Couvrette and Robert receive a payout rather than a membership interest in the LLC. The Redemption Agreement was signed by Ann on behalf of the Trust and the LLC. Wisnovsky Decl. ¶ 34, Ex. 1225 at 3, ECF No. 146-22. The Redemption Agreement stated that when Ann died, the LLC would purchase from the Trust one-half of the Trust's ownership interest in the LLC for approximately $200,000. It also stated that the purchase price would be paid by the LLC executing and delivering a promissory note payable to the Trust, which would be secured by a trust deed on the Valley View Property. The Redemption Agreement could be amended "only by an instrument in writing executed by all the parties, which writing must refer to this Agreement." *Id.* at 2.

Page: 6 — OPINION AND ORDER

### D.    The Second Trust Amendment

As stated in the Amended Agreement to Make Payments, Mark, Mike, and Ann's agreement to raise Valley View Winery's rent and extend encumbrances on selling the winery were conditioned on Ann's promise to amend the Trust. The Second Trust Amendment created a new Section 3.3B that directed the Trustee to "consummate the transaction described in the Redemption Agreement." Wisnovsky Decl. ¶ 37, Ex. 552 at 1, ECF No. 146-6.

Under the First Trust Amendment, each of the siblings had stood to inherit 25% of the LLC. Under the Second Trust Amendment, Couvrette and Robert would instead receive cash compensation of approximately $100,000 each, and Mark and Mike would inherit full ownership of the LLC and its Valley View Property.

### E.    Post Amendment Documents

On March 25, 2017, Ann signed two additional documents that were de facto amendments to the Second Vineyard Addendum. The first documented Ann's agreement for Mark and Mike to pay Ann's personal expenses and to deduct the amounts from the monthly payments owed under Valley View Winery's lease agreements. Wisnovsky Decl. Ex. 1024, ECF No. 146-16. Between April 1, 2016, and February 23, 2017, Valley View Winery paid rent due under the Leases by paying $20,745.10 of Ann's personal expenses. Wisnovsky Decl. ¶ 58. This was about $5,000 more than the amount due under the Leases during that time period. *Id.*

The second documented Ann's agreement for Mark and Mike to make any improvements and alterations they deemed necessary to the buildings on the Valley View Property. Wisnovsky Decl. Ex. 1226, ECF No. 146-23. Mark and Mike subsequently made improvements to the barn and warehouse for hemp production on the Property.

## VIII.  The Third Trust Amendment

On July 28, 2017, Ann signed the *Third Amendment to Inter Vivos Revocable Trust [– ]*
*The Ann M. Wisnovsky Trust* ("Third Trust Amendment"), which stated that it superseded the
First and Second Trust Amendments, rendering them null. Wisnovsky Decl. ¶ 44, Ex. 556, ECF
No. 146-9. The Third Trust Amendment removed Couvrette from her position as co-trustee,
leaving Ann as sole Trustee of her Trust. The Third Trust Amendment included the same text of
Section 3.3B that was introduced in the Second Trust Amendment, which provided for Mark and
Mike to receive full ownership of the LLC upon Ann's death and for Couvrette and Robert to
receive a promissory note for approximately $200,000. Ann executed the Third Trust
Amendment without informing Mark and Mike about it, and they did not learn of it until
November 2020. Wisnovsky Decl. ¶ 45.

## IX.    Couvrette's Takeover of the Trust

In 2018 Ann's mental capacity began to decline. Wisnovsky Decl. ¶ 46. From
Couvrette's perspective, by May 2019 it appeared that Ann did not fully understand her estate
plan as it existed at that time. Foster Decl. Ex. 1 ("Couvrette Dep.") at 185:3–6, ECF No. 145-1.
On May 22, 2019, while visiting Couvrette in San Diego, Ann signed a letter to Huycke
terminating his representation. Wisnovsky Decl. ¶ 47, Ex. 1228, ECF No. 146-25. Couvrette then
introduced Ann to a new attorney, Gary Turner. Between May and November of 2019, Ann
executed the Fourth, Fifth, and Sixth Amendments to the Trust. The validity and effectiveness of
these Amendments are outside the scope of Defendants' Motion for Partial Summary Judgment.
In summary, Ann's 2019 Trust Amendments purportedly (1) revoked all previous Trust
Amendments; (2) restored Couvrette as Co-Trustee, (3) determined that all Trust assets (other

than personal property) would be distributed entirely to Couvrette and Robert; and (4) revoked Ann's own power to amend or alter the Trust further without Couvrette's written approval.

