CURTIS GLACCUM, Bar No. 161732
curtis.glaccum@bbklaw.com
JOSH NEWTON, Bar No. 983087
josh.newton@bbklaw.com
BEST BEST & KRIEGER LLP
360 SW Bond Street, Suite 400
Bend, Oregon  97702
Telephone:  (541) 382-3011
Facsimile:  (541) 388-5410

*Of Attorneys for Plaintiffs/Counter-Defendants
JOANNE COUVRETTE, MICHELLE SULLIVAN, as
Special Administrator of the Estate of ANN M.
WISNOVSKY, and WISNOVSKY LAND, LLC,*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| JOANNE COUVRETTE, MICHELLE SULLIVAN, as Special Administrator of the Estate of ANN M. WISNOVSKY, and WISNOVSKY LAND, LLC, an Oregon Domestic Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>MARK A. WISNOVSKY, an individual; MICHAEL J. WISNOVSKY, an individual; and VALLEY VIEW WINERY, INC., an Oregon Domestic Business Corporation,<br><br>Defendants. | Civil No.:  1:21-CV-00157-CL<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION OF OPINION AND ORDER (ECF NO. 227)**<br><br>Oral Argument Requested |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 2

II. LEGAL STANDARD .............................................................................................. 4

III. ARGUMENT ........................................................................................................ 6

    A.    The Court's Finding of an Enforceable "Inheritance Contract" Rests on Manifest Errors of Law. ................................................................................................ 6

        1.    ORS 112.270 Does Not Reach Trust Amendments. ................................. 7

        2.    Independently, the Court's Aggregation of the February 2017 Documents Under *Hays* Fails Because the Four Documents Are Not Between the Same Parties. ....................................................................................... 10

        3.    Independently, the February 2017 Documents Fail Basic Oregon Contract-Formation Requirements of Mutual Assent on Essential Terms and Bargained-For Consideration. .................................................... 12

    B.    Ann Fully Performed Her Obligations Under the Amended Agreement to Make Payments When She Executed the Second Trust Amendment; She Did Not Promise to Forgo All Future Trust Amendments. ................................................ 15

        1.    The Amended Agreement to Make Payments Required a One-Time Act of Trust Amendment, Which Ann Performed; It Did Not Impose a Perpetual Covenant Against Further Amendment. ................................................... 15

        2.    Ann Fully Performed Her Obligations Under the Amended Agreement to Make Payments When She Executed the Second Trust Amendment; She Did Not Promise to Forgo All Future Trust Amendments. ...................... 18

        3.    Defendants Are Not "Ready, Willing, and Able" to Perform Their Reciprocal Contractual Obligations; Indeed, They Have Been in Continuous Breach of the February 2017 Documents Since 2023. .......... 20

    C.    The Fourth, Fifth, and Sixth Trust Amendments Are Not "Immaterial," and the Validity of the February 2017 Documents Cannot Be Resolved on the Present Record. ........................................................................................................ 22

    D.    The Court's Finding of Personal Fault Under ORS 130.845(2) Was Improper on Summary Judgment. .......................................................................................... 24

    E.    Due Process and the Court's Discretion Warrant Limited Leave to Brief the Eighth Counterclaim. ......................................................................................... 26

IV. CONCLUSION ...................................................................................................... 27

# TABLE OF AUTHORITIES

**Federal Cases**

*Allen v. City of Los Angeles*
 66 F.3d 1052 (9th Cir. 1995) ......................................................................................24

*Allstate Ins. Co. v. Herron*
 634 F.3d 1101 (9th Cir. 2011) ....................................................................................4, 5

*Burkhalter v. Burkhalter*
 22-55909, 2023 WL 7490053 (9th Cir. Nov. 13, 2023) .............................................5

*Cooter & Gell v. Hartmarx Corp.*
 496 U.S. 384 (1990)....................................................................................................26

*Ferdik v. Bonzelet*
 963 F.2d 1258 (9th Cir. 1992) ....................................................................................26

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*
 387 F.3d 1021 (9th Cir. 2004) ....................................................................................5

*Gila River Ranch, Inc. v. United States*
 368 F.2d 354 (9th Cir. 1966) ......................................................................................5

*Goodyear Tire & Rubber Co. v. Haeger*
 581 U.S. 101 (2017)....................................................................................................27

*Halaco Eng'g Co. v. Costle*
 843 F.2d 376 (9th Cir. 1988) ......................................................................................27

*Heinemann v. Satterberg*
 731 F.3d 914 (9th Cir. 2013) ......................................................................................5, 20

*Henderson v. Duncan*
 779 F.2d 1421 (9th Cir. 1986) ....................................................................................26

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*
 168 F.3d 347 (9th Cir. 1999) ......................................................................................4, 5

*Liberty Mut. Ins. Co. v. E.E.O.C.*
 691 F.2d 438 (9th Cir. 1982) ......................................................................................5

*Malone v. U.S. Postal Serv.*
 833 F.2d 128 (9th Cir. 1987) ......................................................................................26

*Martinez v. Stanford*
 323 F.3d 1178 (9th Cir. 2003) ....................................................................................5, 6

*McDowell v. Calderon*
   197 F.3d 1253 (9th Cir.1999) ...................................................................................4

*School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*
   5 F.3d 1255 (9th Cir. 1993) ....................................................................................4

*Tripati v. Henman*
   845 F.2d 205 (9th Cir. 1988) ..................................................................................4

**State Cases**

*Dickie v. Dickie*
   95 Or. App. 310 (1989)...........................................................................................17

*Florey v. Meeker*
   194 Or. 257 (1952)..............................................................................13, 17, 19, 20

*Gaffi v. Burns*
   278 Or. 327 (1977)..................................................................................................20

*Hays v. Hug*
   243 Or. 175 (1966)........................................................................................ *passim*

*Hunt v. Goffman*
   343 Or. App. 268 (2025)..........................................................................................25

*Knutsen v. Krippendorf*
   124 Or. App. 299 (1993)..........................................................................................24

*In re Lieurance's Estate*
   181 Or. 646 (1947)..................................................................................................13

*Murray v. Laugsand*
   179 Or. App. 291 (2002)..........................................................................................20

*Phillips v. Johnson*
   266 Or. 544 (1973)..................................................................................................12

*In re Reddaway's Estate*
   214 Or. 410, 329 P.2d 886 (1958) ..........................................................................23

*Richardson v. Richardson*
   58 Or. App. 338 (1982); *rev. den.,* 293 Or. 635 (1982).......................................8, 9

*Robertson v. Jones*
   280 Or. 507 (1977)..................................................................................................21

*Shelley v. Portland Tug & Barge Co.*
   158 Or. 377 (1938)..................................................................................................13

*Slover v. Oregon State Bd. of Clinical Soc. Workers*
144 Or. App. 565 (1996)........................................................................12, 14

*Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*
126 Or. App. 523 (1994)..............................................................................10

*Viewpoint Terrace, LLC v. McElroy*
213 Or. App. 281 (2007)..............................................................................20

*VTech Commc'ns, Inc. v. Robert Half, Inc.*
190 Or. App. 81 (2003)........................................................................12, 13