On July 2, 2019, Ann and Couvrette signed a *Revocation and Termination of Redemption Agreement* (Revocation Document). Wisnovsky Decl. ¶ 54, Ex. 577, ECF No. 146-12. The Revocation Document purported to revoke the Redemption Agreement that provided the mechanism by which Couvrette and Robert would receive approximately $200,000 and Mark and Mike would take full ownership of the LLC upon Ann's death. The Revocation Document stated:

> The estate plan in effect at the itme [*sic*] the Redemption Agreement was executed is no longer in existence and therefore there is no purpose in having the Redemption Agreement in place. In fact, it is inconsistent with and contrary to the existing estate plan of Ann M Wisnovsky.

*Id.*

Through 2020, Ann's health continued to decline. On August 21, 2020, Ann was diagnosed with dementia. On January 29, 2021, Couvrette filed her complaint in this lawsuit. Ann died on March 16, 2023. She was 90 years old.

## X.    Procedural Flyover

The procedural history of this case is a bit of a saga. Relevant here are the sanctions ordered by the Court. On January 29, 2021, Joanne Couvrette as trustee of her mother's estate filed this lawsuit against two of her brothers. She later amended the Complaint, adding the LLC as a Plaintiff. On January 31, 2025, the parties filed cross-motions for summary judgment. Plaintiffs moved for summary judgment on their claims for elder abuse, unjust enrichment, and declaratory judgment. Plaintiffs alleged that Mark and Mike coerced Ann into giving away her Valley View Winery stock and entering unconscionably one-sided lease agreements in favor of Valley View Winery. When briefing the cross-motions for summary judgment, Plaintiffs

Page 9 — OPINION AND ORDER

repeatedly used fake cases, fabricated quotations, and violated the Local Rules. On December 12, 2025, the Court sanctioned Plaintiffs and their attorneys under Rule 11(b) and the Court's authority to enforce the Local Rules. ECF No. 215; *Couvrette v. Wisnovsky*, No. 1:21-CV-00157-CL, 2025 WL 4109655 (D. Or. Dec. 12, 2025). The Court detailed the egregiousness of the misconduct, entered monetary sanctions against Plaintiffs' attorneys, ordered Plaintiffs' summary judgment briefing stricken without leave to refile, and dismissed Plaintiffs' claims with prejudice. Now before the Court is Mark, Mike, and Valley View Winery's ("Defendants") Motion for Partial Summary Judgment.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). The court cannot weigh the evidence or determine the truth; it may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts

which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the nonmoving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

For the reasons explained in the Court's December 12, 2025, Opinion and Order, Plaintiffs' claims are dismissed with prejudice. ECF No. 215. The portion of Defendants' motion seeking summary judgment on Plaintiffs' claims is therefore denied as moot. Defendants also move for summary judgment on their eighth counterclaim for breach of contract and for attorney fees for prevailing on claims related to the Redemption Agreement and Valley View Winery's leases. Defs.' Fourth Am. Answer at ¶¶ 92–97, 31–36, ECF No. 114. Because the Court has stricken Plaintiffs' summary judgment briefing, Defendants' motion for partial summary judgment is unopposed by any written briefing. ECF No. 220.

A motion for summary judgment may not be granted based solely on the non-moving party's lack of response. *Heinemann*, 731 F.3d at 916. The moving party still bears the "affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). Under Rule 56(e):

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "Once the court has determined the set of facts—both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply—it must determine

Page 11 — OPINION AND ORDER

the legal consequences of these facts and permissible inferences from them." *Heinemann*, 731 F.3d at 917 (quoting Fed. R. Civ. P. 56 Advisory Comm. Notes (2010)).

Here, the Court has closely reviewed the record and considers the facts relevant to Defendants' counterclaim for breach of contract undisputed. The Court finds that (1) Defendants have an enforceable inheritance contract; (2) the Trust is in breach; and (3) Defendants are entitled to specific performance. Defendants are also entitled to reasonable attorney fees.