**Federal Statutes**

Fed. R. Civ. P. 11(b) ................................................................................2, 26

Fed. R. Civ. P. 54 ..........................................................................................28

Fed. R. Civ. P. 56 ............................................................................................6

Fed. R. Civ. P. 59(e) ........................................................................1, 4, 5, 27

Fed. R. Civ. P. 60(b) ............................................................................1, 4, 5

**State Statutes**

ORS 42.230........................................................................................................16

ORS 112.270.............................................................................................. *passim*

ORS 112.270(1) ...............................................................................................7

ORS 112.270(1)(c)........................................................................................8, 9

ORS 130.505.............................................................................................. *passim*

ORS 130.505(1) ..........................................................................................9, 16

ORS 130.515.....................................................................................................7

ORS 130.655...................................................................................................26

ORS 130.665...................................................................................................26

ORS 130.845(2) ...........................................................................3, 24, 25, 26

ORS Chapter 112 ............................................................................................7

ORS Chapter 130 ............................................................................................7

**Rules**

LR 7-1(a) .................................................................................................................................1

## LR 7-1(A) CERTIFICATION

Pursuant to LR 7-1(a), counsel for Plaintiffs/Counter-Defendants Joanne Couvrette (hereinafter, "Couvrette"), Michelle Sullivan, as special administrator of the estate of Ann M. Wisnovsky, and Wisnovsky Land, LLC (collectively, "Plaintiffs") certify that counsel conferred with counsel for Defendants Mark A. Wisnovsky (hereinafter, "Mark"), Michael J. Wisnovsky (hereinafter, "Mike"), and Valley View Winery, Inc. (hereinafter, "Valley View Winery") (collectively, "Defendants") regarding the relief requested in this Motion. The parties were unable to resolve the dispute without Court intervention.

## MOTION

Pursuant to Fed. R. Civ. P. ("FRCP") 59(e) or, in the alternative, Rule 60(b), Plaintiffs respectfully move this Court to reconsider, alter, or amend its Opinion and Order entered March 30, 2026 (ECF 227[1]), which granted Defendants' Motion for Partial Summary Judgment on their Eighth Counterclaim for breach of contract, ordered specific performance requiring transfer of Wisnovsky Land, LLC and the Valley View Property to Mark and Mike Wisnovsky, and awarded attorney fees against Couvrette personally.

This Motion is supported by the following Memorandum of Points and Authorities, the pleadings and records on file in this action, including the *Declaration of Mark Wisnovsky (Jan. 31, 2025)* ("Wisnovsky Decl.") previously filed in this matter as ECF 146, with exhibits referenced therein, and any argument the Court may hear at a hearing on this Motion.

---

[1] Opinion and Order, filed on March 30, 2026, as ECF 227 (hereinafter "Order").

Page 1 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### INTRODUCTION

This Court's March 30, 2026, Opinion and Order (the "Order") resolved a legally and factually complex breach-of-contract counterclaim on an unopposed summary-judgment record. The record was unopposed not because the merits of Defendants' Eighth Counterclaim are undisputed, but because Plaintiffs' summary judgment briefing was stricken as a Rule 11(b) sanction directed at Plaintiffs' affirmative claims and associated briefs. ECF 215. The result is a sweeping grant of specific performance ordering transfer of a limited liability company and real property, together with an award of attorney fees personally imposed on a former trustee.

Plaintiffs respectfully submit that the Order rests on several manifest errors of law and fact, and that enforcing it without reconsideration will result in manifest injustice. In particular:

**First**, the Court's threshold finding that the February 2017 Documents constitute an enforceable, irrevocable "inheritance contract" rests on three independent legal errors: (i) ORS 112.270 governs contracts to make a will or devise, not contracts regarding inter vivos trust amendments; (ii) the Court's application of the *Hays v. Hug* (hereinafter, *"Hays"*) construing-together doctrine swept into the "contract" two documents (the Redemption Agreement and the Second Trust Amendment) to which Mark and Mike are not parties; and (iii) the February 2017 Documents fail basic Oregon contract formation requirements of mutual assent and bargained-for consideration as to the specific covenant the Order has inferred — a supposed surrender by Ann of her reserved ORS 130.505 power to amend her Trust. Each of these errors is independently sufficient to warrant reconsideration.

**Second**, the Amended Agreement to Make Payments required Ann to execute a one-time act of amending the Trust and Lease in specified ways. Ann performed that obligation on

Page 2 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

February 23, 2017. Nothing in the Amended Agreement to Make Payments, the Second Trust Amendment, or any other February 2017 Document required Ann to forgo all future Trust amendments. The Order nonetheless reads that missing covenant into the bargain by implication; a covenant the parties never wrote and never bargained for. Separately, the July 2, 2019, Revocation and Termination of Redemption Agreement (the "Revocation Document") complied on its face with Section 3.2 of the Redemption Agreement, which authorized amendment or revocation "by an instrument in writing executed by all the parties, which writing must refer to this Agreement." The Order summarily dismissed the Revocation Document as "either unenforceable or provid[ing] an alternate basis" for breach without analyzing Section 3.2 at all.

**Third**, the Court held the Fourth, Fifth, and Sixth Trust Amendments "immaterial" because of its threshold finding of an irrevocable inheritance contract. Because that threshold finding is itself legally doubtful, the 2019 Amendments and the evidence concerning the circumstances surrounding execution of the February 2017 Documents are highly material. The Order forecloses any examination of whether Ann's consent in February 2017 was freely given, notwithstanding that Plaintiffs never had the opportunity to present that evidence on the merits of this counterclaim.

**Fourth**, the Order imposes personal liability on Couvrette for attorney fees under ORS 130.845(2). Order at 16. That statute requires a finding of personal fault. The record contains genuine disputes of material fact concerning Couvrette's good-faith reliance on the 2019 Trust Amendments and her fiduciary duties to the beneficiaries she believed were entitled to Trust assets. A finding of "personal fault" on a cold, unopposed record is improper on summary judgment.

Page 3 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

**Fifth**, and finally, the Court's Opinion and Order filed on December 12, 2025, as ECF 215, ("Sanctions Order") that stripped Plaintiffs of their summary judgment briefing did not purport to strip Couvrette of her right to defend against Defendants' counterclaims. Sanctions Order at 2. Due process, and the Court's inherent discretion, counsel granting Couvrette limited leave to respond on the merits of the Eighth Counterclaim to avoid manifest injustice.

Reconsideration of this Order on any one of these grounds is warranted. Cumulatively, they require it.

## II.
## LEGAL STANDARD

"A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *Tripati v. Henman*, 845 F.2d 205, 206 n.1 (9th Cir. 1988) ("A Rule 59(e) motion is a proper vehicle for seeking reconsideration of a summary judgment ruling."); *see Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) ("a district court" may reconsider and may "vacate a mistaken money award under Rule 60(b)").

> In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "A court considering a Rule 59(e) motion is not limited merely to these four situations, however" and "enjoys considerable discretion in granting …" a motion for reconsideration. *Id.* (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir.1999)).