## I.    Defendants Have an Enforceable Inheritance Contract

Defendants eighth counterclaim alleges that, in exchange for Defendants' agreement to amend the 2016 Agreement to Make Payments, Ann agreed to amend her estate plan so that when she died Mark and Mike would inherit ownership of the LLC and its Valley View Property. ECF 114 ¶¶ 92–97. Defendants argue that Ann, Mark, and Mike exchanged consideration, making this agreement an inheritance contract, irrevocable by subsequent amendments to the Trust.

A fundamental principle of trusts and estates is that how a person plans to distribute their assets upon death "remains ambulatory" during their lifetime. *Florey v. Meeker*, 194 Or. 257, 277 (1952). However, a contractual agreement to distribute an asset upon death is governed by the principles of contract law, and not by the principles of trusts and estates. *Id.* So-called inheritance contracts, "when based upon sufficient consideration," are binding and enforceable even when one party subsequently amends their estate plan in a manner inconsistent with the contractual agreement. *In re Lieurance's Est.*, 181 Or. 646, 668 (1947). "[C]onsideration consists of the accrual to one party of some right, interest, profit, or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Shelley v. Portland Tug & Barge Co.*, 158 Or. 377, 387 (1938).

For example, in *Dickie v. Dickie,* as consideration for the father's agreement to leave real property to his son in his will, the son agreed to transfer to his father his remainder interest in the property, thereby giving the father full ownership rights during his lifetime. 95 Or. App. 310, 312 (1989). The father later revoked the will and sold the property. *Id.* The son prevailed in his claim against the father for breach of contract, and the trial court imposed a constructive trust, holding the property for the son. *Id.* at 313. The Court of Appeals affirmed, explaining that the parties had exchanged mutual consideration so the father's revocation of the will and sale of the property was in breach of the inheritance contract. *Id.* at 313.

Here, the Court finds that Mark, Mike, and Ann exchanged mutual consideration. Under the Amended Agreement to Make Payments, Mark and Mike agreed to extend the duration of the prior Agreement to Make Payments from five years to ten years, further encumbering their right to sell Valley View Winery. They also agreed to amend the Vineyard Lease, increasing the amount of rent that would be owed. In exchange, Ann agreed to amend the Trust so that Mark and Mike would inherit full ownership of the LLC, pursuant to the terms of the Redemption Agreement. Thus, there was mutual consideration.

The Court also finds that the February 2017 Documents adequately evidence the existence of an irrevocable inheritance contract. Those documents include the Amended Agreement to Make Payments, Second Vineyard Addendum, Redemption Agreement, and Second Trust Agreement. Evidence sufficient to prove the existence of an inheritance contract is governed by ORS 112.270, which provides in relevant part:

> (1) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, executed after January 1, 1974, shall be established only by:
>
> (a) Provisions of a will stating material provisions of the contract;
>
> (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

(c) A writing signed by the decedent evidencing the contract.

ORS 112.270(1). Multiple documents executed at about the same time, between the same parties, as part of the same transaction, "must be construed together as one contract." *Hays v. Hug*, 243 Or. 175, 177 (1966); *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or. App. 523, 528 (1994) (contemporaneously executed documents addressing interrelated subject must be construed together as one contract).

Here, the February 2017 Documents address an interrelated subject, were executed at about the same time between the same parties as part of the same transaction, and the Court construes them together. Ann's execution of the Second Trust Amendment, which incorporated the terms of the Redemption Agreement and is specifically referenced in the Amended Agreement to Make Payments, satisfies ORS 112.270(1). Defendants have an irrevocable inheritance contract with the Trust. The validity of the subsequent amendments to the Trust are therefore immaterial.