Page 4 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**

15025.00001\44920855.9

Reconsideration of a "final judgment, order, or proceeding" is also proper under Rule 60(b) for reasons including, but not limited to, "mistake, inadvertence, surprise, or excusable neglect; [or] … any other reason that justifies relief." FRCP 60(b). Under Rule 60(b), "a district court can correct its own mistake" in rendering an order or judgment, including its "own error of law." *Kingvision*, 168 F.3d at 350; *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982) ("The law in this circuit is that errors of law are cognizable under Rule 60(b).") quoting *Gila River Ranch, Inc. v. United States,* 368 F.2d 354, 356 (9th Cir. 1966); *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) ("The district court has discretion to correct a judgment for mistake or inadvertence, either on the part of counsel or the court itself."), citing *Kingvision,* 168 F.3d at 350.

Accordingly, reconsideration is warranted under Rules 59(e) and 60(b) when a judgment is reached by "appl[ying] an incorrect legal standard." *Burkhalter v. Burkhalter*, 22-55909, 2023 WL 7490053, at *1 (9th Cir. Nov. 13, 2023) (vacating district court's attorney's fee award and denial of motion for reconsideration "[b]ecause the district court appears to have applied an incorrect legal standard"); *Allstate*, 634 F.3d at 1111.

Here, Couvrette moves for reconsideration on the first and third *Allstate* grounds: the Order rests on manifest errors of law, and reconsideration is necessary to prevent manifest injustice. In the alternative, Couvrette moves under Rule 60(b) to correct the Court's errors of law, which are independently cognizable under *Liberty Mutual* and *Fidelity Federal Bank*.

Separately, the standard governing the underlying motion informs the scope of this reconsideration. An unopposed summary-judgment motion may not be granted solely because of the non-movant's lack of response. *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013); *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). The movant bears the "affirmative

Page 5 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez*, 323 F.3d at 1182. Where, as here, reconsideration turns on whether the movant carried that legal burden on the issues presented, no new evidence is required; the Court need only revisit the legal conclusions drawn from the undisputed facts.

## III.
## ARGUMENT

**A.    The Court's Finding of an Enforceable "Inheritance Contract" Rests on Manifest Errors of Law.**

For ease of reference, and consistent with the Court's terminology, this Motion refers to the following four documents collectively as the "February 2017 Documents": (i) the *First Amendment to and Restatement of Agreement to Make Payments* ("Amended Agreement to Make Payments") (Ex. 553); (ii) the *Second Addendum to Vineyard Lease* ("Second Vineyard Addendum") (Ex. 554); (iii) *the Redemption Agreement* (Ex. 1225); and (iv) *the Second Amendment to Inter Vivos Revocable Trust [–] The Ann M. Wisnovsky Trust* ("Second Trust Amendment") (Ex. 552). Order at 5; *see also* Wisnovsky Decl. ¶ 26. Separately, this Motion refers to Mark Wisnovsky's February 20, 2017, fax to Patrick Huycke (Ex. 1019) as the "February 20 Fax." That fax is not part of the February 2017 Documents as the Court defined them, but it is relevant to the factual disputes addressed in Part III.C below.

The threshold finding on which the Order's entire disposition depends, that the February 2017 Documents constitute an irrevocable inheritance contract enforceable by specific performance, is vulnerable on three independent grounds. First, ORS 112.270 does not reach trust amendments. Second, the Court's construing-together analysis under *Hays* does not apply to the four February 2017 Documents because they were not executed between the same parties. Third, even setting the statutory and aggregation questions aside, the February 2017 Documents fail basic Oregon contract-formation requirements of mutual assent on essential terms and

Page 6 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**

bargained-for consideration for the specific covenant the Order has inferred. Order at 14. Each of these grounds is an independent basis for reconsideration.

### 1.    ORS 112.270 Does Not Reach Trust Amendments.

The Order holds that the February 2017 Documents constitute an enforceable "inheritance contract" satisfying ORS 112.270(1), and that, on that basis, the Second, Third, Fourth, Fifth, and Sixth Trust Amendments are "immaterial." Order at 13–14. That conclusion rests on a statute whose text, by its plain terms, does not reach trust amendments.

ORS 112.270(1) states that a contract to make a will or devise, or not to revoke a will or devise, or to die intestate, executed after January 1, 1974, shall be established only by:

> (1) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, executed after January 1, 1974, shall be established only by:
>
> > (a) Provisions of a will stating material provisions of the contract;
> >
> > (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
> >
> > (c) A writing signed by the decedent evidencing the contract[.]

ORS 112.270(1).

The statute appears in ORS Chapter 112, which governs intestate succession and wills; not the creation, amendment, or revocation of inter vivos trusts. Trusts, by contrast, are governed by the Oregon Uniform Trust Code at ORS Chapter 130. The Oregon Uniform Trust Code contains its own statutory framework for revocable trust modification, revocation, and the capacity required to amend a trust. ORS 130.505; ORS 130.515.

The legislative history of ORS 112.270 confirms the limiting purpose of the statute. The 1973 Senate Judiciary Committee adopted ORS 112.270 to eliminate litigation involving

contracts to make wills and contracts to devise. *See* Minutes, Senate Committee on Judiciary, February 23, 1973, at 10. The statute is thus best understood as a limiting framework: it bars inheritance contracts that lack the specified forms of written proof. It does not convert every inter vivos document that refers to an inheritance into an irrevocable contract to make a will.

The Oregon Court of Appeals' decision in *Richardson v. Richardson*, 58 Or. App. 338, 648 P.2d 377 (1982), *rev. den.*, 293 Or. 635 (1982), constrains the Court's Order. The plaintiff in *Richardson* sought specific performance of an alleged oral contract to make a will, supported by three writings: (1) an invalid will purporting to leave her the decedent's property; (2) a letter from the decedent telling her, "Do what you want with the house * * * I built it for you"; and (3) a letter from the decedent to his father instructing, "Please see that [plaintiff] gets everything because I really love her very much." *Id.* at 340. The Court of Appeals held those writings insufficient to satisfy ORS 112.270(1)(c), explaining:

> Although arguably those exhibits evidence decedent's intent that plaintiff receive his property, they make no reference to an underlying agreement between them to devise. Therefore, the trial court correctly determined that plaintiff's claim should be disallowed.

*Richardson,* 58 Or. App. at 342.

*Richardson*'s rule is straightforward: a writing that evidences the decedent's *intent* to dispose of property in a particular way is not the same as a writing that evidences the *contract* to make a will or devise, and ORS 112.270(1)(c) requires the latter. The writing itself must reference the underlying agreement; it is not enough that the writing reflects a disposition consistent with such an agreement.

Applied here, *Richardson* is particularly detrimental to the Order's treatment of the two documents the decedent, Ann, signed in her individual capacity. Neither the Redemption Agreement (Ex. 1225) nor the Second Trust Amendment (Ex. 552) references any contract

Page 8 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**

15025.00001\44920855.9

binding Ann's power to amend the Trust or to create a will. The Redemption Agreement is a commercial redemption contract between two entities (the Trust and the LLC) for a defined transaction to occur upon Ann's death; it says nothing about Ann having agreed not to amend her Trust. The Second Trust Amendment is a unilateral trust instrument executed by Ann as Grantor and Trustee; it amends Section 3.3B and 3.3C of the Trust and concludes by expressly "ratif[ying] and affirm[ing] the Inter Vivos Revocable Trust, dated August 2, 2012." Ex. 552 at 2. It makes no reference to any contract.