## II.    The Trust is in Breach and Defendants are Entitled to Specific Performance

Under the terms of the inheritance contract, the Trust agreed to transfer ownership of the LLC to Mark and Mike upon Ann's death. The Trust is in breach of the inheritance contract because it has retained ownership of the LLC and its Valley View Property despite Ann's death in March 2023. Defendants are "ready, willing, and able to perform [their] obligations under the contract," a precondition to specific performance. *View Point Terrace, LLC v. McElroy*, 213 Or. App. 281, 285 (2007); Wisnovsky Decl. ¶ 60; Mike Decl. ¶ 3, ECF No. 147. Because the inheritance contract is for the inheritance of an LLC and its real property, specific performance is the appropriate remedy. *Deitz v. Stephenson*, 51 Or. 596, 605 (1908) (when contract regarding sale of shares in private company is breached, specific performance is typical remedy);

*Robertson v. Jones*, 280 Or. 507, 511 (1977) (when contract regarding transfer of real property is breached, specific performance is typical remedy).

Ann and Couvrette's 2019 execution of the Revocation Document, which purportedly invalidated the Redemption Agreement and divested Mark and Mike of their contractual right to inherit the LLC, "is of a character that works a breach of the terms of the original contract." *Florey*, 194 Or. at 277. The Reconviction Document is therefore either unenforceable or provides an alternate basis for Defendants' counterclaim for breach of contract.

The Court orders the Trust (and all of its current and future trustees) to perform the terms of the inheritance contract, as described in Section 3.3B of the Second Amended Trust, "consummating the transaction described in the Redemption Agreement" including transfer of the Trust's remaining membership interest in the LLC and its Valley View Property to Mark and Mike. Second Amended Trust at 1, ECF No. 146-6. To be clear, the Court is ordering performance of the inheritance contract and not the administration of an estate.

## III.    Reasonable Attorney Fees

Section 4.2 of the Amended Agreement to Make Payments states that any party who prevails in a suit to enforce the agreement shall be entitled to an award of reasonable attorney fees. Amended Agreement to Make Payments at 3, ECF No. 146-7. The Amended Agreement to Make Payments is part of the inheritance contract and Defendants have prevailed in their counterclaim seeking specific performance. Defendants are therefore entitled to an award of reasonable attorney fees related to that claim.

Defendants argue, and the Court agrees, that the award for attorney fees related to the inheritance contract claim should be against Couvrette personally, in addition to the Trust. Under the Oregon Uniform Trust Code, "trustees are 'personally liable for torts committed in the course

of administering a trust or for obligations arising from ownership or control of trust property' if they are personally at fault." *Hunt v. Goffman*, 343 Or. App. 268, 273 n.1 (2025) (quoting ORS 130.845(2)). As previously ordered by the Court, the substitution of Ms. Sullivan as administrator of Ann's Estate for Couvrette as Trustee does not relieve Couvrette of any of the counterclaims alleged against her. ECF No. 137 at 11.

As acting Trustee of the Trust, Couvrette was in control of the LLC at the time that Defendants filed their counterclaim seeking specific performance of the inheritance contract. The Trust's obligation to transfer the LLC to Mark and Mike arises from its ownership and control of that Trust asset. The Court considers it undisputed that Couvrette is personally at fault for the decision to withhold the LLC from Mark and Mike after Ann died. The Court awards Defendants attorney fees related to the inheritance contract counter claim against Couvrette personally, in addition to the Trust, in an amount to be determined under Rule 54.

Defendants have also prevailed against Plaintiffs' claims for elder abuse and declaratory judgment. Each of these claims relates to the validity of the Trust's Leases with Valley View Winery. Section 16.2 of the Vineyard Lease and Section 17.2 of the Winery Lease include identical attorney fees provisions which entitle the prevailing party to reasonable attorney fees incurred litigating a claim arising out of each lease. Vineyard Lease at 11, ECF No. 146-5; Winery Lease at 12, ECF No. 146-4. Defendants are entitled to an award of reasonable attorney fees in an amount to be determined under Rule 54.

## CONCLUSION

For the reasons explained above, Defendants' Motion for Partial Summary Judgment (ECF No. 143) is DENIED in part as MOOT and GRANTED in part. Plaintiffs' claims were previously dismissed with prejudice so the portion of Defendants' motion seeking summary

judgment on Plaintiffs' claims is denied as moot. Defendants are entitled to summary judgment on their eighth counterclaim for breach of contract and the Court ORDERS specific performance of the inheritance contract. The Court GRANTS Defendants reasonable attorney fees in an amount to be determined under Rule 54.

DATED this __30__ day of __March__, 2026.

MARK D. CLARKE
United States Magistrate Judge