Under *Richardson*, those are precisely the sort of "intent" writings that fail the ORS 112.270(1)(c) test. The writings reflect Ann's estate planning intent as of February 23, 2017, with respect to the LLC, but they do not reference any "agreement between them" that Ann has surrendered her reserved power to revise that intent. *See Richardson,* 58 Or. App. at 342. The Court's aggregation theory, under *Hays*, cannot cure this deficiency, because *Richardson* requires the decedent's own signed writing to reference the contract, and neither of the documents Ann signed in her individual capacity does so.

The distinction matters. A revocable inter vivos trust is, by its nature, amendable until the settlor's death or incapacity. ORS 130.505(1) ("Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor of the trust may revoke or amend the trust."). The Court's Order effectively converts four successive trust amendments (the Third, Fourth, Fifth, and Sixth) into nullities based on the Second Trust Amendment, by holding that Ann's February 2017 agreement with Mark and Mike contractually bound the Trust's dispositive terms in perpetuity. Order at 14. That is a substantial departure from Oregon trust law and should not be rested on the extension-by-analogy of a statute governing wills, particularly where the Oregon Court of

Appeals has read that statute narrowly even in the will-based context for which the statute was designed, as discussed *supra*.

Even assuming *arguendo* that a contract to bind trust dispositions could be recognized under Oregon common law, the question of whether the February 2017 Documents, individually or collectively, satisfy that common-law test is not the same question as whether they satisfy ORS 112.270. The Order collapses the two inquiries. Order at 14. That is a manifest error of law warranting reconsideration.

> **2.     Independently, the Court's Aggregation of the February 2017 Documents Under *Hays* Fails Because the Four Documents Are Not Between the Same Parties.**

Independently, the Court's construction of the four February 2017 Documents "together as one contract" under *Hays v. Hug*, 243 Or. 175, 177 (1966), and *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or. App. 523, 528 (1994), misapplies the construing-together doctrine. Order at 14. Under Oregon law, contemporaneously executed documents may be construed as a single contract when they are executed "*by the same parties*, at about the same time, as a part of the same transaction ..." *Hays*, 243 Or. at 177, 412 P2d at 374 (emphasis added). That prerequisite is not satisfied here.

The four February 2017 Documents were executed among four different combinations of parties:

(1)  The Amended Agreement to Make Payments (Ex. 553) is executed among: (i) Valley View Winery, (ii) the Wisnovsky Trust, (iii) Mark, and (iv) Mike.

(2)  The Second Vineyard Addendum (Ex. 554) is executed between: (i) Wisnovsky Land, LLC (landlord) and (ii) Valley View Winery (tenant).

(3)  The Redemption Agreement (Ex. 1225) is executed between: (i) Wisnovsky Land, LLC (as "Company") and (ii) the Ann M. Wisnovsky Trust (as "Member"), both signed by Ann alone, in her respective capacities. Mark and Mike are *not* parties.

(4)  The Second Trust Amendment (Ex. 552) is a unilateral instrument and is executed by Ann alone, as Grantor and Trustee. It does not have a counterparty.

Page 10 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**

Wisnovsky Decl. ¶ 26, Exs. 552–554, 1019, 1225.

To find an "inheritance contract" entitling Mark and Mike to specific performance of a transfer of the LLC and its Valley View Property, the Court had to treat Mark and Mike as parties to the Redemption Agreement and the Second Trust Amendment. They are not. Mark and Mike's signatures appear only on the Amended Agreement to Make Payments and the Second Vineyard Addendum: documents that, standing alone, say nothing about the disposition of Trust assets upon Ann's death. The Redemption Agreement and the Second Trust Amendment, which do address such dispositions, were signed only by Ann. By aggregating the four documents, the Court effectively imported Mark and Mike as enforcement parties to instruments to which they are strangers. That is not what *Hays* authorizes.

Moreover, the Second Trust Amendment itself expressly "ratif[ies] and affirm[s] the Inter Vivos Revocable Trust, dated August 2, 2012." Wisnovsky Decl. ¶ 26, Ex. 552 at 2. The Second Trust Amendment thus expressly reaffirms the *revocable* character of the Trust instrument. An instrument that reaffirms revocability on its face cannot simultaneously, by the operation of a construing-together doctrine, be transformed into an irrevocable testamentary contract that binds the settlor's reserved ORS 130.505 power to amend. The Second Trust Amendment's express language and the construction the Order places on it are mutually incompatible.

Finally, the Amended Agreement to Make Payments itself, the only document in the group that arguably ties Mark and Mike to a Trust-amendment commitment, contains no language binding Ann's future power to amend. Its sole reference to Trust amendment is in Recital C, which states:

//

//

> Ann M. Wisnovsky has determined to amend the Wisnovsky Trust and Valley View and Wisnovsky Land, LLC, which is controlled by Ann M. Wisnovsky, have agreed to amend a Vineyard Lease that exists between them. Ann M. Wisnovsky's agreement to make such changes is conditioned upon the execution of this Agreement.

Wisnovsky Decl. ¶ 26, Ex. 553.

The recital runs the conditionality the opposite direction from what the Order assumed: it states that Ann's agreement to amend the Trust and Lease was conditioned on the execution of the Amended Agreement to Make Payments. It does not state that Mark and Mike's agreement was conditioned on Ann's irrevocable commitment to a particular Trust disposition. And the operative verb is *past-tense*: Ann "has determined to amend" the Trust, detailing a one-time determination, not an ongoing covenant. *Id.*

**3.      Independently, the February 2017 Documents Fail Basic Oregon Contract-Formation Requirements of Mutual Assent on Essential Terms and Bargained-For Consideration.**

Even setting ORS 112.270 and the *Hays* aggregation question aside, the Order's conclusion that the February 2017 Documents constitute an enforceable "inheritance contract" fails under ordinary Oregon contract-formation principles. To plead a breach of contract claim under Oregon law, a party must establish: (1) the existence of a contract, (2) its relevant terms, (3) plaintiff's full performance and lack of breach, and (4) defendant's breach resulting in damage to plaintiff. *Slover v. Oregon State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570, 927 P.2d 1098, 1101 (1996). Before a valid contract can exist, there must be mutual assent as to all its essential terms. *VTech Commc'ns, Inc. v. Robert Half, Inc.*, 190 Or. App. 81, 89, 77 P.3d 1154, 1158 (2003), *rev dismissed*, 337 Or. 547 (2004) (citing *Phillips v. Johnson*, 266 Or. 544, 555, 514 P.2d 1337 (1973)).

//

Applied to the "inheritance contract" the Order has found, the requirements for a breach of contract action fail on at least three grounds.

First, there was no mutual assent on the essential term the Order's theory requires: that Ann would surrender her ORS 130.505 power to amend her Trust. The Amended Agreement to Make Payments does not state that Ann is giving up her power to amend. The Second Trust Amendment does not state that it is irrevocable; to the contrary, it expressly "ratif[ies] and affirm[s] the Inter Vivos Revocable Trust." Wisnovsky Decl. ¶ 26, Ex. 552 at 2. The Redemption Agreement contains an express amendment mechanism (Section 3.2) that authorizes later amendment or revocation by a writing executed by the parties and referring to the Agreement. Wisnovsky Decl. ¶ 26, Ex. 1225 at 2. Nothing in any of the February 2017 Documents reflect the parties' mutual assent to a covenant against future amendment. Under *VTech*, the absence of mutual assent on that essential term is fatal: a court cannot manufacture, by implication, a term that the parties did not actually agree to. *VTech Commc'ns, Inc.*, 190 Or. App. 81.

Second, Mark and Mike's extension of the Agreement to Make Payments from five to ten years, and amending the Vineyard Lease rent structure, was consideration for Ann's one-time acts of executing the Second Vineyard Addendum and the Second Trust Amendment. It was not consideration for a perpetual covenant against further amendment. "'[C]onsideration' consists of the accrual to one party of some right, interest, profit, or benefit or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Shelley v. Portland Tug & Barge Co.*, 158 Or. 377, 387 (1938).[2] No party has identified what Mark and Mike gave in

---

[2] The Court's reliance on *In re Lieurance's Estate*, 181 Or. 646, 668 (1947), is misplaced. That decision does not hold that "inheritance contracts" override subsequently amended estate plans; it principally addresses the limited jurisdiction of a circuit court sitting in probate. To the extent Oregon law recognizes enforceability of such agreements, it does so in a narrower sense. *See Florey v. Meeker*, 194 Or. 257, 277 (1952).

exchange for Ann's supposed surrender of her reserved power to amend because nothing in the February 2017 Documents reflects such an exchange. Under *Slover*, an agreement with no identified consideration for the specific term a party seeks to enforce is not a contract as to that term. *Slover,* 144 Or App 565.

Third, by Defendants' own admission, they have not fully performed under the Redemption Agreement since they have not paid rent due under the Leases, since January 2023. Wisnovsky Decl. ¶ 58.

Fourth, the Order's remedial determination of ordering specific performance requiring transfer of the LLC and the Valley View Property to Mark and Mike depends on the fourth *Slover* element: defendant's breach. If the contract the Court has found is only the one Ann performed (the one-time execution of the Second Trust Amendment), then there is no breach: Ann performed. If the Court has inferred a broader covenant never to amend, that covenant was not bargained for, was not mutually assented to, and was not reduced to writing. Under either analysis, Defendants cannot establish *Slover*'s fourth element. *Slover,* 144 Or App 565.

This independent contract-formation analysis matters for reconsideration purposes because it gives the Court a path to reconsider its Order without having to reach the ORS 112.270 question at all. Whether or not ORS 112.270 applies to trust amendments, and whether or not the *Hays* aggregation test is satisfied, ordinary Oregon contract law requires mutual assent on essential terms and bargained-for consideration. The Order's finding of an irrevocable inheritance contract meets neither requirement.

//

//

//

**B.**    **Ann Fully Performed Her Obligations Under the Amended Agreement to Make Payments When She Executed the Second Trust Amendment; She Did Not Promise to Forgo All Future Trust Amendments.**

**1.**    **The Amended Agreement to Make Payments Required a One-Time Act of Trust Amendment, Which Ann Performed; It Did Not Impose a Perpetual Covenant Against Further Amendment.**

The Order's entire premise of an "irrevocable" inheritance rests on a single, unstated premise: that when Ann agreed in the Amended Agreement to Make Payments to amend her Trust, she also agreed never to amend it again. The Order never identifies any contractual language imposing such a covenant because no such language exists in any of the February 2017 Documents.

The operative language of the Amended Agreement to Make Payments appears in Recital C, which states in full:

> Ann M. Wisnovsky has determined to amend the Wisnovsky Trust and Valley View and Wisnovsky Land, LLC, which is controlled by Ann M. Wisnovsky, have agreed to amend a Vineyard Lease that exists between them. Ann M. Wisnovsky's agreement to make such changes is conditioned upon the execution of this Agreement.

Wisnovsky Decl. ¶ 26, Ex. 553.

Two features of that language are fatal to the Order's premise. First, the verb tense is past: Ann "has determined to amend," reflecting a completed determination, not an ongoing covenant. Second, the conditionality runs in the opposite direction from what the Order assumed. The recital states that Ann's agreement to amend is conditioned on the execution of the Amended Agreement to Make Payments, not that Mark and Mike's agreement to the Amended Agreement to Make Payments is conditioned on Ann's surrender of her ORS 130.505 power to amend her own Trust. Once Ann executed the Second Vineyard Addendum and the Second Trust Amendment on February 23, 2017, her obligations under the Amended Agreement to Make

Page 15 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

Payments were *fully performed and discharged*. A contractual promise to take a single specified act is complete when that act is performed.

A simple analogy illustrates the point. Suppose a neighbor agrees: "If you lend me your truck this weekend so I can move, I'll paint your fence next week." The neighbor borrows the truck. Next week, the neighbor paints the fence. The contract is performed and discharged. Nothing in that bargain prevents the neighbor from later repainting the fence a different color or tearing it down. The neighbor's contractual obligation was to paint the fence once; it was not a perpetual covenant to maintain the fence in a particular condition forever. That would have been a different bargain, requiring different terms.

Here, Ann's contractual obligation under the Amended Agreement to Make Payments was to execute specified amendments to the Trust and the Vineyard Lease. She did so on February 23, 2017. From that moment, Mark and Mike had received everything the Amended Agreement to Make Payments promised them: a Trust that, on that date, directed the Trustee to consummate the Redemption Agreement transaction upon Ann's death. The Amended Agreement to Make Payments contained no provision prohibiting Ann from later amending the Trust further, no covenant that Ann would not exercise her reserved statutory power under ORS 130.505(1), and no language suggesting the parties intended to convert Ann's revocable inter vivos trust into an irrevocable testamentary instrument.

The Order effectively reads that missing covenant into the Amended Agreement to Make Payments by judicial implication. That is a manifest error. Oregon contract law does not insert omitted terms that fundamentally alter the character of the parties' bargain. ORS 42.230. The implied term here would do exactly that, converting a reserved-power revocable trust into an irrevocable one. ORS 130.505(1) ("Unless the terms of a trust expressly provide that the trust is

irrevocable, the settlor of the trust may revoke or amend the trust."). The Oregon legislature has spoken clearly: trust irrevocability requires express trust language, not judicial inference from a one-time performance contract.

The Court's reliance on *Florey*, 194 Or. 257 , and *Dickie v. Dickie*, 95 Or. App. 310 (1989), does not bridge this gap. In *Dickie*, the father and son exchanged consideration for a specific ongoing arrangement: the son transferred his remainder interest in the property, giving the father lifetime full ownership, in exchange for the father's promise to leave the property to the son in his will. When the father revoked his will and sold the property during his lifetime, he breached the core of the bargain: the father's continuing obligation not to alienate the very asset he had promised to devise. *Dickie,* 95 Or. App. at 312–13. The father's breach was not in *amending his will*; it was in *selling the property* that the bargain had required him to preserve for the son.

*Florey* also does not aid defendants. It held only that a later testamentary modification is actionable if, and only if, it breaches the actual terms of the underlying contract. *Florey,* 194 Or. at 277–78.

Here, by contrast, nothing in the February 2017 Documents required Ann to preserve any particular asset or to refrain from further amending her Trust. The obligation was discreet: execute the Second Trust Amendment. She did. The *Dickie* analogy thus cuts against the Order, not in favor of it. On the Order's reasoning, every contract to execute an estate-planning document would become a perpetual bar to future estate planning; a result Oregon law does not recognize and that the statutory scheme for revocable trusts affirmatively forbids.

The Second Trust Amendment itself underscores the point. Its final operative sentence reads: "As amended by this Second Amendment to Inter Vivos Revocable Trust, I hereby ratify

Page 17 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**

and affirm the Inter Vivos Revocable Trust, dated August 2, 2012." Ex. 552 at 2. The very instrument on which the Order rests its finding of irrevocability expressly reaffirms the Trust's revocable character. An instrument cannot simultaneously reaffirm a trust's revocability and operate as a contractual surrender of the settlor's reserved power to revoke. The text of the Second Trust Amendment and the Order's construction of it cannot be both right.

> **2.      Ann Fully Performed Her Obligations Under the Amended Agreement to Make Payments When She Executed the Second Trust Amendment; She Did Not Promise to Forgo All Future Trust Amendments.**

The Order disposes of the July 2, 2019, Revocation and Termination of Redemption Agreement in a single sentence: it "is therefore either unenforceable or provides an alternate basis for Defendants' counterclaim for breach of contract." Order at 15. That disposition is doubly problematic: (1) it assumes the Revocation Document is ineffective without analyzing its compliance with the Redemption Agreement's own amendment clause, and (2) it treats an alternate theory of liability as established without any factual findings in support.

The Redemption Agreement's amendment clause, Section 3.2, provides: "This Agreement may be amended only by an instrument in writing executed by all the parties, which writing must refer to this Agreement." Wisnovsky Decl. ¶ 26, Ex. 1225 at 2. Applying that clause to the Revocation Document requires only three steps.

First, identify the parties. The Redemption Agreement identifies two parties, and only two. The signature block on page 3 designates (i) "Company: Wisnovsky Land, LLC," signed "By: Ann M. Wisnovsky Trust, UTD 8/2/12, its Member / By: Ann M. Wisnovsky, Trustee"; and (ii) "Member: The Ann M. Wisnovsky Trust, UTD 8/2/12 / By: Ann M. Wisnovsky, Trustee." *Id.* at 3. Mark and Mike Wisnovsky are not parties. Valley View Winery is not a party. The Trust and the LLC are the sole parties, and Ann signed for both in her capacity as Trustee and as authorized representative of the Trust (as the LLC's sole Member).

Page 18 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

Second, identify the signatories to the Revocation. The July 2, 2019 Revocation Document contains four signature lines: (i) Ann M. Wisnovsky as Co-Trustee of the Ann M. Wisnovsky Trust; (ii) Joanne Couvrette as Co-Trustee of the Ann M. Wisnovsky Trust; (iii) the Ann M. Wisnovsky Trust, by Ann M. Wisnovsky as Co-Trustee, "For Wisnovsky Land, LLC, and its sole Member"; and (iv) the Ann M. Wisnovsky Trust, by Joanne Couvrette as Co-Trustee, "For Wisnovsky Land, LLC, and its sole Member." *Id*., Ex. 577 at 1. The Revocation Document thus bears the signature of the Trust (acting through both then-Co-Trustees) and the LLC (acting through its sole Member, the Trust, which itself acted through both then-Co-Trustees).

Third, confirm the "must refer to this Agreement" requirement. The opening sentence of the Revocation Document states: "On February 23, 2017, Wisnovsky Land, LLC, an Oregon Limited Liability Company, and Ann M. Wisnovsky, as a trustee of the Ann M. Wisnovsky Trust UTD August 2, 2012, entered into a Redemption Agreement." *Id*. at 1. The Revocation expressly identifies the Redemption Agreement by its exact title, effective date, and the two parties the Agreement itself identified. The "refer to this Agreement" requirement is literally satisfied.

The result is that the Revocation Document complies with every element of Section 3.2 of the Redemption Agreement on its face. It is "an instrument in writing," it is "executed by all the parties," and it "refer[s] to this Agreement" by name. The Order provides no analysis of Section 3.2, does not acknowledge that Mark and Mike are not parties to the Redemption Agreement, and does not explain why a revocation that complies with an agreement's own amendment mechanism is nonetheless ineffective.

The Order's sole engagement with the Revocation Document is a block quote from *Florey* for the proposition that an inconsistent estate-plan change "is of a character that works a

Page 19 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

breach of the terms of the original contract ..." Order at 15 (citing *Florey*, 194 Or. at 277). But *Florey*'s reasoning presupposes that the underlying contract binds the party against whom breach is alleged and does not authorize termination through the contract's own mechanism. Here, by contrast, Section 3.2 of the Redemption Agreement expressly authorized the parties to amend or terminate the Agreement by subsequent writing. Exercising that contractual right is not a "breach," it is performance.

At a minimum, the Revocation Document raised a genuine issue of material fact as to whether the Redemption Agreement was validly terminated before Ann's death. The Order resolves that issue summarily, citing no authority for the proposition that a revocation signed by every party to the original agreement, in exact compliance with that agreement's own amendment clause, is nonetheless ineffective. Under *Heinemann*, 731 F.3d at 917, the Court may treat facts as undisputed in the absence of opposing briefing, but it must still "determine the legal consequences of these facts and permissible inferences from them." The Court did not articulate a legal basis for its conclusion that the Revocation was "unenforceable," and it respectfully should reconsider it.

3.   **Defendants Are Not "Ready, Willing, and Able" to Perform Their Reciprocal Contractual Obligations; Indeed, They Have Been in Continuous Breach of the February 2017 Documents Since 2023.**

Generally, a claim for specific performance must be proved by clear and convincing evidence. *Murray v. Laugsand*, 179 Or. App. 291, 294, 39 P.3d 241 (2002). Specific performance requires the moving party to be "ready, willing, and able to perform its obligations under the contract." *Viewpoint Terrace, LLC v. McElroy*, 213 Or. App. 281, 285 (2007), citing *Gaffi v. Burns,* 278 Or. 327 (1977). Defendants cannot satisfy that requirement for two independent reasons.

First, the Court construed the four February 2017 Documents "together as one contract" under *Hays.* Order at 14. That aggregation cuts both ways: if the Amended Agreement to Make Payments, Second Vineyard Addendum, Redemption Agreement, and Second Trust Amendment are one contract, then performance of each is part of the same contractual obligation. By Mark's own sworn declaration, Valley View Winery's affirmative record of rent payments to Wisnovsky Land, LLC ends on January 27, 2023, approximately six weeks before Ann's death on March 16, 2023. *See* Wisnovsky Decl. ¶ 58. Mark's declaration enumerates payments "[b]etween April 2016 and January 27, 2023," *id*., but Valley View Winery has not paid rent to the LLC at any point since. Mark and Mike are the sole owners and officers of the defaulting tenant. Defendants' own record demonstrates their lack of readiness and willingness to perform.

Second, the Order's decree exceeds the scope of the Redemption Agreement. The Redemption Agreement does not provide for unconditional transfer of the LLC and the Valley View Property to Mark and Mike. It provides for a bilateral exchange: the LLC redeems one-half of the Trust's interest for $200,000, $240,000, or $280,000 (depending on parcel count), paid by promissory note secured by a trust deed on the Valley View Property. Wisnovsky Decl. ¶ 26, Ex. 1225 §§ 1–2. The Second Trust Amendment then directs that Couvrette and Robert each receive "an undivided one-half interest in the promissory note and trust deed." *Id*., Ex. 552 at 1. The record does not reflect that the LLC has executed or is prepared to execute the note and trust deed, and the Order's decree does not require it to.

Specific performance is an equitable remedy, and its scope is limited to the performance the contract requires. *See Robertson v. Jones*, 280 Or. 507, 511 (1977) (cited at Order at 14). At minimum, any specific performance remedy must (i) require execution and delivery of the promissory note and trust deed contemplated by the Redemption Agreement, (ii) provide

Page 21 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**

Couvrette and Robert each an undivided one-half interest in that note and trust deed, and (iii) account for the arrears of lease payments owing to the LLC since 2023.

**C.**     **The Fourth, Fifth, and Sixth Trust Amendments Are Not "Immaterial," and the Validity of the February 2017 Documents Cannot Be Resolved on the Present Record.**

The Order states that "The validity of the subsequent amendments to the Trust are therefore immaterial." Order at 14. That conclusion follows directly from the threshold holding that the February 2017 Documents created an irrevocable inheritance contract. If the threshold holding is legally doubtful, as Parts III.A and III.B of this motion demonstrate, the 2019 Amendments are not merely material; they may be dispositive. Among other things, they are purportedly:

(1) revoked all previous Trust Amendments [including the Second Amendment that the Court construes as part of the inheritance contract];

(2) restored Couvrette as Co-Trustee;

(3) [redirected distribution of Trust assets] entirely to Couvrette and Robert; and

(4) revoked Ann's own power to amend or alter the Trust further without Couvrette's written approval.

Order at 8–9; *see also* Wisnovsky Decl. ¶ 48-56, Exs. 560, 564, and 622.

The evidentiary record relevant to Ann's capacity and to the circumstances surrounding the February 2017 Documents, including whether Mark Wisnovsky's February 20, 2017 fax to Huycke accurately reflected Ann's freely formed intent, was never developed on this counterclaim because Couvrette's opportunity to develop it was foreclosed by the striking of her briefing. Sanctions Order at 28.

The February 20, 2017, fax (Ex. 1019) is itself a concrete illustration of the factual disputes the Order did not permit Couvrette to develop. Wisnovsky Decl. ¶ 24, Ex. 1019. The

Page 22 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

fax's opening text is written in a voice that is plainly Mark's ("My mom is visiting our sister in San Diego."). *Id.* The fax sets out four numbered items of instruction to Ann's then-attorney Patrick Huycke regarding changes Ann purportedly wished to make. Three days later, on February 23, 2017, Ann signed the remaining February 2017 Documents at Huycke's office at a meeting attended by Mark and Mike. *Id.*

The fax's opening and signature placement are themselves suggestive of the degree of control Mark exercised over the February 2017 transaction. The document was drafted and transmitted by Mark from Valley View Winery's fax machine. Ann signed it shortly before departing to stay with Couvrette in San Diego, at a point when she would be out of direct communication with the attorney she had relied upon for estate-planning advice since 1999. Ann's signature on the fax, three days before the executed documents, and Mark and Mike's attendance at the February 23 signing meeting, are the sort of "confidential relationship" and "participation of the beneficiary in the preparation of the transaction" factors that Oregon courts have long treated as hallmarks of undue influence. *In re Reddaway's Estate*, 214 Or. 410, 420-21, 329 P.2d 886 (1958).

The question of whether the February 2017 Documents were the product of undue influence or overreach is not an affirmative claim Plaintiffs must re-plead; it is a defense to enforceability of the very "inheritance contract" on which Defendants' counterclaim rests. Under Oregon law, undue influence and lack of capacity are classic defenses to a contract whose enforcement depends on a decedent's intent. *In re Reddaway's Estate*, 214 Or. at 421-24 (identifying seven suspicious circumstances relevant to whether a presumption of undue influence arises in the context of testamentary transfers and documents securing future transfers);

*Knutsen v. Krippendorf,* 124 Or. App. 299, 308–13, 862 P.2d 509, 515–18 (1993), *rev den*, 318 Or. 381 (1994).

Summary judgment is particularly inappropriate where, as here, the enforceability of a contract turns on the capacity and free consent of a decedent whose cognitive decline is documented in the record. At a minimum, the Court should reconsider its holding that the 2019 Amendments are "immaterial" and permit Plaintiffs to develop the record on (i) Ann's capacity and free consent in February 2017, and (ii) the validity and effect of the Fourth, Fifth, and Sixth Amendments as subsequent exercises of the settlor's reserved power to amend.

**D.    The Court's Finding of Personal Fault Under ORS 130.845(2) Was Improper on Summary Judgment.**

The Order awards attorney fees against Couvrette "personally, in addition to the Trust," on the reasoning that she was "in control of the LLC at the time that Defendants filed their counterclaim" and is therefore "personally at fault" under ORS 130.845(2). Order at 15–16. That finding imposes personal liability on a former trustee on the cold record of an unopposed motion, without any fact-finding on the quintessentially fact-bound question of personal fault. It is a manifest error that should be corrected.

Under the Oregon Uniform Trust Code, a trustee is personally liable on obligations "arising from ownership or control of trust property" only if "the trustee is personally at fault." ORS 130.845(2). "Personal fault" under Oregon trust law is not the same as mere control of the trust asset at the time suit was filed. If it were, every trustee who administers a trust under a good-faith interpretation of its terms would be personally liable whenever the trust is later held to have breached a contract. That is not the law.

Here, viewed in the light most favorable to Couvrette (*Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995)), the record reflects that Couvrette acted in her capacity as Co-

Page 24 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

Trustee under what she reasonably believed to be the governing terms of the Trust following Ann's 2019 Amendments. Those 2019 Amendments were prepared with the assistance of new Oregon counsel (Gary Turner), after Ann had independently terminated Huycke's representation. Order at 8. The Revocation Document was likewise executed in the exercise of the Trust's authority under the Redemption Agreement's amendment clause. Couvrette's position in this litigation has been that the 2019 Amendments control, and that position, whether ultimately correct or not, is the product of a good-faith fiduciary judgment, not personal fault.

Personal fault under ORS 130.845(2) requires more than losing on the merits.[3] The Court's one-sentence conclusion that Couvrette is "personally at fault for the decision to withhold the LLC from Mark and Mike after Ann died," (Order at 16) is not a finding of fault, it is a finding of conduct.

The personal-fault finding is further undermined by evidence that Couvrette's decision to preserve the LLC in trust was a reasonable exercise of fiduciary duty in the face of apparent non-performance by the proposed transferees. Mark's own sworn declaration documents Valley View Winery's rent payments to Wisnovsky Land, LLC only through January 27, 2023, approximately six weeks before Ann's death. Wisnovsky Decl. ¶ 58. The declaration does not affirm any rent payment by Valley View Winery to the LLC after that date. A trustee facing Defendants who were demanding transfer of the LLC, while Defendants' own wholly-owned tenant had ceased its

---

[3] *See Hunt v. Goffman*, 343 Or. App. 268, 578 P.3d 1265 (2025). Although ORS 130.845(2) permits personal liability for trustees who are "personally at fault," the Court of Appeals' analysis underscores that trustee status does not expand liability beyond ordinary principles of law. There, even allegations of intentional misconduct failed where the plaintiff could not establish a legally cognizable injury or satisfy the elements of the asserted claims (e.g., no "taking" where funds were held in escrow and not appropriated by the trustees). *Id*. at 277–79. The decision thus reflects that personal fault requires an actual breach of a recognized duty causing a legally actionable injury, not merely a transaction that did not result in a completed property interest.

payment obligations to that LLC, would have been derelict in her fiduciary duties to transfer the LLC without first protecting the beneficiaries. *See* ORS 130.655 (duty of loyalty); ORS 130.665 (duty of prudent administration). Whether Couvrette's conduct constituted "personal fault" under ORS 130.845(2) is, at minimum, a genuine issue of material fact.

At a minimum, whether Couvrette acted with personal fault is a genuine issue of material fact that cannot be resolved on this record. Reconsideration of the personal liability portion of the fee award is warranted.

**E.    Due Process and the Court's Discretion Warrant Limited Leave to Brief the Eighth Counterclaim.**

The Court's Rule 11(b) sanctions order of December 12, 2025 addressed misconduct that occurred in Plaintiffs' briefing of their affirmative claims for elder abuse, unjust enrichment, and declaratory judgment. ECF 215. The sanctions were imposed on Plaintiffs' prior counsel, with consequences for Plaintiffs' claims, including dismissal of those claims with prejudice. *Id.*

The sanctions did not, however, foreclose Couvrette's right to defend against Defendants' counterclaims. *Id.* at 22. Sanctions do not automatically extinguish a party's ability to defend against opposing claims. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (sanctions are a "collateral issue" distinct from the merits). Where a sanction is effectively case-dispositive, the Ninth Circuit requires heightened scrutiny: dismissal is a "harsh penalty" appropriate only after consideration of less drastic alternatives and other factors bearing on fairness and proportionality. *Henderson v. Duncan*, 779 F.2d 1421, 1423–24 (9th Cir. 1986); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–62 (9th Cir. 1992). Consistent with those principles, sanctions must be narrowly tailored to the misconduct and may not deprive a party of its opportunity to be heard absent justification

equivalent to dismissal. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017); *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988).

Plaintiffs do not ask this Court to revisit its December 12, 2025 sanctions order, at this time. Plaintiffs ask only that the practical consequences of that order not extend beyond its intended scope. The sanction that stripped Plaintiffs' briefing on their affirmative claims should not translate into an unopposed, case-dispositive judgment on Defendants' separate counterclaim for specific performance of a multi-million-dollar asset transfer. That extension imposes a penalty substantially more severe than the sanction itself.

The Court has broad discretion under Rule 59(e) and its inherent authority to manage its docket to grant limited leave for targeted briefing. Plaintiffs respectfully request that, if the Court is not prepared to vacate the Order outright, it grant such leave so that the merits of Defendants' Eighth Counterclaim can be tested through adversarial briefing before a specific-performance decree and a personal liability fee award take effect.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court:

1.      Vacate or amend its March 30, 2026, Opinion and Order (ECF 227) insofar as it (a) grants summary judgment on Defendants' Eighth Counterclaim; (b) orders specific performance requiring transfer of Wisnovsky Land, LLC and the Valley View Property; and (c) awards attorney fees against Couvrette personally;

2.      In the alternative, grant Plaintiffs limited leave to file briefing opposing Defendants' Motion for Partial Summary Judgment on the Eighth Counterclaim, on a schedule and within page limits the Court deems appropriate;

Page 27 – **PLAINTIFFS' MOTION FOR RECONSIDERATION**
15025.00001\44920855.9

3.    Stay enforcement of the specific-performance decree and any proceedings to determine fee amounts under Rule 54 pending resolution of this Motion; and

4.    Grant such further relief as the Court deems just and proper.

Dated:    April 27, 2026

BEST BEST & KRIEGER LLP


By: *s/ Curtis Glaccum*
————————————————
CURTIS GLACCUM, Bar No. 161732
curtis.glaccum@bbklaw.com
JOSH NEWTON, Bar No. 983087
josh.newton@bbklaw.com

Attorneys for Plaintiffs/Counter-Defendants
JOANNE COUVRETTE, MICHELLE
SULLIVAN, as Special Administrator of
the Estate of ANN M. WISNOVSKY, and
WISNOVSKY LAND, LLC

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 8,225 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

PAGE 1- CERTIFICATE OF COMPLIANCE

15025.00001\44920855.9

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2026, I caused to be served a copy of the foregoing Plaintiffs' Motion For Reconsideration of Opinion and Order (ECF No. 227) on the following person(s) in the manner indicated below:

| | |
|---|---|
| Sandra S. Gustitus, Bar No. 143298<br>Bradley T. Crittenden, Bar No. 173274<br>Chenoweth Law Group, PC<br>510 SW Fifth Avenue, 4th Floor<br>Portland, OR 97204<br>Email:  sgustitus@chenowethlaw.com<br>bcrittenden@chenowethlaw.com | James R. Dole, Bar No. 892272<br>Watkinson Laird Rubenstein PC<br>1246 NE 7th St Ste B<br>Grants Pass OR 97526<br>Email:  jdole@wlrlaw.com |
| *Attorneys for Defendants Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc.* | *Attorney for Defendants Michael J. Wisnovsky, Mark A. Wisnovsky, and Valley View Winery, Inc.* |

by causing a full, true, and correct copy thereof to be sent by the following indicated method or methods, on the date set forth below:

☒ by e-service via CM/ECF on the date set forth below.

☐ by mailing in a sealed, first-class postage-prepaid envelope, addressed to the last-known office address of the attorney, and deposited with the United States Postal Service at Bend, Oregon.

☒ by emailing to the attorney at the email address that is the last-known email address for the attorney's office.

PAGE 2 - CERTIFICATE OF SERVICE

15025.00001\44920855.9

DATED April 27, 2026                    BEST BEST & KRIEGER LLP


_s/ Curtis Glaccum_

CURTIS GLACCUM, Bar No. 161732
curtis.glaccum@bbklaw.com
JOSH NEWTON, Bar No. 983087
josh.newton@bbklaw.com

_Of Attorneys for Plaintiffs/Counter-
Defendants JOANNE COUVRETTE,
MICHELLE SULLIVAN, as Special
Administrator of the Estate of ANN M.
WISNOVSKY, and WISNOVSKY LAND,
LLC_


PAGE 3 - CERTIFICATE OF SERVICE

15025.00001\44920855.9